Elwood Lui (45538)
elui@jonesday.com
Rick L. Shackelford (151262)
rlshackelford@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Thomas E. Fennell
tefennell@jonesday.com
Michael L. Rice
mlrice@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

Hugh R. Whiting
hrwhiting@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re MATTEL, INC., TOY LEAD PAINT PRODUCTS LIABILITY LITIGATION | Case No. MDL No. 1897<br><br>The Honorable Dale S. Fischer<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY MATTEL, FISHER-PRICE, TARGET, TOYS "R" US, KMART, AND K-B TOYS TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT<br><br>[Filed, Served and Lodged Concurrently With Memorandum of Points and Authorities, Notice of Motion, Appendix of Supporting Exhibits, Declaration of Rick L. Shackelford and [Proposed] Order]<br><br>Date: September 8, 2008<br>Time: 1:30 p.m.<br>Place: Courtroom 840<br>      Roybal Federal Bldg<br>      Hon. Dale S. Fischer |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

PLAINTIFFS' ALLEGATIONS ......................................................................... 2

    1.    The Lead Recall Plaintiffs ................................................................. 2

    2.    The Magnet Recall Plaintiffs ............................................................ 3

    3.    The Cuff Plaintiffs ............................................................................ 3

ARGUMENT ...................................................................................................... 5

I.    The Standard For Dismissal ........................................................................ 6

II.    The Consumer Product Safety Act Bars Plaintiffs' Attempt To Compel A Refund For The Recalled Toys ............................................................... 7

III.    Plaintiffs Have Failed To Allege Injury In Fact Which Is An Essential Element Of Each Of Their Claims ............................................................ 12

    A.    The Magnet Recall Plaintiffs Do Not And Cannot Allege Injury From "Exposure" To Magnets ..................................... 13

    B.    The Lead Recall Plaintiffs And Cuff Plaintiffs Cannot Allege Injury Based On Exposure To Lead ...................................... 13

    C.    Plaintiffs Cannot Properly Allege An Injury From The Purchase Of Allegedly Defective Toys Because Replacement Toys Are Available .................................................. 15

IV.    Plaintiffs' Claims Under Section 2072 Of The CPSA Fail As A Matter Of Law ................................................................................................. 16

    A.    The Consumer Product Safety Rule On Which The Magnet Plaintiffs Rely Is Not Applicable On Its Face ..................... 16

    B.    The Cuff Plaintiffs Cannot Allege A Violation Of Any CPSC Consumer Product Safety Rule ...................................... 17

    C.    Plaintiffs Do Not Allege Injury Compensable Under Section 2072 ................................................................................... 18

V.    Plaintiffs' Claims That Sound In Fraud Should Be Dismissed For Failure To Satisfy Rule 9(b) ...................................................................... 18

    A.    Counts Six Through Nine Are Based On Alleged Fraudulent Conduct .......................................................................... 19

        1.    UCL claims (Counts Six & Seven) .................................... 19

        2.    CLRA claims (Counts Eight & Nine) ................................. 19

    B.    FRCP 9(b) Applies To Plaintiffs' Allegations Of Fraudulent Conduct And Requires Specificity In Pleading .............. 20

    C.    Plaintiffs' Pleading Falls Well Short Of Satisfying Rule 9(b) ...................................................................................... 20

    D.    Plaintiffs' UCL And CLRA Claims Are Predicated On Alleged "Representations" Which Are Not Actionable As Fraud ......................................................................................... 22

        1.    The alleged statements by Mattel ..................................... 23

DLI-6195995v1

i

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3    2.    The alleged statements by Fisher-Price ....................................24

4    3.    The alleged statements by Target ...............................................25

5    4.    The alleged statements by Toys "R" Us ...................................25

5.    The alleged statements by KB Toys ..........................................26

6    6.    The absence of allegations regarding Kmart ...........................26

7    7.    Plaintiffs' fraud-based claims should be stripped from the
                  Complaint....................................................................................... 27

8    VI.    Plaintiffs Have Failed To State A Negligence Claim Against The
             Retailers .................................................................................................. 27

9    VII.    Plaintiffs Who Do Not Reside In California Fail To State A Claim
10            Against Fisher-Price Or Mattel Under California's Unfair Competition
              Law Or Consumers Legal Remedies Act .............................................. 28

11    VIII.    Plaintiffs' CLRA Damages Claims Must be Dismissed Because
               Plaintiffs Failed to Provide Pre-Suit Notice ..................................... 31

12    IX.    Plaintiffs' Unjust Enrichment Claims Fail ...................................... 33

13    CONCLUSION ............................................................................................ 36

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

**Page**

4

*Allstate Insurance Co. v. Hague,*
   449 U.S. 302 (1981) ................................................................ 29

5

*Ball v. Joy Tech., Inc.,*
   958 F.2d 36 (4th Cir. 1992) ....................................................... 14

6

*Bell Atlantic Corp. v. Twombly,*
   127 S. Ct. 1955 (2007) ........................................................ 6, 36

7

8

*BMW v. Gore,*
   517 U.S. 559 (1996) ................................................................ 29

9

*Briehl v. General Motors Corp.,*
   172 F.3d 623 (8th Cir. 1999) ................................................ 12, 15

10

11

*Brown v. Kerr-McGee Chemical Corp.,*
   767 F.2d 1234 (7th Cir. 1985) .................................................... 10

12

*California Joint Powers Insurance Authority v. Munich Reinsurance
America, Inc.,* 2008 WL 1885754 (C.D. Cal. April 21, 2008) ...................... 6

13

14

*Carden v. General Motors Corp.,*
   509 F.3d 227 (5th Cir. 2007) ...................................................... 9

15

*Chicago & North Western Transport Co. v. Kalo Brick & Tile Co.,*
   450 U.S. 311 (1981) ................................................................ 10

16

17

*Chin v. Chrysler Corp.,*
   182 F.R.D. 448 (D.N.J. 1998) .................................................... 11

18

*Churchill Village, L.L.C. v. General Electric Co.,*
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ........................................ 30

19

20

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.,*
   911 F.2d 242 (9th Cir. 1990) ...................................................... 22

21

22

*Crosby v. National Foreign Trade Council,*
   530 U.S. 363 (2000) ................................................................ 10

23

*Doron Precision Systems, Inc. v. FAAC, Inc.,*
   423 F. Supp. 2d 173 (S.D.N.Y. 2006) .......................................... 15

24

25

*Feinstein v. Firestone Tire & Rubber Co.,*
   535 F. Supp. 595 (S.D.N.Y. 1982) .............................................. 13

26

*First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler,*
   210 F.3d 983 (9th Cir. 2000) ...................................................... 28

27

28

DLI-6195995v1

**TABLE OF AUTHORITIES**
**(Continued)**

                                                                                            **Page**

*Gadda v. Ashcroft*,
  363 F.3d 861 (9th Cir. 2004) ................................................................9

*Geier v. American Honda Motor Co.*,
  529 U.S. 861 (2000) ................................................................ 9, 10, 11

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*,
  100 F. Supp. 2d 1086 (C.D. Cal. 1999) ............................................ 20

*Gonzales Communications, Inc. v. Titan Wireless, Inc.*,
  2007 WL 1994057 (S.D. Cal. Apr. 18, 2007) ................................... 35

*Hines v. Davidowitz*,
  312 U.S. 52 (1941) .................................................................................9

*Hoffman v. A. B. Chance Co.*,
  339 F. Supp. 1385 (M.D. Pa. 1972) .................................... 23, 25, 26

*In re Amgen Inc. Securities Litigation*,
  2008 WL 999058 (C.D. Cal. Feb. 1, 2008) ...................................... 15

*In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*,
  288 F.3d 1012 (7th Cir. 2002) .......................................................... 12

*In re Ford Motor Co. Ignition Switch Products Liability Litigation*,
  174 F.R.D. 332 (D.N.J. 1997) ........................................................... 11

*In re Graphics Processing Units Antitrust Litigation*,
  2007 WL 3342602 (N.D. Cal. Nov. 7, 2007) .................................... 15

*Intri-Plex Techs., Inc. v. Crest Group, Inc.*,
  499 F.3d 1048 (9th Cir. 2007) .......................................................... 15

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005) ...................................... 22, 32

*Mazur v. eBay Inc.*,
  2008 WL 618988 (N.D. Cal. March 4, 2008) ................................... 22

*Meridian Project Systems, Inc. v. Hardin Construction Co.*,
  404 F. Supp. 2d 1214 (E.D. Cal. 2005) ............................................ 29

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*,
  165 F. Supp. 2d 514 (S.D.N.Y. 2001) ............................ 23, 24, 25, 26

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ................................................................ 20

*Nordberg v. Trilegiant Corp.*,
  445 F. Supp. 2d 1082 (N.D. Cal. 2006) ............................................ 30

*Parker v. Wellman*,
  230 F. App'x 878 (11th Cir. 2007) ................................................... 14

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Perfect 10, Inc. v. Visa International Service Association*,
    494 F.3d 788 (9th Cir. 2007) ................................................................. 6

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................ 29

*Public Utility District No. 1 of Grays Harbor County Washington v.
    IDACORP Inc.*, 379 F.3d 641 (9th Cir. 2004)................................. 9, 10

*Rivera v. Wyeth-Ayerst Laboratories*,
    283 F.3d 315 (5th Cir. 2002) ............................................................ 15

*Roberts v. Richland Manufacturing Co.*,
    260 F. Supp. 274 (W.D. Mich. 1966)................................................ 27

*Sanitoy, Inc. v. Shapiro*,
    705 F. Supp. 152 (S.D.N.Y. 1989) .................................................. 18

*Schweitzer v. Consolidated Rail Corp.*,
    758 F.2d 936 (3d Cir. 1985) ............................................................. 14

*Smith v. Allstate Insurance Co.*,
    160 F. Supp. 2d 1150 (S.D. Cal. 2001) ...................................... 22, 24

*Soo Line Railroad Co. v. Overton*,
    992 F.2d 640 (7th Cir. 1993) ........................................................... 29

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007)............................................. 22

*Sun Oil Co. v. Wortman*,
    486 U.S. 717 (1988) ........................................................................ 29

*Swisher v. Collins*,
    2008 WL 687305 (D. Idaho March 18, 2008)................................. 15

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ........................................................... 15

*Utility Consumers' Action Network v. Sprint Solutions, Inc.*,
    2008 WL 1946859 (S.D. Cal. Apr. 25, 2008) .................... 31, 32, 33

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) .............................. 20, 21, 24, 25, 27

*Von Grabe v. Sprint PCS*,
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) ........................................... 32

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) .................................................... 6, 27

*Wells Fargo Bank of Texas v. James*,
    321 F.3d 488 (5th Cir. 2003) ............................................................. 9

DLI-6195995v1

# TABLE OF AUTHORITIES
## (Continued)

|  | | **Page** |
| --- | --- | --- |

**STATE CASES**

*AlliedSignal, Inc. v. Ott,*
  785 N.E.2d 1068 (Ind. 2003) .................................................................. 14

*American Safety Insurance Service, Inc. v. Griggs,*
  959 So. 2d 322 (Fla. Dist. Ct. App. 2007) .................................... 34, 35

*Booe v. Shadrick,*
  369 S.E.2d 554 (N.C. 1988) .................................................................. 34

*Buckland v. Threshold Enterprises, Ltd.,*
  155 Cal. App. 4th 798 (Cal. Ct. App. 2007) ........................................ 21

*Dowhal v. SmithKline Beecham Consumer Healthcare,*
  32 Cal. 4th 910 (Cal. 2004) .................................................................... 9

*Dumas v. Automobile Club Insurance Association,*
  473 N.W.2d 652 (Mich. 1991) ............................................................. 34

*Fowler v. Perry,*
  830 N.E.2d 97 (Ind. Ct. App. 2005) ..................................................... 34

*Hall v. Time Inc.,*
  158 Cal. App. 4th 847 (Cal. App. 2008) ............................................... 21

