1  Robert H. Bunzel, State Bar No. 99395
2  Michael D. Abraham, State Bar No. 125633
   Brian P. Villarreal, State Bar No. 234690
3  Duyen T. Nguyen, State Bar No. 225368
   BARTKO, ZANKEL, TARRANT & MILLER
4  A Professional Corporation
   900 Front Street, Suite 300
5  San Francisco, California 94111
   Telephone: (415) 956-1900
6  Facsimile: (415) 956-1152

7  Attorneys for Defendant
   WAL-MART STORES, INC.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11

12  In re MATTEL, INC., TOY LEAD          )  No. 2:07-ml-01897-DSF-AJW
13  PAINT PRODUCTS LIABILITY              )
    LITIGATION,                           )
14                                        )  **DEFENDANT WAL-MART**
                                          )  **STORES, INC.'S MEMORANDUM**
15                                        )  **OF POINTS AND AUTHORITIES**
                                          )  **IN SUPPORT OF ITS MOTION TO**
16                                        )  **DISMISS PLAINTIFFS' SECOND**
                                          )  **CONSOLIDATED AMENDED**
17                                        )  **COMPLAINT**
                                          )
18                                        )  Hearing Date:   September 8, 2008
                                          )  Time:           1:30 p.m.
19                                        )  Courtroom:      840
                                          )  Judge:          Hon. Dale S. Fischer
20  _____ )  Trial Date:     None Set
21

22

23

24

25

26

27

28  1698.031/372815.4

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Hammer, Inc. A Professional Corporation
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................1

II.    WAL-MART'S JOINDER IN MATTEL'S MOTION TO
       DISMISS ...............................................................................................2

III.   THE SAC IS SUBJECT TO DISMISSAL DUE TO
       PLAINTIFFS' LACK OF STANDING ......................................................2

       A.    Applicable Standards........................................................2

       B.    No Article III Standing Exists With Regard To
             Plaintiffs' Claims Concerning Toys With Magnets.................5

       C.    No Article III Standing Exists With Regard To
             Plaintiffs' Claims Concerning Toys With Lead......................7

       D.    Plaintiffs Have Not Established Standing With
             Regard to Any, Much Less, Each of Their Claims
             for Relief.........................................................................9

IV.    PLAINTIFFS FAIL TO STATE NEGLIGENCE CLAIMS
       AGAINST WAL-MART AS A RETAILER .............................................10

       A.    What Plaintiffs Allege ....................................................10

       B.    Knowledge or Reason to Know is Required Against
             Retail Sellers for Latent Defect Negligence Claims ...........11

       C.    The SAC's Negligence Claims Against Wal-Mart
             Fail...............................................................................13

V.     THE SAC'S 17200 AND 1750 CLAIMS AGAINST
       WAL-MART BASED ON MISREPRESENTATION
       MUST BE DISMISSED .........................................................................14

       A.    There are No Alleged Misrepresentations By
             Wal-Mart .......................................................................14

       B.    Wal-Mart Did Not Adopt Manufacturer
             Representations ...............................................................16

       C.    Reliance on Statements By Wal-Mart Is Not Alleged .........19

VI.    PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF
       UNDER § 17200 SHOULD BE DISMISSED
       PURSUANT TO THE *COLORADO RIVER* DOCTRINE .....................20

VII.   CONCLUSION......................................................................................24

-i-

1698.031/372815.4

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Nunn, A Professional Corporation

900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1

**TABLE OF AUTHORITIES**
**CASES**

2

3
*Alvarez v. Felker Manufacturing Company*,
   230 Cal.App.2d 987 (1964) ................................................................17

4
*American Intern. Underwriters (Philippines), Inc. v. Continental Ins. Co.*,
   843 F.2d 1253 (9th Cir. 1988) ......................................................22, 23

5
*American Title Insurance Company v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1998) ......................................................6, 7, 8

6
*Anunziato v. eMachines, Inc.*,
   402 F.Supp.2d 1133 (C.D.Cal. 2005) ................................................20

7
*Ashton v. Pierce*,
   541 F.Supp. 635 (D.C.D.C. 1982) ......................................................8

8
*B.C. v. Plumas Unified School Dist.*,
   192 F.3d 1260 (9th Cir. 1999) ............................................................4

9
*Bell Atlantic Corp. v. Twombly*,
   - - US - -, 127 S.Ct. 1955 (2007) ................................................5, 13

10
*Bender v. Williamsport Area School District*,
   475 U.S. 534 (1986) ..........................................................................3

11
*Brown v. Bank of America, N.A.*,
   457 F.Supp.2d 82 (D.Mass., 2006) ..................................................19

12
*Burgess v. Montgomery Ward and Co.*,
   264 F.2d 495 (10th Cir. 1959) ..........................................................13

13
*California Air Resources Bd. v. Hart*,
   21 Cal.App.4th 289 (1993) ................................................................24

14
*Californians for Disability Rights v. Mervyns, LLC*,
   39 Cal.4th ........................................................................................17

15
*Caro v. Procter & Gamble Co.*,
   18 Cal.App.4th 644 (1993) ................................................................20

16
*Central Mut. Ins. Co. v. Schmidt*,
   152 Cal.App.2d 671 (1957) ................................................................16

17
*City of Los Angeles v. Lyons*,
   461 U.S. 95, (1983) ................................................................3, 4, 6, 9

18
*Colorado River Water Conservation Dist. v. U.S.*,
   424 U.S. 800 (1976) ....................................................................21, 23

19
*Committee on Children's Television, Inc. v. General Foods Corp.*,
   35 Cal. 3d 197 (1983) ......................................................................17

20
*D'Amico v. Board of Medical Examiners*,
   11 Cal.3d 1 (1974) ..........................................................................23

21
*Daugherty v. American Honda Motor Co.*,
   144 Cal.App.4th 824 (2006) ........................................................18, 21

22

23

24

25

26

27
-ii-

28
DEFENDANT WAL-MART STORES, INC.'S MPA
IN SUPPORT OF MOTION TO DISMISS
Case No. 2:07-ml-01897-DSF-AJW

BARTKOZANKEL

900 Front Street, Suite 900
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*De Simas v. Big Lots Stores, Inc.*,
   2007 WL 686638 (N.D. Cal. 2007)...........................................................21

*Eamoe v. Big Bear Land & Water Co.*,
   98 Cal.App.2d 370 (1950)....................................................................17

*Emery v. Visa Internat. Serice. Ass'n.*,
   95 Cal.App.4th 952 (2002).................................................................17, 18

*Fireman's Fund Ins. Co. v. Garamendi*,
   790 F.Supp 938 (N.D. Cal., 1992)............................................................23

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
   528 U.S. 167 (2000)........................................................................3, 6, 9

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990)........................................................................4, 6, 8

*Granberg v. Turnham*,
   166 Cal.App.2d 390 (1958)..................................................................17

*Hall v. Time Inc.*,
   158 Cal.App.4th 847 (2008).................................................................19

*Hanberry v. Hearst Corp.*,
   276 Cal.App.2d 680 (1969)..................................................................18

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006).............................................................16, 18

*In re Verifone Securities Litigation*,
   11 F.3d 865 (9th Cir. 1993)...........................................................5, 6, 8, 11

*Kirby v. Frith*,
   311 S.W. 2d 799 (Ky., 1958)................................................................16

*Klein v. Earth Elements, Inc.*,
   59 Cal.App.4th 965 (1997)..................................................................19

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994)..........................................................................4

*Krantz v. BT Visual Images, LLC.*,
   89 Cal.App.4th 164 (2001)..................................................................16

*Landree v. University Medical Products USA, Inc.*,
   2004 WL 413287 (D.Minn. 2004)...........................................................13

*Laster v. T-Mobile, USA, Inc.*,
   407 F.Supp.2d 1181 (S.D.Cal. 2005).......................................................19

*McConnell v. Federal Election Comm'n*,
   540 US 93 (2003).............................................................................7

*McCulloch v. Ford Dealers Advertising Assn.*,
   234 Cal.App.3d 1385 (1991).................................................................17

*McKinney v. U.S. Dept. of Treasury*,
   799 F.2d 1544 (Fed. Cir. 1986)..............................................................7

