COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR. (141757)
RACHEL L. JENSEN (211456)
THOMAS J. O'REARDON II (247952)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
johns@csgrr.com
rachelj@csgrr.com
toreardon@csgrr.com

WHATLEY, DRAKE & KALLAS, LLC        KELLER ROHRBACK LLP
JOE R. WHATLEY, JR.                 LYNN LINCOLN SARKO
EDITH M. KALLAS                     JULI E. FARRIS
JOSEPH P. GUGLIELMO                 GRETCHEN FREEMAN CAPPIO
1540 Broadway, 37th Floor           1201 Third Avenue, Suite 3200
New York, NY 10036                  Seattle, WA 98101-3052
Telephone: 212/447-7070             Telephone: 206/623-1900
212/447-7077 (fax)                  206/623-3384 (fax)
jwhatley@wdklaw.com                  lsarko@kellerrohrback.com
ekallas@wdklaw.com                   jfarris@kellerrohrback.com
jguglielmo@wdklaw.com                gcappio@kellerrohrback.com

Co-Lead Counsel for Plaintiffs       Chair of Plaintiffs' Executive
                                     Committee

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| In re MATTEL, INC., TOY LEAD PAINT PRODUCTS LIABILITY LITIGATION | ) )  ) )  ) ) | No. 2:07-ml-01897-DSF-AJW  PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION BY MATTEL, FISHER-PRICE, TARGET, TOYS "R" US, KMART, AND K-B TOYS TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT  DATE:      September 8, 2008 TIME:      1:30 p.m. PLACE:     Courtroom 840            Roybal Federal Building            Hon. Dale. S. Fischer |

1

# TABLE OF CONTENTS

2

**Page**

3   I.     INTRODUCTION ............................................................... 1

4   II.    FACTUAL BACKGROUND .......................................................... 3

5        A.   The Dangers Posed by Lead and Magnets ............................ 4

6        B.   Defendants Made False Representations of Safety ................ 4

7        C.   Defendants Knew the Hazardous Toys Were Dangerous.................. 6

8   III.   APPLICABLE LEGAL STANDARDS ............................................ 7

9   IV.   ARGUMENT ............................................................... 10

10      A.   Plaintiffs' State Law Claims Are Not Preempted by the CPSA......... 10

11          1.   The CPSA Expressly Allows the Remedies Sought ............... 10

12          2.   Plaintiffs' State Law Claims Are Not Barred by Conflict Preemption ........................................................... 13

13

14      B.   Plaintiffs Allege Cognizable Injuries under the CPSA....................... 15

15      C.   The Magnet Plaintiffs and Cuff Plaintiffs Adequately Allege Violations of the CPSA........................................................ 16

16      D.   Plaintiffs Allege Cognizable Injuries for Certain of Their State Law Claims ........................................................... 20

17

18      E.   Plaintiffs Stated UCL Claims Against Defendants............................ 24

19          1.   Federal Rule of Civil Procedure 9(b) Does Not Apply to Plaintiffs' UCL and CLRA Claims Because They Do Not Sound in Fraud........................................................... 24

20

21      F.   California Law Provides a Remedy for Out-of-State Residents Harmed by Mattel and Fisher-Price....................................... 31

22      G.   Plaintiffs Complied With CLRA's Notification Requirement .......... 34

23      H.   Plaintiffs State A Claim for Unjust Enrichment ................................ 37

24          1.   Plaintiffs Have Properly Plead A Claim for Unjust Enrichment........................................................... 37

25          2.   Plaintiffs Sufficiently Allege Defendants Have Been Unjustly Enriched ........................................................... 38

26

27      I.   Plaintiffs Have Adequately Plead Negligence as to the Retailers ...... 40

28   V.   CONCLUSION ................................................................ 42

- i -

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*6000 S Corp. v. Kelly Energy Sys., Inc.,*
  No. C95-1804VRW, 1996 U.S. Dist. LEXIS 15205
  (N.D. Cal. Sept. 13, 1996) ..................................................................23

*AFA Corp. v. Phoenix Closures Inc.,*
  501 F. Supp. 224 (N.D. Ill. 1980) ........................................................23

*Anunziato v. eMachines, Inc.,*
  402 F. Supp. 2d 1133 (C.D. Cal. 2005)............................................24, 28

*Ashton v. Pierce,*
  541 F. Supp. 635 (D.D.C. 1982) ..........................................................21

*Bank of the West v. Superior Court,*
  2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992)......................................26

*Bell Atlantic Corp. v. Twombly,*
  __ U.S. __, 127 S. Ct. 1955, 167 L. Ed. 2d. 929 (2007) ..........................8, 9

*Bic Pen Corp. v. Carter,*
  171 S.W. 3d 657 (Tex. App. 2005) ....................................................13, 15

*Bocook v. Ashland Oil, Inc.,*
  819 F. Supp. 530 (S.D. W.Va. 1993) ....................................................22

*Brownlee v. Conine,*
  957 F.2d 353 (7th Cir. 1992) (Posner, J.).............................................10

*Buckley v. Metro-North Commuter R.R.,*
  79 F.3d 1337 (2d Cir. 1996).................................................................21

*Burrus v. Itek Corp.,*
  46 Ill. App. 3d 350, 4 Ill. Dec. 793, 360 N.E.2d 1168 (1977) ...................23

*Californians for Disability Rights v. Mervyn's, LLC,*
  39 Cal. 4th 223, 46 Cal. Rptr. 3d 57 (2006).........................................24

*Carlough v. Amchem Prods., Inc.,*
  834 F. Supp. 1437 (E.D. Pa. 1993) .......................................................21

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                                                                                                    **Page**

3   *Cazares v. Pac. Shore Funding*,
4           No. 04-2548DSF(SSX), 2006 WL 149106 (Jan. 3, 2006)............................8

5   *Cel-Tech Communs., Inc. v. Los Angeles Cellular Tel. Co.*,
6           20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999)...............................................27

7   *Central Delta Water Agency v. U.S.*,
            306 F.3d 938 (9th Cir. 2002)........................................................................20
8
9   *Church v. Consolidated Freightways*,
            No. C-90-2290, 1992 WL 370829
10          (N.D. Cal. September 14, 1992)...................................................................34

11  *Churchill Village, L.L.C. v. Gen. Elec., Co.*,
12          169 F. Supp. 2d 1119 (N.D. Cal. 2000) ......................................................14

13  *Clotherigger, Inc. v. GTE Corp.*,
14          191 Cal. App. 3d 605, 236 Cal. Rptr. 605 (1987)............................32, 33, 34

15  *Cole v. Gen. Motors Corp.*,
            484 F.3d 717 (5th Cir. 2007)........................................................................21
16
17  *Committee on Children's Television, Inc. v. Gen. Foods Corp.*,
            35 Cal. 3d 197, 197 Cal. Rptr. 783 (1983)......................................24, 26, 30
18
19  *Concha v. London*,
            62 F.3d 1493 (9th Cir. 1995).......................................................................27
20
21  *Consolidated Data Terminals v. Applied Digital Data Sys. Inc.*,
            708 F.2d 385 (9th Cir. 1983).......................................................................23
22
23  *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*,
            4 Cal. App. 4th 963, 6 Cal. Rptr. 2d 193 (1992)..........................................26
24
25  *County of San Bernardino v. Walsh*,
            158 Cal. App. 4th 533, 69 Cal. Rptr. 3d 848 (2007).........................37, 38, 39
26
27  *Covington v. Jefferson County*,
            358 F.3d 626 (9th Cir. 2004).......................................................................20
28

1
2                                                                                        **Page**
3
*Crispin Co. v. Petrotub-S.A.*,
4          No. Civ-05-159-C, 2006 WL 2812535
           (W.D. Okla. Sept. 28, 2006)......................................................................42
5
*Custom Automated Machinery v. Penda Corp.*,
6          537 F. Supp. 77 (N.D. Ill. 1982) ...........................................................23
7
*Dietz v. Comcast Corp.*,
8          No. 06-06352, 2006 WL 3782902
           (N.D. Cal. December 21, 2006) ...............................................................37
9
10  *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*,
           438 U.S. 59, 98 S. Ct. 2620, 57 L. Ed. 2d 297 (1978)............................21
11
12  *Eberts v. Kawasaki Motors Corp., U.S.A.*,
           306 F. Supp. 2d 890 (D.N.D 2004) .........................................................14
13
*Erickson v. Pardus*,
14          __ U.S. __, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2008)..........................8
15
*Espinosa v. Beverly Hospital*,
16          114 Cal. App. 2d 232, 249 P.2d 843 (1952) ...........................................22
17
*Feinstein v. Firestone Tire & Rubber Co.*,
18          535 F. Supp. 595 (S.D.N.Y. 1982)..............................................18, 19, 21
19
*Friends For All Children v. Lockheed Aircraft Corp.*,
20          746 F.2d 816 (D.C. Cir. 1984) ................................................................22
21  *Geier v. Am. Honda Motor Co.*,
           529 U.S. 861, 120 S. Ct. 1913, 146 L. Ed. 2d 914 (2000)...............11, 13, 14
22
23  *Ghirardo v. Antonioli*,
           14 Cal. 4th 39, 57 Cal. Rptr. 2d 687 (1996)............................................38
24
25  *Gilligan v. Jamco, Dev. Corp.*,
           108 F.3d 246 (9th Cir. 1997).....................................................................10
26
*Grabinski v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
27          No. 05-16987, 2008 WL 266722 (9th Cir. Jan. 29, 2008).........................8
28

**Page**

*Griswold Insulation Co. v. Lula Cotton Processing Co.*,
    540 F. Supp. 1334 (D.C. Tenn. 1982) ....................................................... 16

*Hall v. City of Santa Barbara*,
    833 F.2d 1270 (9th Cir. 1986) ................................................................. 7

*Hall v. Norton*,
    266 F.3d 969 (9th Cir. 2001) ................................................................. 20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................... 32, 33

*Hansen v. Mountain Fuel Supply Co.*,
    858 P.2d 970 (Utah 1993) ..................................................................... 22

*Hibbs v. Jeep Corp.*,
    666 S.W.2d 792 (Mo. Ct. App. 1984) ..................................................... 23

*In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) ................................................. 39

*In re NationsMart Corp. Sec. Litig.*,
    130 F.3d 309 (8th Cir. 1997) ................................................................. 25

*In re Tech. Equities Fed. Sec. Litig.*,
    No. 86-C-20157, 1988 U.S. Dist. LEXIS 15813
    (N.D. Cal. Oct. 3, 1988) ....................................................................... 32

*In re Worlds of Wonder Sec. Litig.*,
    No. 87-C-5491, 1990 U.S. Dist. LEXIS 8511
    (N.D. Cal. Mar. 23, 1990) ..................................................................... 32

*Jiminez v. Sears, Roebuck & Co.*
    4 Cal. 3d 379, 93 Cal. Rptr. 769 (1971) ................................................ 41

*Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*,
    870 A.2d 58 (D.C. 2005) ....................................................................... 38

*Kaisha v. Nat'l Health Trends Corp.*,
    No. CV 04-9028 DSF (Ex)
    2005 WL 1041112 (C.D. Cal Jan. 10, 2005) .......................................... 8

**Page**

*Kendall v. Visa U.S.A., Inc.,*
   518 F.3d 1042 (9th Cir. 2008)........................................................................9

*Killeen v. Harmon Grain Prods. Inc.,*
   413 N.E.2d 767 (Mass. App. Ct. 1980)........................................................41

*Klaxon Co. v. Stentor Electric Mfg. Co.,*
   313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)..................................32

*Laster v. T-Mobile USA, Inc.,*
   407 F. Supp. 2d 1181 (S.D. Cal. 2005)........................................................36

*Lectrodryer v. SeoulBank,*
   77 Cal. App. 4th 723, 91 Cal. Rptr. 2d 881 (2000)...............................37, 38

*Leipart v. Guardian Indus.,*
   234 F.3d 1063 (9th Cir. 2000)..................................................11, 12, 13, 14

*Liew v. Official Receiver & Liquidator,*
   685 F.2d 1192 (9th Cir. 1982)......................................................................33

*Linear Tech. Corp. v. Applied Materials, Inc.,*
   152 Cal. App. 4th 115, 61 Cal. Rptr. 3d 221 (2007)...................................10

*Mann v. Weyerhaeuser Co.,*
   703 F.2d 272 (8th Cir. 1983)........................................................................23

*Martin v. Schoonover,*
   533 P.2d 438, 13 Wash. App. 48 (1975)......................................................41

*Massey-Ferguson Inc v. Laird,*
   432 So.2d 1259 (Ala. 1983) .........................................................................23

*McKell v. Wash. Mut. Inc.,*
   142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (2006)...........................27, 28

*Medtronic Inc. v. Lohr,*
   518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996)....................12, 13

*Meyer v. Fluor,*
   220 S.W.3d 712 (Mo. 2007)........................................................................20

**Page**

*Muehlbauer v. General Motors Corp.*,
    431 F. Supp. 2d 847 (N.D. Ill. 2006) ........................................................ 39, 40

*Multimedia Patent Trust v. Microsoft Corp.*,
    525 F. Supp. 2d 1200 (S.D. Cal. 2007) .................................................. 28, 30

*Nordberg v. Trilegiant Corp.*,
    445 F. Supp. 2d 1082 (N.D. Cal. 2006) ............................................ 25, 26, 38

*Norwest Mortgage, Inc. v. Superior Court*,
    72 Cal. App. 4th 214, 85 Cal. Rptr. 2d 18 (1999) ........................................ 32

*Parker v. Wellman*,
    230 F. Appx 878 (11th Cir. 2007) ............................................................... 21

*People ex rel. Lockyear v. Fremont Life Ins. Co.*,
    104 Cal. App. 4th 508, 128 Cal. Rptr. 2d 463 (2002) ................................. 27

*People v. Casa Blanca Convalescent Homes, Inc.*,
    159 Cal. App. 3d 509, 206 Cal. Rptr. 164 (1984) ....................................... 27

*People v. Superior Court*,
    9 Cal. 3d 283, 107 Cal. Rptr. 192 (1973) ................................................... 24

*Phillips Petroleum v. Shutts*,
    472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ................. 31, 32, 33

*Prata v. Superior Court*,
    91 Cal. App. 4th 1128, 111 Cal. Rptr. 2d 296 (2001) ................................. 26

*Public Util. Dist. No. 1 of Grays Harbor v, IDA Corp., Inc.*,
    379 F.3d 641 (9th Cir. 2004) .......................................................... 13, 18, 30

*Qarbon.com Inc. v. eHelp Corp.*,
    315 F. Supp. 2d 1046 (N.D. Cal. 2004) .................................................. 29, 30

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26, 77 Cal. Rptr. 709 (1998) .................................................. 24, 25

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*,
    No. 06-55937, 2008 WL 2697793 (9th Cir. July 11, 2008) ............................ 9

**Page**

*Rolex Watch U.S.A., Inc. v. Dauley,*
No. 84-6150, 1986 WL 12432
(N.D. Cal. Feb. 4, 1986) ................................................................. 38

*Sanchez v. Wal-Mart Stores, Inc.,*
No. 06-cv-2573, 2007 WL 1345706
(E.D. Cal. May 8, 2007) ............................................................ 35, 36

*Sanitoy, Inc. v. Shapiro,*
705 F. Supp. 152 (S.D.N.Y. 1989) ................................................. 16

*Saunders v. Superior Court,*
27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994) ......................... 28

*Schnall v. Hertz. Corp.,*
78 Cal. App. 4th 1144, 93 Cal. Rptr. 2d 439 (2000) ....................... 30

*Schweitzer v. Consol. Rail Corp.,*
758 F.2d 936 (3d Cir. 1985) ............................................................ 21

*Scrushy v. Tucker,*
955 So.2d 988 (Ala. 2006) ............................................................. 38

