1  COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  JOHN J. STOIA, JR. (141757)
   RACHEL L. JENSEN (211456)
3  THOMAS J. O'REARDON II (247952)
   655 West Broadway, Suite 1900
4  San Diego, CA  92101
   Telephone:  619/231-1058
5  619/231-7423 (fax)
   johns@csgrr.com
6  rachelj@csgrr.com
   toreardon@csgrr.com
7
   WHATLEY, DRAKE & KALLAS, LLC      KELLER ROHRBACK LLP
8  JOE R. WHATLEY, JR.               LYNN LINCOLN SARKO
   EDITH M. KALLAS                   JULI E. FARRIS
9  JOSEPH P. GUGLIELMO               GRETCHEN FREEMAN CAPPIO
   1540 Broadway, 37th Floor         1201 Third Avenue, Suite 3200
10 New York, NY  10036               Seattle, WA  98101-3052
   Telephone:  212/447-7070          Telephone:  206/623-1900
11 212/447-7077 (fax)                206/623-3384 (fax)
   jwhatley@wdklaw.com               lsarko@kellerrohrback.com
12 ekallas@wdklaw.com                jfarris@kellerrohrback.com
   jguglielmo@wdklaw.com             gcappio@kellerrohrback.com
13
   Co-Lead Counsel for Plaintiffs    Chair of Plaintiffs' Executive
14                                   Committee
15 [Additional counsel appear on signature page.]

16              UNITED STATES DISTRICT COURT

17             CENTRAL DISTRICT OF CALIFORNIA

18                   WESTERN DIVISION

19 In re MATTEL, INC., TOY LEAD    )  No. 2:07-ml-01897-DSF-AJW
   PAINT PRODUCTS LIABILITY        )
20 LITIGATION                      )
                                   )  PLAINTIFFS' OPPOSITION TO
21 _____)  DEFENDANT WAL-MART STORES,
                                      INC.'S MOTION TO DISMISS
22                                    PLAINTIFFS' SECOND
                                      CONSOLIDATED AMENDED
                                      COMPLAINT
23
                                      DATE:      September 8, 2008
24                                    TIME:      1:30 p.m.
                                      PLACE:     Courtroom 840
25                                               Roybal Federal Building
                                                 Hon. Dale. S. Fischer
26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   ARGUMENT ....................................................................... 3

    A.   Plaintiffs Adequately Plead Article III Standing Against Wal-Mart ............................................................................... 3

        1.   Exposure to the Hazardous Toys Is Sufficient to Establish Article III Standing ...................................... 5

        2.   Plaintiffs' Economic Harm Constitutes Injury in Fact ............ 7

    B.   Plaintiffs Have Stated UCL and CLRA Claims Against Wal-Mart ............................................................................... 9

        1.   The *Colorado River* Doctrine Does Not Preclude Plaintiffs' UCL Claims for Injunctive Relief ............................. 9

        2.   Plaintiffs' UCL and CLRA Claims Are Not Subject to Rule 9(b)'s Heightened Pleading Standards Because They Do Not Sound in Fraud .................................. 15

        3.   Plaintiffs Complied With CLRA's Notification Requirement........................................................... 19

    C.   Plaintiffs Have Adequately Plead Negligence as to Wal-Mart .......... 20

III.  CONCLUSION ................................................................... 21

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Allen v. Wright,*
        468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) ................................ 3

*Ashton v. Pierce,*
        541 F. Supp. 635 (D.D.C. 1982) ...................................................... 7

*Ass'n of Data Processing Service Org., Inc. v. Camp,*
        397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970) ................................... 4

*Brown v. Pacific Life Ins. Co.,*
        462 F.3d 384 (5th Cir. 2006) ......................................................... 11

*Carlough v. Amchem Prods., Inc.,*
        834 F. Supp. 1437 (E.D. Pa. 1993) ......................................... 3, 5, 6, 7

*Cole v. Gen. Motors Corp.,*
        484 F.3d 717 (5th Cir. 2007) ............................................... 6, 7, 8, 9

*Colorado River Water Conservation Dist. v. United States,*
        424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) ......................... *passim*

*Committee on Children's Television, Inc. v. General Foods Corp.,*
        35 Cal. 3d 197, 197 Cal. Rptr. 783 (Cal. 1983) ............................................ 17

*Crispin Co. v. Petrotub-S.A.,*
        No. CIV-05-159-C, 2006 WL 2812535 (W.D. Okla. 2006) ........................ 21

*Danvers Motor Co., Inc. v. Ford Motor Co.,*
        432 F.3d 286 (3d Cir. 2005) ........................................................... 7

*Daugherty v. Oppenheimer, Inc.,*
        No. C 06-7725 PJH, 2007 WL 1994187
        (N.D. Cal.  July 5, 2007) ..................................................... 10, 12, 14

*De Simas v. Big Lots Stores, Inc.,*
        No. C 06-6614 SY, 2007 WL 686638
        (N.D. Cal., Mar. 2, 2007) ........................................................ 12, 14

**Page**

*Dietz v. Comcast Corp.*,
No. 06-06352, 2006 WL 3782902
(N.D. Cal. December 21, 2006) ...................................................... 19

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*,
438 U.S. 59, 98 S. Ct. 2620, 57 L. Ed. 2d 595 .......................................... 5, 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ............................... 4

*FW/PBS, Inc. v. City of Dallas*,
493 U.S. 215, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) ........................... 8, 9

*Gonzalez v. Pepsico, Inc.*,
489 F. Supp. 2d 1233 (D. Kan. 2007) ........................................................ 6, 9

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271, 108 S. Ct. 1133, 99 L. Ed. 2d 296 (1988) ............................ 13

*Holder v. Holder*,
305 F.3d 854 (9th Cir. 2002) .......................................................... 11, 13, 15

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ...................................................................... 17

*In re Propulsid Prod. Liab. Litig.*,
208 F.R.D. 133 (E.D. La. 2002) ............................................................... 5, 6

*In re Verifone Sec. Litig.*,
11 F.3d 865 (9th Cir. 1993) .......................................................................... 8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
12 F.3d 908 (9th Cir. 1993) ................................................................. 11, 13

*Killeen v. Harmon Grain Prods. Inc.*,
413 N.E.2d 767 (Mass. App. Ct. 1980) .................................................... 21

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003) ........................................ 16

1

2                                                                                              **Page**

3    *Lujan v. Defenders of Wildlife,*

4            504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ............................ 4

5    *Mass. Mut. Life Ins. Co. v. Superior Court,*

6            97 Cal. App. 4th ..................................................................................... 18

7    *McConnell v. Fed. Election Comm'n,*

8            540 U.S. 93, 124 S. Ct. 619, 157 L. Ed. 2d 491 (2003) ................................ 7

9    *McKell v. Wash. Mut., Inc.,*

            142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (2006) .................................. 16

10   *McKinney v. U.S. Dept. of Treasury,*

11           799 F.2d 1544 (Fed. Cir. 1986) ................................................................... 7

12   *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*

13           460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ................. 10, 11, 13, 14

14   *Nakash v. Marciano,*

15           882 F.2d 1411 (9th Cir. 1989) ............................................................. 11, 13

16   *Payne v. Nat'l Collection Sys., Inc.,*

17           91 Cal. App. 4th 1037, 111 Cal. Rptr. 2d 260 (2001) ................................... 9

18   *People v. Garcia,*

19           98 Cal. App. 702, 277 P. 747 (1929) ..................................................... 10, 13

20   *People v. Mendez,*

            234 Cal. App. 3d 1773, 286 Cal. Rptr. 216 (1991) ................................. 10, 13

21   *Puck v. WP Pacific, Inc.,*

22           No. SA CV 06-1108 DOC, 2007 WL 2315952

23           (C.D. Cal., Jan. 17, 2007) .................................................................... 12, 13

24   *Regina Corp. v. F.T.C.,*

25           322 F.2d 765 (3d Cir. 1963) ....................................................................... 17

26   *Rivera v. Wyeth-Ayerst Labs,*

27           283 F.3d 315 (5th Cir. 2002) .................................................................... 6, 9

28

1
2                                                                                          **Page**

3  *S. Florida Water Mgmt. Dist. v. Montalvo,*
4        84 F.3d 1121 (11th Cir. 1996)........................................................................8

5  *Sanchez v. Wal-Mart Stores, Inc.,*
          No. 06-cv-2573, 2007 WL 1345706
6        (E.D. Cal. May 8, 2007) ............................................................................17

7
   *Sutton v. St. Jude Med. S.C., Inc.,*
8        419 F.3d 568 (6th Cir. 2006)................................................................4, 5, 7

9  *Taylor v. Jacobson,*
10       336 Mass. 709, 147 N.E.2d 770 (Mass. 1958).............................................17

11 *Travelers Indem. Co. v. Madonna,*
12       914 F.2d 1364 (9th Cir. 1990)....................................................................14

13 *True v. Am. Honda Motor Co., Inc.,*
          520 F. Supp. 2d 1175 (C.D. Cal. 2007)......................................................18
14

15 *Valley Forge Christian Coll. v. Americans United for Separation of
              Church & State, Inc.,*
16       454 U.S. 464, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)..................................4

17 *Vasquez v. Superior Court,*
18       4 Cal.3d 800, 94 Cal. Rptr. 796 (Cal. 1971) .............................................18

19 *Vess v. Ciba-Geigy Corp.,*
20       317 F.3d 1097 (9th Cir. 2003)....................................................................15

21 *Waterbury v. Safeway Inc.,*
          No. C 06-02073 JL, 2006 WL 3147687
22       (N.D. Cal. Oct. 31, 2006) ...................................................................12, 14

23
   *Williams ex. rel v. Gerber Prods. Co.*
24       523 F.3d 934, 939 (9th Cir. 2008)..............................................................18