*Henry v. Dow Chemical Co.,*
  701 N.W.2d 684 (Mich. 2005) ............................................................. 14

*Houston County Health Care Authority v. Williams,*
  961 So.2d 795 (Ala. 2006)..................................................................... 14

*Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Insurance Co.,*
  870 A.2d 58 (D.C. 2005) ....................................................................... 33

*McBride v. Boughton,*
  123 Cal. App. 4th 379 (Cal. Ct. App. 2004) ........................................ 35

*McKell v. Washington Mutual,*
  142 Cal. App. 4th 1457 (Cal. Ct. App. 2006)....................................... 35

*Norwest Mortgage, Inc. v. Superior Court,*
  72 Cal. App. 4th 214 (Cal. Ct. App. 1999)........................................... 29

*O'Brien v. Camisasca Automobile Manufacturing, Inc.,*
  161 Cal. App. 4th 388 (Cal. Ct. App. 2008)......................................... 21

*Pitts v. Jackson National Life Insurance Co.,*
  574 S.E.2d 502 (S.C. Ct. App. 2002) ................................................... 35

*QHG of Lake City, Inc. v. McCutcheon,*
  600 S.E.2d 105 (S.C. Ct. App. 2004) ................................................... 34

*Schenck v. K.E. David, Ltd.,*
  666 A.2d 327 (Pa. Super. Ct. 1995) ..................................................... 34

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Scrushy v. Tucker*,
955 So. 2d 988 (Ala. 2006) ................................................................ 33

*Verb v. Motorola, Inc.*,
672 N.E.2d 1287 (Ill. Ct. App. 1996) ............................................... 13

**FEDERAL STATUTES & LEGISLATIVE MATERIALS**

Consumer Product Safety Act, 15 U.S.C. §§ 2051, *et seq.* ............................. passim

15 U.S.C. § 2051 ............................................................................. 7, 18

15 U.S.C. § 2052 ............................................................................. 7, 17

15 U.S.C. § 2064 .......................................................................... 7, 8, 11

15 U.S.C. § 2072 .............................................. 5, 12, 16, 17, 18, 36

15 U.S.C. § 2074 .................................................................................. 9

118 Cong. Rec. 31,384 .................................................................... 18

H.R. Rep. No. 92-1153 ....................................................................... 7

**FEDERAL REGULATIONS & AGENCY MATERIALS**

16 C.F.R. § 1115.20 ............................................................................ 8

16 C.F.R. §§ 1303, *et seq.* ................................................................. 2

16 C.F.R. § 1500.18 ..................................................................... 16, 17

43 Fed. Reg. 34988 ............................................................................ 8

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................... 6

Fed. R. Civ. P. 9(b) .......................................... 5, 18, 19, 20, 21, 22, 36

**STATE STATUTES**

California Unfair Competition Law,
CAL. BUS. & PROF. CODE §§ 17200, *et seq.* .................................. passim

CAL. BUS. & PROF. CODE § 17204 ............................................... 12, 16

California Consumers Legal Remedies Act,
CAL. CIV. CODE §§ 1750, *et seq.* .................................................. passim

CAL. CIV. CODE § 1782 ................................................................. 31, 32

DLI-6195995v1

**TABLE OF AUTHORITIES**
(Continued)

| | Page |
|---|---|
| **MISCELLANEOUS** | |
| RESTATEMENT (SECOND) OF TORTS § 402................................................................ 27 | |

# **INTRODUCTION**

In this action nineteen Plaintiffs seek to sue Mattel, Inc., Fisher-Price, Inc. and five nationwide retailers because Mattel and Fisher-Price recalled certain toys in the summer and fall of 2007. In their 83-page, 299-paragraph Second Consolidated Amended Complaint ("Complaint"), these Plaintiffs devote a total of 19 paragraphs – a single paragraph per Plaintiff – to allege each Plaintiff's state of residence, the toys each allegedly bought and where those toys were purchased. The remainder of the Complaint is filled with conclusory allegations and rhetoric designed to create the impression that millions of Mattel and Fisher-Price toys were sold pursuant to a scheme hatched to dump defective products in the United States. Yet, Plaintiffs fail to allege facts sufficient to support the existence of such a scheme or the elements of the multiple claims they assert. Indeed, Plaintiffs make no effort to tie their conclusory allegations to their own circumstances and toy purchases and they fail to allege any actual injury to any Plaintiff.

At its core, this is a case about what should happen when a responsible manufacturer determines that a product recall is appropriate and takes steps to implement that recall under the procedures established by the Consumer Product Safety Commission ("CPSC" or the "Commission") pursuant to the Consumer Product Safety Act, 15 U.S.C. §§ 2051 *et seq*. ("CPSA" or the "Act"). The fundamental question presented is whether a consumer, who (i) buys a product that is subsequently recalled by the manufacturer in accordance with the requirements of the CPSA and under the oversight of the CPSC and (ii) is entitled to receive a free replacement product under the terms of the recall, may refuse to pursue her recall remedy, sue the manufacturer under state law, and seek an order requiring the manufacturer to pay her the purchase price of the product. The answer must be "no," or the uniform recall procedure established by Congress and implemented by the CPSC would be eviscerated.

DLI-6195995v1

1    Because Plaintiffs' attempt to circumvent the federal recall procedures is

2    preempted by the CPSA, and because the Plaintiffs cannot allege any injury in light

3    of the available recall remedies, and for the other reasons set forth below, Plaintiffs'

4    claims should be dismissed.

5    ## PLAINTIFFS' ALLEGATIONS

6    As indicated, this case arises out of certain recalls of toy products announced

7    by Defendants Mattel and Fisher-Price in the summer and fall of 2007. Indeed, in

8    their Complaint, Plaintiffs lump together multiple different toys and different

9    recalls. The Complaint and Plaintiffs' allegations are best viewed with three groups

10   of toys – and Plaintiffs – in mind.

11   ### 1.    The Lead Recall Plaintiffs

12   Plaintiffs allege that, in August, September and October 2007, Mattel and

13   Fisher-Price, in cooperation with the CPSC, recalled approximately 2 million toys

14   "due to lead or lead paint" (the "Lead Recalls"). Compl. ¶ 104. Sixteen Plaintiffs

15   (Chow, DiGiacinto, Entsminger, Goldman, Harrington, Hughey, Jimenez/Perez,

16   Luttenberger, Massengill, Mayhew, Monroe, Reisinger, Sarjent, Shoukry,

17   Underhill/Dunsmore and White) each allege that he or she bought a toy subject to

18   one of these recalls and assert claims based on that purchase. *Id.* ¶¶ 17-32. For

19   ease of reference these sixteen Plaintiffs are hereafter referred to as the "Lead

20   Recall Plaintiffs." None of the Lead Recall Plaintiffs alleges that he, she, or their

21   children actually ingested any lead from the recalled toys. None of these Plaintiffs

22   alleges that he, she, or their children has suffered any actual injury from use of

23   those toys.[1] *See id.*

24   _____

[1] As is clear from the recall announcements, the toys recalled by Mattel and
Fisher-Price due to lead in paint on certain parts of the toys were recalled because
25   the lead content of some of the paint was above a regulatory standard adopted by
the CPSC. *See* 16 C.F.R. §§ 1303, *et seq.* (Sept. 1, 1977). Plaintiffs make no
26   allegations about the specifics of lead in paint on any toy, and they make no
allegation about the actual consequence – or lack thereof – of use of any specific
27   toy. Instead, through conclusory assertions and rhetoric, they seek to create the
impression that these recalled toys are "hazardous" in the extreme. But as
28   representatives of the CPSC have indicated frequently, "there are times when lead
poses a risk to children and times when a product simply violates the lead-paint

## 2.    **The Magnet Recall Plaintiffs**

Plaintiffs also allege that, on November 21, 2006 and August 14, 2007, Mattel, again in cooperation with the CPSC, announced the recall of approximately 11.5 million toys to implement and retroactively apply "a new design standard for securing magnets in toys," so that small magnets could not fall out of the toys and be swallowed or aspirated by young children (the "Magnet Recalls"). *Id.* ¶¶ 120-129. Two Plaintiffs (Probst and Rusterholtz) each allege that she bought a toy subject to one of these recalls and base their claims on that purchase. *Id.* ¶¶ 33-34. These two Plaintiffs are hereafter referred to as the "Magnet Recall Plaintiffs." Again, however, the Magnet Recall Plaintiffs do not allege that either of them or their children actually suffered an injury from using a toy that was subject to the Magnet Recalls. *See id.*

## 3.    **The Cuff Plaintiffs**

Finally, Plaintiffs allege that in December 2007, the State of Illinois claimed that certain toy blood pressure cuffs in Fisher-Price Medical Kits violated an Illinois state standard applicable to lead in substrate. By agreement with the State of Illinois, Fisher-Price requested that retailers stop selling the affected cuffs in Illinois and return the affected products, and also offered to replace the affected cuffs for any consumer, nationwide, who requested a replacement (the "Cuff Replacement"). *Id.* ¶¶ 134, 140-141. Two Plaintiffs (Allen and White) base claims on their purchase of toy kits that included a toy blood pressure cuff. *Id.* ¶¶ 16, 32. These two Plaintiffs are hereafter referred to as the "Cuff Plaintiffs." Although the Cuff Plaintiffs do not allege that the toy blood pressure cuffs violate any CPSC standard, they nonetheless complain that Mattel has not "recalled" the cuffs outside

_____

(continued...)

standard. The last six or so recalls are because the products violate the lead-paint standard." Abigail Goldman, *Think Outside Toy Box To Find Hazards*, L.A. TIMES, Sept. 23, 2007, at C1, quoting CPSC spokesperson Julie Vallese.

DLI-6195995v1

- 3 -

Illinois.  *Id.* ¶ 139.  Neither of the Cuff Plaintiffs makes any allegation that use of the toy cuff has caused any actual injury to them or their children.  *See id.* ¶¶ 16, 32.

Pursuant to the CPSA and CPSC procedures, for each Lead or Magnet Recall, Mattel and Fisher-Price agreed to replace the affected toys, either by providing a replacement toy or by issuing a voucher to obtain a replacement with an equal or greater value.  The details of the procedures for the recalls are set forth in the CPSC and Mattel announcements of those recalls which are referred to in the Complaint.[2]

Each of the sixteen Lead Recall Plaintiffs alleges only that he or she purchased or acquired a toy subject to a Lead Recall.  The same is true for the two Magnet Recall Plaintiffs.[3]  Neither of the two Cuff Plaintiffs alleges that she purchased a magnet toy.  A single Lead Recall Plaintiff (White) alleges the purchase of a toy containing a cuff.  No Magnet Recall Plaintiff alleges that she purchased a toy subject to a Lead Recall.

These Plaintiffs all sue the toy manufacturers, Mattel and Fisher-Price, as well as retailers Target Corporation ("Target"), Toys "R" Us, Inc. ("Toys 'R' Us"), KB Toys, Inc. ("KB Toys"), Kmart Corporation ("Kmart") and Wal-Mart Stores, Inc.  All Plaintiffs assert counts for breach of warranty, negligence, strict products liability, violation of the CPSA, violations of California's Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), and Song-Beverly Consumer Warranty Act, and unjust enrichment.  All Plaintiffs make the same conclusory statements regarding injury – that they were injured by increased exposure to lead

---

[2] The CPSC and Mattel recall announcements are collected for the Court's convenience in the accompanying Appendix I, Exhibits 1 – 18.  The information regarding the Cuff Replacement is found on Mattel's website, *available at* http://service.mattel.com/us/recall/cuff.asp (last visited June 23, 2008), a copy of which is at Appendix I, Exhibit 19.