*McNutt v. General Motors Acceptance Corp.*,
   298 U.S. 178 (1936)..........................................................................4

-iii-

BARTKOZANKEL
900 Front Street, Suite 900
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*Montgomery v. Meyerstein,*
    186 Cal. 459 (1921) .................................................................................12, 16

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ...........................................................................................22

*Nakash v. Marciano,*
    882 F.2d 1411 (9th Cir. 1989) .......................................................................22

*National Treasury Employees Union v. United States,*
    101 F.3d 1423 (D.C. Cir. 1996) ...............................................................6, 8, 9

*O'Brien v. Camisasca Automotive Mfg., Inc.,*
    161 Cal.App.4th 388 (2008) ...........................................................................20

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ...................................................................................4, 6

*Payne v. National Collection Systems, Inc.,*
    91 Cal. App. 4th 1037 (2001) ........................................................................21

*People v. Toomey,*
    157 Cal.App.3d 1 (1984) .........................................................................18, 23

*People's Home Sav. Bank v. Superior Court of City and County of San Francisco*
    103 Cal. 27 (1894) ..........................................................................................24

*Puck v. WP Pacific, Inc.,*
    2007 WL 2315952 (C.D. Cal., 2007) .............................................................21

*Rivera v. Wyeth-Ayerst Laboratories,*
    283 F.3d 315 (5th Cir. 2002) ...............................................................5, 6, 7, 8

*San Diego County Gun Rights v. Reno,*
    98 F.3d 1121 (9th Cir. 1996) ...........................................................................4

*Simmons v. Richardson Variety Stores,*
    51 Del. 80 (1957) ............................................................................................12

*South Florida Water Management District v. Montalvo,*
    84 F.3d 402 (11th Cir. 1996) ...............................................................4, 6, 11

*Spiegler v. Home Depot USA, Inc.*
    --- F.Supp.2d ----, 2008 WL 1848292 (C.D.Cal). April 9, 2008.................20

*Stewart v. Mitchell's Adm'x,*
    190 S.W. 2d 660 (1945) .................................................................................16

*Sutton v. Major Products Co.,*
    91 N.C.App. 610 (1988) .................................................................................13

*Sutton v. St. Jude Medical S.C. Inc.,*
    419 F.3d 568 (6th Cir. 2005) .........................................................................13

*Texas v. U.S., 523*
    U.S. 296 (1998) ................................................................................................4

*Travelers Indem. Co. v. Madonna,*
    914 F.2d 1364 (9th Cir. 1990) .......................................................................22

-iv-

BARTKO ZANKEL
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*True v. American Honda Motor Co., Inc.,*
    520 F.Supp.2d 1175 (C.D. Cal., 2007)...............................................20

*Unites States v. Hays,*
    515 US 737 (1995).................................................................................4

*Utility Consumers' Action Network v. Sprint Solutions, Inc.,*
    2008 WL 1946859 (S.D. Cal. April 25, 2008)..................................2

*Valley Forge Christian College v. Americans United for Separation of
    Church and State, Inc.,*
    454 U.S. 464 (1982).............................................................................3

*Vandelune v. 4B Elevator Components Unlimited,*
    148 F.3d 943 (8th Cir. 1998)............................................................13

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)..........................................................15

*Walters v. Seventeen Magazine,*
    195 Cal.App.3d 1119 (1987)............................................................18

*Waterbury v. Safeway Inc.,*
    2006 WL 3147687 (N.D. Cal., 2006)..............................................21

*Wickham v. Southland Corp.,*
    168 Cal.App.3d 49 (1985)................................................................17

*Wilens v. TD Waterhouse Group, Inc.,*
    120 Cal.App.4th 746 (2003).............................................................20

*Winter v. G.P. Putnam's Sons,*
    938 F.2d 1033 (9th Cir. 1991)..........................................................18

**STATUTES**

6 ALR3d 12, § 3 (1966)...................................................................13, 14

63 Am.Jur2d § 341 (2008)....................................................................12

Bus. & Prof. Code § 17200 ............................................................ passim

Bus. & Prof. Code § 17203 ...................................................................19

Bus. & Prof. Code § 17204 ...................................................................19

Cal. Civ. Code § 1750..................................................................... passim

Cal. Civ. Code § 1770a(7) .....................................................................18

Cal. Civ. Code § 1780............................................................................20

Cal. Civ. Code § 2070..............................................................................2

Cal. Const., Art. V § 13..........................................................................23

California Civil Code Section 1770 .......................................................20

Code of Civil Procedure § 382...............................................................19

F.R.C.P. Rule 12(b)(1) .............................................................................1

F.R.C.P. Rule 12(b)(6) .............................................................................1

1698.031/372815.4

DEFENDANT WAL-MART STORES. INC.'S MPA
IN SUPPORT OF MOTION TO DISMISS
Case No. 2:07-ml-01897-DSF-AJW

BARTKOZANKEL

900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

F.R.C.P. Rule 8 ....................................................................................... 13

F.R.C.P. Rule 9(b) ........................................................................... 1, 14, 16

F.R.C.P. Rule 9(B) .................................................................................... 2

Federal Rules of Evid., Rule 407 ............................................................ 14

**OTHER AUTHORITIES**

23 Personal Injury, "Products Liability," § 4.01[3][a], Frumer and
    Friedman, (Mathew Bender 2004.) ................................................ 12

American Law of Products Liability 3d, "Negligence Liability," § 11:38
    (Thompson West 2005.) ................................................................... 12

Restatement (Second) of Torts, § 402 (1965-2008) ............................... 12

Restatement of Torts 2d, § 12(1) ............................................................ 13

Restatement of Torts 2d, § 12(2) ............................................................ 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BARTKOZANKEL
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1698.031/372815.4

DEFENDANT WAL-MART STORES, INC.'S MPA
IN SUPPORT OF MOTION TO DISMISS
Case No. 2:07-ml-01897-DSF-AJW

1    Pursuant to F.R.C.P., Rules 12(b)(1), 12(b)(6), and 9(b), defendant

2    Wal-Mart Stores, Inc. ("Wal-Mart") submits this memorandum in support of its

3    motion to dismiss.

4    I.    **PRELIMINARY STATEMENT**

5    Wal-Mart was first named in this action by the First Consolidated

6    Amended Complaint, filed March 31, 2008 (FAC).   In the Second Consolidated

7    Amended Complaint filed May 16, 2008 (SAC), which is the subject of this motion,

8    Wal-Mart is named in 10 of 13 counts, because plaintiffs have divided the Bus. &

9    Prof. Code § 17200, Cal. Civ. Code § 1750, and the Song-Beverly implied warranty

10    of fitness claims into separate manufacturer/retailer counts at Counts Six-Seven,

11    Eight-Nine and Eleven-Twelve, respectively.

12    Nowhere in the SAC is Wal-Mart alleged to be the manufacturer of the

13    toys at issue.  As a retailer, Wal-Mart's potential liability and its defenses may differ

14    from those applicable to the manufacturer.  The separate arguments of Wal-Mart at

15    §§ III-VI, below, are in the order from most general to most specific as affecting

16    plaintiffs' claims.  In particular, (i) the SAC fails to state any cognizable claims due

17    to the hypothetical nature of plaintiffs' alleged injuries, which negates U.S.

18    Constitution Article III standing (§ III, below); (ii) Wal-Mart had no "duty" under

19    these facts to test the myriad Mattel products for lead content or for detachable

20    magnets (§ IV, below); (iii) the claims against Wal-Mart under § 17200 and § 1750,

21    grounded in alleged misrepresentation, fail due to lack of any alleged false

22    statements *by* Wal-Mart (§ V, below); and (iv) the non-monetary relief sought

23    pursuant to § 17200 is duplicative of a prior action pending as to Wal-Mart brought

24    by the California Attorney General seeking the same relief over the very same toys,

25    warranting this Court's dismissal of such injunctive relief claims here (§ VI, below).