*Shum v. Intel Corp.,*
499 F.3d 1272 (9th Cir. 2007) ........................................................ 38

*SST Sterling Swiss Trust 1987 AG v. New Line Cinema, Corp.,*
No. 05-2835, 2005 WL 6141290
(C.D. Cal. Oct. 31, 2005) ............................................................... 31

*State Farm Fire & Cas. Co. v. Superior Court,*
45 Cal. App. 4th 1093, 53 Cal. Rptr. 2d 229 (1996) ....................... 27

*Summerline v. Scott Petroleum Corp.,*
324 F. Supp. 2d 810 (S.D. Miss. 2004) .......................................... 14

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ................. 8, 9

1

2                                                                           **Page**

3   *Tober v. Graco Childrens' Prods.*,
4            No. 02-1682, 2004 U.S. Dist. LEXIS 9011
             (S.D. Ind. Mar. 4, 2004) ....................................................................... 13

5
    *True v. Am. Honda Motor Co.*,
6            520 F. Supp. 2d 1175 (C.D. Cal. 2007)............................................... 31

7
    *United States v. Redwood City*,
8            640 F.2d 963 (9th Cir. 1981)................................................................. 7

9
    *Utility Consumers' Action Network v. Sprint Solutions, Inc.*,
10           No. 07-cv-2231, 2008 WL 1946859
11           (S.D. Cal. April 25, 2008) ................................................................... 36

12  *Van de Kamp v. Bank of Am.*,
             204 Cal. App. 3d 819, 251 Cal. Rptr. 530 (1988)................................ 37, 39
13
    *Vandermark v. Ford Motor Co.*
14           61 Cal. 2d 256, 37 Cal. Rptr. 896 (1964)............................................ 41

15
    *Vasquez v. Superior Court*,
16           4 Cal. 3d 800, 94 Cal. Rptr. 796 (1971)............................................. 27

17  *Verb v. Motorola, Inc.*,
18           672 N.E. 2d 1287, 284 Ill. App. 3d 460 (1996) ................................. 19, 21

19  *Vess v. Ciba-Geigy Corp.*,
20           317 F.3d 1097 (9th Cir. 2003)............................................... *passim*

21  *Vintage Homes Inc. v. Coldiron*,
22           585 S.W.2d 886 (Tex. Civ. App. 1979) ............................................. 23

23  *Von Grabe v. Sprint PCS*,
             312 F. Supp. 2d 1285 (S.D. Cal. 2003) ............................................. 36
24

25  *Washington Mut. Bank v. Superior Court*,
             24 Cal. 4th 906, 103 Cal. Rptr. 2d 320 (2001)................................... 33, 34
26
    *Wershba v. Apple Computer, Inc.*,
27           91 Cal. App. 4th 224, 110 Cal. Rptr. 2d 145 (2001)............................. 32, 34

28

**Page**

*Williams v. Gerber Products Co.*,
     523 F.3d 934 (9th Cir. 2008).......................................................10, 26, 28, 29


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
     §1261...........................................................................................15
     §1261(q)(1)(A) ...........................................................................17
     §2015(b)(1).................................................................................15
     §2051 .........................................................................................14
     §2052(a)(2) .................................................................................17
     §2052(a)(4) .................................................................................16
     §2052(a)(5) .................................................................................16
     §2052(a)(6) .................................................................................16
     §2056 .........................................................................................17
     §2064(a) .....................................................................................18
     §2064(b) ......................................................................................7
     §2064(c) .....................................................................................18
     §2072 ..................................................................................15, 16
     §2072(a)..........................................................................11, 12, 16
     §2072(c) .....................................................................................11
     §2074(a) ..............................................................................12, 14
     §2075(a).....................................................................................11

California Civil Code
     §1770 ...................................................................................35, 36
     §1782(a).....................................................................................35
     §1782(d)...............................................................................36, 37

California Business & Professions Code
     §17200 ................................................................................. *passim*

Uniform Commercial Code
     §2-714(2) ...................................................................................23
     §2-715(1) ...................................................................................23
     §2-719(1) ...................................................................................23

- x -

**Page**

**RULES**

Federal Rules of Civil Procedure
    Rule 8.................................................................................................9, 10, 30
    Rule 8(a) ..........................................................................................................25
    Rule 8(a)(2) ......................................................................................................8
    Rule 9(b)...................................................................................................*passim*

**REGULATIONS**

16 Code of Federal Regulations
    §1115.14 .........................................................................................................7

**SECONDARY AUTHORITIES**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and*
    *Procedure* §1357 (3d ed. 2004).....................................................................7

63 Am. Jur. 2d
    *Products Liability* (2008)
    §88 .................................................................................................................41

*Restatement (Second) of Torts* (1965)
    §402 ...............................................................................................................41

H.R. 4040, 110th Cong. (2008)
    §231(a) ...........................................................................................................12

*California Jury Instructions (BAJI)*
    §9.24 ..............................................................................................................41

1   Plaintiffs, by their attorneys, respectfully submit this memorandum in

2   opposition to Defendants Mattel, Inc., Fisher-Price, Inc. ("Mattel" or "Manufacturer

3   Defendants"), Target Corporation, Toys "R" Us, Inc., KB Toys, Inc., and Kmart

4   Corporation ("Retailer Defendants") (collectively "Defendants") motion to dismiss

5   Plaintiffs' Second Consolidated Amended Complaint ("Complaint").

6   **I.    INTRODUCTION**

7   Despite the fact that lead and lead paint have been banned in children's toys for

8   approximately 30 years, and that the dangers of even minimal lead exposure are well

9   known, on or about August 1, 2007, Mattel announced a massive recall of

10  approximately 1.5 million toys for lead paint contamination, one million of which

11  were sold in the United States.  *See* ¶5.[1]  Two weeks later, on or about August 14,

12  2007, Mattel announced the biggest recall in history, totaling over 18 million toys

13  worldwide, over half of which were sold in the United States.  ¶¶6, 13.  The August 14

14  recalls included toys that contained lead paint as well as toys that contained small,

15  loose magnets which could cause serious internal injuries and death.  *Id.*[2]

16  Defendants allowed these dangerous toys to be sold to consumers nationwide

17  due to their failure to safely design and adequately monitor the manufacture of the

18  toys in China, and/or inspect them prior to sale.  As a result, hundreds of thousands, if

19  not millions, of young children were exposed to toxic lead and lead paint, and/or

20  handled dangerous loose magnets.  Yet in their motion, Defendants try to minimize

21  the dangerous consequences of introducing their hazardous products into schools,

22  childcare centers, homes, and ultimately children's bodies.

23  _____

24  [1]    Paragraph references ("¶__" or "¶¶__") are to the Complaint.

25  [2]    As detailed in the Complaint, all the toys that have been recalled by Mattel,
26  including the toys containing lead, lead paint, and small loose magnets, as well as the
    toy blood pressure cuff withdrawn from retail stores in December 2007 and those toys
27  that contain lead in excess of applicable standards or unsafe magnets that have not yet
    been recalled, will be referred to herein as "Hazardous Toys."

28

As a consequence of Defendants' conduct, Plaintiffs have been injured in the form of exposure to lead and loose magnets that may result in serious adverse health problems.  Plaintiffs have also suffered injury in the amount of the purchase price of these defective and otherwise Hazardous Toys.  Plaintiffs and the Class brought this action to, *inter alia*, recover monies spent on the Hazardous Toys and reimbursement for diagnostic screening of their children who were exposed to the Hazardous Toys. ¶15.

Defendants raise a number of unsupported and unpersuasive arguments in their motion.  For example, while Defendants cannot deny they designed, manufactured, and sold millions of defective products, they hollowly assert that, because of the recall program, "Plaintiffs have lost nothing."  Defs' Mem. at 16.[3]  However, in arguing that Mattel's replacement program is the sole remedy that the law affords, Defendants ignore applicable Ninth Circuit case law holding that Plaintiffs may assert claims arising from Defendants' conduct and that such claims are not preempted.  Further, Defendants fail to grasp the steps that many responsible parents took to ensure their toddlers were safe, including disposing of any defective toy (and not permitting any possibly contaminated Mattel toy into the house following the recalls) and/or having their children tested for lead poisoning or other injury.

Contrary to Defendants' suggestion, consumers are not faced with an 'either/or' decision to acquiesce to a voucher (that will soon expire) for a replacement part (or toy) that may also be hazardous, or to forgo any remedy at all.  Rather, as explained herein, Plaintiffs are entitled to damages, restitution, and the cost of diagnostic screening as remedies under applicable federal and state statutes, regulations, and the common law.

---

[3]   "Defs' Mem." refers to the Memorandum of Points and Authorities in Support of Motion by Mattel, Fisher-Price, Target, Toys "R" Us, Kmart, and K-B Toys to Dismiss Second Amended Consolidated Complaint.

Despite their knowledge that, during the Class Period, certain toys were manufactured such as lead and/or were defectively designed using hazardous substances. Defendants continued to inadequately monitor manufacturing operations or inspect the products, resulting in more toys with lead, lead paint and/or loose magnets to be made and distributed, increasing the risk of harm to children. Defendants must be held accountable.

The Complaint is replete with factual allegations that, if proven with the benefit of discovery, state claims against Defendants for the following: (1) breach of express warranty; (2) breach of implied warranty; (3) negligence in design, manufacturing, and failure to warn; (4) strict liability for design defect, manufacturing defect, and failure to warn; (5) violations of the Consumer Product Safety Act ("CPSA") and Consumer Product Safety Rules; (6) violations of California Business & Professions Code §17200 ("UCL"); (7) violations of the California Legal Remedies Act ("CLRA"); (8) violations of the Song-Beverly Consumer Warranty Act; and (9) unjust enrichment. Accordingly, Defendants' motion to dismiss is not well taken and should be denied in its entirety.[4]

## II.     FACTUAL BACKGROUND

Mattel designs, manufactures and markets some of the most popular toys in the United States such as Barbie, Winnie the Pooh and Geotrax. ¶¶35-36. The toys purchased by the Plaintiffs and involved in the lead and magnet recalls are some of Mattel's most well known names, including, Polly Pocket, Sesame Street characters such as Ernie, Elmo and Cookie Monster, Barbie, "Sarge," Go Diego Go and Dora the Explorer. ¶¶16-34. A complete list of the toys involved in the recalls were identified in the Complaint. *See* Complaint, Exs. A-I.

---

[4]     Plaintiffs hereby incorporate by reference their opposition to Wal-Mart's motion to dismiss, including all relevant arguments, the statement of fact, and the applicable legal standards.

**A.      The Dangers Posed by Lead and Magnets**

Lead exposure is hazardous to human health and is toxic to almost every organ system, including the central nervous system, peripheral nervous system, kidneys and blood.  ¶45.  Children are far more susceptible to lead exposure than adults and those children under the age of six are especially vulnerable because their brains and central nervous system are still developing.  ¶46.  Even at low levels of exposure, children can experience a reduced IQ, learning disabilities, attention deficit disorders, behavioral problems, stunted growth, impaired hearing and kidney damage.  *Id*.

Similarly, loose magnets, including the ones the Defendants used in the recalled toys they manufactured and sold, are also dangerous to children and can cause fatal injury.  ¶50.  When magnets become loose and are swallowed by children, they can cause serious intestinal injury, including intestinal perforation.  *Id*.

**B.      Defendants Made False Representations of Safety**

Despite the well known dangers of lead and loose magnets, the Manufacturer Defendants consistently represented that their toys were inspected to ensure they met or exceeded safety requirements.  ¶53.  In fact, the Manufacturer Defendants marketed themselves as trustworthy providers of safe toys.  *Id.*  Mattel's representations about product safety are not abstract; the company's Code of Conduct states, "We will ***meet or exceed legal requirements and industry standards*** for product quality and safety."  ¶55.[5]  Mattel also falsely represented on the boxes of toys containing lead paint, including the Hazardous Toys at issue, that the toys conform to the safety requirements of the ASTM (originally known as the American Society for Testing and Materials) F-963 standard, which prohibits the use of lead paint and surface coatings containing lead.  ¶¶82-83.  Further, the 2007 Mattel Global Reporting Initiative Report, accessible from Mattel's website, states: "We work closely with our design,

---

[5]      Emphasis is added and citations are omitted throughout unless otherwise indicated.

1   engineering and manufacturing teams to design safety and quality into our products
2   and to build them in a consistent, predictable manner to ensure the products meet our
3   specifications." ¶59.

4        Defendants were also members of the Toy Manufacturers of America ("TMA"),
5   now the Toy Industry Association ("TIA"), when the organization pledged to
6   eliminate all lead from toys in 1997.  The TMA made the following statement
7   concerning the use of lead: "No one disputes the toxic effects of lead.  It is poison.  It
8   is unthinkable that toy manufacturers, the very people whose mission in life is to
9   provide safe playthings for children, would not be in the forefront of efforts to see that
10  those children come to no harm.  Rest assured.  They are." ¶78.  Additionally, on
11  August 20, 1998, the TMA, on behalf of its members, issued the following press
12  release which pledged to cease use of lead in all toys:

13       The Toy Manufacturers of America (TMA) has pledged that its members
14       will help reduce children's exposure to hazardous lead levels.  They will
15       go beyond what the law requires by eliminating lead from their products.
16  ¶80.  According to TMA President David Miller, "TMA members have always been
17  vigilant in ensuring that children are not exposed to hazardous levels of lead from
18  their products.  We are now going beyond what the law requires, and eliminating lead
19  from our products altogether." *Id.*

20       Ten years later, despite Defendants' prior representations, they failed to
21  eliminate lead from their toy products.   ¶81.   Nonetheless, the Manufacturer
22  Defendants continue to profess their supposed commitment to keeping lead and other
23  hazardous materials out of toys, and still promise consumers that they uphold the
24  highest safety and quality standards. *See* ¶¶53, 55-63, 71-76.

25       The Retailer Defendants, which made additional promises of safety to parent
26  consumers, such as Target's statement that "[g]uest safety has and continues to be a
27  top priority for Target," and Toys "R" Us's assertion that the company requires "that
28  any products we purchase . . . comply with all applicable government and industry

- 5 -

1   laws, codes and requirements," had a duty to keep these promises and to inquire
2   whether the testing and quality control systems used by Manufacturing Defendants
3   were adequate.  ¶¶73-74.  Certainly these promises were broken when Defendants
4   allowed the manufacture, distribution and sale of hazardous products that were banned
5   pursuant to the CPSA.

6   **C.    Defendants Knew the Hazardous Toys Were Dangerous**

7          Mattel was on notice that its products from China were contaminated with lead.
8   Starting in January 2005, up until Mattel's first recall of toys containing lead on
9   August 2, 2007, the CPSC was involved in over 14 recalls of Chinese-made toys for
10  lead paint.  ¶85.  On June 8, 2007, independent test results, from a laboratory hired by
11  the French retailer Auchan, indicated excessive lead in Mattel's toys; these results
12  were communicated to some Mattel employees in China on or about June 8, 2007.
13  ¶¶90-91.  On July 3, 2007, a Fisher-Price toy showed excessive lead levels.  These
14  results were confirmed on July 6, 2007; Mattel stopped production on July 12, 2007.
15  ¶91.

16         On July 20, 2007, over six weeks after becoming aware of the lead
17  contamination of its toys, Mattel finally informed the CPSC of its findings.  ¶92.  It
18  was not until August 2, 2007, nearly ***two months*** after its discovery of the lead
19  contamination, that Mattel announced the recall of approximately 1.5 million toys
20  worldwide.  *Id.*  Two weeks later, on August 14, 2007, the largest recall in history was
21  announced, totaling over 18 million toys, with 9 million in the United States, for lead
22  paint and small magnets.  ¶¶6, 13.  Approximately two million toys were recalled
23  between August 2, 2007 and October 25, 2007; even so, not all of Mattel's lead
24  containing toys were included.  ¶¶6, 12.