25 *Whitmore v. Ark.,*
26       495 U.S. 149, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990)..............................4

27
28

Page

**STATUTES, RULES AND REGULATIONS**

California Business & Professions Code
§17200 ................................................................................... *passim*
§17204 ........................................................................................ 18

California Civil Code
§1760 ......................................................................................... 16
§1782(a) ..................................................................................... 19
§1782(d) ..................................................................................... 19

**RULES**

Federal Rules of Civil Procedure
Rule 8(a) .................................................................................... 16
Rule 9(b) ............................................................................... 15, 16
Rule 9(b) .................................................................................... 15

**SECONDARY AUTHORITIES**

13 C.A. Wright & A.  Miller, *Federal Practice & Procedure*
§3531.4 (2d ed. 2008) ................................................................. 7

63 Am. Jur. 2d *Products Liability*  (2008)
§88 ............................................................................................ 21

*Restatement (2d) of Torts*
§402 ........................................................................................... 20

*Util. Consumers' Action Network,*
No. 07-cv-2231, 2008 WL 1946859, at *7
(S.D. Cal. Apr. 25, 2008) ........................................................ 19

*California Jury Instructions (BAJI)*
§9.24 ......................................................................................... 20

Plaintiffs, by their attorneys, respectfully submit this memorandum in opposition to defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") motion to dismiss Plaintiffs' Second Consolidated Amended Complaint ("Complaint").[1]

## I.    INTRODUCTION

On or about August 1, 2007, Mattel, Inc. ("Mattel") announced a massive recall of approximately 1.5 million toys for lead paint contamination, one million of which was sold in the United States. *See* ¶5. Two weeks later, on or about August 14, 2007, Mattel announced the biggest recall in history, totaling over 18 million toys worldwide, over half of which were sold in the United States. ¶¶6, 13. The August 14 recalls included toys that contained lead paint as well as toys that contained small magnets which could cause serious internal injuries and death if two or more such magnets were swallowed and attracted each other inside a child's body.[2] *Id.*

Wal-Mart was one of the retailers who sold these Hazardous Toys. In light of the numerous recalls in recent years of toys manufactured in China, including numerous lead and magnet recalls by Mattel starting in November 2006, as well as the federal and state bans on hazardous substances, Wal-Mart should have exercised greater quality control and safety of its toys before putting them on its shelves. ¶¶85, 101. Furthermore, Wal-Mart's own products were involved in several early recalls involving Chinese-made products, including three recalls of toys containing toxic lead paint, in May 2007, October 2007 and April 2008. ¶88.

Despite Wal-Mart's knowledge of these recalls as well as the likelihood that young children would play with these Hazardous Toys, Wal-Mart represented to consumers that these toys complied with certain requirements and were safe, quality

---

[1]    All "¶" references herein are to the Complaint, unless otherwise noted.

[2]    As detailed in the Complaint, all the toys that have been recalled by Mattel, including the toys containing lead, lead paint, and small loose magnets, as well as the toy blood pressure cuff withdrawn from retail stores in December 2007 and those toys that contain lead in excess of applicable standards or unsafe magnets that have not yet been recalled, will be referred to herein as "Hazardous Toys."

and age-appropriate products. ¶¶71-72, 75. Moreover, Wal-Mart sold the Hazardous Toys and adopted the representations from the packaging that the toys were compliant with all federal safety standards, including industry standards such as ASTM-963.

Wal-Mart allowed the Hazardous Toys to be sold in its stores and online retail websites, along with the other Defendants, thereby exposing thousands, if not millions, of children to toxic lead paint and/or toys containing dangerous loose magnets. ¶15. As a result of Wal-Mart's conduct, Plaintiffs have been injured by their purchase or acquisition of defective products as well as their exposure to lead or handling of loose magnets. *Id*. Plaintiffs have also suffered injury for the purchase price of the Toys. *Id*. Accordingly, Plaintiffs and the Class brought this action to, *inter alia*, recover monies spent on the Toys and on diagnostic screening for children exposed to the Hazardous Toys. *Id.*

In its motion to dismiss, Wal-Mart argues that Plaintiffs fail to allege any "injury in fact" for Article III standing. Wal-Mart's argument is based on the false assumption that Plaintiffs need to allege a physical injury to satisfy Article III. However, the Supreme Court's and lower courts' jurisprudence hold otherwise. As detailed below, Plaintiffs have adequately alleged their exposure to the Hazardous Toys which constitutes sufficient "injury in fact." Additionally, Plaintiffs have suffered economic harm by paying for the purchase price of the Hazardous Toys and for diagnostic screening of their children. Wal-Mart also argues that Plaintiffs' negligence claims fail; however, Wal-Mart was on notice of the early recalls and should have exercised greater care in the sale of toys manufactured by Mattel thereafter. Furthermore, contrary to Wal-Mart's contention, the *Colorado River* doctrine does not preclude Plaintiffs' claims for restitution against Wal-Mart under Cal. Bus. & Prof. Code §17200 ("UCL").

As set forth in detail below, Plaintiffs' Complaint is replete with factual allegations that, if proven with the benefit of discovery, state claims against Wal-Mart for the following: (1) breach of express warranty; (2) breach of implied warranty;

1  (3) negligence; (4) strict liability; (5) violations of the Consumer Product Safety Act

2  ("CPSA") and Consumer Product Safety Rules; (6) violations of the UCL;

3  (7) violations of the California Legal Remedies Act ("CLRA"); (8) violations of the

4  Song-Beverly Consumer Warranty Act; and (9) unjust enrichment.  Accordingly, Wal-

5  Mart's motion to dismiss should be denied in its entirety.[3]

6  **II.    ARGUMENT**

7        **A.    Plaintiffs Adequately Plead Article III Standing Against
            Wal-Mart**

8

9        Wal-Mart's motion focuses primarily on its erroneous assertion that Plaintiffs

10 lack standing to pursue their claims.  Notably, Wal-Mart's challenge is limited only to

11 whether Plaintiffs have suffered an injury-in-fact.  *See* Defendant Wal-Mart Stores,

12 Inc.'s Memorandum of Points and Authorities in Support of Its Motion to Dismiss

13 Plaintiffs' Second Consolidated Amended Complaint ("WM Mem.") at 2-9.  Thus, as

14 explained below, Plaintiffs' well-plead allegations easily satisfy this requirement.

15        Standing is satisfied if plaintiff has a "'personal stake in the outcome of the

16 controversy.'"  *Carlough v. Amchem Prods., Inc.*, 834 F. Supp. 1437, 1446 (E.D. Pa.

17 1993).  The Supreme Court has repeatedly held that a plaintiff has the requisite

18 personal stake if she can show: (1) she personally suffered a concrete injury in fact

19 ("injury in fact" requirement); (2) the injury is fairly traceable to the challenged

20 conduct ("traceability" requirement); and (3) the injury is likely to be redressed by a

21 favorable decision ("redressability" requirement).  *See Carlough*, 834 F. Supp. at

22 1455, 1446 (citing *Allen v. Wright,* 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d

23 556 (1984)).  Here, Wal-Mart primarily challenges the first of these components of

24 standing.

25

26

27 [3]    Plaintiffs hereby incorporate by reference their opposition to the remaining
   defendants' motion to dismiss, including all relevant arguments, the statement of facts,
28 and applicable legal standards.

- 3 -

1   To show an injury in fact, the plaintiff must allege an injury that is "concrete

2   and particularized" and actual *or* imminent.  *See Friends of the Earth, Inc. v. Laidlaw*

3   *Envtl. Servs., Inc.,* 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

4   Wal-Mart argues Plaintiffs have not alleged an injury in fact because Plaintiffs did not

5   allege a ***physical*** injury.  In so doing, Wal-Mart entirely ignores Plaintiffs' economic

6   injury (*see* ¶¶15, 130) and the exposure to the Hazardous Toys (*see* ¶¶14-32, 45-49).

7   As demonstrated below, Wal-Mart's argument fails.[4]

8   Plaintiffs here have adequately alleged two types of injury sufficient to show

9   injury in fact and to confer standing: (1) increased risk of harm due to their children's

10   exposure to lead, a significant and medically known toxic substance, and dangerous

11   loose magnets; and (2) economic harm from the purchase of a hazardous and defective

12   product.[5]  *See* ¶¶15, 51.

13

_____

14   [4]   Wal-Mart also imposes a non-existent evidentiary standard that Plaintiffs prove
     their claims. However, in *Ass'n of Data Processing Service Org., Inc. v. Camp*, 397
15   U.S. 150, 152-53, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970), the Supreme Court adopted
     the "injury in fact" test for Article III standing. Since *Camp*, the Supreme Court has
16   repeatedly confirmed that standing focuses on the party "'seeking to get his [or her]
     complaint before a federal court and ***not on the issues [s/]he wishes to have***
17   ***adjudicated***.'" *Valley Forge Christian Coll. v. Americans United for Separation of*
     *Church & State, Inc.,* 454 U.S. 464, 484, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982).  In
18   other words, Article III standing "'in no way depends on the merits of the [plaintiff's
     claim].'" *Whitmore v. Ark.,* 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L. Ed. 2d 135
19   (1990).  Moreover, the latter question is not for the motions to dismiss stage.  *See*
     *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351
20   (1992) (holding that general factual allegations of injury resulting from the defendants
     suffice at the pleading stage); *Sutton v. St. Jude Med. S.C., Inc.,* 419 F.3d 568, 561
21   (6th Cir. 2006) (general factual allegations may be sufficient to show standing when
     assessing the issue on a motion to dismiss).
22