[3] A number of the Plaintiffs allege that they did not purchase the toys, but rather received them as gifts.  Lead Recall Plaintiffs Chow, Harrington and Massengill allege that they received all or at least some of their toys as gifts.  Compl. ¶¶ 17, 21, 25.  Magnet Recall Plaintiff Rusterholtz likewise alleges that she "purchased or received as gifts" her magnet toys.  Compl. ¶ 34.

1    or magnets in the toy and by the purchase of a product they claim was defective.

2    Despite giving it various labels and making various claims, all Plaintiffs seek

3    fundamentally the same relief – an order requiring Defendants to pay them a cash

4    refund of the purchase price of the toys.  The Lead Recall Plaintiffs also claim

5    Defendants should be ordered to pay for costs of blood-lead level tests and for costs

6    of treatment "for those who screen positive for blood-lead levels."  *See* Compl. at

7    82 (Prayer For Relief).

8                                              **ARGUMENT**

9         Plaintiffs' Complaint is legally deficient in multiple ways.  Defendants now

10   move to dismiss the Complaint in whole or in part on the following grounds:

11   •    Plaintiffs' claims for recovery of the purchase price of the toys are pre-
          empted by the CPSA, which gives companies implementing a recall
12        the right to elect the recall remedy – to choose to repair or replace
          recalled products or to refund the purchase price.  Mattel and Fisher-
13        Price exercised their election under the CPSA to replace the toys, and
          Plaintiffs' state-law claims seek to override that election.
14
15   •    Plaintiffs have not alleged any actionable injury, which is a necessary
          element of each of their claims.  They have suffered no economic loss
16        because they have replacement toys available of equal or greater value,
          nor have they alleged any physical injury from the toys.
17
     •    Plaintiffs have failed to state a claim under 15 U.S.C. § 2072 because
18        (1) they have not alleged a violation of a CPSC safety rule applicable
          to the magnet toys; (2) they have not alleged a violation of a CPSC
19        safety rule applicable to the cuff; and (3) they do not allege an injury
          compensable under section 2072.
20
     •    Plaintiffs' fraud-based claims under the UCL and CLRA must be
21        dismissed because their fraud allegations do not satisfy Federal Rule of
          Civil Procedure 9(b) and because those claims are predicated on
22        statements which are not actionable as a matter of law.

23   •    Plaintiffs who do not reside in California have failed to state a claim
          under California's UCL or CLRA because the claims asserted by those
24        Plaintiffs lack a sufficient nexus to California to apply the California
          statutes consistent with federal due process requirements.
25
     •    Plaintiffs have failed to state a negligence claim against the retailers
26        because they had no duty to test Mattel's and Fisher-Price's toys for
          alleged latent defects.
27
     •    Plaintiffs' claims for damages under the CLRA fail because Plaintiffs
28        failed to provide timely notice prior to commencing suit.

1      • Plaintiffs have failed to state a claim for unjust enrichment because, in
2        light of the recall programs, no Defendant has retained a benefit for
         which any Plaintiff did not receive consideration.

3   In each instance, as set forth more fully below, the Complaint fails to state a claim

4   for relief and should be dismissed pursuant to Rule 12(b)(6).

5   ## I.    <u>THE STANDARD FOR DISMISSAL</u>

6          Rule 12(b)(6) of the Federal Rules of Civil Procedure is designed to "test[]

7   the legal sufficiency of the pleadings." *Cal. Joint Powers Ins. Auth. v. Munich*

8   *Reinsurance Am., Inc.*, No. CV 08-956 DSF (RZx), 2008 WL 1885754, at *1 (C.D.

9   Cal. April 21, 2008). Dismissal is required if plaintiffs either fail to present a

10  cognizable legal theory or fail to allege sufficient facts to support a cognizable legal

11  theory. *Id.* at *2. Indeed, dismissal is necessary unless the plaintiff provides

12  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

13  *v. Twombly*, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

14         "The plaintiff bears the burden of pleading sufficient facts to state a claim.

15  Courts will not supply essential elements of a claim that are not initially pled." *Cal.*

16  *Joint Powers*, 2008 WL 1885754, at *2. The Court should not "assume the truth of

17  legal conclusions merely because they are cast in the form of factual allegations."

18  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Thus,

19  "the court need not accept conclusory allegations of law or unwarranted inferences,

20  and dismissal is required if the facts are insufficient to support a cognizable claim."

21  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007). As the

22  Supreme Court stated in *Twombly*, "[w]hile a complaint . . . does not need detailed

23  factual allegations, a plaintiff's obligation to provide the 'grounds' of his

24  'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

25  recitation of the elements of a cause of action will not do." 127 S. Ct. at 1964-65

26  (internal citations omitted and edits in original).

27

28

DLI-6195995v1

- 6 -

## II.    THE CONSUMER PRODUCT SAFETY ACT BARS PLAINTIFFS' ATTEMPT TO COMPEL A REFUND FOR THE RECALLED TOYS

The heart of all of the claims made by all of the Plaintiffs is a demand that Defendants be required to pay the Plaintiffs the price paid to purchase the toys. Plaintiffs attach varying labels to their demand – refund, disgorgement, restitution – but what they seek through each of these paths is to have this Court reach back and re-do the Lead and Magnet Recalls and order a refund of the purchase price rather than the replacement remedy elected by Mattel and Fisher-Price.  To do so, however, this Court would have to override the CPSA and the rules adopted by the CPSC to administer it.  Basic preemption principles preclude such a result.

In enacting the CPSA, Congress found, among other things, that "control by State and local governments of unreasonable risks of injury associated with consumer products is inadequate and may be burdensome to manufacturers." 15 U.S.C. § 2051(a)(4).  Congress enacted the Act in part "to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations."  *Id.* § 2051(b)(3).  The Act was based on recommendations of a commission, which had found "[s]tate and local laws to be a 'hodgepodge of tragedy inspired responses to challenges which cannot be met by restricted geographical entities.'"  H.R. Rep. No. 92-1153, at 23 (1972).

In adopting the CPSA, Congress put in place a comprehensive, federal administrative scheme to deal with consumer products.  To accomplish its stated purposes, the Act defines a "substantial product hazard" as a defect, or a failure to comply with a standard or ban, that creates a substantial risk of injury to the public, and empowers the CPSC to take action to remedy any such hazard.  15 U.S.C. § 2064(a), (c); *see also id.* § 2052(a)(2).  Upon determining that a product presents such a hazard, often due to information supplied by the manufacturer, the CPSC may order a company to take any number of actions to provide notice of the problem.  *See id.* § 2064(b), (c).  The Commission also may require the company

1   "to take whichever of the following actions *the person to whom the order is*

2   *directed elects*." *Id.* § 2064(d) (emphasis added).  As established by Congress in

3   the Act, in a recall the manufacturer has the option to (1) repair the defect; (2)

4   replace the product with a like or equivalent product; or (3) refund the purchase

5   price.  *Id.*  Thus, in light of the potential for burdens on manufacturers identified as

6   a concern by Congress, the Act mandates that the election of which recall remedy

7   will be provided to purchasers of the recalled products is the exclusive right of the

8   company implementing the recall.

9        The CPSC adopted regulations to implement the Act, including the

10  provisions for voluntary recalls used for the Lead and Magnet Recalls.  *See* 16

11  C.F.R. § 1115.20 (Aug. 7, 1978).  In adopting those regulations, the Commission

12  concluded that voluntary corrective action plans provide "efficient and effective

13  methods of dealing with potential hazards" so that "the hazard is remedied faster,

14  and the consumer is protected earlier."  43 Fed. Reg. 34988, 34996 (Aug. 7, 1978).

15  Consistent with the Act, companies retain the right in a voluntary recall to elect the

16  recall remedy and must provide notice to the CPSC "indicat[ing] whether it is

17  repairing or replacing the product or refunding its purchase price."  16 C.F.R.

18  § 1115.20(a)(1)(vi); *see also id.* (b)(1)(xiii).

19       Here, Mattel and Fisher-Price made the election of recall remedies as

20  authorized by the CPSA and the regulations underlying it, choosing to replace the

21  recalled toys.  Plaintiffs ask this Court to use state law to take that election away

22  from Mattel and Fisher-Price and effectively to impose a refund requirement on

23  them.  Such a result is directly in conflict with the CPSA, which expressly provides

24  that the recalling party shall elect the remedy, and would destroy the uniformity

25  sought by Congress in passing the Act, leaving the manufacturers and retailers

26  subject to potentially varying requirements of state law and destroying the

27  efficiency and effectiveness of the system that the Commission has adopted.

28

DLI-6195995v1

Plaintiffs' attempt to undermine the CPSA's recall process and to usurp the election of remedy set forth in the Act is prohibited under familiar preemption principles.  A federal statute, absent contrary direction from Congress, implicitly pre-empts any state law, including a common-law rule, that "actually conflict[s]" with it.  "So-called 'conflict preemption' exists 'if there is an actual conflict between federal and state law, or where compliance with both is impossible.'"  *Pub. Util. Dist. No. 1 of Grays Harbor County Wash. v. Idacorp Inc.*, 379 F.3d 641, 649-50 (9th Cir. 2004) (quoting *Gadda v. Ashcroft,* 363 F.3d 861, 871 (9th Cir. 2004)).  If, "'under the circumstances of th[e] particular case'" the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" the state law is preempted.  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873, 120 S. Ct. 1913, 146 L. Ed. 2d 914 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941)) (edits in original).[4]  "Actual conflict between state and federal law exists where 'the federal scheme expressly authorizes an activity which the state scheme disallows.'"  *Carden v. Gen. Motors Corp.*, 509 F.3d 227, 230 (5th Cir. 2007) (quoting *Wells Fargo Bank of Tex. v. James*, 321 F.3d 488, 491 n.3 (5th Cir. 2003)).

*Grays Harbor* illustrates the application of conflict preemption principles when, as here, the state-law remedy sought by a plaintiff conflicts with a federal regulatory scheme.  In that case, a public utility district sued certain energy wholesalers, claiming that it had been forced to pay inflated prices for electricity because of improper market rate manipulation by defendants, and seeking a refund of a portion of the price paid.  *Grays Harbor*, 379 F.3d at 645.  The Court

---

[4] This fundamental principle remains equally in force even when a federal statute includes a "savings" clause, as the CPSA does in Section 2074(a).  *Geier*, 529 U.S. at 873-74; *see also Dowhal v. SmithKline Beecham Consumer Healthcare*, 32 Cal. 4th 910, 924, 926, 88 P.3d 1, 8, 12 Cal. Rptr. 3d 262, 270-71 (Cal. 2004) (reading *Geier* as establishing "a strong presumption that Congress does not ordinarily intend to bar conflict preemption" and establishing "a general rule upholding conflict preemption even if the applicable federal law contains a savings clause").

recognized that, in passing the Federal Power Act ("FPA"), Congress assigned the

right to regulate interstate, wholesale electricity to the Federal Energy Regulatory

Commission ("FERC").  *Id.* at 646-47.  The public utility argued that its refund

claim did not actually conflict with FERC's regulation, but the court disagreed:

> [B]y asking the court to set a fair price, Grays Harbor is
> invoking a state rule (specifically, contract law) that
> would interfere with the method by which the federal
> statute was designed to reach it[s] goals (specifically,
> FERC regulation of wholesale electricity rates).  To
> permit Grays Harbor to receive in its court action what is
> essentially a refund would create a conflict with FERC's
> authority over wholesale rates.  And such a result would
> make state law stand as an obstacle to the
> accomplishment and execution of the full purposes and
> objectives of Congress under the FPA.

*Id.* at 650.

Like the FPA, the history and express terms of the CPSA reflect a set of

congressional decisions and judgments to vest oversight and management of certain

matters in the hands of a federal administrative agency.  In the CPSA, Congress

established an administrative structure to address issues of product safety and, when

appropriate, product recalls.  Basic principles of conflict preemption foreclose

Plaintiffs' attempt to have this Court interfere with that administrative scheme and

Congress' express directives regarding product recall remedies.  *See Brown v. Kerr-*

*McGee Chem. Corp.* 767 F.2d 1234, 1242 (7th Cir. 1985) (state law remedies

preempted that interfered with NRC's ability to choose best method of radiation

disposal); *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311,

321-22, 325-26, 101 S. Ct. 1124, 67 L. Ed. 2d 258 (1981); *Crosby v. Nat'l Foreign*

*Trade Council*, 530 U.S. 363, 372-73, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000);

*Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 864-65, 120 S. Ct. 1913, 146 L.