26

27    -1-

28    1698.031/372815.4

BARTKO ZANKEL
Bartko Zankel Tarrant Miller | Lewis & Hannan, Inc. a Law of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## II.    WAL-MART'S    JOINDER    IN    MATTEL'S    MOTION    TO    DISMISS

Wal-Mart hereby joins in the  following sections and arguments of the June 24, 2008 Memorandum of Points and Authorities in Support of Motion by Mattel, Fisher Price, Target, Toys "R" Us, Kmart, and K-B Toys to Dismiss Second Amended Complaint: "Plaintiffs' Allegations; § I.   The Standard For Dismissal; § II. The Consumer Product Safety Act Bars Plaintiffs' Attempt To Compel A Refund For The Recalled Toys; § III.   Plaintiffs Have Failed To Allege Injury In Fact Which is an Essential Element in Each of Their Claims; § IV. Plaintiffs' Claims Under § 2072 Of The CPSA Fail As A Matter Of Law; § V. Plaintiffs' Claims That Sound In Fraud Should Be Dismissed For Failure To Satisfy Rule 9(b); § XIII. Plaintiffs' CRLA Damage Claims Must Be Dismissed Because Plaintiffs Failed To Provide Pre-Suit Notice;[1] and § IX. Plaintiffs' Unjust Enrichment Claims Fail."    This joinder includes each argument's subsections and such defendants' Request for Judicial Notice.

## III.    THE SAC IS SUBJECT TO DISMISSAL DUE TO PLAINTIFFS' LACK OF STANDING

### A.    Applicable Standards

A federal court lacks jurisdiction to hear any matter that is not a justiciable case or controversy under Article III of the U.S. Constitution, and an action is not justiciable if the plaintiff does not have standing to sue. *Valley Forge*

---

[1] The March 31, 2008  FAC was plaintiffs' first complaint against Wal-Mart.  At ¶ 248 of the FAC, plaintiffs allege they "notified the Retailer Defendants in writing by certified mail" of the CRLA claims. An April 1, 2008 letter to Wal-Mart is attached to the Decl. Of Michael D. Abraham in Support of Wal-Mart Stores, Inc's Motion to Dismiss and Request for Judicial Notice, at Exh. 3 at p.p. 42-45.  It should be considered on this motion although not physically attached to the FAC.  *Utility Consumers' Action Network v. Sprint Solutions, Inc.,* 2008 WL 1946859 at *3 (S.D. Cal. April 25, 2008).  The threat of CLRA damages litigation in plaintiffs' letter --which is referenced in and read into the FAC that was filed without pre-suit notice--  requires dismissal of the CLRA damages claim against Wal-Mart within SAC Count Nine.  *Id.* at *6.  *But see* Cal. Civ. Code § 1782(d).

-2-

BARTKO ZANKEL
Bartko Zankel Tarrant Miller Lund & Hannun, A Law of Counsel

900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   *Christian College v. Americans United for Separation of Church and State, Inc.,*

2   454 U.S. 464, 471-472 (1982); *Bender v. Williamsport Area School District,*

3   475 U.S. 534, 541-543 (1986).    The standing requirement improves judicial

4   decision-making because it "assures an actual factual setting in which the litigant

5   asserts a claim of injury in fact[.]" *Valley Forge Christian College, supra,* 454 U.S.

6   at 472; *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102, 111, (1983).

7            In order to have Article III standing, plaintiffs must meet three

8   constitutional requirements.  Failure to establish any one of them deprives a federal

9   court of jurisdiction to hear the suit.  *Friends of the Earth, Inc. v. Laidlaw*

10   *Environmental Services (TOC), Inc.,* 528 U.S. 167, 180-181 (2000).  First, plaintiffs

11   must demonstrate having suffered an "injury in fact" that is both concrete and

12   particularized, and actual or imminent – not conjectural or hypothetical. *Id.*; *City of*

13   *Los Angeles, supra,* 461 U.S. at 101-102, 111.[2]  Second, the injury must be fairly

14   traceable to the challenged conduct of the defendant.  *Friends of the Earth, Inc.,*

15   *supra,* 528 U.S. at 180-181.  Third, and finally, plaintiffs must show that it is likely,

16   as opposed to merely speculative, that the injury will be redressed by a favorable

17   decision. *Id.*

18            Standing must be shown with respect to each form of relief sought,

19   whether it be injunctive relief, damages, or reimbursement.  *Friends of the Earth,*

20   *Inc.* 528 U.S. at 185.  For prospective injunctive relief, a plaintiff must show the

21   following formulation of the Article III requirements: the plaintiff must demonstrate

22   he has suffered or is threatened with a "concrete and particularized" legal harm,

23   *Friends of the Earth, Inc., supra,* 528 U.S. at 180-181, coupled with "a sufficient

24

25   [2]  To meet Article III standing, "the injury alleged cannot be conjectural or hypothetical

26   (citation omitted), remote (citation omitted), speculative (citation omitted), or abstract
(citation omitted)." *National Treasury Employees Union v. United States*, 101 F.3d 1423,
1427 (D.C. Cir. 1996).

27                          -3-

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lewis & Moomaw, Inc. & Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

likelihood that he will again be wronged in a similar way." *City of Los Angeles, supra,* 461 U.S. at 111; see also *San Diego County Gun Rights v. Reno,* 98 F.3d 1121, 1126 (9th Cir. 1996). As to the second inquiry, the plaintiff must establish a "real and immediate threat of repeated injury." *City of Los Angeles, supra,* 461 U.S. at 111; see also *B.C. v. Plumas Unified School Dist.,* 192 F.3d 1260, 1264 (9th Cir. 1999) (former student lacked standing to challenge future illegal dog "sniff search," since he was no longer a student). Article III standing is lacking where the claimed future harm depends on the occurrence of contingent future events that may not occur as anticipated, or indeed may not occur at all. *Texas v. U.S.,* 523 U.S. 296, 300 (1998).

The Article III standing requirements apply equally to class actions. The class representatives must allege an individual injury in order to seek personal relief on behalf of himself or any other member of the class. *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974) Because a federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise, plaintiffs have the burden of clearly alleging particularized facts demonstrating that they are proper parties to invoke judicial resolution of the dispute. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994); *Unites States v. Hays,* 515 US 737, 743 (1995); *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990). "If [they] fai[l] to make the necessary allegations, [they have] no standing." *FW/PBS, Inc., supra,* 493 U.S. at 231, quoting *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936).

It has also long been the rule that conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss. *South Florida Water Management District v. Montalvo,* 84 F.3d 402, 408 n. 10 (11th Cir. 1996); *see also In re Verifone Securities Litigation,* 11 F.3d 865, 868 (9th

-4-

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lundi & Harmon, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    Cir. 1993) (conclusory allegations and unwarranted inferences are insufficient to

2    defeat a motion to dismiss).    Indeed, a complaint's factual allegations must be

3    enough to raise the right to relief above the speculative level.    *Bell Atlantic Corp. v.*

4    *Twombly,* - - US - -, 127 S.Ct. 1955, 1964-1965 (2007).

5        B.    No Article III Standing Exists With Regard To Plaintiffs'
              Claims Concerning Toys With Magnets

6

7            Only two of the named plaintiffs -- Julie A. Probst and Stacey

8    Rusterholtz -- claim to have purchased recalled toys with magnets that could

9    potentially become loose.  (SAC, ¶¶ 33-34.)  While the SAC makes the conclusory

10   allegation that plaintiffs Probst and Rusterholtz have been injured by their children's

11   increased exposure to toys with magnets that could potentially become loose, no

12   facts are alleged that the recalled toys they purchased *had* magnets which *in fact*

13   became loose and actually harmed any of their children.  (SAC, ¶¶ 33-34); *Rivera v.*

14   *Wyeth-Ayerst Laboratories,* 283 F.3d 315, 318-321 (5th Cir. 2002) (Article III injury

15   in fact requires that the party seeking review be himself among the injured; it is not

16   enough that some other individuals may have been injured).[3]

17           Rather, the SAC alleges "risk" to children due to magnets that "could"

18   or "can" become loose or capable of being dislodged (SAC, ¶¶ 50, 63, 99, 126, 186,

19   215, 222, 229, 243, 251) or could result in "exposure" to hazardous magnets (SAC,

20   ¶ 94, 252) or "could cause" injury (SAC, ¶ 260) or could cause "increased risk" of

21   health problems or injury (SAC, ¶¶ 216, 226, 252, 289, 295), but does not allege

22   plaintiffs Probst and Rusterholtz or their children were *in fact* injured by the magnets

23   in the recalled toys (SAC, ¶¶ 33-34).  Such conjectural, hypothetical, speculative or

24   abstract claims, which do not involve injury in fact to plaintiffs Probst and

25   _____

26   [3]   As a result, Article III standing is not established by the Complaint's allegations of
     reports of injuries to others from loose magnets.  (SAC at ¶¶ 33-34, 51-52, 96, 124);
     *Rivera, supra,* 283 F.3d at 320.