25         Under the CPSA, manufacturers, distributors, and retailers are required to report
26  to the CPSC ***within 24 hours*** after obtaining information which "reasonably supports
27  the conclusion that" a product does not "comply with an applicable consumer product
28  safety rule"; "contains a defect which could create a substantial product hazard;" "or

1  creates unreasonable risk of serious injury or death." 15 U.S.C. §2064(b).  The CPSC
2  may allow a "reasonable time" for internal investigations, not to exceed ten working
3  days unless it is shown longer is reasonable.  16 C.F.R. §1115.14.

4          Manufacturer Defendants were aware of lead contamination in their toys on or
5  before June 8, 2007, but waited until July 20, 2007 to inform the CPSC that excessive
6  lead levels had been used in the manufacture of toys distributed and sold throughout
7  the United States and other countries.  ¶¶90-92.  Although it is clear this delay did not
8  comply with the CPSC procedures, Mattel contends the implementation of an internal
9  recall process justifies the delay, which implies Mattel's process supersedes the
10  standards set forth by the CPSC.  ¶93.

11          Just as it was on notice of possible lead contamination, Mattel and the other
12  Defendants were aware of the risks from its defective products and magnets coming
13  loose from its toys long before it acted.  As early as February 2006, a seven-year old
14  child was injured after swallowing two magnets from a Polly Pocket toy.  ¶96.  Mattel
15  waited until November 21, 2006, *nine months later*, to issue the first recall of these
16  toys.  ¶97.  Mattel attempted to alleviate the problem by using stronger glue, yet
17  another recall was announced on August 14, 2007.  ¶¶125, 129.  While Mattel
18  attributes the loose magnets to a design flaw and claims that the 2007 recall was a
19  retroactive application of a higher standard after the toys were redesigned, Plaintiffs
20  believe that the evidence will show Mattel permitted millions of the same type of
21  Hazardous Toy already subject to the first recall to remain on the market for nine
22  more months.  ¶¶128-129.

23  **III.    APPLICABLE LEGAL STANDARDS**

24          "It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed
25  with disfavor and is rarely granted.'"  *Hall v. City of Santa Barbara*, 833 F.2d 1270,
26  1274 (9th Cir. 1986).  Thus, "it is only the extraordinary case in which dismissal is
27  proper."  *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); 5 Charles
28  Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1357 (3d ed.

2004). When considering a motion to dismiss, a court must accept as true the complaint's allegations and construe them in the light most favorable to the plaintiff. *Grabinski v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 05-16987, 2008 WL 266722, at *1 (9th Cir. Jan. 29, 2008); *see also Cazares v. Pac. Shore Funding*, No. 04-2548DSF(SSX), 2006 WL 149106, at *1 (C.D. Cal. Jan. 3, 2006).

Further, Fed. R. Civ. P. 8(a)(2) provides that a complaint must include only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Grabinski*, 2008 WL 266722, at *2; *see also Kaisha v. Nat'l Health Trends Corp.*, No. CV 04-9028 DSF (Ex), 2005 WL 1041112, at *1 (C.D. Cal Jan. 10, 2005) (Fischer, J.); *accord Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting Fed. R. Civ. P. 8(a)(2)).

The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d. 929 (2007), makes clear that it was not imposing a heightened pleading standard: "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."[6]

In fact, only two weeks after issuing *Twombly,* the Supreme Court, in a §1983 case, cited the *Twombly* decision for the proposition that Rule 8(a)(2) requires only a "'short and plain statement of the claim,'. . . [s]pecific facts are not necessary; the statement need only "give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2008).

---

[6]   The Supreme Court noted that it could not alter the notice pleading requirements of the Federal Rules of Civil Procedure – a rules amendment would be required. *Twombly*, 127 S.Ct. at 1974 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

Indeed, the Ninth Circuit noted in two recent decisions that *Twombly*'s enhanced pleading standard does not extend beyond that limited context. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (reasoning that *Twombly*'s higher pleading standards is uniquely necessary in antitrust actions "because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case"); *accord Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, No. 06-55937, 2008 WL 2697793, at *5 (9th Cir. July 11, 2008) (emphasizing *Twombly*'s application "in antitrust matters").

Thus the reversion to this fundamental notice-pleading language in a non-antitrust setting suggests that the Court may have intended *Twombly*'s "plausibility" standard to be limited to the Sherman Act conspiracy context.[7]  The "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512.  As Judge Posner aptly put it:

> The Federal Rules of Civil Procedure establish a system of notice pleading rather than of fact pleading, so the happenstance that a complaint is "conclusory," whatever exactly that overused lawyers' cliché means, does not automatically condemn it.  All the complaint need do to withstand a motion to dismiss for failure to state a claim is "outline or adumbrate" a violation of the statute or constitutional provision upon which the plaintiff relies, and connect the violation to the named defendants.

---

[7]     To the extent that the Court believes that *Twombly* requires Plaintiffs to allege more than what is required by Rule 8, Plaintiffs believe that the detailed allegations of the Complaint would more than satisfy such a requirement.

*Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992) (Posner, J.); *see also Gilligan v. Jamco, Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) ("The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'").

With respect to claims brought under the California Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA"), dismissal at the pleadings stage occurs only in the rarest of cases, as "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for a decision on demurrer." *Williams v. Gerber Products Co.*, 523 F.3d 934, 939 (9th Cir. 2008); *see, e.g.*, *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35, 61 Cal. Rptr. 3d 221 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.'").

Plaintiffs' painstakingly detailed Complaint satisfies any pleading standard. Defendants' motions should be denied in their entirety.

## IV.   ARGUMENT

### A.   Plaintiffs' State Law Claims Are Not Preempted by the CPSA

Defendants argue that the CPSA bars the award of a refund for the Hazardous Toys under basic preemption principles. *See* Defs' Mem. at 7-11. However, contrary to Defendants' argument, the CPSA will not preempt Plaintiffs' state law claims, including the remedies that Plaintiffs seek pursuant to those claims.

#### 1.   The CPSA Expressly Allows the Remedies Sought

Defendants' argument that Plaintiffs seek to "usurp the election of remedy set forth" in the CPSA is plainly wrong. Defs' Mem. at 9. Indeed, Defendants fail to cite controlling Ninth Circuit case law on the issue of preemption that hold that the CPSA's express preemption provision and its "savings clauses" preserve Plaintiffs'

1   state law claims.  *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 120 S. Ct. 1913,

2   146 L. Ed. 2d 914 (2000); *Leipart v. Guardian Indus.*, 234 F.3d 1063 (9th Cir. 2000).

3         The CPSA contains an express preemption, §2075, and two savings clauses,

4   §2072(c) and 2074(a).  Section 2075 states in pertinent part:

5         Whenever a consumer product safety standard under this Act is in effect

6         and applies to a risk of injury associated with a consumer product, no

7         State or political subdivision of a State shall have any authority either to

8         establish or to continue in effect any provision of a safety standard or

9         regulation which prescribes any requirements as to the performance,

10        composition, contents, design, finish, construction, packaging, or

11        labeling of such product which are designed to deal with the same risk of

12        injury associated with such consumer product, unless such requirements

13        are ***identical*** to the requirements of the Federal standard.

14  15 U.S.C. §2075(a).

15        The "savings clause," §2072(c), provides that other remedies, including

16  common law remedies, are not preempted by §2072(a).  *See Leipart*, 234 F.3d at 1067

17  (the first savings clause of the CPSA saves non-CPSA remedies when a defendant

18  violates a safety standard under the CPSA).  Section 2072(c) specifically provides that

19  "[t]he remedies provided for in this section shall be in addition to ***and not in lieu of***

20  any other remedies provided by common law or under Federal or State law."   15

21  U.S.C. §2072(c).  Additionally, on July 31, 2008, Congress passed the Consumer

22  Product Safety Improvement Act of 2006, which clarifies that, "[i]n accordance with

23  the provisions of [the CPSA], the [CPSC] may not construe any such Act as

24  preempting any cause of action under State or local common law or State statutory

25

26

27

28

1   law regarding damage claims." H.R. 4040, 110th Cong. §231(a) (2008). For this

2   reason alone, Defendants' argument should be disregarded.[8]

3       Indeed, it seems that Defendants simply ignored both the language of the CPSA

4   as well as the current Ninth Circuit law interpreting such language. In *Leipart*, the

5   Ninth Circuit stated:

6       To the degree that state common law provides additional remedies for

7       violations of federal safety standards – and therefore provides additional

8       incentives for potential defendants to comply with the federal standards –

9       that law is not preempted. Because such state remedies supplement the

10      federal remedies provided in §2072(a), they provide additional

11      protection for the "public against unreasonable risks of injury associated

12      with consumer products."

13  *Id.* 234 F.3d at 1068.

14      Furthermore, the Supreme Court addressed an analogous issue in *Medtronic*

15  *Inc. v. Lohr*, 518 U.S. 470, 471, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996), when it

16  examined whether the Medical Device Amendments of 1976 ("MDA") preempted

17  state common law actions against the manufacturer. The MDA did not contain a

18  savings clause such as the one in the CPSA, however, the Court determined that

19  common law remedies premised on violations of the federal requirement were not

20  preempted. *Id.* at 489. The Supreme Court held that the presence of a damages

21  remedy does not amount to the additional or different requirement that is necessary

22  under the statute; rather, it merely provides another reason for manufacturers to

23  comply with identical existing requirements under federal law. *Id.*

24  _____

25  [8]    Section 2074 of the CSPA provides that common law and state statutory
    remedies are not pre-empted even when a defendant has complied with federal
26  consumer product safety rules. *See Leipart*, 234 F.3d at 1067. Section 2074(a) states:
    "Compliance with consumer product safety rules or other rules or orders under this
27  Act shall not relieve any person from liability at common law or under State statutory
    law to any other person." 15 U.S.C. §2074(a).

28

1    Thus, following the guidance established in *Medtronic* and in *Leipart,* the state

2    common law remedies do not amount to different or additional requirements and

3    should not be preempted.  *Leipart*, 234 F.3d at 1068.[9]

4              **2.    Plaintiffs' State Law Claims Are Not Barred by
                       Conflict Preemption**

5              Defendants contend that Plaintiffs' state-law remedies conflict with the federal

6    regulatory scheme.   Defs' Mem. at 9.[10]   The facts of this case do not support

7    Defendants' contention.   Conflict preemption occurs "'where it is impossible for a

8    private party to comply with both state and federal requirements…or where state law

9    "stands as an obstacle to the accomplishment and execution of the full purposes and

10   objectives of Congress.'"   *Leipart*, 234 F.3d at 1069.  Here, neither state law nor

11

12

13

----

14   [9]    Similarly, in *Geier*, 529 U.S. 861, the Supreme Court evaluated federal preemption of state common law claims under the National Traffic and Motor Vehicle Safety Act of 1996 (the "Safety Act").   The Safety Act contained an express

15   preemption and savings clause similar to those found in the CPSA.  The Court looked at those provisions and held that state requirements imposed under common law tort

16   actions were distinct from state "standards" within the meaning of the Safety Act and thus held that common law tort actions were not preempted by the text of the statute.

17   *Id*. at 868.  Here, just as in *Geier*, plaintiffs' state law claims will be excluded from the express preemption provision of the CPSA by its saving clauses.  *See also Tober v.*

18   *Graco Childrens' Prods.*, No. 02-1682, 2004 U.S. Dist. LEXIS 9011, at *11 (S.D. Ind. Mar. 4, 2004) (holding that the "saving clause of the CPSA saves the tort claims from

19   express preemption"); *Bic Pen Corp. v. Carter*, 171 S.W. 3d 657, 663 (Tex. App. 2005) (stating that the parties' agree that the design defect claim was not expressly

20   preempted by the CPSA).

21   [10]   Defendants rely on *Public Util. Dist. No. 1 of Grays Harbor v. IDA Corp., Inc.*, 379 F.3d 641 (9th Cir. 2004), in support of their claim of conflict preemption;

22   however, *Grays Harbor* is inapplicable to the facts of this case.  The claims in *Grays Harbor* were based on conduct that took place in the wholesale energy market, a field

23   regulated by the federal government through the Federal Power Act and placed within the exclusive jurisdiction of the Federal Energy Regulatory Commissions ("FERC").

24   At issue in *Grays Harbor* were plaintiffs' contract claims, and unlike the Plaintiffs and claims here, plaintiffs in *Gray's Harbor* were asking the court to "invok[e] a state

25   rule . . . that would interfere with the method by which the federal statute was designed to reach its goals (specifically, FERC regulation of wholesale electricity

26   rates)."  *Id*. at 650.  In *Grays Harbor*, plaintiffs were challenging the exclusive authority over rate regulation provided to the Commission.  This is simply not the case

27   in the instant matter.

28

                                        - 13 -

1   Plaintiffs' common law claims interfere with the goals of Congress in enacting the

2   CPSA.

3       The goals of the CPSA are to "'develop uniform safety standards'" and "to

4   minimize conflicting state and local 'regulations.'"  *Leipart*, 234 F.3d at 1069-70

5   (citing 15 U.S.C. §2051).  In *Leipart*, the Ninth Circuit found that the plaintiffs'

6   common law claims were not preempted by the CPSA as it "was . . . not persuaded

7   that state common-law tort actions conflict with the overarching goals of the CPSA to

8   create a system in which federal standards and state common law requirements both

9   have roles to play."  *Id*. at 1070.  The Ninth Circuit noted: "As the Court stated in

10  *Geier*, [the Safety Act] created 'only a floor, *i.e.* a minimum safety standard,' above

11  which state common law requirements were permitted to impose further duties.  We

12  believe the same is true of the CPSA." *Id*.

13      The Ninth Circuit also found the common law claims imposed "no obligations

14  that would have surprised Congress when it drafted the CPSA and explicitly saved

15  'liability at common law' from federal preemption." *Id*. (citing 15 U.S.C. §2074(a)).[11]

16      Many other courts have concluded that state common law claims do not conflict

17  with the CPSA.  *See Eberts v. Kawasaki Motors Corp., U.S.A.*, 306 F. Supp. 2d 890,

18  894 (D.N.D 2004) (holding that plaintiff's failure to warn claim was not preempted by

19  the CPSA "because the state common law warnings standards do not conflict with or

20  stand as an obstacle to accomplishing the purposes of the CPSA, particularly as

21  Congress included a 'savings clause' within the statute"); *Summerline v. Scott*

22  *Petroleum Corp*., 324 F. Supp. 2d 810, 814 (S.D. Miss. 2004) (the CPSA does not

23  preempt plaintiff's claims of negligence, strict liability, breach of warranties and

24  ─────────────

25  [11]     Additionally, other courts have likewise held that other claims such as those
    brought by Plaintiffs are not preempted.  *See Churchill Village, L.L.C. v. Gen. Elec.,*
26  *Co.*, 169 F. Supp. 2d 1119, 1127-28 (N.D. Cal. 2000) (holding that California claims
    of unfair business practices and false advertising did not conflict and thus were not
27  subject to federal preemption by the CPSA).

28

- 14 -

1   failure to warn against the manufacture, importer, distributor and seller of the lighter
2   because "the CPSA forms only a minimum safety standard, and its provisions are not
3   intended to completely replace or preempt state common law causes of action"); *Bic*
4   *Pen*, 171 S.W.3d at 664 (holding that the plaintiff's design defect claim was not
5   preempted by federal standards because it was "not an obstacle to the accomplishment
6   and execution of any federal objectives regarding disposable lighters . . . [a]ny rule of
7   law created by the claim would be in harmony with existing federal standards and
8   further the federal objectives, even if its net effect would be to make lighters safer for
9   children").