23   Citations and footnotes are omitted and emphasis is added throughout unless
     otherwise noted.

24   [5]   Wal-Mart makes the unsupported argument that Plaintiffs admit they do not
     know whether any of them or any of their respective children have in fact been
25   injured.  WM Mem at 7.  The factual allegations of the complaint show otherwise.
     *See* ¶¶15, 16-32, 45-49. Wal-Mart also misrepresents Plaintiffs' allegations.  For
26   instance, Plaintiffs do not allege that they are at "risk" of lead exposure (*see* WM
     Mem. at 8); rather, Plaintiffs expressly allege that have been exposed to lead. *See*
27   ¶¶16-32. The Prayer for Relief seeking the costs of initial screening and diagnosis and
     treatment costs for those who screen positive for blood-lead levels do not negate these
28

- 4 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1. Exposure to the Hazardous Toys Is Sufficient to Establish Article III Standing

Wal-Mart does not, nor can it, dispute that lead is toxic and dangerous (even more so to children) and that it can lead to serious health problems. ¶¶45-49. Indeed, courts have repeatedly held that exposure to toxins, including lead-based paint as in this case, is sufficient to confer Article III standing, even without physical symptoms of injury and even though the exposure may not provide sufficient ground for a claim under state tort law. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 73-74, 98 S. Ct. 2620, 57 L. Ed. 2d 595 (holding that ***future*** exposure to radiation from two nuclear power plants under construction constituted injury in fact); *In re Propulsid Prod. Liab. Litig.,* 208 F.R.D. 133, 139 (E.D. La. 2002) (plaintiff who formerly used heartburn drug causing irregular heartbeats in some users but who had not yet developed such injury faced increased risk of harm and had alleged injury in fact for standing purposes); *see generally Sutton*, 419 F.3d at 574 ("'[C]ourts have long recognized that an increase risk of harm . . . is an injury-in-fact.'").

In fact, in *Carlough*, the plaintiffs filed a suit against defendants for exposure to asbestos. 834 F. Supp. 1437. The court certified, for settlement purposes, a class of people who had been exposed to asbestos or asbestos containing products either occupationally themselves or through the occupational exposure of a spouse or household member. *Id.* at 1445. Certain objectors opposed the settlement on the ground that a number of the class members had not sustained an "injury in fact" because they did not manifest any asbestos-related condition. *Id.* at 1447. However, the court rejected this argument, stating that exposure to a toxic substance constituted sufficient injury-in-fact to provide standing in federal court. *Id.* at 1454. According to the court:

---

allegations. Simply because someone has not manifested any physical symptoms does not mean that they were not exposed to a toxic chemical.

- 5 -

1  [T]he weight of recognized medical research on asbestos-related diseases
2  shows that exposure to asbestos causes immediate cellular damage. And,
3  only those who have been exposed to asbestos are members of the
4  plaintiff class. They have been personally affected by defendants'
5  conduct in a concrete and particular way whether or not they ever
6  develop a serious medical condition. This is exactly the type of personal
7  stake the Article III injury-in-fact requirement demands.

8  *Id.* at 1455.

9      Similarly, here, Plaintiffs allege that the toys they bought from Defendants,
10 including Wal-Mart, contained toxic lead, thereby exposing their children to a hazardous
11 substance because even very low levels of exposure can result in reduced IQ, learning
12 disabilities, attention deficit disorders, behavioral problems, stunted growth, impaired
13 hearing, and kidney damage. *See* ¶¶42-49. Plaintiffs further allege that there is "no safe
14 level of lead exposure." ¶47. These are not merely conjectural, hypothetical speculative
15 or abstract claims. *See, e.g.*, *Duke Power*, 438 U.S. at 74.

16     Furthermore, the alleged facts, which must be taken as true, demonstrate that
17 Plaintiffs have standing to assert claims against Wal-Mart as they have been
18 personally affected – they brought these dangerous toys that were marketed by Wal-
19 Mart as safe into their households and lives of their young children, and they now face
20 increased risk of health problems as a result.

21     Wal-Mart's attempt to distinguish this case from other toxic exposure cases
22 where Article III standing was found is unpersuasive. Like those cases, plaintiffs here
23 have also alleged they are at imminent risk of harm from the exposure to Hazardous
24 Toys. Plaintiffs' children need not have manifested any physical injuries or have
25 continued exposure to have standing.[6] *See Duke Power, supra*; *In re Propulsid*,

26 _____

27 [6]    *See* discussion of *Rivera*, *Gonzalez* and *Cole*, *infra*, n.12.

28

- 6 -

1    *supra*; *Carlough*, *supra*.  Moreover, *Sutton* and *Ashton* cited by Wal-Mart, do not

2    restrict standing in this manner.[7]

### 2.    Plaintiffs' Economic Harm Constitutes Injury in Fact

4    Economic injuries are also sufficient to demonstrate injury in fact for purposes

5    of Article III standing.  *See Danvers Motor Co., Inc. v. Ford Motor Co.,* 432 F.3d 286,

6    293 (3d Cir. 2005) (stating that damages constitute injury in fact); 13 C.A. Wright &

7    A. Miller, *Federal Practice & Procedure* §3531.4 (2d ed. 2008) (stating that standing

8    should always exist to claim damages).  Here, all Plaintiffs have suffered economic

9    injuries in their purchase of defective and dangerous toys and/or cost of diagnostic

10   screening for their children.  *See* ¶15.  This is sufficient.

11   In *Cole v. Gen. Motors Corp.*, 484 F.3d 717 (5th Cir. 2007), plaintiffs alleged a

12   defect in their vehicles which caused the side impact air bags to deploy unexpectedly

13   during normal driving.  General Motors argued that because the air bags in plaintiffs'

14   vehicles never deployed inadvertently, they did not suffer injury in fact.  *See id.* at 722.

15   The Fifth Circuit rejected the argument, noting plaintiffs had alleged the air bag

16   components were defective at the moment of purchase.  *See id.*  The court held "it is

17   sufficient for standing purposes that the plaintiffs seek recovery for an economic harm

18   that they allege they have suffered."  *Id.* at 723.  The same reasoning applies here.[8]

19

20

21   [7]    *Sutton,* 419 F.3d at 570-75 (finding standing for persons implanted with
defective device that increased the risk of developing health problems); *Ashton v.*
22   *Pierce*, 541 F. Supp. 635, 637 (D.D.C. 1982) (finding standing for persons who were
exposed to a risk of lead poisoning as a result of lead based paint in public housing).

23   [8]    Wal-Mart makes the unpersuasive argument that to the extent Plaintiffs choose
24   not to participate in the recall, there is no basis to support Article III standing because
the harm is not traceable to Wal-Mart's conduct.  *See* WM Mem. at 6-7 n.4, 8 n.6.  In
25   *Cole,* General Motors recalled the defective air bag components and offered
replacements, yet the Fifth Circuit nevertheless held that the plaintiffs had standing.
26   *See id.*, 484 F.3d at 719.  Similarly here, Plaintiffs also have standing to pursue
damages for their economic harm.  Reimbursement of the money Plaintiffs spent on
27   the defective toys is traceable to Defendants.  Therefore, Wal-Mart's reliance on
*McConnell v. Fed. Election Comm'n,* 540 U.S. 93, 124 S. Ct. 619, 157 L. Ed. 2d 491
28   (2003), and *McKinney v. U.S. Dept. of Treasury,* 799 F.2d 1544 (Fed. Cir. 1986), is

1    Plaintiffs spent money on products that were not only worthless and defective,[9]

2    but dangerous and hazardous at the time of purchase contrary to Defendants'

3    representations that they were safe for their children. As a result, Plaintiffs seek

4    reimbursement for amounts paid for the defective toys. *See* Prayer for Relief.

5    As in *Cole*, Plaintiffs' factual allegations are not conclusory; Plaintiffs have

6    specifically alleged that they were harmed because they bought toys that were

7    defective at the time of purchase; they have also specifically alleged how and why the

8    toys were defective. *See* ¶¶15, 50-51, 124, 130 & 186. Such allegations support their

9    claims for economic harm.[10] In determining whether plaintiffs have standing, the

10   question is not whether they state valid claims for economic harm, but whether they

11   have a personal stake in this litigation. Unlike the circumstances in *FW/PBS, Inc. v.*

12   *City of Dallas,* 493 U.S. 215, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990), also relied on

13

14

15

---

16   misplaced. None of these cases involved defective products or the type of factual allegations here.

17   [9]    One of Wal-Mart's themes seems to be that the toys are only defective if the

18   tiny magnets are swallowed. *See* WM Mem. at 5-6. This argument is nonsensical. The toys containing magnets were recalled because their design, which Mattel

19   admitted was "flawed" (*see* ¶131), was dangerous to children. Children for whom these toys were designed and manufactured for do not know that they are not

20   supposed to put the magnets in their mouths. That is why consumers were advised to immediately remove the toys from their children.

21   [10]   Wal-Mart's reliance on *S. Florida Water Mgmt. Dist. v. Montalvo*, 84 F.3d 1121

22   (11th Cir. 1996), and *In re Verifone Sec. Litig.,* 11 F.3d 865 (9th Cir. 1993), is misplaced. None of these cases involved defective products or issues relating to

23   Article III standing but instead focused on whether the plaintiffs in those cases stated claims for violations of applicable federal statutes. In contrast here, the question is

24   one of standing, namely, whether Plaintiffs have a personal stake in this litigation as opposed to merely being members of the interested public. They clearly do, as in

25   *Cole.*

26

27

28

1    by Wal-Mart, it is clear that they do.[11]  Accordingly, Wal-Mart's arguments should be

2    rejected.[12]

3    　　　Plaintiffs have shown standing for their claims and their requests for relief.

4    Wal-Mart's Article III standing argument should be rejected.

5    　　**B.    Plaintiffs Have Stated UCL and CLRA Claims Against Wal-Mart**

6

7    　　　　**1.    The *Colorado River* Doctrine Does Not Preclude Plaintiffs' UCL Claims for Injunctive Relief**

8    　　　Wal-Mart does not contest that Plaintiffs' §17200 claim for ***restitutionary*** relief

9    will proceed in this MDL action.[13]  But, Wal-Mart nevertheless argues that Plaintiffs'

10    §17200 claim for ***injunctive*** relief should be dismissed (or stayed) during the

11

12    _____

13    [11]    　　In *FW/PBS*, the Supreme Court found that the petitioners had no standing to challenge certain provisions of ordinances prohibiting licenses for sexually orientated businesses to criminal convicts because they had not shown that they had the specified criminal records, among other things.  *See id.* 493 U.S. at 216, 231-36.