Ed. 2d 914 (2000).

In *Geier*, the Supreme Court interpreted a statute similar to the CPSA and

found that conflict preemption barred the claims being asserted by the plaintiffs

there.  The plaintiffs in *Geier* sued Honda over injuries from a car accident,

DLI-6195995v1

- 10 -

1  claiming it was negligent in not installing an airbag as a passive restraint device in

2  the *Geier* plaintiffs' car.  The Court held that Federal Motor Vehicle Safety

3  Standard 208, issued pursuant to the National Traffic and Motor Vehicle Safety Act

4  ("Safety Act"), preempted the Geiers' common-law action.  *Id.* at 864-65.  Like the

5  provisions of the CPSA enacted by Congress here, the Court understood the Safety

6  Standard in *Geier* as "deliberately provid[ing] the manufacturer with a range of

7  choices among different passive restraint devices." *Id.* at 875.  Because plaintiffs'

8  suit sought to require the inclusion of airbags in all cars, plaintiffs' only-one-option

9  approach "presented an obstacle to the variety and mix of devices that the federal

10 regulation sought." *Id.* at 881.

11     Section 2064(d) unambiguously assigns the right to "elect[]" whether to

12 repair, replace, or refund the purchase price of a recalled product to the recalling

13 company.  Four times this subsection expressly mentions the election right.  That

14 election of recall remedy is carried through to the regulations for voluntary recalls.

15 Because Plaintiffs' state-law claims would mandate a refund for the recalled

16 products, allowing those claims to proceed would create a direct obstacle and

17 conflict with the federal statute (giving Defendants the right to choose among

18 refund, replacement or repair) and would interfere with the Act's objective of

19 uniformity.  Consequently, the CPSA preempts those claims.  *See Geier*, 529 U.S.

20 at 869, 881.  All of Plaintiffs' claims seeking damages for refund, disgorgement, or

21 restitution, or otherwise asking the Court to require that Defendants pay Plaintiffs

22 for their purchase of recalled toys should be dismissed. [5]

23     [5] Moreover, a product recall, like those involved here, is preferable to
litigation seeking monetary damages associated with the recalled product itself.

24 *See, e.g., Chin v. Chrysler Corp.*, 182 F.R.D. 448, 464 (D.N.J. 1998) (denying class
certification for class of consumers who purchased Chrysler vehicles with defective

25 ABS systems that were subsequently recalled, and noting that where "Chrysler's
voluntary recall program provides for replacement of the malfunctioning ABS

26 systems," such a remedy "is more appropriate than civil litigation seeking equitable
relief and money damages in a federal court"); *In re Ford Motor Co. Ignition*

27 *Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 353 (D.N.J. 1997) (denying class
certification for class of automobile owners because an automobile recall issued

28 under the National Highway Transportation Safety Act was more appropriate than
civil litigation seeking money damages).

III.    **PLAINTIFFS HAVE FAILED TO ALLEGE INJURY IN FACT
WHICH IS AN ESSENTIAL ELEMENT OF EACH OF THEIR
CLAIMS**

"No injury, no tort, is an ingredient of every state's law." *In re
Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir.
2002). To state a claim under each and every one of the causes of action asserted in
the Complaint, each Plaintiff must allege a compensable injury. *See, e.g., Briehl v.
Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999); 15 U.S.C. § 2072; CAL. BUS.
& PROF. CODE § 17204. All Plaintiffs, however, fail to satisfy this fundamental
requirement.

Plaintiffs' allegations of injury are at best sparse. Indeed, in the nineteen
paragraphs of the Complaint providing the only allegations of fact about the actual
Named Plaintiffs, each Plaintiff alleges injury merely because (i) he or she
purchased a toy or toys subject to one of the recalls and (ii) his or her child or
children were "exposed" to an allegedly "hazardous toy." Compl. ¶¶ 16-34. Thus,
the two Magnet Recall Plaintiffs allege that they purchased toys containing magnets
and were "injured due to [their children's] exposure to hazardous magnets and
because [they] purchased products that were defective and not fit for [their]
ordinary purpose as a plaything for [their] child as a result of the recalls." *Id.*
¶¶ 33-34. However, neither of the Magnet Recall Plaintiffs alleges that they or their
children experienced or suffered any actual injury from a Magnet Recall toy. *See
id.*

The Lead Recall Plaintiffs and Cuff Plaintiffs make virtually identical
allegations regarding injury. For example, Lead Recall Plaintiff Goldman alleges
that he purchased a "Sarge" car and "has been injured due to his children's
increased exposure to lead and because he purchased a product that was defective
and not fit for its ordinary purpose as a plaything for his children as a result of the
recalls." *Id.* ¶ 20. The Cuff Plaintiffs make the same conclusory allusion to
"exposure to lead." *Id.* ¶¶ 16, 32. None of the Lead Recall Plaintiffs or Cuff

DLI-6195995v1

- 12 -

1   Plaintiffs alleges, however, anything more than this conclusory statement regarding

2   exposure.  None of these Plaintiffs alleges ingestion or absorption of lead, much

3   less that they or any of their children have actually suffered an injury from any

4   recalled toy.  *See id.* ¶¶ 16-32.

## A.    The Magnet Recall Plaintiffs Do Not And Cannot Allege Injury From "Exposure" To Magnets

While the Magnet Recall Plaintiffs allege injury from their children's

"increased exposure to hazardous magnets," *id.* ¶¶ 33-34, the Complaint

affirmatively demonstrates that magnets pose at most potential harm if they are

actually ingested.  *See id.* ¶ 15 ("magnets … if swallowed, present a serious risk").

Here, the Magnet Recall Plaintiffs have not alleged that their children ingested even

a single magnet, much less that their children suffered some ill effect from

swallowing magnets.  *See id.* ¶¶ 33-34.  Thus, these allegations do not amount to a

present, cognizable injury.  *See Feinstein v. Firestone Tire & Rubber Co.*, 535 F.

Supp. 595, 603 (S.D.N.Y. 1982) (holding no cause of action for defect which never

manifests itself); *Verb v. Motorola, Inc.*, 672 N.E.2d 1287, 1295, 284 Ill. App. 3d

460, 472, 220 Ill. Dec. 275, 283 (Ill. Ct. App. 1996) (dismissing claims of potential

safety defects because "plaintiffs' future 'personal injury and damages' claims

constitute conjecture and speculation").

Because the Magnet Recall Plaintiffs have not alleged any injury in fact, their

claims fail as a matter of law and should be dismissed.

## B.    The Lead Recall Plaintiffs And Cuff Plaintiffs Cannot Allege Injury Based On Exposure To Lead

The allegations of "increased exposure to lead" by the Lead Recall Plaintiffs

and the Cuff Plaintiffs likewise fail to state an injury sufficient to support any of

their causes of action.  While the Complaint contains a litany of conclusory

assertions about potential hazards of lead in the abstract (*see* Compl. ¶¶ 45-49),

Plaintiffs do not allege ingestion of lead by anyone, do not allege that any of their

children have actually experienced <u>any</u> lead-related problem or condition, and do

1    not allege that their children have even been tested for – let alone been found to

2    have – elevated blood-lead levels attributable to the toys that were subject to the

3    Lead Recalls.  In other words, the Lead Recall Plaintiffs and the Cuff Plaintiffs do

4    not allege injury.  *See id.* ¶¶ 16-32.

5         At most, the Lead Recall and Cuff Plaintiffs allege "increased exposure" to

6    lead.  But numerous courts have held that the mere exposure to a substance does not

7    constitute an injury.  *See, e.g., Parker v. Wellman*, 230 F. App'x 878, 881-83 (11th

8    Cir. 2007) (holding that exposure to beryllium is not an actionable injury even

9    where plaintiffs alleged subclinical and cellular damage); *Ball v. Joy Tech., Inc.*,

10   958 F.2d 36, 38 (4th Cir. 1992) ("Numerous courts have held that exposure to

11   hazardous substances does not constitute a physical injury."); *Schweitzer v. Consol.*

12   *Rail Corp.*, 758 F.2d 936, 942 (3d Cir. 1985) (holding that "subclinical injury

13   resulting from exposure to asbestos is insufficient to constitute the actual loss or

14   damage to a plaintiff's interest required to sustain a cause of action under generally

15   applicable principles of tort law"); *Houston County Health Care Auth. v. Williams*,

16   961 So.2d 795, 810-11 (Ala. 2006) (holding that "mere exposure to a hazardous

17   substance resulting in no present manifestation of physical injury is not

18   actionable"); *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 688-89, 473 Mich. 63,

19   72-73 (Mich. 2005) (stating that Michigan law "squarely rejects the proposition that

20   mere exposure to a toxic substance and the increased risk of future harm constitutes

21   an 'injury' for tort purposes"); *AlliedSignal, Inc. v. Ott*, 785 N.E.2d 1068, 1075

22   (Ind. 2003) (holding that "mere exposure to (or inhalation of) asbestos fibers" is not

23   an actionable injury).

24        Because they cannot plead an actual injury, these Plaintiffs assert abstract

25   allegations of "harmful risks of possibly exposing" them to lead that might arise in

26   the future.  Compl. ¶ 203.  But, those abstract allegations do not constitute a

27   cognizable injury and are not sufficient to avoid dismissal.  "Courts have been

28   particularly vigilant in requiring allegations of injury or damages in products

1  liability cases." *Briehl*, 172 F.3d at 627 (collecting cases). Plaintiffs cannot create

2  the illusion of an injury in fact by "oscillating between tort and contract law claims"

3  by alleging "product liability claims" of "failure to warn and sale of a defective

4  product" while seeking "contract law damages" in the form of "benefit of the

5  bargain, out of pocket expenditures." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315,

6  320-01 (5th Cir. 2002). Instead, because the replacement toys provide all

7  consumers, including Plaintiffs, with a full and complete remedy in the absence of

8  physical injury, and because Plaintiffs have not alleged any present physical injury,

9  Plaintiffs' claims fail in their entirety and should be dismissed.

10  **C.**  **Plaintiffs Cannot Properly Allege An Injury From The Purchase
          Of Allegedly Defective Toys Because Replacement Toys Are
11        Available**

12        Plaintiffs allege that they have been injured from the purchase of "defective

13  toys not fit for their ordinary purpose" and seek to have the Court order Defendants

14  to pay them the purchase price of those toys. Plaintiffs' attempt to claim injury

15  based on the mere purchase of the toys should be rejected. Plaintiffs have no injury

16  because, pursuant to the Lead Recalls, the Magnet Recalls, and the Cuff

17  Replacement, they could obtain replacement toys with an equal or greater value

18  than the toys they purchased. *See* Appx. I at Exhibits 1-19.[6] Thus, Defendants

19        [6] The Court may consider documents cited in the complaint in ruling on a
     motion to dismiss. *See U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).
20   Moreover, "a court may take judicial notice of 'matters of public record' without
     converting a motion to dismiss into a motion for summary judgment," *Intri-Plex*
21   *Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007), which in this
     case would include the recall announcements. Information available on the
22   websites of governmental agencies is also appropriate for judicial notice because it
     is "capable of accurate and ready determination" and "not subject to reasonable
23   dispute." *In re Amgen Inc. Sec. Litig.*, No. CV 07-2536 PSG (PLAx), 2008 WL
     999058, at *7 (C.D. Cal. Feb. 1, 2008). A court may also take judicial notice of
24   information publicly announced on a party's website, as long as the website's
     authenticity is not in dispute and it is capable of accurate and ready determination.
25   *Swisher v. Collins*, No. CV-06-338-S-BLW, 2008 WL 687305, at *23 n.29 (D.
     Idaho March 18, 2008) (following *Doron Precision Systems, Inc. v. FAAC, Inc.*,
26   423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006)). The fact that the CPSC, including
     in press releases cited by and relied on by Plaintiffs in the Complaint, provides
27   links to the Mattel website at issue, provides further support for taking judicial
     notice of the replacement procedures. *Cf. In re Graphics Processing Units*
28   *Antitrust Litig.*, No. C06-07417 WHA, 2007 WL 3342602, at *3 (N.D. Cal. Nov. 7,
     2007).