27                                           -5-

28

BARTKO ZANKEL
Bartko · Zankel · Tarrant & Miller · a Professional Corporation
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  Rusterholtz or their children, do not meet plaintiffs' burden of pleading facts
2  establishing Article III standing. *National Treasury Employees Union v. U.S.,*
3  101 F.3d 1423, 1427; *Rivera, supra,* 283 F.3d at 320 (court require that the injury be
4  personal). Likewise, conclusory allegations of "exposure" to "magnets" (SAC,
5  ¶¶ 33-34, 183, 197, 206-207, 226, 283, 289, 295) do not meet plaintiff's burden of
6  establishing Article III standing. *FW/PBS, Inc., supra,* 493 U.S. at 231. Rather,
7  such conclusory allegations are ignored. *South Florida Water Management Dist.,*
8  84 F.3d at 408 n. 10; *In re Verifone Securities Litigation, supra*, 11 F.3d at 865.

9      The conclusion that the named magnetic toy plaintiffs lack Article III
10  injunctive relief standing is reinforced by the SAC's admissions: (i) at ¶ 13, that the
11  toys with potentially loose magnets have been recalled (defined in the SAC as the
12  "Recalled Magnetic Toys"); (ii) at ¶ 180, that plaintiffs have not been able to
13  ascertain whether any other toys with potentially loose magnets exist that have not
14  been recalled; and (iii) at ¶ 129, that Mattel redesigned the toys so that the magnets
15  are "'locked' into the toy with sturdy material holding in the edges around the
16  exposed face of the magnet or completely covering or 'encapsulating' the magnet."
17  Accordingly, plaintiffs are unable to meet their burden of establishing a real and
18  immediate threat of repeat injury. *Friends of the Earth, Inc.* 528 U.S. at 185
19  (standing must be shown with respect to each form of relief sought); *O'Shea, supra,*
20  414 U.S. at 496 (the plaintiff must establish a "real and immediate threat of repeated
21  injury"); *City of Los Angeles, supra,* 461 U.S. at 111 (no injunctive relief standing
22  even if standing for damages); *American Title Insurance Company v. Lacelaw
23  Corp.*, 861 F.2d 224, 226 (9th Cir. 1998) (statement in a complaint constitutes
24  binding admission).[4]

25

26  [4]  There is no allegation that plaintiffs failed to participate in the recall. (SAC, ¶¶ 33-34.)
27  Thus, no factual basis is alleged establishing Article III standing for plaintiffs' requested

-6-

900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152
BARTKOZANKEL

C.    No Article III Standing Exists With Regard To Plaintiffs'
      Claims Concerning Toys With Lead

Just as with the loose magnet claims, the SAC fails to allege facts demonstrating Article III standing with regard to the toys that were recalled due to lead. The named plaintiffs admit they don't know whether any of them or any of their respective children have in fact been injured. *See*, Prayer at 82:16-19, when it asks for screening to determine *if* there has been lead exposure:

> (d)    Awarding costs of *initial* diagnostic screening for Plaintiffs and members of the Class;
>
> (e)    Awarding the cost of appropriate treatment for those who screen positive for blood-lead levels. (Emphasis supplied.)

*American Title Insurance Company, supra*, 861 F.2d at 226 (statement in a complaint constitutes binding admission).[5] The purported class representatives' admitted inability to allege they in fact were injured is contrary to plaintiffs' burden of alleging particularized injury in fact for Article III standing. *Rivera, supra*, 283 F.3d at 318-320 (Article III injury in fact requires that the parties seeking review be themselves among the injured; it is not enough that others may have been

---

reimbursement relief. As noted in Section I, *supra*, Wal-Mart joins and incorporates Mattel's and the other retailer's argument that the SAC fails to state a claim for reimbursement. *Rivera, supra*, 283 F.3d at 319-320 ("[m]erely asking for money does not establish injury in fact;" since the plaintiffs did not aver the drug caused them harm, claims of breach of the implied warranty of merchantability or of governmental standards did not constitute an injury in fact). To the extent plaintiffs chose not to participate in the recalls, injury or harm arising from such voluntary election does not provide Article III standing because the harm is not fairly traceable to the defendant's action. *McConnell v. Federal Election Comm'n*, 540 US 93, 226 (2003); *McKinney v. U.S. Dept. of Treasury*, 799 F.2d 1544, 1549-1551, 1555-1556 (Fed. Cir. 1986).

[5]  This admission is consistent with the fact that the SAC's class action allegations do not list actual absorption of lead as a common question of fact. (SAC, ¶ 168.) Rather, the SAC's ¶ 168(g) lists as a common question: "Whether the Class has been injured by virtue of Defendants' negligent conduct."

-7-

DEFENDANT WAL-MART STORES, INC.'S MPA
IN SUPPORT OF MOTION TO DISMISS
Case No. 2:07-ml-01897-DSF-AJW

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lantz & Horowitz, P.C. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

injured); *FW/PBS, Inc., supra,* 493 U.S. at 231 ("If [they] fai[l] to make the necessary allegations, [they have] no standing").

Instead, the SAC only makes allegations of being put at "risk" of lead exposure, (SAC, ¶¶ 16-32) or increased risk of health problems (SAC, ¶¶ 183, 226, 283, 289, 295) or "harmful risks of possibly exposing" plaintiffs to lead (SAC, ¶ 203(a).) Such conjectural, hypothetical, speculative or abstract claims, which do not involve injury in fact to the named plaintiffs or their children, fail to establish Article III standing. *Rivera, supra,* 283 F.3d at 320; *National Treasury Employees Union, supra,* 101 F.3d at 1427. Furthermore, the SAC's conclusory allegations of lead exposure (SAC, ¶¶ 16-32, 183, 197, 206, 216, 225, 226, 283, 289, 295) do not provide a basis for finding Article III standing. *Id.* Such conclusory allegations are ignored in ruling on a motion to dismiss and are contradicted by the admission that screening is required *before* actual exposure can be asserted. *In re Verifone Securities Litigation,* supra, 11 F.3d at 865; *American Title Insurance Company, supra,* 861 F.2d at 226.[6]

The instant SAC is distinguishable from toxic tort/medical monitoring decisions where Article III standing has been found to exist because, in each of those cases, the plaintiffs had *actually been injured* by the toxin or actually had a defective medical device implanted inside of their bodies or were at imminent risk of poisoning from the continuing exposure to the toxin.[7] Here, in stark contrast,

---

[6] Just as with the named magnetic toy plaintiffs, there are no factual allegations by the named lead toy plaintiffs that they failed to participate in the recall. (SAC, ¶¶ 16-32.) Thus, no factual basis is alleged for Article III standing based on economic injury. (*See* fn. 4, *supra.* Wal-Mart joins and incorporates Mattel's argument that that the SAC fails to state a claim and Mattel's request for judicial notice in support thereof. *Rivera, supra,* 283 F.3d at 319-320.)

[7] *See, e.g., Sutton v. St. Jude Medical S.C. Inc.,* 419 F.3d 568, 570-575 (6th Cir. 2005) (Article III standing existed where aortic connector implanted into the plaintiffs increased risk seriously enough to require current medical monitoring); *Ashton v. Pierce,* 541 F.Supp. 635, 637 (D.C.D.C. 1982) (because certain of plaintiffs' children had in fact suffered lead

-8-

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lundt & Norton, P.C., Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

plaintiffs do not factually allege that they or any of their respective children have in fact been injured due to the recalled toys. Nor are there any factual allegations in the SAC of an imminent risk of lead poisoning to a named plaintiff or named plaintiff's child from a continuing toxic exposure purportedly created by Wal-Mart.[8] Since the toys have been recalled, no such allegation can be made and speculation or conjecture as to future toys does not give rise to Article III standing. *National Treasury Employees Union, supra,* 101 F.3d at 1427 (for Article III standing, the alleged injury cannot be conjectural or hypothetical, remote, speculative or abstract).