10        Here, Plaintiffs' common law claims and the remedies sought do not conflict
11   with the CPSA.  Rather, Plaintiffs' claims ***parallel*** the objectives of the CPSA as they
12   are premised on violations of federal standards such as the Federal Hazardous
13   Substances Act ("FHSA"), 15 U.S.C. §1261 *et seq*., which bans products intended for
14   use by children that contain a hazardous substance, such as lead.  Further, Plaintiffs'
15   claims do not seek to create new law that would conflict with an existing framework
16   or set of regulations.  For these reasons, Defendants' argument should be rejected and
17   Plaintiffs' state law claims and remedies sustained.

18        **B.    Plaintiffs Allege Cognizable Injuries under the CPSA**

19        As Defendants note, one of the principal purposes of the CPSA is to "'protect
20   the public against unreasonable risks of injury associated with consumer products.'"
21   Defs' Mem. at 18 (quoting 15 U.S.C. §2015(b)(1)).  Defendants argue that Plaintiffs
22   have failed to state a claim under 15 U.S.C. §2072 due to a lack of cognizable injury.

23        There can be no question that Plaintiffs have a claim under the CPSA.  Section
24   2072 of the Consumer Product Safety Act specifically states:

25        (a) Persons injured; costs; amount in controversy.  Any person who shall
26        sustain injury ***by reason of any knowing (including willful) violation of***
27        ***a consumer product safety rule***, or any other rule or order issued by the

28

- 15 -

1    Commission may sue any person who knowingly (including willfully)

2    violated any such rule or order . . . .

3  15 U.S.C. §2072(a); *see also* 15 U.S.C. §2052(a)(4)-(6).

4        An injury is sustained by a violation of a CPSA safety rule or order regardless

5  of whether accompanied by an actual physical injury. *See Griswold Insulation Co. v.*

6  *Lula Cotton Processing Co.*, 540 F. Supp. 1334, 1341 (D.C. Tenn. 1982) ("Congress

7  could not have intended actual physical injury to be a prerequisite to recovery under

8  the CPSA"); *see* ¶¶220-221, 223 (describing Defendants' violations of consumer

9  product safety rules).

10        As discussed herein, Plaintiffs allege they suffered injuries in the form of: (1)

11  their children's exposure to lead, a significant and medically known toxic substance,

12  and/or hazardous magnets, which pose dangers of grave internal injury; (2) the

13  purchase of defective and worthless toys; and (3) the costs incurred by medically

14  screening their children for lead poisoning. *See* ¶¶15, 51; *see also infra*, §IV.D.

15  (discussion of Plaintiffs' injuries under state law).

16        Since Plaintiffs have alleged violations of consumer product safety rules and

17  also alleged injury in the form of exposure to the Hazardous Toys, their CPSA claims

18  should not be dismissed.[12]

19        **C.    The Magnet Plaintiffs and Cuff Plaintiffs Adequately Allege**
              **Violations of the CPSA**

20

21        Defendants focus their dismissal efforts on the Plaintiffs who purchased

22  recalled magnet toys or the blood pressure cuffs, arguing that exposure to a defective

23  _____

[12]    Defendants' reliance on *Sanitoy, Inc. v. Shapiro*, 705 F. Supp. 152 (S.D.N.Y.

24  1989), is misplaced. Defs' Mem. at 18. In *Sanitoy*, the plaintiffs, salesmen of toys
    alleged that the dumbbells they received from the defendant supplier were defective

25  and, therefore, were unable to be sold. *See* 705 F. Supp. at 158-59. The plaintiffs in
    *Sanitoy* therefore did not suffer nearly the type of injuries that Plaintiffs suffered here,

26  including exposure to lead, lead paint or magnets which put them at risk for serious
    adverse health effects. Additionally, the court in *Sanitoy* recognized the language of

27  §2072 does not define the type of injury for which a private right of action is
    provided. *See id.*

28

1    and potentially life-threatening product is not a cognizable injury.  Defs' Mem. at 13-

2    14.   However, as discussed *infra* in §IV.D, Defendants are wrong.   Moreover,

3    Defendants fail to acknowledge that Plaintiffs allege, in addition to the handling of

4    loose magnets and exposure to lead in the toy cuff, that they purchased defective and

5    hazardous toys that were not fit as playthings for children.

6        The cuff and magnet Plaintiffs – Keile Allen, Nicole White, Julie Probst, and

7    Stacy Rusterholtz – have properly alleged a claim under the CPSA because such

8    products are banned hazardous products.  ¶¶16, 32-34.  Although Defendants provide

9    a partial definition of Section 2052 of the CPSA, which defines a "consumer product

10   safety rule," Defendants fail to provide the entire definition which states: "the term

11   'consumer product safety rule' means a consumer products safety standard described

12   in section 7(a) [15 U.S.C. §2056], or a rule under this Act declaring a consumer

13   product a banned hazardous product."  15 U.S.C. §2052(a)(2).

14       The definition of a "banned hazardous substance" is contained in the Federal

15   Hazardous Substances Act ("FHSA"), which covers toys containing lead and allows

16   claims to be brought for hazardous toy products such as the blood pressure cuff which,

17   contain lead, a hazardous substance.  Specifically, the FHSA's definition of banned

18   hazardous substance includes: "any toy, or other article intended for use by children,

19   which is a hazardous substance, or which bears or contains a hazardous substance in

20   such manner as to be susceptible of access by a child to whom such toy or other article

21   is entrusted."  15 U.S.C. §1261(q)(1)(A).

22       The blood pressure cuff clearly fits the definition of a banned hazardous

23   substance.   Therefore, those Plaintiffs who purchased the blood-pressure cuffs

24   containing lead have stated a claim under the CPSA.  Defendants cannot credibly

25   claim that lead levels at 4,500, 5,900 and 10,000 parts per million that have been

26   found in the cuffs do not constitute a banned hazardous substance.  *See* ¶¶132-135.

27

28

1   Additionally, the lead in the blood pressure cuff and the loose magnets created a
2   "substantial risk of injury."  15 U.S.C. §2064(c).  The CPSA defines a substantial
3   product hazard as:

4         (1)    a failure to comply with an applicable consumer product safety
5         rule which creates a ***substantial risk of injury to the public,*** or

6         (2)    a product defect which . . . creates a substantial risk of injury to
7         the public.

8   15 U.S.C. §2064(a).

9         Because the blood pressure cuffs and recalled toys containing loose magnets
10  created a substantial risk of injury, the cuff Plaintiffs and magnet Plaintiffs have
11  alleged a violation of the CPSA.

12        Furthermore, when Mattel announced the magnet recalls starting in November
13  2006, it determined its toys were a substantial product hazard – loose magnets that
14  could cause intestinal perforations or blockages – thereby requiring them to be
15  recalled.  The fact that the CPSC and Mattel issued a recall on the magnet toys
16  acknowledges that such toys created a substantial risk of injury under the CPSA
17  and/or were in violation of a consumer product safety rule.  Indeed, one of the
18  Defendants' magnet recalls stated: "Small magnets inside the dolls and accessories
19  can come loose.  The magnets can be found by young children and swallowed or
20  aspirated.  If more than one magnet is swallowed, the magnets can attract each other
21  and cause intestinal perforation or blockage, which can be fatal." Appendix I to Defs'
22  Mem., Ex. 2 at 6.  The recall and the foregoing language is an admission by Mattel
23  that the recalled magnet toys were a substantial product hazard creating a substantial
24  risk of injury to the public.  Thus, the magnet Plaintiffs have stated a claim under the
25  CPSA.

26        Defendants' cases cited in support of the dismissal of the blood-pressure cuff
27  and magnet claims are unpersuasive or distinguishable.  For example, in *Feinstein v.*
28  *Firestone Tire & Rubber Co.*, 535 F. Supp. 595 (S.D.N.Y. 1982), the court did not

- 18 -

1    determine whether plaintiffs' complaint stated a claim.  Rather, the decision focused

2    on whether the plaintiffs' claims could be certified.  In denying class certification, the

3    court noted that because the majority of the allegedly defective tires exceeded the

4    maximum treadwear mileage guarantee, there was no injury to class members whose

5    tires did not fail.  Rather, the court determined that such plaintiffs were not injured

6    because they received the benefit of the bargain.  *Id.* at 602.

7        Likewise, Defendants' reliance upon *Verb v. Motorola, Inc.*, 672 N.E. 2d 1287,

8    284 Ill. App. 3d 460, 472 (1996), is unavailing.  In *Verb*, the plaintiffs brought a

9    personal injury action for potential future injuries resulting from their use of cell

10   phones.  The plaintiffs specifically disclaimed any other injury from the use of the

11   phones nor did they bring a claim based on a defective product.  *Id.* at 471.  The court

12   dismissed the action holding that the increased risk of injury from a ***potentially*** unsafe

13   cell phone was not actionable.  *Id.* at 472.  *Verb* is therefore unlike the instant matter

14   since Plaintiffs here allege an actual injury from use of toys containing small magnets

15   and lead and which are actually unsafe and defective products not fit for use, the *Verb*

16   plaintiffs made no such claim.  Indeed, the court in *Verb* noted:

17       Absent from the plaintiffs' . . . "third amended complaint" which

18       survived defendants' subsequent motion to dismiss, have a present

19       personal injury . . . . ***Nor did plaintiffs allege that the telephones are***

20       ***defective; rather their warranty claims, are based upon the possibility***

21       ***that the telephones may be defective*** because of the "unproven" safety

22       of those telephones.

23   *Id*.

24       For the foregoing reasons, Plaintiffs have sufficiently alleged an injury in fact

25   under the CPSA.[13]

26   _____

27   [13]    Moreover, Plaintiffs have clearly alleged that they have been injured as a result

28   of the exposure to the hazardous toys ***and because they purchased products that were***

**D.      Plaintiffs Allege Cognizable Injuries for Certain of Their State Law Claims**

In support of their negligence and strict liability claims, Plaintiffs allege that they have been injured based on their children's exposure to hazardous substances, including lead and the use of toys with loose magnets, increased risk of serious health consequences and the associated costs of diagnostic screening for Plaintiffs' children exposed to lead. *See* ¶¶15, 206, 216.

Nonetheless, Defendants argue that exposure to the Hazardous Toys is not sufficient to allege injury (*see* Defs' Mem. at 12-15), even though such exposure resulted in the significant increased risk of serious health consequences and associated medical costs. *See* ¶¶15, 206, 216. In making such an argument, Defendants ignore the real threat of serious injury Plaintiffs face as a result of exposure to the Hazardous Toys, as well as Plaintiffs' economic injury, described in more detail in Plaintiffs' Memorandum in Opposition to Defendant Wal-Mart Stores' Motion to Dismiss ("Pltfs' Opp. to WM MTD") at §II.A.2. *See, e.g.*, *Meyer v. Fluor*, 220 S.W.3d 712 (Mo. 2007) (recovery for exposure to lead is not contingent upon the existence of a present physical injury).

Contrary to Defendants' suggestion, the Ninth Circuit has repeatedly recognized that a threat or risk of future injury is sufficient to show an injury in fact. *See Covington v. Jefferson County*, 358 F.3d 626, 638 (9th Cir. 2004) (the evidence of a risk of harm to plaintiffs was sufficient for injury in fact); *Central Delta Water Agency v. U.S.*, 306 F.3d 938, 947 (9th Cir. 2002) ("the possibility of future injury may be sufficient to confer standing on plaintiffs"); *see also Hall v. Norton*, 266 F.3d 969, 976 (9th Cir. 2001) (evidence of a credible threat to plaintiff's physical well being is within the range of injuries that may confer standing).

---

*defective and not fit for their ordinary purpose*. *See* ¶¶33-34, 50-52; *see infra*, §IV.D.

1    Additionally, the Supreme Court, in *Duke Power Co. v. Carolina Envtl. Study*

2    *Group, Inc.*, 438 U.S. 59, 72-73, 98 S. Ct. 2620, 57 L. Ed. 2d 297 (1978), has also

3    held that exposure to a toxic substance that increases the likelihood of health is

4    sufficient injury.   In *Duke Power*, the Supreme Court held that future exposure to

5    radiation from two nuclear power plants under construction constituted injury in fact.

6    *Id*.   Other Courts have also held that the risk of serious harm is sufficient for injury in

7    fact.   *See, e.g*, *Carlough v. Amchem Prods., Inc.*, 834 F. Supp. 1437, 1455 (E.D. Pa.

8    1993) (stating that exposure to a toxic substance constitutes sufficient injury in fact to

9    give a plaintiff standing); *see also Cole v. Gen. Motors Corp.*, 484 F.3d 717, 722-23

10   (5th Cir. 2007) (holding that plaintiffs who purchased vehicles with defective air bag

11   components that deployed inadvertently had standing though the air bags never

12   deployed and plaintiffs had not suffered physical injury).   Moreover, in *Ashton v.*

13   *Pierce*, 541 F. Supp. 635, 637 (D.D.C. 1982), the Court found that alleged exposure to

14   the risk of **lead poisoning** as a result of the continued presence of lead-based paint in

15   public housing clearly constituted a sufficient claim of injury in fact.

16   It is clear from these cases, including cases involving exposure to lead paint,

17   that allegations of physical injury are not necessary to show an injury in fact.   In any

18   event, whether an injury in fact has occurred is rightfully a matter left to the jury.[14]

19   _____

20   [14]    The cases Defendants rely on to support their position that Plaintiffs have not
alleged injury are distinguishable in that Plaintiffs do not allege personal injury claims
21   and have established injury sufficient to confer standing at the motion to dismiss
stage.   *See. e.g., Feinstein*, 535 F. Supp. at 602 (S.D.N.Y. 1982) (at class certification
22   stage, as opposed to motion to dismiss stage as here, evidence showed that most of the
tires were not defective and performed satisfactorily); *Verb*, 672 N.E.2d at 1294-96
23   (unlike this case, plaintiffs failed to allege that they suffered damages and because the
claims were based on a failure to warn that a specific cell phone design *may* cause an
24   increase in health risks; not that the cell phone design was defective or that the
materials used *did* cause an increase in health risks); *Parker v. Wellman*, 230 F. Appx
25   878, 883 (11th Cir. 2007) (emotional distress and personal injury claims addressed);
*Schweitzer v. Consol. Rail Corp.*, 758 F.2d 936, 942 (3d Cir. 1985) (evaluating an
26   injury under the Federal Employers Liability Act; the Second Circuit in *Buckley v.*
*Metro-North Commuter R.R.*, 79 F.3d 1337, 1344 (2d Cir. 1996) rejected this case for
27   its finding that inhalation of asbestos did not constitute injury).

28

- 21 -

1    *Espinosa v. Beverly Hospital*, 114 Cal. App. 2d 232, 249 P.2d 843 1952 (1952)

2    (whether spouses suffered injury as a result of defendants' negligence were fact

3    questions for jury). *See also* Pltfs' Opp. to WM MTD §II.A.  Therefore, Defendants'

4    arguments that exposure to lead paint or the handling of loose magnets are insufficient

5    to allege injury should be rejected at this early stage of the litigation.

6          Furthermore, in their Prayer for Relief, Plaintiffs seek initial diagnostic

7    screening, which is intended for those who have been exposed to lead.  "When a

8    defendant negligently invades this interest, the injury to which is neither speculative

9    nor resistant to proof, it is elementary that the defendant should make the plaintiff

10   whole by paying for the examinations." *Friends For All Children v. Lockheed Aircraft*

11   *Corp.*, 746 F.2d 816, 826 (D.C. Cir. 1984).[15]

12         Here, for those children who test positive for lead, Plaintiffs will seek periodic

13   testing to monitor for the effects of the toxins to which they have been exposed.  *Id.*

14   This is sufficient to establish an injury in fact for the motion to dismiss stage.

15         Further, in support of their breach of warranty claims, Plaintiffs allege that they

16   have been injured for the purchase price of the Hazardous Toys.  *See* ¶¶15, 183, 197.

17   Defendants make the misguided argument that the replacement toys provide Plaintiffs

18   with a full and complete remedy in the absence of physical injury.  *See* Defs' Mem. at

19   15.