14

15    [12]    　　Wal-Mart's arguments and citations to the contrary are off the mark.  In *Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315 (5th Cir. 2002), the plaintiffs alleged that Wyeth failed to warn them its prescription painkiller could cause liver damage.  The Fifth Circuit held that the plaintiffs did not have standing to sue for economic harm because the plaintiffs failed to allege (1) physical or emotional injury; (2) that the drug was ineffective; or (3) that the drug had future health consequences.  *See id.* at 320.  In other words, the plaintiffs there did not have a personal stake in the litigation because they were not among those injured.  *See id.*  In contrast here, Plaintiffs Probst and Rusterholtz have expressly alleged that the toys were defective at the time of purchase because they contained small magnets that were not locked in; that Mattel has admitted to a design flaw; that magnets have been named the number one danger by the CPSC; and that toys at issue have already resulted in the physical injury of three children.  *See* ¶¶50-51, 186.  In any event, *Rivera* has no application where plaintiffs have pled a contract claim and seek contract damages, or have pled a statutory claim and seek remedies authorized by the relevant statute.  *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1241 n.7 (D. Kan. 2007) (injury in fact and Article III satisfied and *Rivera* has no application where plaintiffs allege economic injury resulting from the difference between the purchase price of beverages and "their actual value considering the potential presence of benzene in those products.").  *Id.* at 1241 & n.7.  As discussed above, the Fifth Circuit itself recognized this limitation on its *Rivera* decision in *Cole*, 484 F.3d at 722-23.

16

17

18

19

20

21

22

23

24

25

26    [13]    　　Wal-Mart acknowledges that such claims are not barred by the resolution of similar claims by the Attorney General.  WM Mem. at 21 n.24 (citing *Payne v. Nat'l Collection Sys., Inc.*, 91 Cal. App. 4th 1037, 1045-46, 111 Cal. Rptr. 2d 260 (2001)).

27

28

1    pendency of an Attorney General action against it and other Defendants.  *See* WM

2    Mem. at 20-24.

3         Wal-Mart does not offer any cogent reason why the Court should stay the

4    §17200 claim as to one particular form of relief (injunctive) while the §17200 claim is

5    unquestionably moving forward as to another form of relief (restitutionary).  Wal-

6    Mart thus fails to demonstrate the sort of "exceptional circumstances" required for

7    abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S.

8    800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976); *id.* at 819 ("Only the clearest of

9    justifications will warrant dismissal.").

10        The *Colorado River* doctrine does of course allow the Court to surrender

11   jurisdiction based upon a "careful balancing" of several well-established factors,

12   "'with the balance heavily weighted in favor of exercising jurisdiction.'"  *Daugherty*

13   *v. Oppenheimer, Inc.*, No. C 06-7725 PJH, 2007 WL 1994187, at *2 (N.D. Cal. July

14   5, 2007) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

15   16, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)); *see also Colorado River*, 424 U.S. at 817

16   (federal courts have a "virtually unflagging obligation … to exercise the jurisdiction

17   given to them" and abstention is only "an extraordinary and narrow exception").

18   However, this is not such an action.

19        At the outset, Wal-Mart must demonstrate the two actions are "parallel."  They

20   are not. The state court action, *State v. Mattel* (Declaration of Michael D. Abraham in

21   Support of Wal-Mart Stores Motion to Dismiss ("Abraham Decl.") Ex. 1), is brought

22   in the name of the "People of the State of California" – that is, the State itself as a

23   political entity, not as some kind of ersatz class action as Wal-Mart implies. California

24   courts have specifically held that, in litigation, the party "People of the State of

25   California" refers to the State itself, not the individual citizens thereof.  *See, e.g.,*

26   *People v. Garcia*, 98 Cal. App. 702, 703, 277 P. 747 (1929); *People v. Mendez*, 234

27   Cal. App. 3d 1773, 1783, 286 Cal. Rptr. 216 (1991).  Thus, there is no overlap

28   whatever between the plaintiffs in this instant action – 18 parents on behalf of

1    themselves and those similarly situated – and the single plaintiff in the state court

2    action, the State of California.  The complete lack of any common plaintiffs is fatal to

3    Wal-Mart's assertion that the state and federal actions are "parallel."  *See, e.g., Brown*

4    *v. Pacific Life Ins. Co.,* 462 F.3d 384, 395 n.7 (5th Cir. 2006) (parallel means "'the

5    same parties and the same issues'").

6         Further, the majority of toys at issue in the instant action were subject to magnet

7    recalls, which the State case does not involve.  In *Nakash v. Marciano*, 882 F.2d 1411,

8    1416 (9th Cir. 1989), the Ninth Circuit formulated the parallelism test for this Circuit

9    as one of "'substantial[] similar[ity].'"  The *Nakash* Court found substantial similarity

10   existed when "all" of the federal parties were named in the state suit, and the only

11   difference was whether all the parties' corporate entities were named.  *Id.* at 1416-17.

12   Here, there is **no** overlap between plaintiffs in the two actions.

13        Even if the two actions were parallel – which they are not – application of

14   *Colorado River* is inappropriate because the state court action will not resolve the

15   federal action completely.  *Moses H. Cone*, 460 U.S. at 28.  The Ninth Circuit has

16   expressly held that if the state court action will not **completely resolve** the federal

17   action, that is dispositive.  *See Holder v. Holder*, 305 F.3d 854, 868 (9th Cir. 2002),

18   and *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

19   As the dismissal Wal-Mart seeks is only one remedy for one cause of action, dismissal

20   must be denied under *Moses H. Cone*, *Holder*, and *Intel*.

21        Finally, Wal-Mart cannot meet the "'exceptional circumstances'" test.  *Holder*,

22   305 F.3d at 868, 870 (listing seven non-exclusive factors including: (1) whether state

23   court first assumed jurisdiction over property; (2) inconvenience of federal litigation;

24   (3) the desire to avoid piecemeal litigation; (4) order in which jurisdiction was

25   obtained; (5) whether federal or state law provides the rule of decision on the merits;

26   (6) whether state court proceedings inadequately protect federal litigants' rights; and

27   (7) whether exercising jurisdiction would promote forum shopping).  Factor one is

28   immaterial as this is not an *in rem* action.  There is no evidence adduced by Wal-Mart

1    that the state action pending in Alameda County would be more convenient than the

2    Central District's Western Division in Los Angeles, so factor two is immaterial.

3    Factor three (avoiding piecemeal litigation) also has no bearing because Wal-Mart is

4    only concerned about the remedy of injunctive relief, and the §17200 claim will have

5    to be litigated in both courts no matter the decision on the injunctive relief remedy.

6    Factor five is immaterial because, while §17200 is a state law claim, the Attorney

7    General claim in the state law complaint that §17200 was violated because products

8    were sold in violation of the U.S. Consumer Product Safety Act – thus implicating

9    both state and federal law.  Factor six weighs in favor of continued federal jurisdiction

10    and ***against*** Wal-Mart because, as noted above, the state court action does not even

11    seek restitutionary relief and is thus inadequate to fully protect the rights of the

12    nationwide class of federal plaintiffs.  Factor seven, forum shopping, is completely

13    irrelevant as the federal forum was selected by the Judicial Panel on Multi-District

14    Litigation and not by the parties.  For these reasons, this action is hardly the unusual

15    and exceptional case envisioned by the Supreme Court in *Colorado River*.

16           Indeed, while the particular circumstances of other cases may counsel in favor

17    of a stay,[14] it is not enough for Wal-Mart to argue (as it primarily does here) that a stay

18    is warranted merely because the subject matter of the Attorney General's action is

19    "substantially similar" to that of the Plaintiffs' action, for substantial similarity is

20

21

22

---

23    [14]    That can be the case, for example, when the earlier-filed state court action is

24    significantly more progressed, such as advanced in discovery or pretrial motion
practice. *See, e.g., Daughtery*, 2007 WL 1994187, at *4; *De Simas v. Big Lots Stores,*

25    *Inc.*, No. C 06-6614 SY, 2007 WL 686638, at *6 (N.D. Cal., Mar. 2, 2007) (same);
*Puck v. WP Pacific, Inc.*, No. SA CV 06-1108 DOC, 2007 WL 2315952, at *4 (C.D.

26    Cal., Jan. 17, 2007); *Waterbury v. Safeway Inc.*, No. C 06-02073 JL, 2006 WL
3147687, at *3 (N.D. Cal. Oct. 31, 2006).  None of these cases involved situations

27    where (as here) the underlying claim will admittedly proceed in any event in the
federal court.

28

- 12 -

1   simply the threshold for the Court's discretionary application of *Colorado River*'s
2   balancing test.[15]   *See* WM Mem. at 23; *see, e.g., Puck*, 2007 WL 2315952, at *2-*3.

3           Here, the factor Wal-Mart emphasizes most – avoiding piecemeal litigation –
4   does not warrant a stay because the restitutionary §17200 claim will proceed
5   uncontested in this MDL litigation.  WM Mem. at 23.  To sever and stay but one form
6   of relief for a claim that will nevertheless proceed will engender, not avoid, piecemeal
7   litigation.[16]   *Intel*, 12 F.3d at 913 (a district court abuses its discretion if it grants a stay
8   under *Colorado River* and "***there is any substantial doubt***" as to whether "the parallel
9   state proceeding will end the litigation") (citing *Moses H. Cone*, 460 U.S. at 28)
10  (emphasis in original).