DLI-6195995v1

1  have already provided Plaintiffs with a complete remedy for any alleged product

2  defect, and they each have all of the economic value for which they bargained.

3  Plaintiffs have lost nothing. *See, e.g.*, CAL. BUS. & PROF. CODE § 17204 (restricting

4  UCL claims to "any person who has suffered injury in fact and has lost money or

5  property"). Plaintiffs therefore have failed to state any claim that could entitle them

6  to recover the purchase price of the toys.

7  **IV.  PLAINTIFFS' CLAIMS UNDER SECTION 2072 OF THE CPSA FAIL AS A MATTER OF LAW**

8  
9        In Count Five of the Complaint (¶¶ 218-26), Plaintiffs assert a claim under

10  Section 2072(a) of the CPSA. The statute provides:

11          Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer
12          product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly
13          (including willfully) violated any such rule or order . . . .

14  15 U.S.C. § 2072(a). Thus, to assert such a claim, Plaintiffs must allege (1) a

15  compensable injury (2) caused by (3) a knowing violation (4) of a consumer

16  product safety rule issued by the Commission. Neither the Magnet Recall Plaintiffs

17  nor the Cuff Plaintiffs have alleged the violation of an applicable consumer product

18  safety rule. Further, no Plaintiff alleges an injury covered by Section 2072.

19  **A.  The Consumer Product Safety Rule On Which The Magnet Plaintiffs Rely Is Not Applicable On Its Face**

20        As the sole basis for a CPSA claim, the Magnet Recall Plaintiffs allege that

21  Defendants' sale of the magnet toys violated 16 C.F.R. § 1500.18(a)(2) (Sept. 27,

22  1973). Compl. at ¶ 221. The Court need not look beyond the plain language of the

23  regulation to determine the fallacy of this contention. The regulation provides that

24  the following toys are banned:

25          Any toy having **noisemaking components or
26          attachments** capable of being dislodged by the operating
            features of the toy or capable of being deliberately
27          removed by a child, which toy has the potential for
            causing laceration, puncture wound injury, aspiration,
28          ingestion, or other injury.

1    16 C.F.R. § 1500.18(a)(2) (emphasis added). On its face, this regulation only

2    concerns toys that have noisemaking components or attachments.[7] Common sense

3    confirms that the "noisemaking" feature is precisely what gives rise to concern that

4    a child will be drawn to that aspect of the toy and try to remove it, thereby creating

5    the hazard.

6         The Magnet Recall Plaintiffs based their claims on the alleged purchase of

7    Polly Pocket!™ magnet toys. *See* Compl. ¶¶ 33, 34. The magnets in Polly

8    Pocket!™ toys are not (and are not alleged to be) "noisemaking components or

9    attachments"; rather, the magnets are "embedded in the hands and feet of some

10   dolls, and in the plastic clothing, hairpieces and other accessories to help the pieces

11   attach to the doll or to the doll's house." *See* Press Release, CPSC, Additional

12   Reports of Magnets Detaching from Polly Pocket Play Sets Prompts Expanded

13   Recall by Mattel (Aug. 14, 2007), *available at* http://www.cpsc.gov/cpscpub/prerel/

14   prhtml07/07273.html (last visited June 23, 2007), Appendix I, Exhibit 2. Because

15   there is no applicable consumer product safety rule upon which the Magnet Recall

16   Plaintiffs could rely for a claim under Section 2072, they have failed to state a

17   claim under the CPSA and their claims in Count Five must be dismissed.

18   **B.    The Cuff Plaintiffs Cannot Allege A Violation Of Any CPSC**
     **Consumer Product Safety Rule**

19

20        The Cuff Plaintiffs allege that certain toy blood pressure cuffs violated an

21   Illinois standard and, for that reason alone, should have been recalled. Section

22   2072, however, requires a knowing violation of a consumer product safety rule

23   issued by the Commission as a predicate for damages under the statute. 15 U.S.C.

24   § 2072(a); *see also id.* § 2052(a)(2) (defining "consumer product safety rule" as a

25   "standard described in section 2056(a) of this title, or a rule under this chapter").

26   Because Plaintiffs do not and cannot allege that the toy blood pressure cuffs

27

28         [7] In the Complaint, Plaintiffs omitted the modifier "noisemaking" from their
     quotation of the regulation. *See* Compl. ¶ 221.

DLI-6195995v1
- 17 -

1   violated any such CPSC rule, the Cuff Plaintiffs' claims for damages under Section
2   2072 should be dismissed.

3       **C.**    **Plaintiffs Do Not Allege Injury Compensable Under Section 2072**

4       One of the principal purposes of the Consumer Product Safety Act is to
5   "protect the public against unreasonable risks of injury associated with consumer
6   products." 15 U.S.C. § 2051(b)(1). The CPSA defines "risk of injury" as the "risk
7   of death, personal injury, or serious or frequent illness." *Id.* § 2052(a)(3). In
8   furtherance of the CPSA's policy to protect against risks of such injuries, section
9   2072(a) of the Act creates a cause of action for persons who "sustain an injury" by
10  reason of a knowing violation of the CPSA. *Id.* § 2072(a).

11      Consistent with the risks addressed by the CPSA, "[t]he legislative history
12  [of § 2072] provides no basis for concluding that Congress intended that § 2072
13  would provide a federal right of action . . . for purely economic injury." *Sanitoy,*
14  *Inc. v. Shapiro*, 705 F. Supp. 152, 159 (S.D.N.Y. 1989). This holding is consistent
15  with statements by legislators that Congress "authoriz[ed] . . . any person who
16  claims he has sustained personal injury or illness by reason of the failure of a
17  product to comply with the [CPSC] rule" to sue. *See* 118 Cong. Rec. 31,384 (Rep.
18  Jonas); *see also* 118 Cong. Rec. 31,384 (Rep. Eckhardt) (stating that "[t]he burden
19  would be on plaintiff first to show that the victim died or sustained personal
20  injury").

21      Because Plaintiffs do not allege that they suffered a physical injury, *see* Parts
22  III.A. & III.B., *supra*, they have failed to state a claim under 15 U.S.C. § 2072.
23  Count Five of the Complaint should be dismissed as to all Plaintiffs on this basis.

24  **V.**    **PLAINTIFFS' CLAIMS THAT SOUND IN FRAUD SHOULD BE DISMISSED FOR FAILURE TO SATISFY RULE 9(B)**
25
26      While Plaintiffs do not assert a common-law fraud claim, their claims based
    on the California consumer protection statutes are largely fraud-based. Those
27
    claims are subject to the heightened pleading requirements under Rule 9(b), which
28

DLI-6195995v1

Plaintiffs fail to satisfy.  In addition, and independent of Rule 9(b), as a predicate for their fraud allegations, Plaintiffs rely extensively on so-called representations by Defendants that are not actionable.  Under both the CLRA and UCL, those statements must be stripped from the Complaint and disregarded.

### A.   Counts Six Through Nine Are Based On Alleged Fraudulent Conduct

#### 1.   UCL claims (Counts Six & Seven)

Plaintiffs allege that the manufacturer and retailer Defendants violated California's UCL, Business and Professions Code § 17200, by engaging in alleged conduct which Plaintiffs assert to be unfair, fraudulent and unlawful.  As the Complaint makes clear, Plaintiffs' claims of both "unfair" and "fraudulent" conduct are based on identical allegations, all relating to supposed misrepresentations by Defendants about toy safety.  Compl. ¶¶ 228, 234-238, 242, 247-251.[8]  In boilerplate fashion and without supporting facts, Plaintiffs also make conclusory allegations of reliance "on Defendants' representations that the Hazardous Toys were safe for use."  Compl. ¶¶ 236, 250.

#### 2.   CLRA claims (Counts Eight & Nine)

Plaintiffs' claims under California's CLRA are based entirely on alleged fraudulent conduct.  Plaintiffs allege that the manufacturer Defendants "sold and falsely marketed the Hazardous Toys as safe[,] age-appropriate, and quality products, when in fact the Hazardous Toys were laden with lead, lead paint, which is a banned hazardous substance, or dangerous magnets and thus violates the California Consumers Legal Remedies Act."  Compl. ¶ 257; *see also* Compl. ¶ 267 (related to retailers).  Here, again, Plaintiffs make conclusory assertions that they

---

[8] For example, Plaintiffs allege unfair conduct because "Defendants' representations and advertising were likely to deceive the public as to the safety, quality, and age-appropriateness of the Hazardous Toys."  Compl. ¶¶ 228, 242.  Plaintiffs' fraudulent-conduct claims are based on the allegation that "the business acts and practices described above had a tendency and likelihood to deceive persons to whom such conduct was and is targeted by selling, marketing and distributing the Hazardous Toys as safe, quality and age-appropriate products . . . ."  Compl. ¶¶ 235, 248.

1    "were reasonably deceived by Defendants' representations" and that they were

2    damaged "[a]s a direct and proximate result of Defendants' misrepresentations

3    . . . ." Compl. ¶¶ 260-261, 271-272.

4    **B.    FRCP 9(b) Applies To Plaintiffs' Allegations Of Fraudulent
        Conduct And Requires Specificity In Pleading**

5    Plaintiffs' allegations of fraudulent conduct are subject to the heightened

6    pleading requirements of the Federal Rules which require that "[i]n alleging fraud

7    or mistake, a party must state with particularity the circumstances constituting fraud

8    or mistake." FED. R. CIV. P. 9(b). "It is established law, in [the Ninth Circuit] and

9    elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of

10   action." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)

11   (holding that Rule 9(b) applies to plaintiffs' fraud-based allegations under the

12   CLRA and UCL).

13   To satisfy Rule 9(b), a plaintiff must specify "the who, what, when, where

14   and how" of the alleged fraud. *Vess*, 317 F.3d at 1106. "[A] plaintiff must set forth

15   *more* than the neutral facts necessary to identify the transaction. The plaintiff must

16   set forth what is false or misleading about a statement, and why it is false." *Id.*

17   (edits and emphasis in original). "The complaint must specify such facts as the

18   times, dates, places, benefits received, and other details of the alleged fraudulent

19   activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Fraud claims

20   lacking such specificity do not satisfy Rule 9(b). *Glen Holly Entm't, Inc. v.

21   Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094-95 (C.D. Cal. 1999).

22   **C.    Plaintiffs' Pleading Falls Well Short Of Satisfying Rule 9(b)**

23   Contrary to the requirements of Rule 9(b), not one of the nineteen Plaintiffs

24   alleges that he or she specifically read, saw or heard any of Defendants' alleged

25   misrepresentations. Not one of these nineteen Plaintiffs provided the what, when

26   and how of their conclusory fraud claims. Plaintiffs' failure to plead the requisite

27

28

DLI-6195995v1
                                      - 20 -

1    facts precludes them from establishing necessary elements of their fraud-based

2    claims.