    D.    Plaintiffs Have Not Established Standing With Regard to Any, Much Less, Each of Their Claims for Relief

Plaintiffs seek relief in the forms of: (i) reimbursement for the cost of the recalled toys; (ii) costs for initial diagnostic screening; (iii) costs for treatment for those who screen positive for blood-lead levels; and (iv) injunctive relief. (SAC, Prayer at 82:1-24.) Standing must be shown with respect to each form of relief sought. *Friends of the Earth, Inc.* 528 U.S. at 185; *City of Los Angeles, supra,* 461 U.S. at 111. For the above reasons, the SAC fails to allege facts establishing Article III standing for any -- much less each -- of the forms of relief sought by plaintiffs. If for any reason the Court disagrees, and determines that plaintiffs have standing as to a particular requested form of relief, then the remaining forms of relief must be dismissed based on the lack of Article III standing. *Id.*

---

poisoning and others were in imminent danger of lead poisoning due to the continued presence of lead paint in the public housing where plaintiffs resided, plaintiff class had standing).

[8]  Consistent with Rule 11, no allegation is made in the SAC that Wal-Mart is continuing to sell the blood pressure cuffs referenced at SAC's ¶¶ 132-143. Thus, no factual basis is alleged to support Article III standing for injunctive relief. *City of Los Angeles, supra,* 461 U.S. at 111; *Friends of the Earth, Inc.* 528 U.S. at 185.

-9-

DEFENDANT WAL-MART STORES, INC.'S MPA IN SUPPORT OF MOTION TO DISMISS Case No. 2:07-ml-01897-DSF-AJW

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lamb & Hanson, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## IV.  PLAINTIFFS FAIL TO STATE NEGLIGENCE CLAIMS AGAINST WAL-MART AS A RETAILER

### A.  What Plaintiffs Allege

Plaintiffs, at Count Three, bring negligence claims against retailers based on an asserted "*duty to ensure* that the Hazardous Toys did not contain excess levels of lead, lead paint and/or loose magnets and a *duty to warn* that the Hazardous Toys contained excessive levels of lead, lead paint and/or loose magnets." (SAC, ¶ 201, emphasis added.)  These alleged duties assume a failure by the retailers to have "independently" and "adequately *inspect[ed]* the safety of these products[9] before selling them," because such defendants "*knew or should have known* of the dangers of toxic lead, lead paint and hazardous magnets particularly for toys manufactured in China." (SAC, ¶ 101, emphasis added.)  These allegations defy traditional rules insulating retailers from product liability *negligence* claims that are based on a supposed duty to test for latent defects.[10]  Wal-Mart moves to dismiss Count Three.

Count Three conflates the negligent "design," "manufacturing" and "failure to warn" claims into one negligence claim for relief against "all" defendants (SAC, ¶¶ 198-207), and ¶ 203 faults retailers for having failed "to inquire" (¶ 203(c)) or to give "proper warnings" (¶ 203(d)).  SAC ¶ 101, incorporated by reference in Count Three, contains the only retailer-specific allegations as to *what* retailers had notice of before the recalls.  But the facts of notice to retailers, alleged

---

[9]  The SAC "concerns the millions of dangerous toys that were, or should have been, the subject of Mattel's history-making 2007 recalls . . . ." (SAC, ¶ 8)  The toys are scheduled at SAC, Exhs. A-I.  The SAC does not concern all Chinese-made products or Chinese-made toys despite language at ¶ 102: "products manufactured abroad"; ¶ 85: "more than 14 recalls of [other] Chinese-made toys"; ¶ 88: "certain products manufactured in China" and "children's products manufactured in China."

[10]  Traditional remedies against retailers under express warranty and strict liability are not affected by this argument.

-10-

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lamb & Morrison, Inc. · A Law Corporation
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

at ¶ 101, are not as to defects in the later recalled Mattel toys, but rather regard recalls of *other* toys and "other information relating to the lead contamination of Chinese toy products [in general]."

Thus, the allegation at ¶ 204 that "Defendants" "knew" that "the Hazardous [Mattel] Toys" (at SAC, Exhs. A-I, *i.e.*) were defective, must refer to the manufacturer defendants, not to Wal-Mart. Otherwise, the allegation as to Wal-Mart is purely conclusory and should be ignored on a motion to dismiss.[11]

Moreover, as shown next, the "should have known" standard for retailer product liability negligence alleged at SAC ¶¶ 101 and 204 is *not the law*, and plaintiffs fail to allege any facts or special circumstances by which Wal-Mart had actual "reason to know" of the alleged latent defects in the toys at issue *before* the recalls, so as to have mandated pre-sale chemical inspection.

**B.    Knowledge or Reason to Know is Required Against Retail
Sellers for Latent Defect Negligence Claims**

Plaintiffs concede at SAC ¶ 211 that the alleged product defects were latent, containing a "non-obvious danger in their material, surface paint, or detachable magnets." Retailers sued in negligence for failing to inspect or warn about latent product defects are subject to the following broadly known rule:

> A seller of a chattel manufactured by a third person, who
> neither knows nor has reason to know that it is, or is likely
> to be, dangerous, is not liable in an action for negligence
> for harm caused by the dangerous character or condition of
> the chattel because of his failure to discover the danger by
> an inspection or test of the chattel before selling it.

---

[11]    *South Florida Water Management Dist.*, 84 F.3d at 408 n. 10; *In re Verifone Securities Litigation, supra,* 11 F.3d at 865.

-11-

BARTKO ZANKEL
Bartko • Zankel • Tarrant • Miller • Lewis & Harmon, Inc. or Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Restatement (Second) of Torts, § 402 (1965-2008).

Leading treatises collecting the law of all states on this subject are in accord with the ALI.  "Moreover, a seller, especially one who deals in large quantities of goods, need not refrain from offering a product for sale until it is individually analyzed and inspected for deleterious substances." American Law of Products Liability 3d, "Negligence Liability," § 11:38 (Thompson West 2005.)  This rule is reinforced when the "vendor purchases a product from a reputable source," especially "nationally known products" like the Mattel toys.  *Id.* at § 11:39.  The "majority view" under state laws is that a retailer without knowledge is "under no obligation" to test products for latent defects, including those in "sealed containers." 23 Personal Injury, "Products Liability," § 4.01[3][a], Frumer and Friedman, (Mathew Bender 2004.)  Even under the "minority view," a retailer is under no duty to make more than a reasonable inspection, "as distinguished from situations in which the defects are so concealed that mechanical or chemical tests would be needed to discover them," such as lead detection in this case.  *Id.* at § 4.01[3][b]. [12]

State and federal decisions insulating retailers from latent defect products liability claims, sounding in negligence, are many and well-established. *See, e.g. Simmons v. Richardson Variety Stores*, 51 Del. 80, 82-83 (1957) (judgment for retailer on negligence claim it failed to inspect/warn of a latent defect in a toy spinning top); *Burgess v. Montgomery Ward and Co.,* 264 F.2d 495, 498 (10th Cir.

---

[12]  *See also,* 63 Am.Jur2d § 341 (2008): "A retailer or wholesaler who does nothing more than transfer products from one place to another is deemed to be in no better position to determine whether there are hidden defects in an article of a complex nature, and to have no better means for making such inspection, than the purchaser or a third person;" and 6 ALR3d 12, § 3 (1966): "*In the absence of special circumstances* indicating that tests and inspections should be required, it has usually been held that the seller of a product manufactured by another, who neither knows, nor has reason to know, that the product is, or is likely to be, dangerously defective, has no duty to test or inspect it, and its failure to test or inspect will not render him liable for injuries caused by such product." (Emphasis added.)

-12-

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Curtis & Niemann, Inc. · A Law Corporation
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 · Fax (415) 956-1152

1959) (directed verdict for retailer on negligence claim where extension ladder not inherently dangerous); *Sutton v. Major Products Co.*, 91 N.C.App. 610, 614-15 (1988) (judgment for distributor on negligence claim where product sold in sealed container had latent defect); *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 946-7 (8th Cir. 1998) (dismissal of negligence claims against distributor for failure to test, where distributor did not know or have reason to know the product was dangerous); *Landree v. University Medical Products USA, Inc.*, 2004 WL 413287, *2 (D.Minn. 2004) (judgment for seller of defective skin product, where seller had no actual or constructive knowledge of defect); *see also* cases cited at Restatement of Torts 2d, § 402 (Supp. 2008) and at 6 ALR3d 12, § 3 (Supp. 2008).