20         However, with respect to Plaintiffs' breach of warranty claims, in addition to

21   general damages naturally flowing from the breach of warranty, Plaintiffs may also

22

23   _____

     [15]   *See also Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 977 (Utah 1993)
24   ("Although the physical manifestations of any injury may not appear for years, the
     reality is that many of those exposed have suffered some legal detriment; the exposure
25   itself and the concomitant need for medical testing constitute the injury."); *Bocook v.*
     *Ashland Oil, Inc.*, 819 F. Supp. 530, 538 (S.D. W.Va. 1993) ("this court cannot
26   discern the purpose for requiring a [medical screening] plaintiff to also be seeking
     compensation for present manifest physical injuries.  The very essence of toxic
27   exposure cases is the contention that physical injuries therefrom are presently
     indiscernible; instead the effects are latent.").

28

1    recover incidental damages actually resulting from the breach, including expenses

2    reasonably incurred in inspection, receipt, transportation, care, and custody of goods

3    rightfully rejected, as well as any other reasonable expenses incident to the breach.

4    *See* U.C.C. §2-715(1) & cmt. 1.  While commercial parties can enter into a contract of

5    sale that would provide remedies for breach of warranty (either express or implied)

6    that would be limited to repair or replacement of the nonconforming goods by the

7    seller, such additional or substituted remedies will be construed to be ***optional*** unless

8    they are expressly agreed by the parties to be exclusive. U.C.C. §2-719(1); *see, e.g.,*

9    *Massey-Ferguson Inc v. Laird*, 432 So.2d 1259, 1264 (Ala. 1983); *Hibbs v. Jeep*

10   *Corp.*, 666 S.W.2d 792, 797 (Mo. Ct. App. 1984).

11          Here, the parties entered into no such contract that would in any way limit

12   Plaintiffs' potential recovery to substituted remedies at Mattel's sole discretion.

13   Rather, under the UCC, Plaintiffs should be entitled to receive a refund for the full

14   purchase price of the toys and the cost of diagnostic screenings.[16]

15

16

17

18   _____

19   [16]     The standard measure of damages in a breach of warranty action (whether
     express or implied) is the difference at the time and place of acceptance between the

20   value of the goods accepted and the value they would have had if they had been as
     warranted, unless special circumstances show proximate damages of a different

21   amount.  U.C.C. §2-714(2).  Consequently, damages determined by the "difference in
     value" formula will ordinarily be recoverable in an action for economic loss resulting

22   from the breach of an express warranty. *See, e.g., 6000 S Corp. v. Kelly Energy Sys.,*
     *Inc.*, No. C95-1804VRW, 1996 U.S. Dist. LEXIS 15205, at *9 (N.D. Cal. Sept. 13,

23   1996); *Consolidated Data Terminals v. Applied Digital Data Sys. Inc.*, 708 F.2d 385
     (9th Cir. 1983); *Custom Automated Machinery v. Penda Corp.*, 537 F. Supp. 77 (N.D.

24   Ill. 1982); *Mann v. Weyerhaeuser Co.*, 703 F.2d 272 (8th Cir. 1983); *Massey-*
     *Ferguson Inc. v. Laird*, 432 So.2d 1259 (Ala. 1983).  This is also the standard measure

25   of damages in an action to recover for economic loss resulting from a breach of an
     implied warranty of merchantability. *See, e.g., AFA Corp. v. Phoenix Closures Inc.*,

26   501 F. Supp. 224 (N.D. Ill. 1980); *Burrus v. Itek Corp.*, 46 Ill. App. 3d 350, 4 Ill. Dec.
     793, 360 N.E.2d 1168 (1977); *Vintage Homes Inc. v. Coldiron*, 585 S.W.2d 886 (Tex.

27   Civ. App. 1979).  In this case, Plaintiffs are entitled to a refund of the purchase price
     of their worthless Hazardous Toys.

28

### E. Plaintiffs Stated UCL Claims Against Defendants

#### 1. Federal Rule of Civil Procedure 9(b) Does Not Apply to Plaintiffs' UCL and CLRA Claims Because They Do Not Sound in Fraud

In an effort to do an end run around the California Legislature's clear intent, and California courts' clear interpretation of the UCL and CLRA to protect consumers such as Plaintiffs, Defendants mistakenly and misleadingly argue that Rule 9(b)'s pleading requirements govern Plaintiffs' UCL and CLRA claims which do not sound in fraud.[17]  *See* Defs' Mem. at 18-19.

However, by its own terms, Rule 9(b) applies only to allegations of fraud.  *See* Fed. R. Civ. P. 9(b) (limiting application to "In alleging fraud or mistake . . . ."). "The text of Rule 9(b) requires only that in 'all ***averments of fraud*** . . . the circumstances constituting fraud . . . shall be stated with particularity.' The rule does not require that allegations supporting a claim be stated with particularity when those allegations

---

[17]   This is consistent with California Supreme Court case law holding that plaintiffs need not meet Rule 9(b)'s heightened pleading standards for their claims under the UCL and CLRA.  The California Supreme Court has consistently interpreted the UCL broadly to sustain consumer claims without requiring they be plead with heightened particularity. *See People v. Superior Court*, 9 Cal. 3d 283, 287-88, 107 Cal. Rptr. 192 (1973) (issues relating to when, where or whom constituted evidentiary facts that need not be pleaded); *Committee on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211-12 n.11, 197 Cal. Rptr. 783 (1983) ("The requirement that fraud be pleaded with specificity . . . does not apply to causes of action under the consumer protection statutes."); *accord Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 46-47, 77 Cal. Rptr. 709 (1998) (same).

In 2006, the California Supreme Court specifically re-affirmed the substantive rules of California's consumer protection statutes when addressing the impact of Proposition 64. *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 232, 46 Cal. Rptr. 3d 57 (2006) ("[Proposition 64 leaves] entirely unchanged the substantive rules governing business and competitive conduct. Nothing a business might lawfully do before Proposition 64 is unlawful now, and nothing earlier forbidden is now permitted."); *see Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1138 (C.D. Cal. 2005) ("[C]onstruction of [Prop.] 64 that reduced [the UCL] to common law fraud would not only be redundant, but would eviscerate any purpose that the UCL and FAL have independent of common law fraud."). As demonstrated below, even if the Court believes Rule 9(b) could apply to certain types of UCL and CLRA allegations, this is not one of those rare actions. And in any event, were Rule 9(b) to apply, the Complaint meets that specificity requirement. *See infra*, n.24.

describe non-fraudulent conduct." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1104, 1106 (9th Cir. 2003) (emphasis in original) (reversing district court's dismissal of plaintiff's complaint pursuant to Rule 9(b) where some claims were "'grounded in fraud'"); *see also In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997) ("[A] pleading standard which requires a party to plead particular facts to support a cause of action that does not include fraud or mistake as an element comports neither with Supreme Court precedent nor with the liberal system of 'notice pleading' embodied in the Federal Rules of Civil Procedure").[18]

In fact, Defendants fail to point to a single allegation or averment of Plaintiffs' that sounds in fraud.  Plaintiffs' UCL-related facts and allegations include that Defendants were negligent and that they violated contractual duties and violated public policies, but nowhere in either counts or averments do Plaintiffs allege that Defendants are guilty of common law fraud or behavior grounded in such a theory. Thus, Counts Six and Seven (UCL) and Eight and Nine (CLRA) are subject to Rule 8(a)'s "notice pleading requirements," not Rule 9(b).[19]

In *Vess*, defendants argued, as they do here, that plaintiff's CLRA and UCL claims were subject to Rule 9(b) because the complaint alleged a fraudulent conspiracy to increase the market price of the prescription drug Ritalin. *See Vess*, 317 F.3d at 1101.  In rejecting defendants' argument, the Ninth Circuit held that, "where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)."

---

[18]   *See also Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006) ("Rule 9(b) is not strictly applicable to the current action as the CLRA is not a fraud statute. . . .To require that plaintiffs prove more than the statute itself requires would undercut the intent of the legislature in creating a remedy separate and apart from common-law fraud."); *Quelimane*, 19 Cal. 4th 26 (a cause of action for unfair competition does not require the specificity of pleading required for fraud).

[19]   By arguing that Rule 9(b) applies only to counts six through nine (UCL and CLRA counts), Defendants implicitly concede that the remainder of the Complaint is governed by notice pleading requirements.

1   *Id.* at 1105.  Further, if particular averments of fraud are insufficiently pled under Rule

2   9(b), the court "should 'disregard' those averments, or 'strip' them from the claim.

3   The court should then examine the allegations that remain to determine whether they

4   state a claim." *Id.*  Finding that plaintiff had plead alternative theories of negligence

5   in the complaint, the Court found that his claims were not "'grounded in fraud'" and

6   reversed the district court's dismissal of the claims. *Id.* at 1106.

7        Here, Counts 6 and 7 are brought pursuant to Cal. Bus. & Prof. Code §§17200

8   against the Manufacturer Defendants and Retailer Defendants, respectively.  These

9   California consumer protection statutes impose strict liability for violations. *Prata v.*

10  *Superior Court*, 91 Cal. App. 4th 1128, 1137, 1144, 111 Cal. Rptr. 2d 296 (2001)

11  ("'By their breadth, [sections 17200 and 17500] encompass not only those

12  advertisements which have deceived or misled because they are untrue, but also those

13  which may be accurate on some level, but will nonetheless tend to mislead or

14  deceive.'") (alteration in original).[20]  As the *Vess* court recognized, "[f]raud is not an

15  essential element of a claim under [the] statutes [at issue in the case]." *Id.* 317 F.3d at

16  1105.  As explained below, a plain reading of the Complaint reveals neither claim is

17  based on, or relies upon, allegations of fraud.

18       As California courts have recognized, "the primary purpose of the [UCL] . . . is

19  to protect the public from unscrupulous business practices." *Consumers Union of*

20  *U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 975, 6 Cal. Rptr. 2d 193

21  (1992).  The UCL has four distinct "prongs": (1) unfair conduct; (2) unlawful conduct;

22

23  [20]     The California Supreme Court noted that: "In drafting [the UCL], the
24  Legislature deliberately traded the attributes of tort law for speed and administrative
    simplicity.  As a result, to state a claim under the act one need not plead and prove the
    elements of a tort.  Instead, one need only show that 'members of the public are likely
25  to be deceived.'" *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266-67, 10
    Cal. Rptr. 2d 538 (1992); *Williams*, 523 F.3d at 939; *Nordberg*, 445 F. Supp. 2d at
26  1097 (Plaintiffs who allege misrepresentation pursuant to the CLRA "are not required
    to plead fraud with particularity but must merely demonstrate that the
27  misrepresentation resulted in harm."); *Committee on Children's TV*, 35 Cal. 3d at 211.

28

(3) fraudulent conduct; and (4) false advertising.  A business practice need only meet one of the prongs to violate the UCL.  *McKell v. Wash. Mut. Inc.*, 142 Cal. App. 4th 1457, 1471, 49 Cal. Rptr. 3d 227 (2006).  Yet, Defendants collapse these distinct legal claims into one to try to persuade the Court that Rule 9(b) applies to the entire UCL claim.  *See* Defs' Mem. at 19.

First, California courts have interpreted "unfair" conduct to be established by weighing the "utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104, 53 Cal. Rptr. 2d 229 (1996).  A business practice is "unfair" when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530, 206 Cal. Rptr. 164 (1984).  False advertising has no utility and never constitutes a justified business practice.  *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808, 94 Cal. Rptr. 796 (1971).  Plaintiffs set forth numerous reasons why Defendants' conduct is "unfair" – none of the reasons are fraud based.[21]  *See* ¶¶234, 247.

Second, California courts have defined "unlawful" business practices within the meaning of the UCL to "'include anything that can be properly called a business practice and that at the same time is forbidden by law.'"  *McKell*, 142 Cal. App. 4th at 1474 (citing  *Cel-Tech Communs., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548 (1999)); *People ex rel. Lockyear v. Fremont Life Ins.*

---

[21]    A singular example of Plaintiffs' allegations of "unfair" conduct is that Defendants have negligently misrepresented the safety, age-appropriateness and quality of the toys.  *See* ¶53.  This allegation and the conduct alleged in support thereof (*e.g.*, misrepresenting the age appropriateness of the Hazardous Toys) are not grounded in fraud as they do not arise from plaintiffs' reliance on Defendants' "false representations of material fact, made with knowledge of falsity and the intent to deceive."  *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995); *Vess*, 317 F.3d at 1105-06 (allegations in a complaint for violations of the UCL and CLRA that defendant failed to disclose the limited effectiveness of Ritalin did not sound in fraud and it was error for the district court to apply 9(b) standard to them).

- 27 -

*Co.*, 104 Cal. App. 4th 508, 515, 128 Cal. Rptr. 2d 463 (2002) ("With respect to the unlawful prong, '[v]irtually any state, federal or local law can serve as the predicate for an action' under section 17200.") (emphasis omitted).  The UCL therefore permits violations of other laws to be treated as unfair competition that is independently actionable.  *McKell*, 142 Cal. App. 4th at 1474-75 (even if the underlying law does not afford a private right of action it is actionable under the UCL).  A violation of the underlying law is a *per se* violation of the UCL.  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994).

Here, Plaintiffs allege that the unlawful predicate acts are violations of the CPSA, FHSA, Proposition 65, the CLRA, the Song-Berly Consumer Warranty Act, and common law violations.  ¶¶230, 244.  Even if Rule 9(b) applied to UCL claims grounded in fraud, which it does not, none of the alleged violations of law or averments are fraud-based.  *See id*.  Because, as discussed herein, Plaintiffs properly allege the aforementioned violations of law, the UCL unlawful counts and averments must stand.[22]

The UCL similarly prohibits "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code §17200.  Advertising is broadly defined to include virtually any statement made in connection with the sale of goods or services, including statements and pictures on labels.  *Williams*, 523 F.3d at 939.  Plaintiffs' UCL false advertising allegations are not fraud-based.  *See* ¶¶228, 242; *see also Anunziato*, 402 F. Supp. 2d at 1138 (UCL false advertising claims can be asserted without implicating Rule 9(b)'s fraud requirements); *Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217-18 (S.D. Cal. 2007).  For example,

---

[22]    For instance, Plaintiffs properly alleged that each of the Defendants were negligent.  ¶¶198-207; *infra*, §IV.I.  This violation of the common law is just one example why Defendants violate the UCL unlawful provision.  In fact, because Defendants have failed to address each of the alleged statutory predicate actions, including the Song-Berly Consumer Warranty Act, the UCL unlawful count must stand.

conspicuously missing from Defendants' Motion is any discussion of the representations stamped on the Hazardous Toys that they were safe and appropriate for children.[23]  ¶¶64, 75, 193.

Moreover, courts have "recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 523 F.3d at 939.  Defendant in *Williams* manufactured a product called "Fruit Juice Snacks," which in alleged violation of the UCL and CLRA actually contained no juice from any of the fruits on the packaging. *Id.*  Given that the product was called "Fruit Juice Snacks" and the packaging included pictures of fruits, the Ninth Circuit reversed the district court's decision to grant defendant's motion to dismiss and stated that "[t]he facts of this case . . . do not amount to the rare situation in which granting a motion to dismiss is appropriate" and the features of the packaging "could likely deceive a reasonable consumer." *Id.*

Third, courts have held that Rule 9(b) does not apply to the "fraudulent" prong of the UCL. *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1052 (N.D. Cal. 2004).  Defendants would have this Court impose Rule 9(b) standards simply because Plaintiffs allege violations of §17200's fraudulent prong.  However, "the term 'fraudulent' in [§17200] does not refer to the common law tort of fraud." *Id.*  The fraudulent prong of §17200 is not the same as common-law fraud because "'[a] violation [of the fraud] prong can be shown even if no one was actually deceived,

---

[23]  Indeed, Defendants spill much ink discussing what they believe are "non-actionable statements" in the Complaint, but do not discuss the representations made on the Hazardous Toys themselves. Defs' Mem. at 23-27. Defendants then abruptly conclude that "[t]he non-actionable statements cited by Plaintiffs . . . cannot form the basis of Plaintiffs' fraud allegations. As a result, Plaintiffs' fraud-based allegations in [the UCL and CLRA Counts] should be stripped from the Complaint." *Id.* at 27. This is a complete non-sequitur. As noted above, Plaintiffs' counts and averments are not grounded in fraud, so there is no reason to "strip" the Complaint of *e.g.*, Fisher-Price's statements concerning the company's long-standing tradition of safety. Defs' Mem. at 24 (citing ¶62); *Vess*, 317 F.3d at 1105-06.