11          Moreover, Wal-Mart's assertion that the Attorney General hopes to secure
12  "consent judgments" to resolve the matter only suggests future contingencies, which
13  at best only supports the need for coordinated proceedings to avoid piecemeal
14  ***settlements***, not dismissal or a stay.  WM Mem. at 23; *see Intel*, 12 F.3d at 913 ("a
15  district court may enter a *Colorado River* stay order only if it has 'full confidence' that
16  the parallel state proceeding will end the litigation") (quoting *Gulfstream Aerospace*
17  *Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277, 108 S. Ct. 1133, 99 L. Ed. 2d 296
18  (1988)).

19  _____

20  [15]        In *Nakash*, the Ninth Circuit found substantial similarity existed when "all" of
    the federal parties were named in the state suit.  882 F. 2d at 1416.  Here, the state
21  court action, *State v. Mattel* (Abraham Decl., Ex. 1), is brought in the name of the
    "People of the State of California" – that is, the State itself as a political entity, not as
22  some kind of ersatz class action as Wal-Mart implies.  California courts have
    specifically held that in litigation, the party "People of the State of California" refers
23  to the State itself, not individual citizens thereof.  *See, e.g.,. Garcia*, 98 Cal. App. at
    703; *Mendez*, 234 Cal. App. 3d at 1783.
24

25  [16]        For that reason, application of *Colorado River* is plainly inappropriate because
    the state court action will not ***completely resolve*** the federal action.  *See Moses H.*
26  *Cone*, 460 U.S. at 28; *see also Holder*, 305 F. 3d at 868 (requiring a finding that state
    court action will completely resolve the federal action); *Intel*, 12 F.3d at 913 (same).
27  As Wal-Mart only seeks one remedy for one cause of action, dismissal must be
    denied.
28

1    Other *Colorado River* factors mitigate against a stay as well. Here the state

2    court proceeding is not adequate to protect all the rights of the plaintiff consumer class

3    because the State Attorney General's complaint is only on behalf of the People of the

4    State of California. *See Moses H. Cone*, 460 U.S. at 25-27. Also, the state court

5    proceedings do not include the §17200 claim for restitutionary relief. And no one can

6    suggest that these MDL proceedings, consolidated for pretrial purposes, at the behest

7    of Mattel, is somehow an instance of forum shopping. *See Travelers Indem. Co. v.*

8    *Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990). Finally, the significance of

9    differences in filing dates is lost here because Wal-Mart cannot say that discovery has

10   further advanced in the state court action. *Moses H. Cone*, 460 U.S. at 21 ("[P]riority

11   should not be measured exclusively by which complaint was filed first, but rather in

12   terms of how much progress has been made in the two actions."); *Travelers*, 914 F.2d

13   at 1370 (same).

14   The *Colorado River* factors are to be applied in a "pragmatic" manner, "with a

15   view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21. Given the

16   realities of this litigation, the Court should not stay (and certainly should not dismiss)

17   Plaintiffs' §17200 claims for injunctive relief simply because they may overlap to

18   some yet-to-be determined degree with the injunctive relief sought by the Attorney

19   General for lead toys, but not for the magnet toys.[17]  Instead, the parallel claims for

20   injunctive relief should proceed, albeit in a coordinated fashion, to ensure the most

21   comprehensive relief for all California purchasers of the Toys. *Colorado River*, 424

22   U.S. at 817.

23

24

---

25   [17]    *See, e.g., Daugherty*, 2007 WL 1994187, at *3 (when applying the *Colorado
26   River* doctrine, a stay is preferable to dismissal, in the event the state forum proves
     inadequate) (citing *Colorado River*, 424 U.S. at 818-19); *accord De Simas*, 2007 WL
27   686638, at *6 (staying rather than dismissing claim); *Waterbury*, 2006 WL 3147687,
     at *3 (same).

28

- 14 -

1    In sum, Wal-Mart asks this court to carve out one remedy from one cause of

2    action for one defendant pursuant to *Colorado River*, despite: (1) being unable to

3    show the state and federal actions are parallel; (2) the fact that this MDL action

4    encompasses a nationwide class of consumers whereas the state action does not;

5    (3) being unable to show the state action would completely resolve the federal one;

6    and (4) having all seven *Holder* factors either neutral or weighing against them. Wal-

7    Mart's argument is meritless, and this Court should continue to exercise its

8    jurisdiction over all the claims asserted in this case.

9       **2.    Plaintiffs' UCL and CLRA Claims Are Not Subject to
            Rule 9(b)'s Heightened Pleading Standards Because
10          They Do Not Sound in Fraud**

11    Wal-Mart mistakenly argues that Rule 9(b)'s pleading requirements govern

12    Plaintiffs' UCL and CLRA claims.[18]  *See* WM Mem. at 14-16.[19]  However, as

13    explained in Plaintiffs' opposition to Mattel's motion to dismiss, Rule 9(b) does not

14    apply to Plaintiffs' UCL and CLRA claims.  *See* discussion in Plaintiffs'

15    Memorandum in Opposition to Motion by Mattel, *et al.*, to Dismiss Plaintiffs'

16    Complaint ("Pltfs' Opp. to Mattel MTD") at §IV.E.1.

17    In fact, Wal-Mart fails to point to a single allegation in the Complaint that

18    sounds in fraud.  Plaintiffs' UCL-related facts and allegations include that Defendants

19    were negligent, violated contractual duties and violated public policies, but nowhere

20    do Plaintiffs allege that Defendants are guilty of common law fraud or misconduct

---

[18]    Wal-Mart's statement that "claims grounded in fraud *or* misrepresentation must satisfy . . . 9(b)" is misleading and a gross overstatement.  In fact, *Vess*, the case Wal-Mart cites for its incorrect proposition held that because certain misrepresentations regarding Ritalin were not part of conspiracy allegations, did not utilize the word "fraud," did not constitute fraud, and because they did not "rely entirely on a unified fraudulent course of conduct," they were not "grounded in fraud" and need not satisfy Rule 9(b).  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105-06 (9th Cir. 2003).

[19]    Having only challenged the Complaint's "17200 and 17500 claims against Wal-Mart based on misrepresentation," Wal-Mart implicitly concedes the adequacy of Plaintiffs' unlawful allegations pursuant to §17200.  WM Mem. at 14.

1  grounded in such a theory.  Thus, Counts Seven (UCL) and Nine (CLRA) are subject

2  to Rule 8(a)'s "notice pleading requirements," not Rule 9(b).[20]  *See id.*

3      Further, contrary to Wal-Mart's suggestion, the retailer has both failed to

4  disclaim the Manufacturer Defendants'[21] misrepresentations and made additional

5  affirmative misrepresentations that the Hazardous Toys were safe, age-appropriate,

6  and complied with relevant laws.  ¶¶71, 75.[22]  Wal-Mart has also failed to disclose

7  what it knew or should have known – that the Hazardous Toys were defective.  ¶¶85,

8  88, 204, 211-212, 293. Each case cited by Wal-Mart misses the mark by focusing on

9  the adoption and aiding and abetting of common law fraud – something plaintiffs have

10  not alleged.  Quite the contrary, plaintiffs allege where Wal-Mart knew or should have

11  known of the hazardous nature of the toys, that, unless expressly disclaimed, Wal-

12  Mart is responsible for the warranties made by the Manufacturer Defendants.  ¶¶71,

13  82, 249, 270.  In analyzing precisely this issue, one court rendered the following

14  logical determination:

15         As a practical matter, when a retail druggist sells (without express

16         warranties or representations of his own) one of the many thousand

---

17

18  [20]    By arguing that Rule 9(b) applies only to the §17200 and CLRA claims, Wal-
Mart implicitly concedes the remainder of the Complaint is governed by notice
19  pleading requirements.

20  [21]    "Manufacturer Defendants" are Mattel and Fischer-Price.

21  [22]    Wal-Mart's argument is extremely narrow, but in fact the "scope of conduct
covered by the UCL is broad."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.
22  4th 1134, 1144, 131 Cal. Rptr. 2d 29 (2003); *see also* Cal. Civ. Code §1760 (The
CLRA "shall be liberally construed and applied to promote its underlying purposes,
23  which are to protect consumers against unfair and deceptive business practices.").
Wal-Mart only attacks the sufficiency of what it describes as Plaintiffs' fraudulent
24  adoption allegations.  But, as fully explained in the Mattel Defendants' Opposition,
each of the defendants, including Wal-Mart, violated each of the UCL's four distinct
25  "prongs:" (1) unfair conduct; (2) unlawful conduct; (3) fraudulent conduct; and (4)
false advertising and the CLRA.  A business practice need only meet one of the
26  prongs to violate the UCL.  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471,
49 Cal. Rptr. 3d 227 (2006).  Wal-Mart cannot collapse these distinct legal claims into
27  one to try to persuade the Court that Rule 9(b) applies to the entirety of the UCL and
CLRA counts and averments.  WM Mem. at 14-16.

28

1   manufactured products in his stock in trade, which has been asked for by

2   trade name, it is a necessary inference that he adopts as his own any

3   cautionary statements, disclaimers and limitations of warranties made

4   (on the package and in accompanying circulars) by the manufacturer

5   who best knows the infirmities of his product.

6   *Taylor v. Jacobson*, 336 Mass. 709, 774, 147 N.E.2d 770 (Mass. 1958).