3         In the absence of the specificity required by Rule 9(b), no Plaintiff can

4    connect any of the supposed misrepresentations set out in the Complaint (¶¶ 53-83)

5    to any purchase of Mattel or Fisher-Price toys.  For example, Plaintiffs allege that

6    "[a]s displayed on the packaging of Defendants' toys, including the Hazardous

7    Toys, [t]he Manufacturer Defendants represent that the toys meet the standards set

8    forth by the ASTM."  Compl. ¶¶ 82-83.  Yet nowhere in the Complaint does any

9    Plaintiff allege when or even if she saw or read this (or any other) alleged

10   representation on the packaging of any toys.  No Plaintiff alleges how this

11   representation is false or fraudulent.  No Plaintiff alleges an actual injury connected

12   to the alleged statement.  The same is true for all of the Plaintiffs and for all of the

13   alleged representations.  This lack of specificity is fatal to Plaintiffs' claims.  *See*

14   *Vess*, 317 F.3d at 1103-04.

15        The failings in Plaintiffs' fraud allegations are especially evident with respect

16   to any claimed reliance on alleged misrepresentations.  *See Buckland v. Threshold*

17   *Enters., Ltd.*, 155 Cal. App. 4th 798, 810, 66 Cal. Rptr. 3d 543, 551 (Cal. Ct. App.

18   2007) ("[P]laintiffs asserting CLRA claims sounding in fraud must establish that

19   they actually relied on the relevant representations or omissions."); *O'Brien v.*

20   *Camisasca Auto. Mfg., Inc.*, 161 Cal. App. 4th 388, 400, 73 Cal. Rptr. 3d 911, 921

21   (Cal. Ct. App.  2008) ("For a plaintiff to suffer 'injury in fact . . . as a result of' the

22   alleged unfair business practice or false advertising . . . necessarily the plaintiff

23   must have actually *relied* on the false advertising or unfair business practice, and *as*

24   *a result*, suffered injury therefrom.") (emphasis in original); *Hall v. Time Inc.*, 158

25   Cal. App. 4th 847, 859, 70 Cal. Rptr. 3d 466, 474 (Cal. App. 2008) (holding that

26   under the UCL, a plaintiff "must plead he or she suffered an injury in fact caused

27   by, or in justifiable reliance on, the alleged acts of unfair competition").  Dismissal

28   of UCL and CLRA claims is appropriate where "[p]laintiff plead[ed] reliance in a

conclusory manner and merely regurgitate[d] the statements that allegedly induced reliance." *Mazur v. eBay Inc.*, No. C 07-03967 MHP, 2008 WL 618988, at *13 (N.D. Cal. March 4, 2008); *see also Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 996 (N.D. Cal.) (holding that allegation that plaintiffs' "injuries were directly and proximately caused by [defendant's] conduct" was a mere conclusion that "need not be assumed to be true"); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (dismissing plaintiffs' UCL claims because "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction *as a result* of those advertisements") (emphasis in original).

Accordingly, Plaintiffs' fraud-based claims under the UCL and CLRA should be dismissed because they do not satisfy Rule 9(b).

### D.     Plaintiffs' UCL And CLRA Claims Are Predicated On Alleged "Representations" Which Are Not Actionable As Fraud

Independent of Plaintiffs' failure to satisfy Rule 9(b), most if not all of the "representations" alleged by Plaintiffs cannot support UCL and CLRA claims because they are general corporate statements of goals or policies, or principles of corporate governance that are not actionable as a matter of law. Indeed, generalized statements of quality or safety do not constitute actionable misrepresentations. *See Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). "Representations of opinion are ordinarily not actionable for fraud because they contain judgments of quality, value, authenticity, or other matters of judgment. Sales talk and advertising slogans are examples of such nonactionable statements. They are 'loose general statements made by sellers in commending their wares . . . [and upon which] no reasonable man would rely.'" *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1154 (S.D. Cal. 2001) (citations omitted); *see also Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F. Supp. 2d 514, 530 (S.D.N.Y. 2001) (vigorous promotion of stock of chickens as having "very

1  high productive traits" not actionable without concrete representation).  These

2  principles apply with full force to statements regarding product quality and safety.

3  "The general representation that a product 'offered unprecedented safety' is a

4  statement of opinion" and therefore not actionable. *Hoffman v. A. B. Chance Co.*,

5  339 F. Supp. 1385, 1388 (M.D. Pa. 1972).

6  **1.  The alleged statements by Mattel**

7  Plaintiffs' fraud allegations are in a section of the Complaint labeled

8  "Defendants' Misrepresentations of the Hazardous Toys."  Compl. at 19.  But

9  Plaintiffs' allegations in this section of the Complaint do not refer to any of the toys

10  they purchased.  There are no allegations relating to advertising of those products,

11  and there are no alleged specific statements supposedly made in connection with

12  sale or promotion of any of those toys.

13  Instead, Plaintiffs' allegations of fraud by Mattel are virtually all based on

14  alleged statements taken out of context from the Corporate Governance Section of

15  Mattel's website.  Beyond the total absence of any allegation that any Plaintiff

16  actually viewed Mattel's website – not to mention clicked through to the Corporate

17  Governance section of it – before deciding to buy one of the Lead or Magnet Recall

18  toys, the supposed misrepresentations are nothing more than broad-based

19  statements of corporate principles and policies that are not actionable.  Examples

20  include:

21  • A statement from the Corporate Governance Section of Mattel's
22  website:  "At Mattel, we are serious about safety and quality and are
   very concerned about how consumers use our products.  Our product
23  safety policies are based on our core value of protecting our consumers
   from unforeseen harm.  We set global standards on health and safety
24  exposures at or more stringent than legal limits."  Compl. ¶ 54.

25  • A statement from Mattel's Code of Conduct:  "Mattel's reputation for
   product quality and safety is among its most valuable assets, and our
26  commitment to product quality and safety is essential.  Children's
   health, safety and well-being are our primary concern.  We could
27  damage our consumers' trust if we sell products that do not meet our
   standards."  Compl. ¶ 55.

28

DLI-6195995v1

- 23 -

- • A statement from Mattel's Global Citizenship Report ("GCR"): "Our research indicates that consumers associate Mattel with safe, high-quality products . . . . At Mattel, the loyalty of consumers will never be taken for granted as we continually strive to earn their trust by delivering on our promise of quality, safety and innovation and ensuring that our toys are manufactured responsibly and ethically." Compl. ¶ 56.

- • A statement from a Mattel letter to Shareholders in the GCR: "Mattel's strength is our company culture, which for generations has been focused on creating innovative, safe and high quality toys that inspire children to play, learn and have fun." Compl. ¶ 60.

None of these statements is connected to the toys at issue in this case. They reflect Mattel's overall corporate governance philosophies and objectives, not specific statements of fact or guarantees with respect to particular products. *See Smith*, 160 F. Supp. 2d at 1153-54; *Nasik Breeding*, 165 F. Supp. 2d at 530.

Moreover, Plaintiffs fail to allege how any of these statements could be said to be false or misleading. *See Vess*, 317 F.3d at 1106. Indeed, not one of the statements lifted from Mattel's website is contradicted by the fact that Mattel voluntarily recalled products because of unintentional manufacturing errors or the retroactive application of a new design standard. In point of fact, Mattel's voluntary recalls are entirely consistent with its corporate commitment to safety.

## 2.    The alleged statements by Fisher-Price

The Complaint also contains two statements attributed to Fisher-Price that are nothing more than general, non-actionable statements of corporate philosophy or promotion:

- • "As the world's most trusted name in quality toys, Fisher-Price has been enriching childhood for generations. From sensory-stimulating infant toys, to preschool toys that engage active imaginations, to baby gear that blends safety, comfort and convenience, Fisher-Price products help partners get their families off to the best possible start." Compl. ¶ 61.

- • "In keeping with our long-standing tradition of innovation, quality, durability, safety and good value, we offer products and services consumers can trust to improve their family's lives." Compl. ¶ 62.

As with the statements attributed to Mattel, these statements on their face cannot support a claim for fraud because they do not contain concrete representations

1    regarding any of the recalled toys. *See Nasik Breeding*, 165 F. Supp. 2d at 530;

2    *Hoffman*, 339 F. Supp. at 1388.

3    ### 3.    The alleged statements by Target

4    The lone statement attributed to Target is also a general statement regarding

5    commitment to safety that is not actionable: "Guest safety has and continues to be

6    a top priority for Target. We are working closely with our vendors, industry leaders

7    and the Consumer Product Safety Commission (CPSC) on product safety issues and

8    we can assure you that we are taking steps to ensure we have the best products – in

9    terms of safety and quality – on our store shelves." Compl. ¶ 73. Once again, of

10   course, Plaintiffs fail to identify what is fraudulent about this statement, *see Vess*,

11   317 F.3d at 1106, and it falls well short of the type of concrete statement that could

12   form the basis of Plaintiffs' fraud claims. *See Nasik Breeding*, 165 F. Supp. 2d at

13   530.

14   ### 4.    The alleged statements by Toys "R" Us

15   Similarly, the allegations in the Complaint regarding a "question and answer"

16   attributed to the Toys "R" Us website are only generalized statements that are not

17   actionable:

18   **Are all the toys carried by Toys "R" Us tested for
19   hazards and what are they tested for?** We have a very
     strict safety assurance program for all the products we
20   carry. We require that any products we purchase
     (including from outside the United States) comply with all
21   applicable government and industry laws, codes and
     requirements. We have mandated that our manufacturers
22   test every toy shipment to Toys "R" Us before it leaves
     the country of origin for a variety of potential safety
23   concerns including lead, small parts, sharp edges,
     flammability and other mechanical hazards.

24   **How can you ensure the toys in your stores are safe for
     customers to purchase?** As the world's largest specialty
25   toy retailer, we know that nothing is more important than
     the safety of children. Toys "R" Us safety standards
26   require that our products meet or exceed federally
     mandated and industry-accepted standards.

27

28

DLI-6195995v1

1    Compl. ¶ 74. These statements are not alleged to be false, and they are the same

2    types of general statements that are not actionable. *See Nasik Breeding*, 165 F.

3    Supp. 2d at 529-30 (neither statement true at the time nor subsequent promotional

4    statements without concrete representations were actionable).

5               **5.    The alleged statements by KB Toys**

6         The Complaint also includes certain "on-line representations" attributed to

7    KB Toys:

8              eToys Direct, Inc., which owns and operates eToys.com
               and operates KBtoys.com, is committed to the safety of
9              all children. The magnitude of the recent toy recalls
               concerns all of us, as parents and as members of the toy
10             industry. eToys works closely with manufacturers to
               ensure the swift and thorough retrieval of recalled
11             products purchased through our web sites. We coordinate
               with both the manufacturer and the U.S. Consumer
12             Product Safety Commission when any toy recall is issued.
               Our immediate priority when a toy recall is issued is your
13             child's safety.

14   Compl. ¶ 76. These statements regarding KB Toys' "commitment" and

15   cooperation with recalls are obviously general in nature and cannot be actionable.

16   *See Hoffman*, 339 F. Supp. at 1388. Moreover, Plaintiffs again fail to identify what

17   is fraudulent about these statements, an omission that is fatal in light of the fact that

18   the statements on their face occurred *after* "the recent toy recalls." Indeed, the

19   "three-step process of identification, containment and customer communication"

20   quoted at length in the Complaint addresses KB Toys' process for responding to

21   product recalls and cannot, therefore, form the basis of Plaintiffs' fraud claims with

22   respect to their alleged purchase of particular products. Comp. ¶ 76.

23              **6.    The absence of allegations regarding Kmart**

24        Plaintiffs do not allege a single specific representation by Kmart, and the

25   fraud-based claims against Kmart should be dismissed.

26

27

28

DLI-6195995v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 7.    Plaintiffs' fraud-based claims should be stripped from the Complaint

The non-actionable statements cited by Plaintiffs in the Complaint preclude reliance by consumers, and accordingly, cannot form the basis of Plaintiffs' fraud allegations.  As a result, Plaintiffs' fraud-based allegations in Counts Six through Nine should be stripped from the Complaint, and the Counts should be dismissed.  *See Vess*, 317 F.3d at 1105 (holding that insufficient fraud allegations must be "stripped" from the complaint and thus cannot support a UCL or CLRA claim).