Critically, retailers sued in negligence are held to a "reason to know" standard, which is defined at § 12(1) of the Restatement of Torts 2d to mean an actor "has information" that "would infer that the fact in question exists." It does *not* mean "should know," which implies a duty to "ascertain the fact in question." *Id.*, § 12(2). The SAC asserts the wrong standard at ¶¶ 101 and 204 against Wal-Mart and fails to plead the required facts.

C.    The SAC's Negligence Claims Against Wal-Mart Fail

A complaint's "[f]actual allegations must be enough to raise the right to relief *above* the speculative level, on the assumption that all the allegations in the complaint are true . . . ." (*Twombly supra*, 127 S.Ct. at 1965), while its "plain statement" under Rule 8 must "possess enough heft to show entitlement to relief." *Id.* at 1966 (citations omitted, emphasis added.)

Here, there are *no facts alleged* that Wal-Mart before the recalls *knew* the products at issue in this case – the later recalled Mattel toys – contained excess lead or had potentially loose magnets. Nor does the SAC contain sufficient

-13-

BARTKOZANKEL

900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    allegations that Wal-Mart *had reason to know* of excessive lead or loose magnets in

2    *these* products.[13]

3        Rather, the only allegations against Wal-Mart about its knowledge of

4    the recalled Mattel toys post-date the start of recalls. Paragraph 75 of the SAC

5    quotes a March 30, 2008 (fn. 34) review of Wal-Mart's *current* website describing

6    the status "this year" (2008, after the Mattel recalls) of its Toy Safety Net Program.

7    The quoted website describes this program as arising due to "parents' concerns over

8    recent recalls." (SAC, ¶ 75.) Wal-Mart's toy testing program is thus alleged to be *in*

9    *response to* the Mattel recalls. Surely, when a responsible retailer institutes a testing

10    program as a remedial "subsequent measure,"[14] it cannot be used to allege the

11    retailer "had reason to know" so as to have mandated *earlier* inspections.

12        Plaintiffs have not and cannot allege non-speculative facts consistent

13    with *Twombly* to show the "special circumstances" (6 ALR3d 12, § 3, supra) that

14    would have created a "reason to know" at Wal-Mart of the alleged toy defects.

15    Thus, the extraordinary duty at the retailer level of inspecting for latent defects

16    before sale cannot apply, and Count Three must be dismissed.

**V.    THE SAC'S 17200 AND 1750 CLAIMS AGAINST WAL-MART BASED ON MISREPRESENTATION MUST BE DISMISSED**

    **A.    There are No Alleged Misrepresentations By Wal-Mart**

       Section 17200 claims grounded in fraud or misrepresentation must

satisfy the particularity requirements of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA,*

---

[13]   Indeed, it is alleged that "Mattel has taken the position that it should be able to evaluate hazards internally *before alerting any outsiders*" (SAC, ¶ 93, emphasis added), and that with respect to the toys at issue in this case, Mattel failed to timely disclose to the government – let alone to Wal-Mart – the alleged defects. (SAC, ¶¶ 90-94.)

[14]   "When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a products' design, or a need for a warning or instruction." Federal Rules of Evid., Rule 407.

-14-

BARTKO ZANKEL
Bartko Zankel Tarrant Miller Lewis & Marran, P.C. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

317 F.3d 1097, 1103 (9th Cir. 2003). There are no allegations that Wal-Mart made any statement regarding the safety and quality of the recalled toys prior to any toy purchase by plaintiffs. The only representations specific to Wal-Mart in the SAC are post-recall statements from Wal-Mart's website concerning its Toy Safety Net Program, pertaining to "additional steps [taken] this year for toy safety . . . ." (SAC, ¶75.)[15] There is no factual basis alleged that any of the plaintiffs read Wal-Mart's website prior to filing this action or prior to purchasing toys from Wal-Mart.[16] In connection with their UCL claim (Count Seven), plaintiffs merely conclude (with zero facts related to Wal-Mart) that:

> Plaintiffs and members of the Class relied on the Defendants' representations that the Hazardous Toys were safe for use and were age-appropriate. (SAC, ¶ 250.)

Similarly, in connection with its CLRA claim (Count Nine), Plaintiffs merely allege they and other class members:

> [R]easonably relied upon the Defendants' representations that the Hazardous Toys were safe for play toys to be used by young children . . . . (SAC, ¶ 269); and

> [W]ould not have purchased the Hazardous Toys had they known of the defects. (SAC, ¶ 271.)

But nowhere in the SAC do plaintiffs allege they saw, read, and/or relied on any *Wal-Mart* representations. Because the gravamen of plaintiffs' § 17200 and § 1750 claims is misrepresentation/false advertising, and *not* some other form of unlawful

---

[15] The SAC alleges that Wal-Mart's website was visited May 15, 2008 -- exactly one day before plaintiffs filed the SAC. (SAC, p. 28, fn. 35). Plaintiffs' prior FAC (filed March 31, 2008) does not mention any visits to Wal-Mart's website.

[16] Only four named plaintiffs are alleged to have purchased (or received as gifts) toys from Wal-Mart stores. (See SAC at ¶¶ 27, 28, 33, and 34.)

-15-

900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL
Bonfoni Zankel Fernandez Mellen & Peterson, Inc. of Counsel

1  business practice (*see* SAC, ¶¶ 243, 268), these claims fail as to Wal-Mart.[17]  Rule

2  9(b) requires that these claims be dismissed as to Wal-Mart for lack of particularity,

3  and as noted next Wal-Mart is not responsible for alleged manufacturers' statements.

4       B.   <u>Wal-Mart Did Not Adopt Manufacturer Representations</u>

5       Plaintiffs allege that by placing toys on its store shelves and on retail

6  websites, and thereafter advertising and selling such toys, Wal-Mart adopted

7  *Mattel's* representations.  (SAC, ¶¶ 71, 82, 249, 270.)  The adoptive

8  misrepresentation theory fails under general principles of law, as well as under

9  § 17200 and § 1750.

10       First, any defendant sued in fraud must be connected to it.  *Montgomery*

11  *v. Meyerstein*, 186 Cal. 459, 463 (1921).  A person who participates in the fraud, or

12  who *knowingly* accepts the fruits of the wrongful act, may be held liable for the

13  fraud of another.  *Central Mut. Ins. Co. v. Schmidt*, 152 Cal.App.2d 671, 674 (1957)

14  (emphasis added).  A defendant is not liable for fraud where "he was ignorant of the

15  wrongful act at the time he accepted its benefits and merely retains what appeared to

16  be legitimate proceeds of the transaction involved."  *Kirby v. Frith*, 311 S.W. 2d

17  799, 802 (Ky., 1958), quoting *Stewart v. Mitchell's Adm'x*, 190 S.W. 2d 660, 662

18  (1945).  Actual knowledge is also required under California law for aiding and

19  abetting another's fraud.  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th

20  Cir. 2006).

---

[17]  SAC ¶ 244 lists in conclusory fashion the laws that the alleged misrepresentations purportedly violated.  Conclusory allegations are ignored in a motion to dismiss.  *See* fn. 11, above.  Moreover, a defense to the underlying borrowed law is a defense to a UCL claim. See *Krantz v. BT Visual Images, LLC.*, 89 Cal.App.4th 164, 178 (2001).  Plaintiffs' CPSA and Prop. 65 claims are preempted or abated or fail to state a claim (see §§ II, VI); the CLRA claim fails for the reasons set forth in this section; and the Song-Beverly claims are subject to dismissal for lack of standing or failure to state a claim (see §§ II and III).