1  relied upon the fraudulent practice, or sustained any damage.'" *Id.* (citing *Committee*
2  *on Children's TV*, 35 Cal. 3d at 211).

3      Like the Northern District in *Qarbon.com*, the Southern District recently
4  analyzed the standards for UCL's fraudulent business practices. *See Multimedia*
5  *Patent Trust*, 525 F. Supp. 2d at 1217-18. In *Multimedia Patent Trust*, defendants
6  moved to dismiss plaintiff's UCL allegations for failure to satisfy Rule 9(b). *Id.* The
7  court first distinguished the various prongs of the UCL and then stated "Section 17200
8  does not require a showing of common law fraud, and since Gateway's Section 17200
9  claim does not contain all of the elements of common law fraud, it must only meet the
10  'reasonable particularity' standard of *Khoury*." *Id.* at 1218. The Court concluded that
11  "Gateway's pleadings meet the reasonable particularity standard to state a claim under
12  the 'fraudulent' act or practice prong of Section 17200. This merely requires
13  allegations that the public is likely to be deceived and, to the extent injunctive relief is
14  sought, that the complainant suffered actual injury." *Id.*

15      Likewise, Plaintiffs here satisfy the reasonable particularity standard by alleging
16  that ***the public is likely to be deceived*** (*see, e.g.*, ¶¶228, 242) ("Defendants'
17  representations and advertising were likely to deceive the public as to the safety,
18  quality, and age-appropriateness of the Hazardous Toys"), ***and that members of the***
19  ***Class have suffered actual injury***, ¶¶238, 252 ("Plaintiffs and members of the Class
20  have purchased products that are not fit for their ordinary use as playthings, exposure
21  to a hazardous substance and/or dangerous magnets, have suffered an increased risk of
22  serious health problems, and incurred the cost of diagnostic screening").

23      Because Plaintiffs have not averred fraud in their unfair competition and CLRA
24  claims they must only plead under the *Khoury* Rule 8 "reasonable particularity
25  standard."[24] As Defendants acknowledge, Plaintiffs' 82-page Complaint contains

26  _____

27  [24] Even if Defendants were arguing Plaintiffs' UCL and CLRA claims are
28  exclusively grounded in fraud, which they are not, and the Court believes Rule 9(b)

- 30 -

references to Defendants' specific representations that are reasonably likely to deceive a reasonable consumer.  Moreover, Plaintiffs allege that Defendants' unfair business practices induced them to alter their positions to their detriments  *See, e.g.*, ¶16 ("Plaintiff Allen would not have purchased the Hazardous Toy had she known that her children would be put at risk for lead exposure"); ¶233 ("Plaintiffs and members of the Class have reasonably acted and relied upon the misrepresentations made by Defendants . . . ."").  Thus, Plaintiffs' UCL and CLRA counts provide requisite particularity and are well-plead.

### F.   California Law Provides a Remedy for Out-of-State Residents Harmed by Mattel and Fisher-Price

The Manufacturer Defendants fail to make ***any*** effort to meet their substantial burden under the choice of law analysis to show why the Court should not apply UCL and CLRA to the claims of out-of-state resident Plaintiffs.  Thus, Counts Six (UCL) and Eight (CLRA) are properly applied to the Manufacturer Defendants.

As an initial matter, the application of California law to out-of-state residents is constitutional under *Phillips Petroleum v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985).  In *Shutts*, the Supreme Court held that a state court may constitutionally apply the laws of a single state to the claims of a nationwide class if

---

should be applied despite California Supreme Court rulings to the contrary, the Complaint nevertheless meets the standards for Rule 9(b).  Plaintiffs' allegations are sufficient to give Defendant fair notice of the conduct that forms the basis of his claims.  *Vess*, 317 F.3d at 1106.  While the 83-page Complaint is certainly more detailed, Plaintiffs allege that between May 2003 and the present (when), Defendants designed, manufactured, marketed, sold and/or distributed the Hazardous Toys (how) to consumers (who) throughout the United States (where) with misrepresentations that the toys were fit for children as playthings, compliant with all relevant laws, and free from any defect (what).  *True v. Am.. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1183 (C.D. Cal. 2007); *SST Sterling Swiss Trust 1987 AG v. New Line Cinema, Corp.*, No. 05-2835, 2005 WL 6141290, at *5 (C.D. Cal. Oct. 31, 2005).  Furthermore, contrary to Defendants' argument, Plaintiffs allege that they were reasonably deceived by Defendants' misrepresentations as to the quality and age-appropriateness of the Hazardous Toys.  ¶¶237, 251, 260, 271; *see also Schnall v. Hertz. Corp.*, 78 Cal. App. 4th 1144, 1167, 93 Cal. Rptr. 2d 439 (2000) (Unlike common law fraud, plaintiffs need not prove that every class member "was actually deceived, relied upon the fraudulent practice, or sustained any damage.").

1  the state has "'significant contact or significant aggregation of contacts'" to the claims
2  of the class members such that application of the forum state's law is "not arbitrary or
3  unfair." *Id.* at 821-22.

4       Where as here, Plaintiffs allege[25] that the conduct at issue is centered in
5  California – Mattel's executives, headquarters and principal offices are in California;
6  Mattel's and Fisher-Price's recall-related activities were coordinated through Mattel's
7  California offices; many Fisher-Price executives including its Vice President of
8  Consumer Products are located in California; and many of the Hazardous Toys
9  entered the United States' stream of commerce through California ports – and the
10  claims asserted by every Class Member relate to conduct that emanated from
11  California (namely decisions made by Mattel and Fisher-Price executives in
12  California), the "minimal" due process *Shutts* test is met.  *See* ¶¶159-163, 232.[26]

13      The law of California, as the forum state, including choice of law rules, control
14  in this action.  *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct.
15  1020, 85 L. Ed. 1477 (1941).  Under California's choice of law rules, California's
16  consumer protection laws can be applied to the claims of all class members
17  nationwide.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998);
18  *Wershba*, 91 Cal. App. 4th at 241-42; *Clothesrigger*, 191 Cal. App. 3d at 613;
19  *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225-26, 85 Cal. Rptr.
20  2d 18 (1999).  Moreover, no constitutional problems exist here because California law

21  _____

22  [25]    At this stage, the Court must take as true the California contacts alleged as
23  sufficient under *Shutts* to permit applying California law to the claims of nonresident
    plaintiffs.  *Clothesrigger*, 191 Cal. App. 3d at 613.

24  [26]    *See also Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242-43, 110
    Cal. Rptr. 2d 145 (2001); *Clotherigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 612-
25  13, 236 Cal. Rptr. 605 (1987); *In re Worlds of Wonder Sec. Litig.*, No. 87-C-5491,
    1990 U.S. Dist. LEXIS 8511 at *18-19 (N.D. Cal. Mar. 23, 1990) (application of
26  California law not arbitrary or unfair where defendant has its principal place of
    business in California and the alleged misrepresentations emanated from California);
27  *In re Tech. Equities Fed. Sec. Litig.*, No. 86-C-20157, 1988 U.S. Dist. LEXIS 15813,
    at *20 (N.D. Cal. Oct. 3, 1988) (same).

28

- 32 -

does not "conflict[] in any material way with any other law which could apply. *[Thus] [t]here can be no injury in applying [California] law if it is not in conflict with that of any other jurisdiction connected to this suit*." *Shutts*, 472 U.S. at 816.

Although the Manufacturer Defendants have not made *any* attempt to meet their burden on choice of law and thus waived this issue, if the Court is still inclined to weigh choice of law issues, such an analysis points to the application of California law.[27]  Under California's choice of law rules, California law applies unless: (1) California law conflicts with the law of another state; *and* (2) the state whose law conflicts with California law has an interest in applying its own law; *and* (3) the foreign state's interest in applying its own law would be more impaired than California's interest if the law of such a state were not applied.[28]  *Washington Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 919-20, 103 Cal. Rptr. 2d 320 (2001); *Liew v. Official Receiver & Liquidator*, 685 F.2d 1192, 1196 (9th Cir. 1982).

All states have consumer protection laws enacted to protect consumers against a manufacturer's wrongful conduct.  The Ninth Circuit has found there is no substantial conflict among these laws: "[T]he idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims." *Hanlon*, 150 F.3d at 1022-23.  Here, "California's more favorable laws may properly apply to benefit non-resident plaintiffs when their home states have *no identifiable interest in denying such persons full recovery*." *Clothesrigger*, 191 Cal. App. 3d at 616.

---

[27]   Perhaps conceding that they will not win the day on *Shutts*' "minimal" due process test, the Manufacturer Defendants did not devoted a single line to choice of law analysis.

[28]   To determine which state's law applies, the governmental interest test is the appropriate mode of analysis, as the Hazardous Toys, of course, lack a choice of law provision of any kind.  *See Washington Mut.*, 24 Cal. 4th at 916-17, 920 (California follows a three-step governmental interest analysis when there is no effective choice of law agreement.).

1   Even if the Manufacturer Defendants could meet their "**substantial burden**" of

2   showing material differences between the laws of California and the laws of the other

3   states, the Manufacturer Defendants, as the proponent of the application of out-of-

4   state laws, would have to show the interests other states have in applying their law,

5   and that the other states' interests would be more impaired than California's. *Church*

6   *v. Consolidated Freightways*, No. C-90-2290, 1992 WL 370829, at *5 (N.D. Cal.

7   September 14, 1992); *Washington Mut.*, 24 Cal. 4th at 920.  Here, "California's more

8   favorable laws may properly apply to benefit nonresident plaintiffs when their home

9   states have no identifiable interest in denying such persons full recovery."

10  *Clothesrigger*, 191 Cal. App. 3d at 616.  California's commitment to consumer

11  protection has been clearly documented.[29]

12  Even assuming the Manufacturer Defendants could identify a genuine conflict

13  between California law and the law of some other state, ***and*** that the foreign state has

14  an interest in applying its own law, because of California's commitment to protecting

15  consumers, the Manufacturer Defendants would be hard-pressed to show that the

16  foreign state's interests would be more impaired than California's interest in applying

17  its own law.  Thus, under a choice of law analysis, the Manufacturer Defendants

18  cannot overcome the presumption that California law controls.  Therefore, California

19  law may be applied to all Class Members' claims.

20  **G.    Plaintiffs Complied With CLRA's Notification Requirement**

21  Defendants' CLRA notice argument must also fail.  Attorneys on behalf of a

22  Class of similarly situated consumers provided ***each*** of the Defendants requisite

23  CLRA notification more than 30 days prior to filing the second consolidated amended

24

25  _____

26  [29]   "In fact California's consumer protection laws are among the strongest in the
country."   *Wershba*, 91 Cal. App. 4th at 242.   California law governing unfair
27  competition, for example, is no less favorable to Class Members than the law of any
other state.  *See Clothesrigger*, 191 Cal. App. 3d at 616.

28

complaint commencing an action for CLRA damages.[30]   Plaintiffs sent CLRA notifications to: Mattel / Fisher-Price (October, 1, 2007, October 18, 2007, November 26, 2007, and May 13, 2008); Target (November 26, 2007); Toys "R" Us (April 1, 2008); Sears / Kmart (April 1, 2008); and KB Toys (April 1, 2008)  months prior to the filing of the Amended Complaint on May 16, 2008.[31]  Each of the Defendants was given proper notice at least forty-five days and as much as **six months** in advance; some Defendants were sent as many as four letters!  Then, only after Defendants did not offer an appropriate corrective remedy did Plaintiffs amend the complaint to commence an action for damages pursuant to the CLRA.

Defendants' paraphrasing of the notification requirement strips the statute of its intent.  Cal. Civ. Code §1782(a) requires consumers to submit notification to persons *alleged* to have committed CLRA violations (not "prospective" defendants, as Mattel states) thirty days or more prior to the commencement of an action *for damages* (not merely "commencement of the action," as Mattel states) pursuant to the CLRA.[32]

---

[30]    *Sanchez v. Wal-Mart Stores, Inc.*, No. 06-cv-2573, 2007 WL 1345706 at *3 (E.D. Cal. May 8, 2007) (a single plaintiff providing written notice on behalf of a class of similarly situated consumers effectuates the intent of the CLRA). Defendants' statement that the first consolidated amended complaint included a CLRA damages claim is not true.  Defs' Mem. at 33; *see* Consolidated Amended Class Action Complaint ("CAC") filed 3/31/2008, ¶¶239, 248 (seeking injunction, restitution and disgorgement for CLRA violations).  Similarly, Defendants' statement that Target "never" received a CLRA letter is false.  Defs' Mem. at 33.  In fact, Defendants attach a Target CLRA letter as Exhibit 22 to their appendix of supporting exhibits.

[31]    The CLRA notification letters to Mattel/Fisher-Price, Target, Toys "R" Us, and Sears/Kmart are attached as Exhibits 20-25 to the Mattel Defendants Appendix of Supporting Exhibits.  The CLRA notification letter to KB Toys is attached as Exhibt 1 to the Declaration of Thomas J. O'Reardon.

[32]    Cal. Civ. Code §1782(a) states in relevant part that "[t]hirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following: (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770."

1    Further, Cal. Civ. Code §1782(d), a section completely mischaracterized by

2    Defendants, states:

3            An action for injunctive relief brought under the specific

4            provisions of Section 1770 may be commenced without compliance with

5            subdivision (a). ***Not less than 30 days after the commencement of an***

6            ***action for injunctive relief, and after compliance with subdivision (a),***

7            ***the consumer may amend his or her complaint without leave of court***

8            ***to include a request for damages***. The appropriate provisions of

9            subdivision (b) or (c) shall be applicable if the complaint for injunctive

10           relief is amended to request damages.

11   *Id.* The "clear intent" of the CLRA, which must be strictly construed, is to foster pre-

12   suit settlements and establish a "'***limited period*** during which such settlement may be

13   accomplished.'" *Sanchez*, 2007 WL 1345706, at *3.

14           Clearly, Plaintiffs complied with all CLRA requirements.[33] Plaintiffs gave each

15   Defendant much more than the required 30 days to correct, replace or rectify the

16

17

18

19   [33]     Defendants' citations are not on point. The court in *Laster v. T-Mobile USA,*

20   *Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005), dismissed CLRA damages
     claims because plaintiffs conceded they had provided no notice under §1782. The
     court in *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003)

21   dismissed CLRA damages claims because plaintiff's letter to defendant was not sent
     by register or certified mail, was not timely, did not identify particular violations of

22   §1770, and the complaint did not allege that plaintiff had given defendant proper
     notice under the CLRA. So too is *Utility Consumers' Action Network v. Sprint*

23   *Solutions, Inc.*, No. 07-cv-2231, 2008 WL 1946859 (S.D. Cal. April 25, 2008)
     inapplicable. In the unpublished decision by a Washington state federal judge the

24   court dismissed CLRA damages claims where "[n]either the complaint nor the
     amended complaint alleged that plaintiffs had given the proper notice under the

25   CLRA." *Id*. at *6. Plaintiffs here alleged in both the CAC (¶¶238, 248) and the
     Complaint (¶¶262-263, 273-274) that proper notice was given. Despite repeated

26   requests, Defendants did not correct or repair the violations and only then did
     Plaintiffs amend the Complaint to seek CLRA damages. A plain reading of the

27   applicable statutory language requires nothing more. Cal. Civ. Code §1782(d).