7       Despite its opportunity to do so, Wal-Mart did not disclaim the express and

8   implied representations that the Hazardous Toys were safe and age-appropriate.[23]  In

9   fact, Wal-Mart, like the other retailers, contributed towards the cost of the misleading

10  advertisements by publicizing the misrepresentations in their stores, periodicals, and

11  websites. ¶71; *Regina Corp. v. F.T.C.*, 322 F.2d 765, 768 (3d Cir. 1963).  Under these

12  circumstances, where Wal-Mart has not taken its opportunity to disclaim the

13  misrepresentations and has in fact spent money to publicize the misrepresentations,

14  Wal-Mart is responsible for the misrepresentations on the packaging and labels.[24]

15

16

_____

17  [23]     The thrust of Wal-Mart's argument is that there is no precedent for naming

18  retailers in UCL and CLRA actions, when the central misrepresentations are stamped
    on the at-issue product packaging and labeling.  Not true.  A defendant in the seminal

19  California Supreme Court case on the pleading requirements for UCL and CLRA false
    advertising, *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.

20  3d 197, 197 Cal. Rptr. 783 (Cal. 1983), was the grocer Safeway.  As the ultimate
    retailer, Safeway was alleged to be responsible for fraudulent, misleading and

21  deceptive advertising of sugared breakfast cereals manufactured by defendant General
    Foods Corporation and marketed by two advertising agencies.  *Id.* at 204; *see also*

22  *Sanchez v. Wal-Mart Stores, Inc.*, No. 06-cv-2573, 2007 WL 1345706 (E.D. Cal.
    May 8, 2007) (retailer Wal-Mart alleged to have violated the UCL and CLRA in the

23  sale of defective strollers manufactured and warranted by co-defendant Dorel Juvenile
    Group, Inc.).

24  [24]     Wal-Mart also argues that liability requires participation under the UCL for

25  aiding and abetting in and control over the underlying unfair act.  WM Mem. at 18
    (quoting *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995-96 (9th Cir. 2006)).

26  Although Plaintiffs have alleged such facts *vis-à-vis* the Retailer Defendants,
    including Wal-Mart, *First Alliance* does not actually require that level of participation.

27  ¶71.  In fact, the Ninth Circuit stated there is "reason to think that the [UCL] is
    broader" than requiring personal participation or unbridled control.  *Id.* at 996.

28

- 17 -

1   Moreover, courts have "recognized that whether a business practice is deceptive
2   will usually be a question of fact not appropriate for decision on demurrer." *Williams*,
3   523 F.3d at 939.  The defendant in *Williams* manufactured a product called "Fruit
4   Juice Snacks," which in alleged violation of the UCL and CLRA actually contained no
5   juice from any of the fruits on the packaging.  *Id.* at 936.  Given that the product was
6   called "Fruit Juice Snacks" and the packaging included pictures of fruits, the Ninth
7   Circuit reversed the district court's decision to grant defendant's motion to dismiss
8   and stated that "[t]he facts of this case . . . do not amount to the rare situation in which
9   granting a motion to dismiss is appropriate" and the features of the packaging "could
10  likely deceive a reasonable consumer."  *Id.* at 939.

11  Wal-Mart also asserts that Plaintiffs lack standing under the UCL.  WM Mem.
12  at 19.  However, §17204 of the UCL merely requires that a plaintiff "has suffered
13  injury in fact and has lost money or property as a result of the unfair competition."
14  Cal. Bus. & Prof. Code §17204.  Contrary to Wal-Mart's contention, the Complaint
15  expressly states that, as a result of Defendants' unfair, fraudulent, unlawful and false
16  advertising conduct in violation of the UCL, Plaintiffs were deceived into purchasing
17  the Hazardous Toys.  ¶¶237-38, 251-52.  Plaintiffs have standing under the UCL.

18  Lastly, Wal-Mart argues that Plaintiffs fail to allege reliance under the CLRA.
19  *See* WM Mem. at 19-20.  However, reliance is presumed where, as here, the alleged
20  misrepresentations are material.  *Vasquez v. Superior Court*, 4 Cal.3d 800, 814, 94
21  Cal. Rptr. 796 (Cal. 1971); *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App.
22  4th at 1293.  In any event, Plaintiffs easily satisfy the standards annunciated by the
23  cases upon which Wal-Mart relies.  *See* WM Mem. at 20 (citing *True v. Am. Honda
24  Motor Co., Inc.*, 520 F. Supp. 2d 1175, 1182-83 (C.D. Cal. 2007) ("Thus, under the
25  CLRA, as well as the UCL and FAL, a plaintiff satisfies the reliance element with an
26  allegation that a false or deceptive advertisement 'induced the plaintiff to alter his
27  position to his detriment.'").  In fact, Plaintiffs allege that, for example, "Plaintiffs and
28  other members of the Class reasonably relied upon Defendants' representations that

- 18 -

1  the Hazardous Toys were safe [as] play toys to be used by young children." ¶259; *see*

2  *also* ¶16 ("Plaintiff Allen would not have purchased the Hazardous Toy had she

3  known that her children would be put at risk for lead exposure."). Plaintiffs easily

4  satisfy the causation requirement of their CLRA claim.

5      Thus, Plaintiffs have adequately plead claims against Wal-Mart under the UCL

6  and CLRA.

7          **3.    Plaintiffs Complied With CLRA's Notification
                   Requirement**

8

9      Wal-Mart asserts in a footnote that Plaintiffs did not provide sufficient notice of

10  their CLRA claims. WM Mem. at 2 n.1. However, Plaintiffs provided Wal-Mart the

11  requisite CLRA notification more than thirty days prior to filing the second

12  consolidated amended complaint commencing an action for CLRA ***damages***. In fact,

13  Plaintiffs sent a CLRA notification to Wal-Mart on April 1, 2008, six weeks prior to

14  the filing of the Second Amended Complaint on May 16, 2008. *See* Ex. 3 to the

15  Declaration of Michael D. Abraham in Support of Wal-Mart Stores, Inc.'s Motion to

16  Dismiss; and Wal-Mart Stores, Inc.'s Request for Judicial Notice in Support of its

17  Motion to Dismiss. Only after Wal-Mart did not offer an appropriate corrective

18  remedy did Plaintiffs amend the First Amended Complaint to commence an action for

19  damages pursuant to the CLRA. As explained in Plaintiffs' opposition to Mattel's

20  motion to dismiss, this is sufficient for providing CLRA notification pursuant to Cal.

21  Civ. Code §1782(a)&(d), and Wal-Mart cannot show otherwise. *See* Pltfs' Opp. to

22  Mattel MTD §IV.G.[25]

23

24  [25]    If the Court for any reason finds that Wal-Mart was not properly notified 30
      days prior to filing the Second Consolidated Amended Complaint on May 16, 2008,
25  the claim for an injunction, restitution and disgorgement against the particular
      defendant still may proceed. Cal. Civ. Code §1782(d); *Util. Consumers' Action*
26  *Network*, No. 07-cv-2231, 2008 WL 1946859, at *7 (S.D. Cal. Apr. 25, 2008).
      Plaintiffs may thereafter cure any notice defect and amend to pray for damages after
27  30 days have run. *Dietz v. Comcast Corp.*, No. 06-06352, 2006 WL 3782902, at *6
      (N.D. Cal. December 21, 2006).

28

- 19 -

## C.    Plaintiffs Have Adequately Plead Negligence as to Wal-Mart

Wal-Mart argues that Plaintiffs fail to state a claim for negligence against it. WM Mem. at 10-14.  Defendant argues that the alleged product defects were latent and that a retailer is under no obligation to test products for latent defects, including those in sealed containers.  *Id.* at 11-12.

Wal-Mart's argument is a red herring.  It is settled law that Wal-Mart can be held liable under a negligence theory where it had "reason to know that the product is likely to be dangerously defective."  *Cal. Jury Instructions* (BAJI) §9.24; *see also Restatement (2d) of Torts* §402.  As such, the cases upon which Wal-Mart relies are not relevant here.[26]

Indeed, the California jury instruction regarding retailers' liability states the following:

> Ordinarily, one who sells in the usual course of trade a product which was made by another, does not have a duty to inspect or test the product for possible defects.  However, a seller who has reason to know that the product is likely to be dangerously defective, has a duty to exercise reasonable care to inspect and test the product before selling it.
>
> A failure to fulfill that duty is negligence.

*Cal. Jury Instructions* (BAJI) §9.24.

As detailed in the Complaint, Wal-Mart should have known of the dangers of toxic lead, lead paint and hazardous magnets, particularly for toys manufactured in China, due to the earlier recalls and other information relating to the lead contamination in Chinese toy products.  ¶101.

---

[26]    The cases cited by defendants are factually distinguishable in that none of them involved the recall of toys, as is the case here, which put the retailers on notice of the adverse risks associated with the toys at issue.

1    In fact, as early as November 2006 and then again on August 1, 2007, Wal-Mart
2  was on notice that toys manufactured by Mattel in China were at risk for either
3  containing toxic lead or small magnets.  With this knowledge, Wal-Mart should have
4  exercised more reasonable care in the sale of toys manufactured by Mattel.  *See*
5  *Crispin Co. v. Petrotub-S.A.*, No. CIV-05-159-C, 2006 WL 2812535, at *9 (W.D.
6  Okla. 2006) (negligence found where defendant had credible information alerting it to
7  risks of the defective product which may have given rise to a duty to warn).

8    Furthermore, a retailer may be liable for negligence depending on the specific
9  circumstances of the case.  *See Killeen v. Harmon Grain Prods. Inc.*, 413 N.E.2d 767
10  (Mass. App. Ct. 1980); *see also* 63 Am. Jur. 2d *Products Liability* §88 (2008).  Here,
11  as detailed above, the circumstances of this case, including the fact that there were
12  recalls which put Wal-Mart on notice of the risks associated with certain of Mattel's
13  toys, support Plaintiffs' negligence claims against Wal-Mart.  *See* Pltfs' Opp. to
14  Mattel MTD, §IV.I (citing cases).