## VI.    PLAINTIFFS HAVE FAILED TO STATE A NEGLIGENCE CLAIM AGAINST THE RETAILERS

In Count Three, Plaintiffs assert a negligence claim against all Defendants. With respect to the retailer Defendants, Plaintiffs' claim rests upon the assertion that the retailers had a duty to ensure that the Mattel and Fisher-Price toys did not contain lead in excess of applicable standards or magnets that could become loose and a duty to warn of any such risks.  Compl. ¶ 201.  Plaintiffs have failed to allege facts that would permit the Court to impose such duties on these retailers. Accordingly, Plaintiffs' negligence claim against the retailer Defendants must be dismissed.

To establish that the retailers owed a duty, Plaintiffs had to allege facts to establish that those Defendants knew or had reason to know of the alleged latent defects.  *See* RESTATEMENT (SECOND) OF TORTS § 402; *Roberts v. Richland Mfg. Co.*, 260 F. Supp. 274, 277 (W.D. Mich. 1966); *cf.* Compl. ¶ 211 (alleging that the toys contained "non-obvious" defects).  Plaintiffs have failed to do so and instead rely on conclusory allegations of knowledge that need not be taken as true for purposes of this motion.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  The Complaint is silent with respect to any facts that would show that the retailers knew or had reason to know of the circumstances leading to the Lead Recalls, the Magnet Recalls, or the Cuff Replacement.  Instead, Plaintiffs allege that the retailers and others had previously recalled *other* products

DLI-6195995v1

- 27 -

1  imported from China.  *See* Compl. ¶ 88.  Those allegations do not provide facts to

2  support a duty to inspect or warn with respect to Mattel's and Fisher-Price's toys

3  and would, instead, require the Court to impose a blanket duty on all retailers to

4  inspect and discover alleged latent defects in all goods (or even all toys) imported

5  from China.  Plaintiffs cannot justify such a result from the few allegations they

6  have plead.

7        Because no duty on the part of the retailers to inspect or warn regarding the

8  Mattel and Fisher-Price toys existed as a matter of law, Plaintiffs' negligence claim

9  must be dismissed.  *See First Interstate Bank of Arizona, N.A. v. Murphy, Weir &*

10 *Butler*, 210 F.3d 983, 986-87 (9th Cir. 2000) (noting that the existence of a duty is a

11 question of law for the court).

12 **VII.  PLAINTIFFS WHO DO NOT RESIDE IN CALIFORNIA FAIL TO STATE A CLAIM AGAINST FISHER-PRICE OR MATTEL UNDER**

13 **CALIFORNIA'S UNFAIR COMPETITION LAW OR CONSUMERS LEGAL REMEDIES ACT**

14

15       Fourteen of the Plaintiffs allege that they are residents of states other than

   California.[9]  Those Plaintiffs make no allegations that any aspect of their purchase
16
   of Mattel or Fisher-Price toys had any connection to California.  Nonetheless, those
17
   Plaintiffs abandon the consumer protection laws of their home states – asserted by
18
   many of them in their original complaints filed outside California – and seek to
19
   bring themselves under the umbrella of California's Unfair Competition Law
20
   ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.* (Count Six) and the
21
   Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750, *et seq.*
22
   (Count Eight).  Plaintiffs have no basis for seeking to expand the reach of the
23
   California statutes under the facts of this case, and the claims of the non-California
24
   residents under these California statutes should be dismissed.
25

26       [9] The following Plaintiffs allege that they are residents of States other than California:  Allen (Florida); Chow (Pennsylvania); DiGiacinto (District of Columbia); Entsminger (North Carolina); Goldman (Florida); Hughey (South

27 Carolina); Luttenberger (Florida); Massengill (South Carolina); Mayhew (Alabama); Monroe (Pennsylvania); Reisinger (Pennsylvania); Sarjent (Indiana);

28 Shoukry (Florida); and White (Michigan).  Compl. ¶¶ 16-34.

DLI-6195995v1

1    In order to apply California law in a constitutional manner to the claims of

2  the non-resident Plaintiffs, California "must have a 'significant contact or

3  significant aggregation of contacts' to the claims asserted by each [Plaintiff],

4  contacts 'creating state interests,' in order to ensure that the choice of [forum] law

5  is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22,

6  105 S. Ct. 2965, 2979, 86 L. Ed. 2d 628 (1985) (quoting *Allstate Ins. Co. v. Hague*,

7  449 U.S. 302, 312-13, 101 S. Ct. 633, 639-40, 66 L. Ed. 2d 521 (1981)); *Soo Line*

8  *R.R. Co. v. Overton*, 992 F.2d 640, 644 (7th Cir. 1993). The Supreme Court re-

9  affirmed these principles in *Sun Oil Co. v. Wortman*, 486 U.S. 717, 108 S. Ct. 2117,

10  100 L. Ed. 2d 743 (1988), when it held that a state could properly apply its own

11  statute of limitations to claims because, unlike the substantive law at issue in *Shutts*,

12  limitations was a procedural matter on which a state's legislature was "competent to

13  legislate." 486 U.S. at 722-23, 729-30 & n.3. As the Supreme Court later stated in

14  *BMW v. Gore*, "by attempting to alter BMW's nationwide policy, Alabama would

15  be infringing on the policy choices of other States. To avoid such encroachment,

16  the economic penalties that a State such as Alabama inflicts on those who

17  transgress its laws . . . must be supported by the State's interest in protecting its

18  own consumers and its own economy." 517 U.S. 559, 572-73, 116 S. Ct. 1589,

19  1598, 134 L. Ed. 2d 809 (1996) (rejecting consideration of conduct lawful in other

20  states as part of punitive damage award).

21    Consistent with these principles, "California law embodies a presumption

22  against the extraterritorial application of its statutes." *Meridian Project Sys., Inc. v.*

23  *Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005). Accordingly,

24  courts have rejected application of § 17200 and § 1750 to claims by non-California

25  residents lacking a sufficient nexus to California. *See Meridian Project*, 404

26  F. Supp. 2d at 1225-26; *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th

27  214, 217, 222-24, 85 Cal. Rptr. 2d 18, 20, 23-24 (Cal. Ct. App. 1999) (rejecting

28  UCL claims by non-California residents against defendant incorporated in

DLI-6195995v1

California with its principal place of business in Iowa where alleged conduct occurred outside California); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1087, 1096 (N.D. Cal. 2006) (holding that only California residents could enforce the requirements of the CLRA against defendant corporations with principal places of business in Connecticut and New York); *Churchill Village, L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) (finding that "section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California" and recognizing "significant due process problems").

In their § 17200 and § 1750 claims, Plaintiffs make general and conclusory allegations that Fisher-Price and Mattel engaged in "unlawful" practices by selling toys alleged to be in violation of federal and state statutes, and "unfair, deceptive, untrue or misleading advertising" and misrepresentations, including on the packaging for the toys. Compl. ¶¶ 228-29, 257-58. But the only fact any Plaintiff ties to his or her specific circumstance is the alleged toy purchase – each in his or her state of residence. *See id.* ¶¶ 16-34. With respect to Plaintiff Sarjent, for example, if there was an "unlawful" act by Fisher-Price or Mattel, that act occurred if at all in connection with the purchase of toys by Sarjent in Indiana. *Id.* ¶ 29. But Sarjent makes no allegations that there was any allegedly misleading advertising or other misrepresentation connected to his purchase of toys – certainly no allegation relating to any such statement that took place in California. *Id.*

Plaintiffs concede that Fisher-Price has its principal place of business in New York. *Id.* ¶¶ 36, 232. The only allegations in the Complaint seeking to tie Fisher-Price to California are that (i) its activities "related to the recalls and Hazardous Toys have been coordinated through Mattel's offices in California;" (ii) "many of its executives including its Vice President of Consumer Products is [sic] located in California"; and (iii) the allegedly Hazardous Toys were shipped from China to ports in the United States, including California. *Id.* ¶¶ 160-164; 232. These so-

called ties to California are both conclusory and irrelevant; they are not the alleged

unlawful acts or deceptive misrepresentations underlying Plaintiffs' § 17200 or

§ 1750 claims.  The only different fact with respect to Mattel is that it is

headquartered in California.  But again, the Plaintiffs who purchased their toys

from retailers outside California cannot claim that the allegedly unlawful sales of or

allegedly false advertising for those products are connected to California in any

way that would permit the constitutional application of California's statutes to the

out-of-state transactions.[10]

For all of these reasons, the § 17200 and § 1750 claims asserted by Plaintiffs

who are not residents of California and do not allege that they purchased products

in California should be dismissed.

## VIII.  PLAINTIFFS' CLRA DAMAGES CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO PROVIDE PRE-SUIT NOTICE

The CLRA provides that, to maintain a claim for damages, claimants "shall"

provide notification of the CLRA violations at issue to the prospective defendants

at least thirty (30) days prior to the commencement of the action.  CAL. CIV. CODE

§ 1782(a).  Failure to do so requires dismissal of the CLRA claims.  *Id.*  Notice

must be sent prior to the commencement of the action, even if the Plaintiffs seek to

delay assertion of a damages claim until a subsequent amendment.  *Id.* § 1782(d).

Plaintiffs failed to comply with this statutory requirement and their claims for

damages under the CLRA should be dismissed.

In *Utility Consumers' Action Network v. Sprint Solutions, Inc.*, No. C07-cv-

2231-W (RJB), 2008 WL 1946859, at *1 (S.D. Cal. Apr. 25, 2008), the plaintiffs

allegedly provided notice of their CLRA claims on November 20, 2007, one day

before filing the original complaint.  *Id.* at *5.  In the original complaint, the

---

[10] Plaintiffs make general reference to statements of corporate policy on
Mattel's website, but none of the out-of-state Plaintiffs (or the in-state Plaintiffs for
that matter) ties those statements to their specific purchases of Mattel toys.
Moreover, those statements on their face are neither fraudulent nor otherwise
actionable.  *See* Part V.D., *supra*.

DLI-6195995v1

plaintiffs alleged that they were giving notice and that, if the defendant failed to
provide adequate relief in thirty days, plaintiffs would amend to seek damages. *Id.*
Indeed, the plaintiffs filed an amended complaint seeking such damages on
January 2, 2008. *Id.* at \*1. The Court dismissed the plaintiffs' CLRA claims,
holding:

> The CLRA requires a prefiling notice before a plaintiff
> files a civil complaint seeking damages under the CLRA.
> The notice is required so that the parties can, in good
> faith, attempt to resolve the issues by settlement, thus
> obviating the need to pursue claims by means of a civil
> action. \* \* \* The prefiling notice serves to *avoid*
> litigation, not to put additional pressure on a defendant
> during the course of litigation. Threatening to sue for
> damages in a complaint, and then doing so in an amended
> complaint, does not serve the purposes of prefiling notice.

*Id.* at \*6 (emphasis in original). *See also Laster v. T-Mobile USA, Inc.*, 407 F.
Supp. 2d 1181, 1195-96 (S.D. Cal. 2005) (dismissing CLRA damages claims with
prejudice, and stating that "[s]trict adherence to the statute's notice provision is
required to accomplish the Act's goals of expeditious remediation before
litigation"), *aff'd*, 252 F. App'x 777 (9th Cir. 2007); *Von Grabe v. Sprint PCS*, 312
F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) (dismissing premature CLRA damages
claims with prejudice).

   Here, Plaintiffs failed to provide the requisite notice to Defendants before
filing suit, instead, as in *Utility Consumers*, initiating litigation threatening the
subsequent assertion of damages claims.

- Plaintiff Rusterholtz filed a complaint on September 27, 2007, that
  included a CLRA claim and stated that Plaintiff "will comply with the
  preliminary notice provision of California Civil Code § 1782(a) and
  will amend this complaint in accordance with California Civil Code
  1782(d) as appropriate." Rusterholtz subsequently provided a CLRA
  notice letter to Mattel dated October 1, 2007. *See* Appendix I, Exhibit
  20.[11]

- Plaintiff Luttenberger asserted CLRA damages claims in his complaint
  filed on August 23, 2007. Luttenberger provided a CLRA notice letter
  to Mattel dated October 18, 2007. *See* Appendix I, Exhibit 21.