-16-

1698.031/372815.4

DEFENDANT WAL-MART STORES, INC.'S MPA
IN SUPPORT OF MOTION TO DISMISS
Case No. 2:07-ml-01897-DSF-AJW

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lynch & Mannion, Inc. · A Law Corporation
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

While an agent who *knowingly* participates in a fraudulent transaction may be responsible for the fraud,[18] and a principal can be liable for the agent's misrepresentations,[19] there is no agency or fiduciary relationship between Wal-Mart and the toy manufacturers. *See, e.g., Alvarez v. Felker Manufacturing Company*, 230 Cal.App.2d 987, 999-1000 (1964) (no agency relationship exists between manufacturer and retailer because their relations are similar to buyer and seller); *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 222 (1983), superseded as to standing by Proposition 64, see *Californians for Disability Rights v. Mervyns, LLC,* 39 Cal.4th 223, 227 (2006) (buyer and seller not ordinarily in fiduciary relationship). There is no express agreement establishing agency nor facts alleged showing agency by conduct.[20]

Further, promoting or advertising another's product does not create an adopted representation. *McCulloch v. Ford Dealers Advertising Assn.*, 234 Cal.App.3d 1385, 1391 (1991). In *McCulloch*, plaintiff entered and won a race contest, but was not paid the $1 million promised prize. *Id.* at 1387-88. Plaintiff sued an advertising association, arguing that due to its logo on the promotional materials it falsely represented that the winner was guaranteed the prize. *Id.* The court held there was no duty to investigate whether the prize statements were true, and that the association did not "assert[ ] the truth of the matters" contained in the promotional materials." *Id.*, at 1392; see also *Emery v. Visa Internat. Service. Ass'n.*, 95 Cal.App.4th 952, 964 (2002) (defendants not liable for false advertising

---

[18] *Granberg v. Turnham*, 166 Cal.App.2d 390, 398 (1958). Plaintiffs fail to allege facts showing "knowledge" as demonstrated in § IV above.

[19] *Eamoe v. Big Bear Land & Water Co.*, 98 Cal.App.2d 370, 373-74 (1950).

[20] This may arise if the principal controls both service results and the "means and manner in which the result is achieved." *Wickham v. Southland Corp.*, 168 Cal.App.3d 49, 59 (1985). There are no allegations in the SAC of any such control.

-17-

BARTKOZANKEL
Bartko Zankel Tarrant Miller • Lentz & Nieman, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

because there is no duty to investigate truth of the statements of others); *Walters v. Seventeen Magazine*, 195 Cal.App.3d 1119, 1122 (1987) (refusing to find duty to investigate magazine's advertised products); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991) (noting that with respect to publishers courts uniformly refused to impose duty to investigate the truth of the books' contents).[21] Here, as in *McCulloch*, Wal-Mart is not responsible for representations manufacturers allegedly made, simply by including their products in unspecified advertisements.

Second, § 17200 and § 1750 claims are not vicarious. *Emery, supra*, 95 Cal.App.4th at 960; *People v. Toomey*, 157 Cal.App.3d 1, 14 (1984). § 17200 liability must be based on Wal-Mart's "personal participation in the unlawful practices, either directly [i.e., through personal participation] or by aiding and abetting the principal." *Toomey, supra*, 157 Cal.App.3d at 15. Liability under § 17200, for aiding and abetting another's fraud, requires "the alleged aider and abettor participated in and exercised control over the underlying unfair act." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995-96 (2006). And liability under § 1770a(7) (misrepresentations) of the CLRA presumes that the representations were actually made by the defendant. *Daugherty v. American Honda Motor Co.*, 144 Cal.App.4th 824, 835 (2006) (actionable omission claim limited to statements "contrary to a representation actually made by the defendant.")

The SAC does not allege that Wal-Mart was involved in manufacturing or packaging, and merely by selling toys Wal-Mart is not responsible for the alleged statements of the manufacturer defendants. That sale of another's product does not

---

[21]  In *Hanberry v. Hearst Corp.* 276 Cal.App.2d 680, 682 (1969), advertising liability was imposed where the defective product received the "Good Housekeeping Consumers Guaranty Seal" that stated, "We satisfy ourselves that products advertised in Good Housekeeping are good ones and that the advertising claims made for them in our magazine are truthful." *Id.* In contrast, there are no allegations that Wal-Mart made an affirmative statement endorsing Mattel's representations were true. (¶ 75.)

-18-

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lavelle & Harrison, Inc., a Law Corp.
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

make the distributor a guarantor of product truth is exemplified by *Klein v. Earth Elements, Inc.*, 59 Cal.App.4th 965, 970 (1997). There, a pet food distributor was distributing a brand-name product later found to be poisonous. *Id.* at 967-68. Plaintiff claimed the public was deceived because the label stated: "You can feed Nature's Recipe . . . with confidence that you are doing something good for your dog." *Id.* at 970. The court held that unintentional distribution of the defective products was *not* within the scope of the "fraudulent" prong of § 17200. *Id.*

The situation here is comparable. Wal-Mart was selling brand name products and any alleged statements made by the manufacturer, e.g. SAC, ¶¶ 72-73, were not made by Wal-Mart. Counts Seven and Nine should be dismissed as to Wal-Mart.

### C.    Reliance on Statements By Wal-Mart Is Not Alleged

Plaintiffs' § 17200 and § 1750 claims against Wal-Mart also fail due to lack of standing under the UCL[22] and lack of reliance under the CLRA. Plaintiffs have not alleged with particularity (i) injury in fact and (ii) lost money or property that was caused "as a result of" plaintiffs' detrimental reliance on particular statements by Wal-Mart. *Laster v. T-Mobile, USA, Inc.*, 407 F.Supp.2d 1181, 1194 (S.D.Cal. 2005) (no standing where plaintiffs did not allege they relied on allegedly false or misleading advertising); *Brown v. Bank of America, N.A.*, 457 F.Supp.2d 82, 89 (D.Mass., 2006) (dismissing UCL class action challenging bank's ATM disclosures because plaintiffs did not "establish loss causation") *Hall v. Time Inc.*, 158 Cal.App.4th 847, 855 (2008) ("phrase 'as a result of' in its plain and ordinary

---

[22] "Actions for any relief pursuant to this chapter shall be prosecuted exclusively . . . by any person who has *suffered injury in fact and has lost money or property as a result of* such unfair competition." Cal. Bus. & Prof. Code § 17204, emphasis added. "Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure . . . ." *Id.* at § 17203.

-19-

BARTKO ZANKEL
Bartko, Zankel, Tarrant & Miller, Attorneys at Law, A Professional Corporation
900 Front Street, Suite 300
San Francisco, CA. 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  sense means 'caused by' and requires a showing of a causal connection or reliance

2  on the alleged misrepresentation.")

3          Similarly, the right to bring a private action under the CLRA is limited

4  to "[a]ny consumer who suffers any damage *as a result* of the use or employment by

5  any person of a method, act, or practice declared to be unlawful by [California Civil

6  Code] Section 1770." Cal. Civ. Code § 1780, emphasis added. Relief under the

7  CLRA is therefore "specifically limited to those who suffer damage, making

8  causation a necessary element of proof." *Wilens v. TD Waterhouse Group, Inc.,*

9  120 Cal.App.4th 746, 754 (2003); *True v. American Honda Motor Co., Inc.,*

10 520 F.Supp.2d 1175, 1182 (C.D. Cal., 2007) ("causation, in the form of reliance,

11 likewise is an essential element" of claims arising under the CLRA); *Caro v. Procter*

12 *& Gamble Co.,* 18 Cal.App.4th 644, 668 (1993) (purported class representative must

13 have believed the alleged representation was true); *see also Anunziato v. eMachines,*

14 *Inc.,* 402 F.Supp.2d 1133, 1137 (C.D.Cal. 2005) (acknowledging the CLRA's

15 reliance requirement).[23]

16 **VI.   PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF UNDER
       § 17200 SHOULD BE DISMISSED PURSUANT TO THE**

17 ***COLORADO RIVER* DOCTRINE**

18         Wal-Mart denies that plaintiffs have standing or can state a § 17200

19 claim. See § III, *supra*, and fn. 22, *supra*. Even if such a claim could be stated,

20 overlapping injunctive relief sought by the state Attorney General militates in favor

21

22

23 _____
   [23] The court in *Anunziato* declined to read into the UCL a reliance element, finding such a

24 requirement "would foreclose the opportunity of many consumers to sue under the UCL."
   In *O'Brien v. Camisasca Automotive Mfg., Inc.,* 161 Cal.App.4th 388, 399 (2008), a

25 California Court of Appeals specifically declined to follow *Anunziato* and sided with the
   majority view that the UCL currently requires reliance. *See also, True, supra,*

26 520 F.Supp.2d at 1882 *Spiegler v. Home Depot USA, Inc.* -- F.Supp.2d --, 2008 WL
   1848292, fn. 4 (C.D.Cal). April 9, 2008.)