28

violations before amending their complaint to add a claim for damages for CLRA violations.  Nothing more is required.[34]

### H.    Plaintiffs State A Claim for Unjust Enrichment

#### 1.    Plaintiffs Have Properly Plead A Claim for Unjust Enrichment

Plaintiffs' allegations, as pled in the Complaint, meet the elements of an unjust enrichment claim.  Unjust enrichment is properly asserted when a Defendant receives a benefit and unjustly retains that benefit at the expense of another.  *See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000); *Van de Kamp v. Bank of Am.*, 204 Cal. App. 3d 819, 855, 251 Cal. Rptr. 530 (1988) ("Unjust enrichment 'presupposes the acceptance and retention of a benefit by one party with full appreciation of the facts, under circumstances making it inequitable for the benefit to be retained without payment of the reasonable value thereof.").

Plaintiffs allege that: (1) Plaintiffs conferred benefits onto Defendants in the form of payments for safe and high quality toys; (2) in exchange, Plaintiffs did not receive "products of the high quality, nature, fitness or value that had been represented by Defendants and reasonable consumers would have expected"; and (3) "Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable."  ¶299.

Defendants assert that Plaintiffs' unjust enrichment claim should be dismissed because it is not an independent claim under California law.  *See* Defs' Mem. at 35.  To the contrary, case law clearly indicates that adjudication of unjust enrichment claims is proper.  *See, e.g., County of San Bernardino v. Walsh*, 158 Cal. App. 4th

---

[34]    If the Court for any reason finds that any one of the Defendants was not properly notified 30 days prior to filing the Complaint on May 16, 2008, the claim for an injunction, restitution and disgorgement against the particular defendant may still proceed.  Cal. Civ. Code §1782(d).  Plaintiffs may thereafter cure any notice defect and amend to pray for damages after 30 days have run.  *Dietz v. Comcast Corp.*, No. 06-06352, 2006 WL 3782902, at *6 (N.D. Cal. December 21, 2006).

533, 542-43, 69 Cal. Rptr. 3d 848 (2007) (upholding damages award based on unjust enrichment claim); *Lectrodryer*, 77 Cal. App. 4th at 726 (recognizing unjust enrichment claims); *see also Shum v. Intel Corp.*, 499 F.3d 1272, 1279 (9th Cir. 2007) (recognizing unjust enrichment as a "separate claim" under California law).

Despite some confusion regarding the interrelationship between unjust enrichment and restitution, California courts routinely hear claims for restitution based on the theory of unjust enrichment. *See, e.g., Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50, 57 Cal. Rptr. 2d 687 (1996) (finding claim for damages "that rest[ed] on a theory of unjust enrichment" was sufficiently plead); *accord Nordberg*, 445 F. Supp. 2d at 1100. Plaintiffs' unjust enrichment claim specifically seeks the "restitution of Defendants' wrongful profits." ¶¶297-299. Therefore, Plaintiffs' claim for unjust enrichment should be sustained as an independent cause of action.

### 2. Plaintiffs Sufficiently Allege Defendants Have Been Unjustly Enriched

Defendants' argument that they have not "retained a benefit" is without merit and improper on a motion to dismiss. *See* Defs' Mem. at 34. Plaintiffs allege Defendants unjustly retained a benefit from Plaintiffs' purchase of the Hazardous Toys because Plaintiffs did not receive the safe and quality toys that were represented by Defendants. *See* ¶¶16-32. Plaintiffs also allege that Defendants retained this benefit despite "knowledge and awareness that . . . Plaintiffs and members of the Class were not receiving [quality and safe] products." ¶299. Unjust enrichment liability may be properly based on defendant's continued possession of "'profits . . . wrongfully obtained. . . .'"[35] *See County of San Bernardino*, 158 Cal. App. 4th at 542; *see also Rolex Watch U.S.A., Inc. v. Dauley*, No. 84-6150, 1986 WL 12432, at *5

---

[35]    Importantly, Defendants do not contest this point. *See* Defs' Mem. at 33-34 (citing *Scrushy v. Tucker*, 955 So.2d 988, 1011 (Ala. 2006) ("plaintiff must show that the 'defendant holds money'"), and *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005) ("a person retains a benefit (usually money)").

1    (N.D. Cal. Feb. 4, 1986) (finding that to allow the defendant to retain his profits

2    "would constitute unjust enrichment and reward him for his illegal acts").  "The

3    emphasis is on the wrongdoer's enrichment, not the victim's loss."  *County of San*

4    *Bernardino*, 158 Cal. App. 4th at 542.  Plaintiffs have undoubtedly alleged that

5    Defendants have been wrongfully enriched because they received monetary payments

6    for a certain quality of toy that was not provided to Plaintiffs in exchange.  ¶299.

7        Defendants argue that their recalls negate any benefit they obtained from

8    Plaintiffs.  However, Defendants' offer to provide a substitute toy through a voucher

9    program does not divest them of their unjustly retained benefit.  Rather, Defendants

10   still retain their ill-gotten gains from selling unsafe toys.  *See Muehlbauer v. General*

11   *Motors Corp.*, 431 F. Supp. 2d 847, 856 (N.D. Ill. 2006) ("Defendant's recall does not

12   moot [plaintiffs'] unjust enrichment claims."); *see also Van de Kamp*, 204 Cal. App.

13   3d at 853 (holding that a plaintiff should receive ***reasonable*** value for the benefit that

14   he conferred onto a defendant).

15       Additionally, whether Defendants have actually retained a benefit is a question

16   of fact and is not addressable by a motion to dismiss.  *See Muehlbauer*, 431 F. Supp.

17   2d at 855 ("Whether or not defendant sufficiently returned any benefits by issuing the

18   recall presents questions of fact, which are inappropriate for resolution on a motion to

19   dismiss.").  As the court in *In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*

20   found, "whether any actions taken by Defendants have divested them of any benefit

21   they received from Plaintiffs from the sale of allegedly defective products, ***are***

22   ***questions of fact*** that cannot be resolved at this time." 155 F. Supp. 2d 1069, 1115

23   (S.D. Ind. 2001).

24       For example, Defendants may retain a portion of the profits from the sales of

25   the defective toys regardless of whether they offer a replacement toy, and particularly

26   in those instances where they offered only the "affected" part.  However, such a fact

27   will be able to be properly alleged, and proven, by Plaintiffs after the benefit of

28   discovery.  As such, it is premature to dismiss Plaintiffs' unjust enrichment claims.

1   Nonetheless, Plaintiffs allege that Defendants' recall procedures were plagued

2   with inconsistencies and were insufficient. ¶¶144-147.  Plaintiffs allege that well after

3   the dangers of lead contamination and the use of small magnets were discovered (*see*

4   ¶¶90-99) Defendants issued recalls and offered to provide a replacement toy or part.

5   A replacement from the same company that had exhibited a failure to exercise

6   adequate quality control and oversight  is surely not reasonable value. *See* ¶¶100-103.

7   Plaintiffs further allege that the recall is inadequate because Defendants do not

8   offer replacement toys for all of the affected Hazardous Toys.  *See* ¶¶133-143.  For

9   instance, the blood pressure cuff in the Fisher-Price Medical Kit found to contain lead

10   has only been recalled by Defendants in Illinois.  *See id*.  Defendants' replacement

11   program does not provide Plaintiffs with a new toy, but rather, one part of the blood

12   pressure cuff.  ¶¶139-143.  However, "[a] motion to dismiss is typically not an

13   appropriate vehicle for measuring the adequacy or completeness of a party's conduct,"

14   in this case, the adequacy or completeness of Defendants' recall. *Muehlbauer* 431 F.

15   Supp. 2d at 854.  As such, the Court's judgment on the unjust enrichment claims

16   necessarily involves questions of fact that cannot be resolved at the motion to dismiss

17   stage of litigation.

18   Accordingly, Plaintiffs' unjust enrichment claim should stand.

19   **I.     Plaintiffs Have Adequately Plead Negligence as to the Retailers**

20   Defendants argue that Plaintiffs' claims against the Retailer Defendants must be

21   dismissed because the Retailer Defendants knew or had reason to know of the alleged

22   latent defects.  *See* Defs' Mem. at 27.  However, this assertion ignores Plaintiffs' well-

23   plead allegations to the contrary.

24   As detailed in the Complaint, the Retailer Defendants were put on notice of the

25   defect as they were aware of the prior recalls issued by Mattel and the dangers of lead,

26   lead paint and loose magnets, particularly for toys manufactured by Mattel in China.

27   ¶101.  As such, the Retailer Defendants should have exercised reasonable care to

28

1   inspect the products before selling them.  The Retailer Defendants, however, failed to
2   do so.

3        A retailer is negligent when it has failed to make an inspection of the product
4   prior to sale where it was unreasonable for the retailer to do so in light of the nature of
5   the product, the reputability of the supplier, and the scope of the risk.  *See Martin v.*
6   *Schoonover*, 533 P.2d 438, 13 Wash. App. 48 (1975); *see also Cal. Jury Instructions*
7   (BAJI) §9.24; *Restatement (Second) of Torts* §402 (1965).

8        Specifically, a retailer "has a duty to exercise reasonable care to inspect and test
9   the product before selling it" where it had "reason to know that the product is likely to
10  be dangerously defective."  *Cal. Jury Instructions* (BAJI) §9.24; *see also Restatement*
11  *(Second) of Torts* §402.

12       Furthermore, a retailer may be liable for negligence depending on the specific
13  circumstances of the case.  *See Vandermark v. Ford Motor Co.* 61 Cal. 2d 256, 262,
14  37 Cal. Rptr. 896 (1964) (extending strict product liability to retailers, which "are an
15  integral part of the overall producing and marketing enterprise that should bear the
16  cost of injuries resulting from defective products"); *Jiminez v. Sears, Roebuck & Co.* 4
17  Cal. 3d 379, 383, 93 Cal. Rptr. 769 (1971); *Killeen v. Harmon Grain Prods. Inc.*, 413
18  N.E.2d 767 (Mass. App. Ct. 1980); *see also* 63 Am. Jur. 2d *Products Liability* §88
19  (2008).

20       Here, as detailed above, the circumstances of this case, including the fact that
21  there were numerous recalls of Mattel toys made in China that put Retailer Defendants
22  on notice of the risk of defects associated with certain Mattel toys, support Plaintiffs'
23  negligence claims against Retailer Defendants.

24       In fact, as plead in the Complaint, as early as the November 2006 recall of toys
25  containing small magnets and again following the August 1, 2007 recall of toys
26  containing lead, the Retailer Defendants knew or should have known toys
27  manufactured by Mattel in China were at risk for containing toxic lead or small, loose
28  magnets and should have inspected all toys manufactured by Mattel with much greater

1  care than what was provided. *See* ¶¶88, 97, 101. In light of these recalls, the Retailer
2  Defendants were under a duty to ensure that adequate controls were in place to
3  monitor the quality and safety of the toys on their shelves. *See Crispin Co. v.*
4  *Petrotub-S.A.*, No. Civ-05-159-C, 2006 WL 2812535, at \*9 (W.D. Okla. Sept. 28,
5  2006) (negligence found where defendant had credible information alerting it to risks
6  of the defective product which may have given rise to a duty to warn).

7        Further, the retailers were negligent in continuing to sell Mattel's lead-laden
8  products long after the first massive lead toy recall on August 2, 2007. ¶105. In fact,
9  the Retailer Defendants *continue* to sell such Hazardous Toys as the blood-pressure
10  cuff even though they admittedly contain lead in the vinyl and have been pulled from
11  store shelves in Illinois and by other retailers such as Amazon.com voluntarily. *See*
12  ¶139, 143. For the foregoing reasons, Defendants' arguments should be rejected.

13  **V.   CONCLUSION**

14        For the foregoing reasons and those set forth in Plaintiffs' Memorandum in
15  Opposition to Wal-Mart's Motion to Dismiss, Plaintiffs respectfully submit that this
16  Court should deny Defendants' motions to dismiss in their entirety.

17  DATED:  August 1, 2008                    Respectfully submitted,

18                                            COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
19                                            JOHN J. STOIA, JR.
                                              RACHEL L. JENSEN
20                                            THOMAS J. O'REARDON II

21

22                                                    s/ John J. Stoia, Jr.
                                              JOHN J. STOIA, JR.
23
                                              655 West Broadway, Suite 1900
24                                            San Diego, CA  92101
                                              Telephone:  619/231-1058
25                                            619/231-7423 (fax)

26

27

28

- 42 -

1    WHATLEY, DRAKE & KALLAS, LLC
2    JOE R. WHATLEY, JR.
     EDITH M. KALLAS
3    JOSEPH P. GUGLIELMO

4

            s/ Joe R. Whatley, Jr.
5            JOE R. WHATLEY, JR.

6    1540 Broadway, 37th Floor
     New York, NY 10036
7    Telephone: 212/447-7070
     212/447-7077 (fax)
8

9    COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
10   PAUL J. GELLER
     JACK REISE
11   ELIZABETH A. SHONSON
     120 East Palmetto Park Road, Suite 500
12   Boca Raton, FL 33432
     Telephone: 561/750-3000
13   561/750-3364 (fax)

14   ***Co-Lead Counsel for Plaintiffs***

15   KELLER ROHRBACK LLP
     LYNN LINCOLN SARKO
16   JULI E. FARRIS
     GRETCHEN FREEMAN CAPPIO
17   1201 Third Avenue, Suite 3200
     Seattle, WA 98101-3052
18   Telephone: 206/623-1900
     206/623-3384 (fax)
19
     ***Chair of Plaintiffs' Executive Committee***
20
     BALKAN & PATTERSON, LLP
21   ADAM BALKAN
     JOHN PATTERSON
22   601 S. Federal Highway, Suite 302
     Boca Raton, FL 33432
23   Telephone: 561/750-9191
     561/750-1574 (fax)

24   ENGSTROM LIPSCOMB & LACK, P.C.
     WALTER J. LACK
25   PAUL A. TRAINA
     GREGORY P. WATERS
26   10100 Santa Monica Blvd., 16th Floor
     Los Angeles, CA 90067-4107
27   Telephone: 310/552-3800
     310/552-9434 (fax)
28

EYSTER KEY TUBB ROTH
   MIDDLETON AND ADAMS LLP
NICHOLAS B. ROTH
HEATHER NECKLAUS HUDSON
402 East Moulton Street
P.O. Box 1607
Decatur, AL  35602
Telephone:  256/353-6761
256/353-6767 (fax)

FINKELSTEIN THOMPSON LLP
BURTON H. FINKELSTEIN
MILA F. BARTOS
Duvall Foundry
1050 30th Street, N.W.
Washington, DC  20007
Telephone:  202/337-8000
202/337-8090 (fax)

FINKELSTEIN THOMPSON LLP
ROSEMARY M. RIVAS
MARK PUNZALAN
100 Bush Street, Suite 1450
San Francisco, CA  94104
Telephone:  415/398-8700
415/398-8704 (fax)

GOLOMB & HONIK, P.C.
RICHARD M. GOLOMB
RUBEN HONIK
MICHAEL S. LEVIN
STEPHAN MATANOVIC
1515 Market Street, Suite 1100
Philadelphia, PA  19102
Telephone:  215/985-9177
215-985-4169 (fax)

HARKE & CLASBY LLP
LANCE A. HARKE
155 South Miami Avenue, Suite 600
Miami, FL  33130
Telephone:  305/536-8220
305/536-8229 (fax)

MCGOWAN HOOD & FELDER LLC
JOHN GRESSETTE FELDER, JR
1405 Calhoun Street
Columbia, SC  29201
Telephone:  803/779-0100
803/787-0750 (fax)

MCGOWAN HOOD & FELDER LLC
CHAD A. MCGOWAN
S. RANDALL HOOD

WILLIAM A. MCKINNON
1539 Healthcare Drive
Rock Hill, SC  29732
Telephone:  803/327-7800
803-328-5656 (fax)