15    For the foregoing reasons, Plaintiffs' negligence claims against Wal-Mart
16  should not be dismissed.

17  **III.    CONCLUSION**

18    For the foregoing reasons, and those set forth in Plaintiffs' Opposition to
19  Motion by Mattel, Fisher-Price, Target, Toys "R" Us, Kmart, and K-B Toys to
20  Dismiss Second Amended Complaint, Plaintiffs respectfully submit that this Court
21  should deny Wal-Mart's motion to dismiss in its entirety.

22  DATED:  August 1, 2008              Respectfully submitted,

23                                     COUGHLIN STOIA GELLER
24                                       RUDMAN & ROBBINS LLP
                                       JOHN J. STOIA, JR.
                                       RACHEL L. JENSEN
25                                     THOMAS J. O'REARDON II

26

27                                     _____
                                            s/ John J. Stoia, Jr.
28                                        JOHN J. STOIA, JR.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

WHATLEY, DRAKE & KALLAS, LLC
JOE R. WHATLEY, JR.
EDITH M. KALLAS
JOSEPH P. GUGLIELMO


_____
           s/ Joe R. Whatley, Jr.
           JOE R WHATLEY, JR.

1540 Broadway, 37th Floor
New York, NY  10036
Telephone:  212/447-7070
212/447-7077 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PAUL J. GELLER
JACK REISE
ELIZABETH A. SHONSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

***Co-Lead Counsel for Plaintiffs***

KELLER ROHRBACK LLP
LYNN LINCOLN SARKO
JULI E. FARRIS
GRETCHEN FREEMAN CAPPIO
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone:  206/623-1900
206/623-3384 (fax)

***Chair of Plaintiffs' Executive Committee***

BALKAN & PATTERSON, LLP
ADAM BALKAN
JOHN PATTERSON
601 S. Federal Highway, Suite 302
Boca Raton, FL  33432
Telephone:  561/750-9191
561/750-1574 (fax)

- 22 -

ENGSTROM LIPSCOMB & LACK, P.C.
WALTER J. LACK
PAUL A. TRAINA
GREGORY P. WATERS
10100 Santa Monica Blvd., 16th Floor
Los Angeles, CA  90067-4107
Telephone:  310/552-3800
310/552-9434 (fax)

EYSTER KEY TUBB ROTH
  MIDDLETON AND ADAMS LLP
NICHOLAS B. ROTH
HEATHER NECKLAUS HUDSON
402 East Moulton Street
P.O. Box 1607
Decatur, AL  35602
Telephone:  256/353-6761
256/353-6767 (fax)

FINKELSTEIN THOMPSON LLP
BURTON H. FINKELSTEIN
MILA F. BARTOS
Duvall Foundry
1050 30th Street, N.W.
Washington, DC  20007
Telephone:  202/337-8000
202/337-8090 (fax)

FINKELSTEIN THOMPSON LLP
ROSEMARY M. RIVAS
MARK PUNZALAN
100 Bush Street, Suite 1450
San Francisco, CA  94104
Telephone:  415/398-8700
415/398-8704 (fax)

GOLOMB & HONIK, P.C.
RICHARD M. GOLOMB
RUBEN HONIK
MICHAEL S. LEVIN
STEPHAN MATANOVIC
1515 Market Street, Suite 1100
Philadelphia, PA  19102
Telephone:  215/985-9177
215-985-4169 (fax)

HARKE & CLASBY LLP
LANCE A. HARKE
155 South Miami Avenue, Suite 600
Miami, FL  33130
Telephone:  305/536-8220
305/536-8229 (fax)

- 23 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCGOWAN HOOD & FELDER LLC
JOHN GRESSETTE FELDER, JR
1405 Calhoun Street
Columbia, SC  29201
Telephone:  803/779-0100
803/787-0750 (fax)

MCGOWAN HOOD & FELDER LLC
CHAD A. MCGOWAN
S. RANDALL HOOD
WILLIAM A. MCKINNON
1539 Healthcare Drive
Rock Hill, SC  29732
Telephone:  803/327-7800
803-328-5656 (fax)

***Executive Committee Members***

GULAS & STUCKEY, P.C.
JASON A. STUCKEY
LAUREN WAGNER PEDERSON
  (*Of Counsel*)
2031 2nd Avenue North
Birmingham, AL  35203
Telephone:  205/879-1234
205/879-1247 (fax)

GILBERT AND SACKMAN, A LAW
  CORPORATION
JOSEPH L. PALLER, JR
JAY EDWARD SMITH
3699 Wilshire Blvd., Suite 1200
Los Angeles, CA  90048-5114
Telephone:  323/938-3000
323/937-9139 (fax)

PRICE WAICUKAUSKI & RILEY, LLC
WILLIAM N. RILEY
JAMIE R. KENDALL
JOSEPH N. WILLIAMS
301 Massachusetts Avenue
Indianapolis, IN  46204
Telephone:  317/633-8787
317-633-8797 (fax)

BAGNELL AND EASON
GILBERT S. BAGNELL
1201 Main Street, Suite 1980
Columbia, SC  29211
Telephone:  803/748-1333
803-748-1300 (fax)

1
2
3
4

KAPLAN FOX & KILSHEIMER LLP
LORI S. BRODY
1801 Century Park East, Suite 1460
Los Angeles, CA  90067
Telephone:  310/785-0800
310/785-0897 (fax)

5
6
7
8

KAPLAN FOX & KILSHEIMER LLP
LINDA M. FONG
LAURENCE D. KING
350 Sansome Street, Suite 400
San Francisco, CA  94104
Telephone:  415/772-4700
415/772-4707 (fax)

9
10
11
12

KAPLAN FOX & KILSHEIMER LLP
FREDERIC S. FOX
DONALD R. HALL
850 Third Avenue, 14th Floor
New York, NY  10022
Telephone:  212/687-1980
212/687-7714 (fax)

13
14
15

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
12304 Santa Monica Blvd., Suite 109
Los Angeles, CA  90025
Telephone:  310/442-7755
310/442-7756 (fax)

16
17
18
19
20

HANLY CONROY BIERSTEIN
  SHERIDAN FISHER & HAYES LLP
JAYNE CONROY
STEVEN M. HAYES
112 Madison Avenue, 7th Floor
New York, NY  10016
Telephone:  212/784-6400
212/213-5349 (fax)

21
22
23

THE LAW OFFICE OF ARON D.
  ROBINSON
ARON D. ROBINSON
19 South LaSalle Street, Suite 1300
Chicago, IL  60603

24
25
26

BARNOW AND ASSOCIATES PC
BEN BARNOW
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Telephone:  312/621-2000
312/641-5504 (fax)

27
28

SIMMONS COOPER LLC
KENNETH J. BRENNAN
707 Berkshire Blvd.
East Alton, IL  62024
Telephone:  618/259-2222
618-259-2251 (fax)

CHIMICLES & TIKELLIS LLP
KIMBERLY M. DONALDSON
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA  19041-0100
Telephone:  610/642-8500
610/649-3633 (fax)

HAGENS BERMAN SOBOL
    SHAPIRO LLP
STEVE W. BERMAN
IVY D. ARAI
1301 5th Avenue, Suite 2900
Seattle, WA  98101
Telephone: 206/623-7292
206/623-2594 (fax)

HAGENS BERMAN SOBOL
    SHAPIRO LLP
ELAINE T. BYSZEWSKI
LEE M. GORDON
700 South Flower Street, Suite 2940
Los Angeles, CA  90017-4101
Telephone:  213/330-7150
213/330-7152 (fax)

HAGENS BERMAN SOBOL
    SHAPIRO LLP
ELIZABETH A. FEGAN
DANIEL J. KUROWSKI
TIMOTHY MAHONEY
820 North Blvd., Suite B
Oak Park, IL  60301
Telephone:  708/776-5600
708/776-5601 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
    & BALIANT, P.C.
ANDREW S. FRIEDMAN
WENDY J. HARRISON
MICHAEL C. McKAY
2901 North Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

1

2                    WOLOSHIN AND KILLINO
DAVID L. WOLOSHIN
3                    JEFFREY B. KILLINO
1800 John F Kennedy Blvd., 11th Floor
4                    Philadelphia, PA  19103-2925
Telephone:  215/840-2020
5                    215/569-2741 (fax)

6                    JULIO RAMOS, ATTORNEY AT LAW
JULIO RAMOS
7                    35 Grove Street, Suite 107
San Francisco, CA  94102
8                    Telephone:  415/948-3015
415/469-9787 (fax)

9                    LAW OFFICES OF STEVEN M.
   NUNEZ
10                 STEVEN M. NUNEZ
3333 Camino Del Rio South, Suite 215
11                 San Diego, CA  92108
Telephone:  619/296-8400
12                 619/296-3700 (fax)

13                 KALCHEIM LAW GROUP
MITCH KALCHEIM
14                 AMBER S. HEALY
2049 Century Park East, Suite 2150
15                 Los Angeles, CA  90067
Telephone:  310/461-1200
16                 310/461-1201 (fax)

17                 KIRTLAND & PACKARD LLP
MICHAEL L. KELLY
18                 BEHRAM V. PAREKH
2361 Rosecrans Avenue, Fourth Floor
19                 El Segundo, CA  90245
Telephone:  310/536-1000
20                 310/536-1001 (fax)

21                 CUNEO GILBERT AND LADUCA, LLP
PAMELA GILBERT
22                 507 C Street, N.E.
Washington, DC  20002
23                 Telephone:  202/789-3960
202/789-1813 (fax)

24

25                 THE STARK LAW OFFICES, P.C.
AMIR STARK
26                 2766 Fischer Road
Hatfield, PA  19440
27                 Telephone:  215/275-2919
245/855-6029 (fax)

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SARRAF GENTILE LLP
RONEN SARRAF
JOSEPH GENTILE
11 Hanover Square, 2nd Floor
New York, NY  10005
Telephone:  212/868-3610
212/918-7967 (fax)

THE CROW LAW FIRM
MICHAEL G. CROW
1100 Poydras Street, Suite 1175
New Orleans, LA  70163
Telephone:  504/599-5770
504/566-1141 (fax)

LOCKRIDGE GRINDAL NAUEN
  P.L.L.P.
KAREN HANSON RIEBEL
100 Washington Avenue South
Suite 2200
Minneapolis, MN  55401-2159
Telephone:  612/339-6900
612/339-0981 (fax)

***Additional Plaintiffs' Counsel***

S:\CasesSD\Mattel Consumer\BRF 00053094.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 1, 2008.

s/ John J. Stoia, Jr.
JOHN J. STOIA, JR.