---

   [11] This Court may consider Plaintiffs' CLRA notice letters for purposes of
this motion to dismiss. *See Util. Consumers*, 2008 WL 1946859, at \*3.

- • Plaintiff Mayhew filed a complaint on August 7, 2007, but did not include CLRA claims at that time. Mayhew provided a CLRA notice letter dated November 26, 2007. *See* Appendix I, Exhibit 22.

- • Plaintiffs in this MDL proceeding filed their Consolidated Amended Class Action Complaint on March 31, 2008, which included a CLRA damages claim. Counsel for Plaintiffs provided a CLRA notice letter to Mattel (identifying Fisher-Price as a wholly-owned subsidiary) purporting to cover these claims on May 13, 2008.[12] *See* Appendix I, Exhibit 23. Counsel for Plaintiffs also provided notice letters to Toys "R" Us and Sears Holding Corporation (presumably in an attempt to provide notice to Kmart) on April 1, 2008. *See* Appendix I, Exhibits 24-25.

- • Target has never received a CLRA notice letter.

In each of these instances, Plaintiffs commenced litigation and gave notice later. *See Util. Consumers*, 2008 WL 1946859, at *6. Accordingly, the notices are legally insufficient, and Plaintiffs' CLRA damages claims should be dismissed with prejudice.

## IX.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL

Count Thirteen of the Complaint alleges that Defendants have been unjustly enriched at Plaintiffs' expense. *See* Compl. ¶¶ 297-299. Plaintiffs' unjust enrichment claims fail as a matter of law because they ignore the recall programs put in place by Mattel and Fisher-Price.

The law of every state potentially at issue with respect to the Named Plaintiffs' claims, other than California, which is addressed separately below, is clear that, in order to bring a cause of action for unjust enrichment, a plaintiff must show that the defendant has been given and <u>retained</u> a benefit to which it is not entitled. *See, e.g., Scrushy v. Tucker*, 955 So. 2d 988, 1011 (Ala. 2006) ("To prevail on a claim of unjust enrichment, the plaintiff must show that the defendant **holds money** which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.") (emphasis added, internal citations omitted); *Jordan Keys & Jessamy, LLP*

---

[12] The May 13, 2008 notice letter did not include any claims or demands concerning toys with magnets. Thus, the notice was substantively deficient with respect to the Magnet Recall Plaintiffs' CLRA claims.

1    *v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005) ("Unjust

2    enrichment occurs when a person **retains a benefit** (usually money) which in

3    justice and equity belongs to another.") (emphasis added).[13]  According to the

4    Complaint, the "benefit" Plaintiffs have allegedly conferred on Defendants is the

5    price paid by Plaintiffs for the subsequently-recalled toys.  *See* Compl. ¶ 299

6    ("Plaintiffs and members of the Class conferred upon Defendants . . . payment for

7    such toys . . . .").  Plaintiffs also allege that Defendants "retained" these benefits.

8    *Id.* ("Defendants accepted or retained the non-gratuitous benefits conferred by

9    Plaintiffs and members of the Class . . . .").

10          Plaintiffs ignore, however, the fact that the recall programs provide Plaintiffs

11   with replacement toys so that they receive products equal or greater in value to the

12   toys Plaintiffs originally purchased.  *See, e.g.,* CPSC press release for the August 2,

13   2007 recall, cited by Plaintiffs in their Complaint ("Consumers will need to return

14   _____

15          [13] *See also Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331, 32 Fla.
     L. Weekly D1299 (Fla. Dist. Ct.  App. 2007) ("The elements of a cause of action
16   for a quasi contract are that: (1) the plaintiff has conferred a benefit on the
     defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has
17   **accepted or retained the benefit** conferred[;] and (4) the circumstances are such
     that it would be inequitable for the defendant to retain the benefit without paying
18   fair value for it.") (emphasis added); *Fowler v. Perry*, 830 N.E.2d 97, 103 (Ind. Ct.
     App. 2005) ("To prevail on a claim for unjust enrichment, a plaintiff must establish
19   that a measurable benefit has been conferred on the defendant under such
     circumstances that the defendant's retention of the benefit without payment would
20   be unjust."); *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663, 437 Mich. 521,
     546 (Mich. 1991) ("The essential elements of an unjust enrichment claim are: '(1)
21   receipt of a benefit by the defendant from the plaintiff and (2) which benefit it is
     inequitable that the defendant retain.") (internal citations omitted); *Booe v.*
22   *Shadrick*, 369 S.E.2d 554, 556, 322 N.C. 567, 570 (N.C. 1988) ("In order to
     establish a claim for unjust enrichment, a party must have conferred a benefit on the
23   other party."); *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328, 447 Pa. Super. 94,
     97 (Pa. Super. Ct. 1995) ("We have described the elements of unjust enrichment as
24   'benefits conferred on defendant by plaintiff, appreciation of such benefits by
     defendant, and acceptance and **retention of such benefits** under such
25   circumstances that it would be inequitable for defendant to retain the benefit
     without payment of value.'") (emphasis added) (internal citations omitted); *OHG of*
26   *Lake City, Inc. v. McCutcheon*, 600 S.E.2d 105, 108, 360 S.C. 196, 202-03 (S.C. Ct.
     App. 2004) ("To prevail on [unjust enrichment], a plaintiff must establish the
27   following three elements: (1) a benefit conferred by plaintiff upon the defendant;
     (2) realization of that benefit by the defendant; and (3) retention of the benefit by
28   the defendant under circumstances that make it inequitable for her to retain it
     without paying its value.") (internal citations omitted).

1   the product and will receive a voucher for a replacement toy of the consumer's

2   choice (up to the value of the returned product)."); s*ee also* Discussion of Recalls in

3   Plaintiffs' Allegations section, pp. 2-5, *supra.* As a consequence, no Defendant,

4   whether manufacturer or retailer, has unjustly retained any benefit. "When a

5   defendant has given adequate consideration to someone for the benefit conferred, a

6   claim of unjust enrichment fails." *Am. Safety Ins. Serv.,* 959 So. 2d at 331-32

7   (internal citations omitted). That is precisely the situation here. As an equitable

8   claim, unjust enrichment requires "retention by the defendant of the benefit under

9   conditions that make it unjust for him to retain it **without paying its value**." *Pitts*

10  *v. Jackson Nat. Life Ins. Co.,* 574 S.E.2d 502, 512, 352 S.C. 319, 339 (S.C. Ct. App.

11  2002) (internal citations omitted; emphasis added). Because the recall programs

12  provide the value to Plaintiffs through the replacement toys, they have failed to

13  state an unjust enrichment claim.

14      The unjust enrichment claims of the Plaintiffs residing in California

15  (Plaintiffs Harrington, Underhill, Dunsmore, Jimenez/Perez, Rusterholtz, and

16  Probst) should be dismissed for the independent reason that California does not

17  recognize a separate cause of action for unjust enrichment. *See, e.g., McKell v.*

18  *Wash. Mut.*, 142 Cal. App. 4th 1457, 1490, 49 Cal. Rptr. 3d 227, 254 (Cal. Ct. App.

19  2006) ("There is no cause of action for unjust enrichment. Rather, unjust

20  enrichment is a basis for obtaining restitution based on quasi-contract or imposition

21  of a constructive trust.") (internal citations omitted); *Gonzales Commc'ns, Inc. v.*

22  *Titan Wireless, Inc.*, No. 04cv147 WQH (WMc), 2007 WL 1994057, at *2 (S.D.

23  Cal. Apr. 18, 2007) ("Under California law, '[u]njust enrichment is not a cause of

24  action . . . or even a remedy, but rather a general principle, underlying various legal

25  doctrines and remedies. It is synonymous with restitution.'") (citation omitted). To

26  the extent the unjust enrichment count could be read simply as a claim for

27  restitution under California law, such a claim likewise fails because, as set out

28  above, Defendants have not unjustly retained any benefit. *See, e.g., McBride v.*

DLI-6195995v1

1  *Boughton*, 123 Cal. App. 4th 379, 389, 20 Cal. Rptr. 3d 115, 122 (Cal. Ct. App.

2  2004) ("Under the law of restitution, '[a]n individual is required to make restitution

3  if he or she is unjustly enriched at the expense of another. * * *  However, [t]he fact

4  that one person benefits another is not, by itself, sufficient to require restitution.

5  The person receiving the benefit is required to make restitution only if the

6  circumstances are such that, as between the two individuals, it is *unjust* for the

7  person to retain it.'") (citations omitted; emphasis in original).

8         Because Defendants have not retained any benefit without providing value to

9  Plaintiffs, the unjust enrichment claims fail as a matter of law.

10                               **CONCLUSION**

11        Plaintiffs were obligated to plead "more than labels and conclusions, and a

12  formulaic recitation of the elements of a cause of action," providing "enough facts

13  to state a claim to relief that is plausible on its face."  *Twombly*, 127 S. Ct. at 1964-

14  65, 1974.  Plaintiffs have wholly failed to do so here.  As a result, Defendants

15  request that the Court enter an order as follows:

16  •  Dismissing Plaintiffs' claims seeking to compel the refund of the
   purchase price for their toys as preempted by the express language of
17  the CPSA giving the recalling company the right to choose the recall
   remedy;
18
19  •  Dismissing all of Plaintiffs' claims for failure to allege a cognizable
   injury;
20  •  Dismissing the claims brought under 15 U.S.C. § 2072 because the
   Magnet Recall and Cuff Plaintiffs cannot point to a CPSC rule
21  violation and because no Plaintiff asserts injury of the type
   compensable under that section;
22
23  •  Stripping the fraud-based claims from Plaintiffs' claims under the
   UCL and dismissing those claims and the entirety of their CLRA claim
24  for failing to comply with Rule 9(b) and failing to allege actionable
   representations;
25  •  Dismissing the UCL and CLRA claims against Mattel and Fisher-Price
   brought by Plaintiffs who are not California residents;
26
27  •  Dismissing Plaintiffs' negligence claims against the retailer
   Defendants for absence of a duty;
28

DLI-6195995v1                          - 36 -

1

- • Dismissing Plaintiffs' damages claims under the CLRA for failure to provide sufficient notice; and

2

3

- • Dismissing the unjust enrichment claims against all Defendants because none of the them have retained a benefit for which Plaintiffs did not receive consideration.

4

Plaintiffs have now had three opportunities, and in some cases four, to plead

5

cognizable claims, and they have failed to do so.  Their claims should be dismissed

6

with prejudice.

7

Dated:      June 24, 2008                    JONES DAY

8

9

                                              By:    s/Rick L. Shackelford

10
                                                     Elwood Lui
11                                                   Rick L. Shackelford
                                                     555 South Flower Street, 50th FL
12                                                   Los Angeles, CA   90071
                                                     Telephone:   (213) 489-3939
13                                                   Facsimile:    (213) 243-2539

14                                                   Thomas E. Fennell
                                                     Michael Rice
15                                                   JONES DAY
                                                     2727 North Harwood Street
16                                                   Dallas, TX   75201
                                                     Telephone:   (214) 220-3939
17                                                   Facsimile:    (214) 969-5100

18                                                   Hugh R. Whiting
                                                     JONES DAY
19                                                   717 Texas, Suite 3300
                                                     Houston, TX   77002
20                                                   Telephone:   (832) 239-3939
                                                     Facsimile:    (832) 239-3600

21
                                                     Attorneys for Defendants
22                                                   MATTEL, INC., FISHER-PRICE,
                                                     INC., TARGET CORPORATION,
23                                                   TOYS "R" US, INC., KB TOYS, INC.,
                                                     AND KMART CORPORATION

24

25

26

27

28