27                                    -20-

28

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Lewis & Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

of dismissal as to that relief here.[24]  The state complaint, *People of the State of California v. Mattel, Inc., et al.* ("AG Complaint"),[25] was filed on November 19, 2007, whereas plaintiffs' multi-district actions were transferred to the Central District December 27, 2007.  Wal-Mart was not sued by any of the plaintiffs in the case before this Court until March 31, 2008, well after the AG Complaint was filed and served.

The AG Complaint names each of the defendants sued in the SAC. (AG Complaint, ¶¶ 3-23.)  The Attorney General is pursuing the same § 17200 injunctive remedies over *the same toy recalls*, and plaintiffs' similar claims in this Court are redundant.  Federal courts in this Circuit have indeed abstained in § 17200 cases where the same issues are being litigated in state court.  *Daugherty v. Oppenheimer & Co., Inc.*, 2007 WL 1994187 (N.D. Cal., 2007) (granting motion to abstain § 17200 claim pending resolution of similar claim pending in concurrent state court action.)[26]

Dismissal or stay pursuant to the *Colorado River* doctrine "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976).  The doctrine requires consideration of seven factors:  (1) which court first assumed jurisdiction; (2) the

---

[24]  This argument is not made as to any § 17200 claims for alleged "restitution." *See Payne v. National Collection Systems, Inc.*, 91 Cal. App. 4th 1037, 1045-6 (2001) (§ 17200 restitution sought in class actions may not be barred by resolution of similar claims brought by the Attorney General).

[25]  Decl. Of Michael D. Abraham in Support of Wal-Mart Stores, Inc's Motion to Dismiss and Request for Judicial Notice, at Exh. 1 at p.p. 5-16.

[26]  *See also De Simas v. Big Lots Stores, Inc.*, 2007 WL 686638 (N.D. Cal. 2007) (granting stay of § 17200 claim pending resolution of settlement in concurrent state court action); *Puck v. WP Pacific, Inc.*, 2007 WL 2315952 (C.D. Cal., 2007); *Waterbury v. Safeway Inc.*, 2006 WL 3147687 (N.D. Cal., 2006).

-21-

DEFENDANT WAL-MART STORES. INC.'S MPA
IN SUPPORT OF MOTION TO DISMISS
Case No. 2:07-ml-01897-DSF-AJW

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lewis & Hannon, Inc. · a Law of Counsel

900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

relative convenience of the forums; (3) the need to avoid piecemeal litigation; (4) the order in which the state and federal actions were filed; (5) whether state or federal law controls; (6) whether the state proceeding is adequate to protect the parties' rights; and (7) whether the federal court proceeding is an instance of forum shopping. *Colorado River*, 424 U.S. at 818 (factors 1-4); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (factors 5-6); *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367-68 (9th Cir. 1990) (factor 7). "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *American Intern. Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988).

Critically, plaintiffs' § 17200 injunctive relief claim is "substantially similar" to the Attorney General's § 17200 injunctive relief claim. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Just as plaintiffs' SAC alleges, the AG Complaint "seeks to remedy defendants' failure to comply with federal law governing the lead content of paint and surface coatings on toys." (AG Complaint, ¶ 1.) Also, compare the AG Complaint at ¶¶ 55-57 with the SAC at ¶¶ 241-254, and the AG Complaint's Prayer at ¶ 2 with the SAC Prayer at p. 82, ¶ (b) re injunctive relief.

The injunctive relief sought by the Attorney General is on behalf of the same California toy purchasers purportedly represented here, and both the plaintiffs in this case, and the Attorney General in the AG Complaint, focus on the same conduct by the same defendants. The fact that the named individual plaintiffs are not directly parties in the AG Complaint is not determinative. *See Nakash*, 882 F.2d at 1416-17 (actions substantially similar despite differences in parties where "only difference is the absence of all of the corporate entities owned and operated by the parties"); *see also Fireman's Fund Ins. Co. v. Garamendi*, 790 F.Supp. 938, 964

-22-

BARTKOZANKEL
Bartko Zankel Tarrant & Miller, A Professional Corporation
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL
Bartko, Zankel, Bunzel & Miller, Inc., A Law Corp.

900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    (N.D. Cal., 1992) ("In keeping with the flexible and pragmatic approach taken to

2    *Colorado River* analysis, the Ninth Circuit has loosened the requirement that the

3    suits pending in state and federal court involve exactly the same parties or the same

4    claims . . . .").

5         The *Colorado River* factor of avoiding piecemeal litigation is especially

6    implicated here.  The AG has reported in state court filings that it is working on

7    resolving matters with all defendants pursuant to one or more potential "consent

8    judgments" that will inevitably address lead content and testing.[27]  If this court were

9    to entertain injunctive relief under § 17200, it would unnecessarily be adjudicating

10   such complex matters anew, duplicating efforts and creating the possibility of

11   inconsistent results. *See American Intern. Underwriters, Inc.,* 843 F.2d at 1258

12   ("Piecemeal litigation occurs when different tribunals consider the same issue,

13   thereby duplicating efforts and possibly reaching different results.")

14        Moreover, § 17200 is a state law claim, and surely the state proceeding

15   is adequate protection for the asserted class given the Attorney General's ability to

16   accord broad injunctive relief on behalf of all California toy-purchasers, if indeed

17   any such relief is appropriate.  The propriety and scope of § 17200 non-monetary

18   relief, if any, should be adjudicated or resolved in the state action.  The Attorney

19   General is "often called upon to make legal determinations both in his capacity as a

20   representative of the public interest and as statutory counsel for the state as one of its

21   agencies or officers." *D'Amico v. Board of Medical Examiners,* 11 Cal.3d 1, 15

22   (1974).[28]

23   ───────────────

24   [27]  Decl. Of Michael D. Abraham in Support of Wal-Mart Stores, Inc's Motion to Dismiss
     and Request for Judicial Notice, at Exh. 2 at p.p. 19 and 38-39 [May 2, 2008 Stipulation

25   (p. 2 ¶¶ 1-3), and May 5, 2008 Order, *People of the State of California v. Mattel.* (¶ 2,
     Exh. 2.)].

26   [28]  "The Attorney General, . . . is the chief law officer of the state (Cal. Const., Art. V
     § 13).  As such he possesses not only extensive statutory powers but also broad powers

27                                          -23-

28      DEFENDANT WAL-MART STORES, INC.'S MPA
     IN SUPPORT OF MOTION TO DISMISS
     Case No. 2:07-ml-01897-DSF-AJW

1    On balance, plaintiffs' claims for injunctive relief under § 17200 should

2    be dismissed (or at least stayed), while the lead law enforcement officer of the state

3    negotiates or obtains orders for any non-monetary relief under § 17200 related to the

4    Mattel and Fisher Price toy recalls.

5    VII.    **CONCLUSION**

6    For the above reasons, plaintiffs' SAC should be dismissed.

7    DATED:  June 23, 2008                BARTKO, ZANKEL, TARRANT & MILLER
                                         A Professional Corporation
8

9

10    By _____
                      Michael D. Abraham
                      Attorneys for Defendant
11                    WAL-MART STORES, INC.

BARTKOZANKEL
Bartko · Zankel · Tarrant · Miller | Tarrant & Miller, Inc. A Partnership
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

12

13

14

15

16

17

18

19

20

21

22

23

24    derived from the common law relative to the protection of the public interest . . . . '[H]e
      represents the interest of the people in a matter of public concern.' (*People's Home Sav.*
25    *Bank v. Superior Court of City and County of San Francisco* 103 Cal. 27, 32 (1894).)
      *California Air Resources Bd. v. Hart,* 21 Cal.App.4th 289, 295 (1993).
26

27                                    -24-

28    1698.031/372815.4                DEFENDANT WAL-MART STORES, INC.'S MPA
                                       IN SUPPORT OF MOTION TO DISMISS
                                       Case No. 2:07-ml-01897-DSF-AJW