*Executive Committee Members*

GULAS & STUCKEY, P.C.
JASON A. STUCKEY
LAUREN WAGNER PEDERSON
  (*Of Counsel*)
2031 2nd Avenue North
Birmingham, AL  35203
Telephone:  205/879-1234
205/879-1247 (fax)

GILBERT AND SACKMAN, A LAW
  CORPORATION
JOSEPH L. PALLER, JR
JAY EDWARD SMITH
3699 Wilshire Blvd., Suite 1200
Los Angeles, CA  90048-5114
Telephone:  323/938-3000
323/937-9139 (fax)

PRICE WAICUKAUSKI & RILEY, LLC
WILLIAM N. RILEY
JAMIE R. KENDALL
JOSEPH N. WILLIAMS
301 Massachusetts Avenue
Indianapolis, IN  46204
Telephone:  317/633-8787
317-633-8797 (fax)

BAGNELL AND EASON
GILBERT S. BAGNELL
1201 Main Street, Suite 1980
Columbia, SC  29211
Telephone:  803/748-1333
803-748-1300 (fax)

KAPLAN FOX & KILSHEIMER LLP
LORI S. BRODY
1801 Century Park East, Suite 1460
Los Angeles, CA  90067
Telephone:  310/785-0800
310/785-0897 (fax)

KAPLAN FOX & KILSHEIMER LLP
LINDA M. FONG
LAURENCE D. KING
350 Sansome Street, Suite 400
San Francisco, CA  94104
Telephone:  415/772-4700

1     415/772-4707 (fax)

2     KAPLAN FOX & KILSHEIMER LLP
      FREDERIC S. FOX
3     DONALD R. HALL
      850 Third Avenue, 14th Floor
4     New York, NY  10022
      Telephone:  212/687-1980
5     212/687-7714 (fax)

6     BRAUN LAW GROUP, P.C.
      MICHAEL D. BRAUN
7     12304 Santa Monica Blvd., Suite 109
      Los Angeles, CA  90025
8     Telephone:  310/442-7755
      310/442-7756 (fax)

9

10    HANLY CONROY BIERSTEIN
       SHERIDAN FISHER & HAYES LLP
    JAYNE CONROY
11    STEVEN M. HAYES
      112 Madison Avenue, 7th Floor
12    New York, NY  10016
      Telephone:  212/784-6400
13    212/213-5349 (fax)

14    THE LAW OFFICE OF ARON D.
       ROBINSON
15    ARON D. ROBINSON
      19 South LaSalle Street, Suite 1300
16    Chicago, IL  60603

17    BARNOW AND ASSOCIATES PC
      BEN BARNOW
18    One North LaSalle Street, Suite 4600
      Chicago, IL  60602
19    Telephone:  312/621-2000
      312/641-5504 (fax)

20

21    SIMMONS COOPER LLC
      KENNETH J. BRENNAN
22    707 Berkshire Blvd.
      East Alton, IL  62024
23    Telephone:  618/259-2222
      618-259-2251 (fax)

24    CHIMICLES & TIKELLIS LLP
      KIMBERLY M. DONALDSON
25    One Haverford Centre
      361 West Lancaster Avenue
26    Haverford, PA  19041-0100
      Telephone:  610/642-8500
27    610/649-3633 (fax)

28    HAGENS BERMAN SOBOL

- 46 -

1         SHAPIRO LLP
        STEVE W. BERMAN

2         IVY D. ARAI
        1301 5th Avenue, Suite 2900

3         Seattle, WA  98101
        Telephone: 206/623-7292

4         206/623-2594 (fax)

5         HAGENS BERMAN SOBOL
          SHAPIRO LLP

6         ELAINE T. BYSZEWSKI
        LEE M. GORDON

7         700 South Flower Street, Suite 2940
        Los Angeles, CA  90017-4101

8         Telephone:  213/330-7150
        213/330-7152 (fax)

9

10         HAGENS BERMAN SOBOL
          SHAPIRO LLP

11         ELIZABETH A. FEGAN
        DANIEL J. KUROWSKI

12         TIMOTHY MAHONEY
        820 North Blvd., Suite B

13         Oak Park, IL  60301
        Telephone:  708/776-5600

14         708/776-5601 (fax)

15         BONNETT, FAIRBOURN, FRIEDMAN
          & BALIANT, P.C.

16         ANDREW S. FRIEDMAN
        WENDY J. HARRISON

17         MICHAEL C. McKAY
        2901 North Central Avenue, Suite 1000

18         Phoenix, AZ  85012
        Telephone:  602/274-1100

19         602/274-1199 (fax)

20         WOLOSHIN AND KILLINO
        DAVID L. WOLOSHIN

21         JEFFREY B. KILLINO
        1800 John F Kennedy Blvd., 11th Floor

22         Philadelphia, PA  19103-2925
        Telephone:  215/840-2020

23         215/569-2741 (fax)

24         JULIO RAMOS, ATTORNEY AT LAW
        JULIO RAMOS

25         35 Grove Street, Suite 107
        San Francisco, CA  94102

26         Telephone:  415/948-3015
        415/469-9787 (fax)

27         LAW OFFICES OF STEVEN M.
          NUNEZ

28         STEVEN M. NUNEZ

3333 Camino Del Rio South, Suite 215
San Diego, CA  92108
Telephone:  619/296-8400
619/296-3700 (fax)

KALCHEIM LAW GROUP
MITCH KALCHEIM
AMBER S. HEALY
2049 Century Park East, Suite 2150
Los Angeles, CA  90067
Telephone:  310/461-1200
310/461-1201 (fax)

KIRTLAND & PACKARD LLP
MICHAEL L. KELLY
BEHRAM V. PAREKH
2361 Rosecrans Avenue, Fourth Floor
El Segundo, CA  90245
Telephone:  310/536-1000
310/536-1001 (fax)

CUNEO GILBERT AND LADUCA, LLP
PAMELA GILBERT
507 C Street, N.E.
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)

THE STARK LAW OFFICES, P.C.
AMIR STARK
2766 Fischer Road
Hatfield, PA  19440
Telephone:  215/275-2919
245/855-6029 (fax)

SARRAF GENTILE LLP
RONEN SARRAF
JOSEPH GENTILE
11 Hanover Square, 2nd Floor
New York, NY  10005
Telephone:  212/868-3610
212/918-7967 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THE CROW LAW FIRM
MICHAEL G. CROW
1100 Poydras Street, Suite 1175
New Orleans, LA  70163
Telephone:  504/599-5770
504/566-1141 (fax)

LOCKRIDGE GRINDAL NAUEN
  P.L.L.P.
KAREN HANSON RIEBEL
100 Washington Avenue South
Suite 2200
Minneapolis, MN  55401-2159
Telephone:  612/339-6900
612/339-0981 (fax)

***Additional Plaintiffs' Counsel***

S:\CasesSD\Mattel Consumer\BRF 00053088.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 1, 2008.

s/ John J. Stoia, Jr.
JOHN J. STOIA, JR.

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:      johns@csgrr.com

# Mailing Information for a Case 2:07-ml-01897-DSF-AJW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ivy D Arai**
  ivy@hbsslaw.com,kevinacosta@hbsslaw.com

- **Ben Barnow**
  b.barnow@barnowlaw.com,e.schork@barnowlaw.com,s.harris@barnowlaw.com

- **Mila F Bartos**
  mbartos@finkelsteinthompson.com

- **Steve W Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Mitchell M Breit**
  mbreit@wdklaw.com,ecf@wdklaw.com

- **Lori S Brody**
  lbrody@kaplanfox.com

- **Robert H Bunzel**
  rbunzel@bztm.com,bsage@bztm.com

- **Elaine T Byszewski**
  elaine@hbsslaw.com,kevinacosta@hbsslaw.com,sharons@hbsslaw.com

- **Gretchen Freeman Cappio**
  gcappio@kellerrohrback.com,mbates@kellerrohrback.com

- **Kimberly M Donaldson**
  kimdonaldson@chimicles.com

- **Juli E Farris**
  jfarris@kellerrohrback.com,dau@kellerrohrback.com

- **Elizabeth A Fegan**
  beth@hbsslaw.com

- **Thomas E Fennell**
  tefennell@jonesday.com

- **Linda M Fong**
  lfong@kaplanfox.com,kweiland@kaplanfox.com,agutierrez@kaplanfox.com

- **Pamela Gilbert**
  pamelag@cuneolaw.com

- **Lee M Gordon**
  lee@hbsslaw.com,kevinacosta@hbsslaw.com,sharons@hbsslaw.com

- **Joseph P Guglielmo**
  jguglielmo@wdklaw.com

- **Lance August Harke**
  lharke@harkeclasby.com

- **Amber S Healy**
  amberh@kallawgroup.com

- **Brian M Hoffstadt**
  bhoffstadt@jonesday.com

- **Ruben Honik**
  rhonik@golombhonik.com,lpena@golombhonik.com,emalloy@golombhonik.com

- **Heather Necklaus Hudson**
  hnhudson@eysterkey.com

- **Rachel L Jensen**
  rjensen@csgrr.com

- **Mitch H Kalcheim**
  mitch@kallawgroup.com

- **Edith M Kallas**
  ekallas@wdklaw.com,ecf@wdklaw.com

- **Michael L Kelly**
  michaellkelly@earthlink.net

- **Jamie Ranah Kendall**
  jkendall@price-law.com

- **Jeffrey B Killino**
  jkillino@wklawyer.com

- **Laurence D King**
  lking@kaplanfox.com,kweiland@kaplanfox.com,agutierrez@kaplanfox.com

- **Daniel J Kurowski**
  dank@hbsslaw.com,chi_filings@hbsslaw.com,kevinacostga@hbsslaw.com

- **Elizabeth A Leland**
  bleland@kellerrohrback.com

- **Michael S Levin**
  mlevin@golombhonik.com

- **Elwood G Lui**
  elui@jonesday.com

- **Timothy Mahoney**
  timm@hbsslaw.com,chi_filings@hbsslaw.com,kevinacosta@hbsslaw.com

- **Stephan Matanovic**
  smatanovic@golombhonik.com,lpena@golombhonik.com,emalloy@golombhonik.com

- **William A McKinnon**
  bmckinnon@mcgowanhood.com,bmcgovern@mcgowanhood.com

- **Manfred Patrick Muecke**
  mmuecke@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Thomas Joseph O'Reardon , II**
  toreardon@csgrr.com

- **Joseph L Paller , Jr**
  jlpaller@gslaw.org

- **Behram V Parekh**
  bvp@kirtlandpackard.com

- **Mark L Punzalan**
  mpunzalan@finkelsteinthompson.com,srenwick@finkelsteinthompson.com

- **Julio J Ramos**
  ramosfortrustee@yahoo.com,ramosforsupervisor@yahoo.com

- **Thomas Ailbe Rector**
  tarector@jonesday.com

- **Jack Reise**
  jreise@csgrr.com,e_file_fl@csgrr.com

- **Michael L Rice**
  mlrice@jonesday.com,jameseyoung@jonesday.com,deborahsimmons@jonesday.com

- **Karen Hanson Riebel**
  khriebel@locklaw.com,crbaehman@locklaw.com

- **William N Riley**
  wriley@price-law.com

- **Rosemary M Rivas**
  rrivas@finkelsteinthompson.com

- **Nicholas B Roth**
  nbroth@eysterkey.com

- **Lynn Lincoln Sarko**
  lsarko@kellerrohrback.com

- **Denise Davis Schwartzman**
  deniseschwartzman@chimicles.com

- **Rick L Shackelford**
  rlshackelford@jonesday.com

- **Jay Edward Smith**
  js@gslaw.org

- **John J Stoia , Jr**
  johns@csgrr.com,e_file_sd@csgrr.com

- **Paul A Traina**
  ptraina@elllaw.com

- **Laurie A Traktman**
  lat@gslaw.org

- **Gregory P Waters**
  gwaters@elllaw.com

- **Joe R Whatley , Jr**
  jwhatley@wdklaw.com,kgault@wdklaw.com,ecf@wdklaw.com

- **Hugh R Whiting**
  hrwhiting@jonesday.com

- **Joseph N Williams**
  jwilliams@price-law.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Gilbert Scott Bagnell
Bagnell and Eason
PO Box 11852
Columbia, SC 29211

Frank Baliant
```

Bonnett Fairbourn Friedman & Baliant PC
2901 North Central Avenue - Suite 1000
Phoenix, AZ 85012

**Matthew C Branic**
Krieg Devault LLP
One Indiana Square Suite 2800
Indianapolis, IN 46204

**Robert H Brunson**
Nelson Mullins Riley and Scarborough
PO Box 1806
Charleston, SC 29402

**Michael G. Crow**
Crow Law Firm LLC
1100 Poydras Street - Suite 1175
New Orleans, LA 70163

**Ryan D Dahl**
Jones Day
50 Grant Street Suite 3100
Pittsburgh, PA 15219

**Stuart A Davidson**
Coughlin Stoia Geller Rudman and Robbins
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809

**John Gressette Felder**                                         **, Jr**
McGowan Hood Felder and Johnson
1405 Calhoun Street
Columbia, SC 29201

**Burton H Finkelstein**
Finkelstein Thompson & Loughran
Duvall Foundry
1050 30th St NW
Washington, DC 20007

**Frederic S Fox**
Kaplan Fox & Kilsheimer
850 Third Avenue 14th Fl
New York, NY 10022

**Andrew C Friedman**
Bonnett Fairbourn Friedman and Balint
2901 N Central Avenue - Suite 1000
Phoenix, AZ 85012

**Paul J Geller**
Paul J Geller Law Offices
120 East Palmetto Park Road Suite 500
Boca Raton, FL 33432

**Richard M Golomb**
Golomb & Honik
121 South Broad Street 9th Floor
Philadelphia, PA 19107

**Michael D Gottsch**
Chimicles and Tikellis LLP
One Haverford Center
361 West Lancaster Avenue
Haverford, PA 19041-0100

**Donald R Hall**
Kaplan Fox and Kilsheimer
850 Third Avenue 14th Floor
New York, NY 10022

**Steven Michael Hayes**
Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP
112 Madison Avenue
New York, NY 10016

**Danielle Marie Hohos**
Jones Day
51 Louisiana Avenue
Washington, DC 20001

**Steven Randall Hood**
McGowan Hood and Felder
1539 Healthcare Drive
Rock Hill, SC 29732

**John E Iole**
Jones Day
500 Grant St, 31st Fl
Pittsburgh, PA 15219

**Walter J Lack**
Engstrom Lipscomb & Lack
10100 Santa Monica Blvd 16th Floor
Los Angeles, CA 90067-4107

**Karen Jennifer Marcus**
Finklestein Thompson LLP
1050 30th Street NW
Washington, DC 20007

**Deirdre Shelton McCool**
Nelson Mullins Riley and Scarborough
PO Box 1806
Charleston, SC 29402

**Chad A McGowan**
McGowan Hood Felder and Johnson
1539 Healthcare Drive
Rock Hill, SC 29732

**Mark J R Merkle**
Krieg Devault LLP
One Indiana Square Suite 2800
Indianapolis, IN 46204

**Stephen G Morrison**
Nelson Mullins Riley and Scarborough
P O Box 11070
Columbia, SC 29211

**Marc T Quigley**
Krieg Devault LLP
One Indiana Square Suite 2800
Indianapolis, IN 46204

**Elizabeth A Shonson**
Coughlin Stoia Geller Rudman and Robbins
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809

**Michael J Templeton**
Jones Day
222 East 41st Street
New York, NY 10017

**John B Williams**
Jones Day
51 Louisiana Avenue
Washington, DC 20004

**David L Woloshin**
Woloshin and Killino
1800 John F Kennedy Boulevard, 11th Floor
Philadelphia, PA 19103-2925