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:       johns@csgrr.com

- 29 -

# Mailing Information for a Case 2:07-ml-01897-DSF-AJW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ivy D Arai**
  ivy@hbsslaw.com,kevinacosta@hbsslaw.com

- **Ben Barnow**
  b.barnow@barnowlaw.com,e.schork@barnowlaw.com,s.harris@barnowlaw.com

- **Mila F Bartos**
  mbartos@finkelsteinthompson.com

- **Steve W Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Mitchell M Breit**
  mbreit@wdklaw.com,ecf@wdklaw.com

- **Lori S Brody**
  lbrody@kaplanfox.com

- **Robert H Bunzel**
  rbunzel@bztm.com,bsage@bztm.com

- **Elaine T Byszewski**
  elaine@hbsslaw.com,kevinacosta@hbsslaw.com,sharons@hbsslaw.com

- **Gretchen Freeman Cappio**
  gcappio@kellerrohrback.com,mbates@kellerrohrback.com

- **Kimberly M Donaldson**
  kimdonaldson@chimicles.com

- **Juli E Farris**
  jfarris@kellerrohrback.com,dau@kellerrohrback.com

- **Elizabeth A Fegan**
  beth@hbsslaw.com

- **Thomas E Fennell**
  tefennell@jonesday.com

- **Linda M Fong**
  lfong@kaplanfox.com,kweiland@kaplanfox.com,agutierrez@kaplanfox.com

- **Pamela Gilbert**
  pamelag@cuneolaw.com

- **Lee M Gordon**
  lee@hbsslaw.com,kevinacosta@hbsslaw.com,sharons@hbsslaw.com

- **Joseph P Guglielmo**
  jguglielmo@wdklaw.com

- **Lance August Harke**
  lharke@harkeclasby.com

- **Amber S Healy**
  amberh@kallawgroup.com

- **Brian M Hoffstadt**
  bhoffstadt@jonesday.com

- **Ruben Honik**
  rhonik@golombhonik.com,lpena@golombhonik.com,emalloy@golombhonik.com

- **Heather Necklaus Hudson**
  hnhudson@eysterkey.com

- **Rachel L Jensen**
  rjensen@csgrr.com

- **Mitch H Kalcheim**
  mitch@kallawgroup.com

- **Edith M Kallas**
  ekallas@wdklaw.com,ecf@wdklaw.com

- **Michael L Kelly**
  michaellkelly@earthlink.net

- **Jamie Ranah Kendall**
  jkendall@price-law.com

- **Jeffrey B Killino**
  jkillino@wklawyer.com

- **Laurence D King**
  lking@kaplanfox.com,kweiland@kaplanfox.com,agutierrez@kaplanfox.com

- **Daniel J Kurowski**
  dank@hbsslaw.com,chi_filings@hbsslaw.com,kevinacostga@hbsslaw.com

- **Elizabeth A Leland**
  bleland@kellerrohrback.com

- **Michael S Levin**
  mlevin@golombhonik.com

- **Elwood G Lui**
  elui@jonesday.com

- **Timothy Mahoney**
  timm@hbsslaw.com,chi_filings@hbsslaw.com,kevinacosta@hbsslaw.com

- **Stephan Matanovic**
  smatanovic@golombhonik.com,lpena@golombhonik.com,emalloy@golombhonik.com

- **William A McKinnon**
  bmckinnon@mcgowanhood.com,bmcgovern@mcgowanhood.com

- **Manfred Patrick Muecke**
  mmuecke@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Thomas Joseph O'Reardon , II**
  toreardon@csgrr.com

- **Joseph L Paller , Jr**
  jlpaller@gslaw.org

- **Behram V Parekh**
  bvp@kirtlandpackard.com

- **Mark L Punzalan**
  mpunzalan@finkelsteinthompson.com,srenwick@finkelsteinthompson.com

- **Julio J Ramos**
  ramosfortrustee@yahoo.com,ramosforsupervisor@yahoo.com

- **Thomas Ailbe Rector**
  tarector@jonesday.com

- **Jack Reise**
  jreise@csgrr.com,e_file_fl@csgrr.com

- **Michael L Rice**
  mlrice@jonesday.com,jameseyoung@jonesday.com,deborahsimmons@jonesday.com

- **Karen Hanson Riebel**
  khriebel@locklaw.com,crbaehman@locklaw.com

- **William N Riley**
  wriley@price-law.com

- **Rosemary M Rivas**
  rrivas@finkelsteinthompson.com

- **Nicholas B Roth**
  nbroth@eysterkey.com

- **Lynn Lincoln Sarko**
  lsarko@kellerrohrback.com

- **Denise Davis Schwartzman**
  deniseschwartzman@chimicles.com

- **Rick L Shackelford**
  rlshackelford@jonesday.com

- **Jay Edward Smith**
  js@gslaw.org

- **John J Stoia , Jr**
  johns@csgrr.com,e_file_sd@csgrr.com

- **Paul A Traina**
  ptraina@elllaw.com

- **Laurie A Traktman**
  lat@gslaw.org

- **Gregory P Waters**
  gwaters@elllaw.com

- **Joe R Whatley , Jr**
  jwhatley@wdklaw.com,kgault@wdklaw.com,ecf@wdklaw.com

- **Hugh R Whiting**
  hrwhiting@jonesday.com

- **Joseph N Williams**
  jwilliams@price-law.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who
therefore require manual noticing). You may wish to use your mouse to select and copy this list into
your word processing program in order to create notices or labels for these recipients.

```
Gilbert Scott Bagnell
Bagnell and Eason
PO Box 11852
Columbia, SC 29211


Frank Baliant
```

Bonnett Fairbourn Friedman & Baliant PC
2901 North Central Avenue – Suite 1000
Phoenix, AZ 85012

**Matthew C Branic**
Krieg Devault LLP
One Indiana Square Suite 2800
Indianapolis, IN 46204

**Robert H Brunson**
Nelson Mullins Riley and Scarborough
PO Box 1806
Charleston, SC 29402

**Michael G. Crow**
Crow Law Firm LLC
1100 Poydras Street – Suite 1175
New Orleans, LA 70163

**Ryan D Dahl**
Jones Day
50 Grant Street Suite 3100
Pittsburgh, PA 15219

**Stuart A Davidson**
Coughlin Stoia Geller Rudman and Robbins
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809

**John Gressette Felder**                                    **, Jr**
McGowan Hood Felder and Johnson
1405 Calhoun Street
Columbia, SC 29201

**Burton H Finkelstein**
Finkelstein Thompson & Loughran
Duvall Foundry
1050 30th St NW
Washington, DC 20007

**Frederic S Fox**
Kaplan Fox & Kilsheimer
850 Third Avenue 14th Fl
New York, NY 10022

**Andrew C Friedman**
Bonnett Fairbourn Friedman and Balint
2901 N Central Avenue – Suite 1000
Phoenix, AZ 85012

**Paul J Geller**
Paul J Geller Law Offices
120 East Palmetto Park Road Suite 500
Boca Raton, FL 33432

**Richard M Golomb**
Golomb & Honik
121 South Broad Street 9th Floor
Philadelphia, PA 19107

**Michael D Gottsch**
Chimicles and Tikellis LLP
One Haverford Center
361 West Lancaster Avenue
Haverford, PA 19041-0100

**Donald R Hall**
Kaplan Fox and Kilsheimer
850 Third Avenue 14th Floor
New York, NY 10022

**Steven Michael Hayes**
Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP
112 Madison Avenue
New York, NY 10016

**Danielle Marie Hohos**
Jones Day
51 Louisiana Avenue
Washington, DC 20001

**Steven Randall Hood**
McGowan Hood and Felder
1539 Healthcare Drive
Rock Hill, SC 29732

**John E Iole**
Jones Day
500 Grant St, 31st Fl
Pittsburgh, PA 15219

**Walter J Lack**
Engstrom Lipscomb & Lack
10100 Santa Monica Blvd 16th Floor
Los Angeles, CA 90067-4107

**Karen Jennifer Marcus**
Finklestein Thompson LLP
1050 30th Street NW
Washington, DC 20007

**Deirdre Shelton McCool**
Nelson Mullins Riley and Scarborough
PO Box 1806
Charleston, SC 29402

**Chad A McGowan**
McGowan Hood Felder and Johnson
1539 Healthcare Drive
Rock Hill, SC 29732

**Mark J R Merkle**
Krieg Devault LLP
One Indiana Square Suite 2800
Indianapolis, IN 46204

**Stephen G Morrison**
Nelson Mullins Riley and Scarborough
P O Box 11070
Columbia, SC 29211

**Marc T Quigley**
Krieg Devault LLP
One Indiana Square Suite 2800
Indianapolis, IN 46204

**Elizabeth A Shonson**
Coughlin Stoia Geller Rudman and Robbins
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809

**Michael J Templeton**
Jones Day
222 East 41st Street
New York, NY 10017

**John B Williams**
Jones Day
51 Louisiana Avenue
Washington, DC 20004

**David L Woloshin**
Woloshin and Killino
1800 John F Kennedy Boulevard, 11th Floor
Philadelphia, PA 19103-2925