1

2  Elwood Lui (45538)
   elui@jonesday.com
3  Rick L. Shackelford (151262)
   rlshackelford@jonesday.com
4  JONES DAY
   555 South Flower Street
5  Fiftieth Floor
   Los Angeles, CA  90071-2300
6  Telephone:   (213) 489-3939
   Facsimile:    (213) 243-2539
7

8

9  Thomas E. Fennell                    Hugh R. Whiting
   tefennell@jonesday.com               hrwhiting@jonesday.com
10 Michael L. Rice                      JONES DAY
   mlrice@jonesday.com                  717 Texas, Suite 3300
11 JONES DAY                            Houston, TX   77002
   2727 North Harwood Street            Telephone:   (832) 239-3939
12 Dallas, TX  75201-1515               Facsimile:    (832) 239-3600
   Telephone:   (214) 220-3939
13 Facsimile:    (214) 969-5100

14

15                  UNITED STATES DISTRICT COURT

16                 CENTRAL DISTRICT OF CALIFORNIA

17                       WESTERN DIVISION

18

19 In re MATTEL, INC., TOY LEAD        Case No. MDL No. 1897
   PAINT PRODUCTS LIABILITY
20 LITIGATION                          The Honorable Dale S. Fischer

21                                     **REPLY MEMORANDUM OF
                                       POINTS AND AUTHORITIES IN
22                                     SUPPORT OF MOTION BY
                                       MATTEL, FISHER-PRICE,
23                                     TARGET, TOYS "R" US,
                                       KMART, AND K-B TOYS TO
24                                     DISMISS SECOND
                                       CONSOLIDATED AMENDED
25                                     COMPLAINT**

26

27

28

DLI-6206139v1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

I.      THE STANDARD UNDER RULE 12(B)(6) ................................................. 2

II.     CONFLICT PREEMPTION BARS PLAINTIFFS' CLAIMS FOR A RETURN OF THE PURCHASE PRICE OF THE TOYS ............................. 3

III.    PLAINTIFFS HAVE FAILED TO ALLEGE AN EXISTING INJURY, WHICH IS AN ESSENTIAL ELEMENT OF EACH OF THEIR CLAIMS ...................................................................................... 6

      A.     Plaintiffs' Reliance On Article III Standing Cases Is Misplaced Because Defendants Challenge The Existence Of Compensable Injury And Not Plaintiffs' Standing ......................................................... 6

      B.     Medical Monitoring Cases Are Inapposite ............................................. 9

      C.     The Purchase Price Of The Recalled Toys Is Not A Compensable Injury ................................................................................ 12

IV.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER 15 U.S.C. § 2072 ..... 14

      A.     The Magnet Recall and Cuff Plaintiffs Have Alleged No Violation of A Consumer Product Safety Rule ................................... 14

      B.     Plaintiffs Do Not Allege Injury Compensable Under CPSA § 2072 ........................................................................................ 16

V.      PLAINTIFFS' FRAUD-BASED UCL AND CLRA CLAIMS FAIL TO SATISFY RULE 9(B) .............................................................................. 18

VI.    CALIFORNIA'S UNFAIR COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT DO NOT APPLY TO PLAINTIFFS WHO RESIDE OUTSIDE CALIFORNIA .......................... 20

CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ashton v. Pierce*,
    541 F. Supp. 635 (D.D.C. 1982) ................................................................. 9

*Baron v. Arizona*,
    270 F. App'x 706, 708 (9th Cir. 2008) ....................................................... 2

*Bell Atlantic Corp. v. Twombly*,
    __ U.S. __, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .............................. 2

*Bishop v. Bombardier, Inc.*,
    399 F. Supp. 2d 1372 (M.D. Ga. 2005) .................................................... 14

*Bocook v. Ashland Oil, Inc.*,
    819 F. Supp. 530 (S.D. W. Va. 1993) ....................................................... 11

*Briehl v. General Motors Corp.*,
    172 F.3d 623 (8th Cir. 1999) ................................................................. 9, 14

*California Joint Powers Insurance Authority v. Munich Reinsurance
    America, Inc., No CV 08-956 DSF (RZx)*,
    2008 WL 1885754 (C.D. Cal. Apr. 21, 2008) ............................................. 9

*Central Delta Water Agency v. United States*,
    306 F.3d 938 (9th Cir. 2002) ...................................................................... 8

*Cole v. General Motors Corp.*,
    484 F.3d 717 (5th Cir. 2007) .................................................................... 12

*Council of Insurance Agents & Brokers v. Molasky-Arman*,
    522 F.3d 925 (9th Cir. 2008) ...................................................................... 8

*Covington v. Jefferson County*,
    358 F.3d 626 (9th Cir. 2004) ...................................................................... 8

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
    438 U.S. 59, 98 S. Ct. 2620, 57 L. Ed. 2d 595 (1978) ................................ 8

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.*,
    746 F.2d 816 (D.C. Cir. 1984) ................................................................. 11

*Geier v. American Honda Motor Co.*,
    529 U.S. 861, 120 S. Ct. 1913, 146 L. Ed. 2d 914 (2000) ........................... 4

*Griswold Insulation Co. v. Lula Cotton Processing Co.*,
    540 F. Supp. 1334 (D. Tenn. 1982) .......................................................... 17

*Grosz v. Lassen Community College District*,
    No. CIV. S-07-697 FCD/CMK,
    2008 WL 2119923 (E.D. Cal. May 20, 2008) ............................................. 2

**TABLE OF AUTHORITIES**
(Continued)

Page

*In re All Terrain Vehicle Litigation*,
    979 F.2d 755 (9th Cir. 1992) ........................................................................ 16

*In re Bextra & Celebrex Marketing, Sales Practices & Prod. Liability
Litigation, No. MDL 05-01699 CRB*,
    2007 WL 2028408 (N.D. Cal. July 10, 2007) .............................................. 14

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*,
    288 F.3d 1012 (7th Cir. 2002) ........................................................................ 9

*In re Syntex Corp. Securities Litigation*,
    95 F.3d 922 (9th Cir. 1996) ............................................................................ 3

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ........................................................................ 3

*Leipart v. Guardian Industries, Inc.*,
    234 F.3d 1063 (9th Cir. 2000) ........................................................................ 5

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) .............................. 4

*Meinhold v. Spectrum, L.P.*,
    *No. CIV S-07-00456 FCD EFB*,
    2007 WL 1456141 (E.D. Cal. May 16, 2007) ........................................ 20, 21

*Meridian Project System, Inc. v. Hardin Construction Co.*,
    404 F. Supp. 2d 1214 (E.D. Cal. 2005) ........................................................ 21

*Multimedia Patent Trust v. Microsoft Corp.*,
    525 F. Supp. 2d 1200 (S.D. Cal. 2007) ........................................................ 20

*O'Neil v. Simplicity, Inc.*,
    553 F. Supp. 2d 1110 (D. Minn. 2008) ........................................... 3, 9, 13, 15

*Perfect 10, Inc. v. Visa International Service Association*,
    494 F.3d 788 (9th Cir. 2007) .......................................................................... 3

*Qarbon.com Inc. v. eHelp Corp.*,
    315 F. Supp. 2d 1046 (N.D. Cal. 2004) ........................................................ 20

*Rick-Mik Enterprises Inc. v. Equilon Enterprises, LLC*,
    532 F.3d 963 (9th Cir. 2008) .......................................................................... 3

*Riegel Textile Corp. v. Celanese Corp.*,
    649 F.2d 894 (2d Cir. 1981) .......................................................................... 17

*Rivera v. Wyeth-Ayerst Laboratories*,
    283 F.3d 315 (5th Cir. 2002) ........................................................................ 13

*Rojas v. Brinderson Constructors Inc., No. CV 08-1014 ODW(MANx)*,
    2008 WL 2854226 (C.D. Cal. July 23, 2008) ................................................ 2

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Rosmer v. Pfizer, Inc.*, No. CIV.A. 9:99-2280-18RB,
    2001 WL 34010613 (D.S.C. March 30, 2001) .............................................. 11

*Ryan v. Brookdale International Systems Inc.*,
    230 F. App'x 366, 367-68 (5th Cir. 2007) ..................................................... 14

*Sanitoy, Inc. v. Shapiro*,
    705 F. Supp. 152 (S.D.N.Y. 1989) ......................................................... 17, 18

*Schweitzer v. Consolidated Rail Corp.*,
    758 F.2d 936 (3d Cir. 1985) ......................................................................... 9

*Vasquez v. Los Angeles ("LA") County*,
    487 F.3d 1246 (9th Cir. 2007) ...................................................................... 3

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................... 19, 20

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage
    Leasehold & Easement in the Cloverly Subterranean
    Geological Formation*,
    524 F.3d 1090 (9th Cir. 2008) ...................................................................... 2

**STATE CASES**

*Bic Pen Corp. v. Carter*,
    171 S.W.3d 657 (Tex. App.—Corpus Christi 2005) ...................................... 5

*Bic Pen Corp. v. Carter*,
    251 S.W.3d 500 (Tex. 2008) ......................................................................... 5

*Espinosa v. Beverly Hospital*,
    249 P.2d 843 (Cal. 1952) ............................................................................ 11

*Hansen v. Mountain Fuel Supply Co.*,
    858 P.2d 970 (Utah 1993) ..................................................................... 10, 11

*Henry v. Dow Chemical Co.*,
    701 N.W.2d 684, 473 Mich. 63 (Mich. 2005) ............................................. 11

*Houston County Health Care Authority v. Williams*,
    961 So.2d 795 (Ala. 2006) .......................................................................... 11

*Meyer v. Fluor Corp.*,
    220 S.W.3d 712 (Mo. 2007) ........................................................................ 10

*Miranda v. Shell Oil Co.*,
    26 Cal. Rptr. 2d 655, 17 Cal. App. 4th 1651 (Cal. Ct. App. 1993) .............. 11

*Norwest Mortgage, Inc. v. Superior Court*,
    85 Cal. Rptr. 2d 18, 72 Cal. App. 4th 214 (Cal. Ct. App. 1999) .................. 22

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Verb v. Motorola, Inc.*,
    672 N.E.2d 1287, 284 Ill. App. 3d 460 (Ill. App. Ct. 1996) ........................... 9

## FEDERAL STATUTES & LEGISLATIVE MATERIALS

15 U.S.C. § 1261 .................................................................................... 16, 17

15 U.S.C. § 1263 ........................................................................................... 17

15 U.S.C. § 2052 ............................................................................... 15, 16, 18

15 U.S.C. § 2056(a) ...................................................................................... 15

15 U.S.C. § 2064 .................................................................................... *passim*

15 U.S.C. § 2072 .................................................................................... *passim*

15 U.S.C. § 2074 ............................................................................................. 4

15 U.S.C. § 2075 ............................................................................................. 4

15 U.S.C. § 2082 ........................................................................................... 17

Consumer Product Safety Improvement Act of 2008,
    H.R. 4040, 110th Cong. (2008) § 231(a) ............................................... 4

118 Cong. Rec. 31,384 ................................................................................. 18

## FEDERAL REGULATIONS & AGENCY MATERIALS

16 C.F.R. § 1115.20 ........................................................................................ 6

16 C.F.R. § 1115.21 ........................................................................................ 6

16 C.F.R § 1117.1 ........................................................................................ 15

16 C.F.R. § 1303 .......................................................................................... 15

16 C.F.R. §§ 1301-1306 .............................................................................. 16

16 C.F.R. § 1500.18(a)(2) ........................................................................... 15

43 Fed. Reg. 34988, 34996 (Aug. 7, 1978) ................................................. 6

## FEDERAL RULES

Fed. R. Civ. P. 9(b). .............................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................ 2,3

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................................................*passim*

Cal. Civ. Code § 1750 ........................................................................*passim*

**MISCELLANEOUS**

U.C.C. § 2-714 ...................................................................................... 13

# **INTRODUCTION**

In an effort to avoid dismissal of their claims, Plaintiffs rely on conclusory assertions, rhetoric, and misdirection.  Like the Second Consolidated Amended Complaint ("Complaint"), Plaintiffs' Opposition[1] refers generally to what members of the proposed class may have done with their toys or how they may have reacted to the recalls.  But Plaintiffs never point to factual allegations in the Complaint – because such facts are not alleged – that could supply the necessary elements of their causes of action, particularly injury.  Plaintiffs compound the absence of a factual predicate for their claims by repeatedly "responding" to arguments that Defendants never made and ignoring the arguments that, as a matter of law, require dismissal of the Complaint.  Rather than address conflict preemption, Plaintiffs argue express preemption and the Consumer Product Safety Act ("CPSA") savings clauses, none of which are relevant to Defendants' motion.  Rather than address their failure to allege injury as a necessary element of their claims, Plaintiffs respond with cases on standing and medical monitoring, which are not applicable here.  And rather than point to any violation of a Consumer Product Safety Commission ("CPSC") rule or order as a basis for the Magnet Recall and Cuff Plaintiffs' claims under 15 U.S.C. § 2072(a), Plaintiffs argue instead alleged violations of the Federal Hazardous Substances Act and the reporting requirements of the CPSA, neither of which can be the basis for an action under § 2072.  Plaintiffs also err in suggesting that Rule 9(b) is inapplicable to their fraud-based claims under Cal. Bus. & Prof. Code § 17200 ("UCL") and Cal. Civ. Code § 1750 ("CLRA"), just as they fail to justify the assertion of claims under those statutes by Plaintiffs who are not residents of California.

---

[1] "Opposition" or "Opp." refers to Plaintiffs' Memorandum in Opposition to Motion by Mattel, Fisher-Price, Target, Toys "R" Us, Kmart, and K-B Toys to Dismiss Second Consolidated Amended Complaint, filed on August 1, 2008.

For the reasons set forth in Defendants' opening Memorandum and below, Plaintiffs have failed to make the necessary allegations for their claims to proceed. Defendants' motion to dismiss should be granted in its entirety.[2]

## I.    THE STANDARD UNDER RULE 12(B)(6)

Plaintiffs' claims must be dismissed because they failed to plead sufficient facts – indeed *any* facts – that would entitle them to relief.  The Complaint contains only a single paragraph per plaintiff asserting factual allegations about the recalled toys each purchased, but little more.  The remainder of the Complaint is rhetoric, and those few factual allegations included in the Complaint are not tied or linked to the Plaintiffs or the claims they seek to assert.

Yet, Plaintiffs defend the Complaint by describing it as "painstakingly detailed."  At the same time, they argue that the Court should not closely scrutinize the Complaint because the standard for dismissal articulated in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) only applies in antitrust cases.  But Mattel does not argue, as Plaintiffs suggest (Opp. at 8-9), that *Twombly* establishes a heightened pleading standard.  Nor are Plaintiffs correct that *Twombly*'s articulation of the Rule 12(b)(6) standard only applies in antitrust cases; numerous courts in the Ninth Circuit have applied it in other contexts.  *See, e.g., Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1096 (9th Cir. 2008); *Baron v. Arizona*, 270 F. App'x 706, 708 (9th Cir. 2008); *Rojas v. Brinderson Constructors Inc.*, No. CV 08-1014 ODW(MANx), 2008 WL 2854226, at *1, *3 (C.D. Cal. July 23, 2008); *Grosz v. Lassen Cmty. Coll. Dist.*, No. CIV. S-07-697 FCD/CMK, 2008 WL 2119923, at

---

[2] In this Reply Memorandum, Defendants do not address all of the arguments raised in their opening Memorandum.  By limiting their Reply, Defendants do not waive or abandon any of the remaining arguments, but rest on their initial briefing. Moreover, Defendants refer the Court to, and incorporate by reference, the arguments regarding duty in Defendant Wal-Mart Stores, Inc.'s reply in support of its motion to dismiss.

1  *11 (E.D. Cal. May 20, 2008).[3]  And at least one court outside the Ninth Circuit has

2  applied *Twombly* in circumstances virtually identical to these.  *See O'Neil v.*

3  *Simplicity, Inc.*, 553 F. Supp. 2d 1110, 1112-13 (D. Minn. 2008) (rejecting

4  warranty, unjust enrichment and consumer fraud claims based on recall of baby

5  cribs).

6      In any event, it has long been the rule that plaintiffs cannot rely on

7  "conclusory allegations of law or unwarranted inferences, and dismissal is required

8  if the facts are insufficient to support a cognizable claim."  *Perfect 10, Inc. v. Visa*

9  *Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007); *see also Vasquez v. Los*

10  *Angeles ("LA") County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *In re Syntex Corp.*

11  *Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).  Plaintiffs' claims fail under any

12  articulation of the Rule 12(b)(6) standard and must be dismissed.

13  ## II.    CONFLICT PREEMPTION BARS PLAINTIFFS' CLAIMS FOR A RETURN OF THE PURCHASE PRICE OF THE TOYS

14

15      Defendants' preemption argument focuses upon – and is limited to –

16  Plaintiffs' claims for a "refund" of the price paid for the toys, however those claims

17  are denominated in the Complaint.  The issue before the Court is whether Plaintiffs'

18  effort to use state law to compel Mattel to refund the purchase price of the recalled

19  toys is in conflict with the CPSA provision in 15 U.S.C. § 2064(d) that expressly

20  gives the recalling company, not the consumer, the right to elect replacement, repair

21  or refund as the recall remedy.  That issue is not addressed anywhere in Plaintiffs'

22  Opposition.  Instead, Plaintiffs put forth arguments about the CPSA's preemption

23  and saving clauses.  But Defendants' conflict preemption motion does not depend

24  in any way on any of those provisions.  Because Plaintiffs ask the Court to apply

25  ─────────────

    [3] Plaintiffs incorrectly argue that "the Ninth Circuit noted in two recent decisions that *Twombly*'s enhanced pleading standard does not extend beyond that

26  limited context."  Opp. at 8-9.  No such statement appears in either of the cases cited by Plaintiffs.  Indeed, both courts noted that the *Twombly* holding applies "at

27  least" to antitrust cases.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008); *Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 970-

28  71 (9th Cir. 2008).

1   state law to override and essentially nullify the important statutory remedy election

2   right, their claims conflict directly with the CPSA and are preempted.

3         Contrary to Plaintiffs' efforts to characterize or recast Defendants' position,

4   the issue for the Court is not a question of express preemption.  Thus, Plaintiffs'

5   reliance on *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484, 116 S. Ct. 2240, 135 L. Ed.

6   2d 700 (1996), and other express preemption cases is misplaced.  *Medtronic*

7   concerned "the task of interpreting a statutory provision that expressly pre-empts

8   state law."  *Id*.  Defendants do not argue that Plaintiffs' claims are barred by the

9   CPSA's express preemption clause, 15 U.S.C. § 2075, which addresses safety

10  standards and rules.  Consequently, express preemption cases have no bearing on

11  the issue raised by the motion.

12        Plaintiffs' arguments regarding saving clauses in the CPSA also miss the

13  mark.  Those savings clauses provide only that (i) a plaintiff may recover damages

14  for personal injury resulting from a knowing violation of a CPSC rule; (ii) that this

15  damage remedy does not displace other remedies for personal injury under common

16  law; and (iii) that compliance with CPSC rules or orders is not an automatic defense

17  to a suit under state law.  *See* 15 U.S.C. § 2072(a), (c), and § 2074(a).  It is not

18  uncommon for a federal law that expressly provides a right of action for certain

19  claims to leave room for other traditional state-law claims for the same personal

20  injury.  But, as the Supreme Court made clear in *Geier v. American Honda Motor*

21  *Co.*, "the saving clause (like the express pre-emption provision) does *not* bar the

22  ordinary working of conflict pre-emption principles."  529 U.S. 861, 869, 120 S. Ct.

23  1913, 146 L. Ed. 2d 914 (2000) (emphasis in original).[4]

---

24      [4] Plaintiffs point to § 231(a) of the recent Consumer Product Safety
    Improvement Act of 2008, H.R. 4040, 110th Cong. (2008) ("CPSIA") and argue

25  that "[f]or this reason alone, Defendants' [preemption] argument should be
    disregarded."  Opp. at 11-12.  To the contrary, § 231(a) begins with a specific

26  reference to 15 U.S.C. §§ 2074 and 2075.  It is thus "[i]n accordance with the
    provisions of those Acts" – *i.e.*, §§ 2074 and 2075 – wherein the CPSC may not

27  construe such Acts as preempting state law causes of action.  As discussed above,
    however, neither § 2074 nor § 2075 addresses the conflict preemption issue raised

28  by Plaintiffs' demand for a refund of the purchase price of the toys.  Thus, CPSIA

1    Likewise, Plaintiffs' argument that "[m]any other courts have concluded that
2    state common law claims do not conflict with the CPSA" (Opp. at 14) misses the
3    point entirely.  The cases cited by Plaintiffs stand at most for the proposition that
4    federal law provides a floor or minimum for safety standards and that different
5    standards of care under state law are not preempted.  *See id.* at 14-15.[5]

6    Thus, contrary to Plaintiffs' assertions, Defendants did not fail to cite
7    "controlling Ninth Circuit case law on the issue of preemption that hold that the
8    CPSA's express preemption  provision and its 'savings clauses' preserve Plaintiffs'
9    state law claims."  *Id.* at 10-11.  To begin with, *Leipart v. Guardian Industries, Inc.*,
10   234 F.3d 1063, 1066 (9th Cir. 2000), did not involve a recall or whether plaintiff
11   could override the defendants' choice of a recall remedy.  Rather, the plaintiff in
12   *Leipart* sought damages for severe personal injuries from a broken glass shower
13   door.  *Id.* at 1065-66.  Based upon its reading of the CPSA saving clauses, the Ninth
14   Circuit held that plaintiffs' common law claims for personal injury damages were
15   not preempted even if they would indirectly impose a higher standard for glass
16   safety than the one adopted by the CPSC.  *Id.* at 1069-70.  That question is entirely
17   different from the one raised by Defendants' motion.  Neither *Leipart* nor Plaintiffs'
18   Opposition addresses the question whether state common or statutory law may
19   require a particular recall remedy in the face of the plain language of § 2064(d)
20   allowing the recalling entity to determine whether to refund, repair or replace the
21
22
      _____
23   (continued…)
      § 231(a) does not alter the preemptive effect of the CPSA recall remedy election in
24   15 U.S.C. § 2064(d) upon which Defendants' rely.
           [5] Plaintiffs' citation to *Bic Pen Corp. v. Carter*, 171 S.W.3d 657 (Tex.
25   App.—Corpus Christi 2005) is further afield given that the Texas Supreme Court
      has reversed that decision.  *See Bic Pen Corp. v. Carter*, 251 S.W.3d 500, 509 (Tex.
26   2008) (reversing court of appeals' holding regarding design defect claim, and
      holding that claim was barred by conflict preemption because the higher design
27   standard upon which the *Bic Pen* plaintiffs relied was in conflict with federal
      regulations).
28

DLI-6206139v1

1    recalled item.  Plaintiffs completely side-step this issue, which is the sole issue

2    raised by Defendants' preemption argument.

3    　　　　One of the basic purposes identified by Congress in adopting the CPSA was

4    to minimize conflicting state and local regulations.  Moreover, in implementing its

5    notification and recall authority under § 2064, the Commission "attempt[s] to

6    protect the public from substantial product hazards by seeking . . . voluntary

7    remedies" before issuing orders or going to court.  16 C.F.R. § 1115.20 (Aug. 7,

8     1978).  "Voluntary remedial actions" can involve either "corrective action plans"

9    or "consent order agreements."  *Id.*  The Commission prefers the former as the most

10   effective means to "move rapidly to do what [the Commission] considers necessary

11   and appropriate to protect the public."  43 Fed. Reg. 34988, 34996 (Aug. 7, 1978).

12   Under either voluntary remedy, the Commission applies the CPSA's directive that

13   the company make the election of the recall remedy, asking the company to

14   "indicate whether it is repairing or replacing the product or refunding its purchase

15   price."  16 C.F.R. § 1115.20(a)(1)(vi); *see id.* (b)(1)(xiii).  Alternatively, the

16   Commission may seek "[c]ompulsory remedial actions," including an order under

17   § 2064(d) mandating a recall.  *See* 16 C.F.R. § 1115.21 (Aug. 7, 1978).  Even that

18   compulsory action – obviously not sought or needed here – remains subject to the

19   company's statutory right to select the recall remedy.

20   　　　　Allowing state law actions to impose recall remedies would subject

21   companies attempting to effect product recalls to the vagaries of local courts or

22   agencies and could result in conflicting requirements for implementation of such

23   recalls.  As a result, permitting Plaintiffs to obtain an order compelling the payment

24   of the purchase price of the toys in the face of a CPSC recall that provides a

25   replacement remedy would directly conflict with the express election provisions of

26   the CPSA and fly in the face of the important statutory and regulatory recall scheme

27   adopted by Congress to provide uniform product safety procedures and avoid

28   conflicting local regulations.  Plaintiffs simply never address the applicable

DLI-6206139v1

1  statutory provision.  Thus, all of Plaintiffs' claims for a return of the purchase price

2  of the toys are barred by conflict preemption.

3  **III.  PLAINTIFFS HAVE FAILED TO ALLEGE AN EXISTING INJURY, WHICH IS AN ESSENTIAL ELEMENT OF EACH OF THEIR CLAIMS**

4

5  **A.  Plaintiffs' Reliance On Article III Standing Cases Is Misplaced Because Defendants Challenge The Existence Of Compensable Injury And Not Plaintiffs' Standing**

6

7  In both the Complaint and their Opposition, Plaintiffs acknowledge that the

8  only injury they allege is "in the form of exposure to lead and loose magnets" and

9  in "the amount of the purchase price" of the recalled toys.  Opp. at 2; *see also*

10  Compl. ¶¶ 15-34.  Neither of these alleged "injuries" can provide the essential

11  injury element of any of Plaintiffs' claims.  In their Opposition, Plaintiffs again

12  attempt to sidestep this basic pleading flaw.  But the reality is that Plaintiffs have

13  not – and cannot – allege an actionable injury.  That failure requires dismissal of all

14  of Plaintiffs' claims.

15  In their Opposition, Plaintiffs do not directly address Defendants' opening

16  argument.  They nowhere point to allegations in their Complaint that any Plaintiff –

17  or any of their children – has suffered any actual injury.  They nowhere point to any

18  allegation that any magnet actually dislodged from any of the toys purchased by the

19  Magnet Recall Plaintiffs.  They nowhere point to any allegation that any of the

20  Lead Recall or Cuff Plaintiffs has actually been diagnosed with any injury or even

21  incurred any cost of any diagnostic testing.  There are no such allegations.

22  Rather than directly addressing that total lack of injury allegations, Plaintiffs

23  talk about cases holding that exposure and/or mere threat or risk of future injury is

24  sufficient for Article III standing purposes or refer the Court to the argument made

25  in their Opposition to Wal-Mart's Motion to Dismiss regarding standing.  *See* Opp.

26  at 20-22.  But those arguments are not relevant here.  Plaintiffs' failure to plead a

27  present, compensable injury renders their claims subject to dismissal for failure to

28

DLI-6206139v1

- 7 -

1  allege a necessary element of each of their causes of action. That is a separate

2  inquiry from whether Plaintiffs have met the threshold necessary for standing.

3      It is well-established that the showing needed to establish Article III standing

4  may be quite low. *See, e.g., Council of Ins. Agents & Brokers v. Molasky-Arman*,

5  522 F.3d 925, 932 (9th Cir. 2008) (finding that plaintiff's injury "amounts to more

6  than an 'identifiable trifle,' thereby satisfying standing's injury in fact

7  requirement."). Given this low standard, it is not surprising that some courts

8  consider a threat of injury sufficient for standing purposes. *See, e.g., Covington v.*

9  *Jefferson County*, 358 F.3d 626, 638 (9th Cir. 2004) (threat/risk of injury to

10  homeowners living across the street from a landfill is sufficient for Article III

11  standing (on RCRA claim)); *Central Delta Water Agency v. United States,* 306 F.3d

12  938, 947 (9th Cir. 2002) (private plaintiffs raised question of fact regarding injury

13  for standing purposes; "the possibility of future injury may be sufficient to confer

14  standing on plaintiffs.").

15      Indeed, the Supreme Court case relied upon by Plaintiffs (Opp. at 21), *Duke*

16  *Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S. Ct.

17  2620, 57 L. Ed. 2d 595 (1978), illustrates this important difference. In *Duke*

18  *Power*, plaintiffs brought a declaratory judgment action challenging the

19  constitutionality of the Price-Anderson Act, which limited the damages recoverable

20  from a nuclear accident. *Id*. at 67. In determining plaintiffs' standing to challenge

21  the constitutionality of the Act, the Court had to decide whether the plaintiffs had a

22  "personal stake" in the outcome of the declaratory judgment action and the

23  determination whether the Act was constitutional. *Id.* at 72. The Court found

24  sufficient "injury" based on environmental impacts on nearby lakes and based on

25  the release of radiation into plaintiffs' environment. *Id.* at 73-74. Significantly,

26  because the nuclear facilities over which the action was brought were still under

27  construction and were not yet operational (*id*. at 67), the Court was plainly

28  addressing the kinds of injuries that could occur in the future, but that were

sufficient for standing purposes to give plaintiffs a stake in the present determination of whether the Act was constitutional.[6]

In stark contrast to the low threshold for Article III standing, Plaintiffs are required to plead an actual, not a theoretical, injury as an element of their claims. To survive a motion to dismiss based on a failure to allege an injury, "the plaintiff must instead allege an *actual manifestation* of the defect *that results in some injury* in order to state a cognizable claim for breach of warranty, unfair trade practices, or unjust enrichment." *O'Neil*, 553 F. Supp. 2d at 1115 (emphasis in original); *see also In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law."); *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) ("Courts have been particularly vigilant in requiring allegations of injury or damages in products liability cases."); *Verb v. Motorola, Inc.*, 672 N.E.2d 1287, 1295, 284 Ill. App. 3d 460 (Ill. App. Ct. 1996) (plaintiffs "were required to properly allege a present personal injury and/or damages in each count of their complaint."). Mere threat of injury or mere exposure to a substance is simply not enough to sustain a cause of action. *See, e.g., Schweitzer v. Consol. Rail Corp.*, 758 F.2d 936, 942 (3d Cir. 1985) (holding that "subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law"). This is true even at the motion to dismiss stage, because "Courts will not supply essential elements of a claim that are not initially pled." *California Joint Powers Ins. Auth. v. Munich Reinsurance Am., Inc.*, No CV 08-956 DSF (RZx), 2008 WL

---

[6] Similarly, in *Ashton v. Pierce*, 541 F. Supp. 635 (D.D.C. 1982), also relied upon by Plaintiffs (Opp. at 21), the court held that plaintiffs' alleged exposure to the risk of lead poisoning was sufficient to confer standing on residents of HUD-associated public housing for purposes of challenging HUD's implementation of the Lead Based Paint Poisoning Prevention Act ("LPPPA"). *Id.* at 637. Thus, plaintiffs were not required to allege actual personal injuries from exposure to lead paint, but rather that they were at higher risk of actual injury as a result of HUD's failure to implement the Act designed to prevent just such injuries.

1   1885754, at *2 (C.D. Cal. Apr. 21, 2008) (citing *Richards v. Harper*, 864 F.2d 85,

2   88 (9th Cir. 1988)).

3          **B.     Medical Monitoring Cases Are Inapposite**

4         Mixed with their Article III standing argument are Plaintiffs' assertions that

5   "exposure to Hazardous Toys" presents the "real threat of serious injury."  Opp. at

6   20.  To argue that these assertions equate to some form of cognizable injury,

7   Plaintiffs run to medical monitoring cases such as *Meyer v. Fluor Corp.*, 220

8   S.W.3d 712, 718 (Mo. 2007) ("[R]ecovering medical monitoring damages does not

9   require a threshold showing of present physical injury."), and *Hansen v. Mountain*

10  *Fuel Supply Co.*, 858 P.2d 970, 975-76 & n.6 (Utah 1993) (discussion of medical

11  monitoring, including note that "the claim for medical monitoring damages is

12  separate and distinct from recovery for the enhanced risk of contracting a serious

13  illness due to exposure").  But Plaintiffs' reference to these medical monitoring

14  decisions does not – and cannot – close the gap of their failure to plead actionable

15  injury.  First, medical monitoring is either a remedy or a cause of action, depending

16  upon the common law of those states that even accept the claim.  It is based on

17  negligence and has no applicability to other claims.  Second, there is simply no

18  basis to suggest that "exposure" to magnet toys creates any risk of injury or that

19  medical monitoring could have any applicability in the context of the magnet toys.

20  Third, even in the context of the Lead Recall toys and the cuff, Plaintiffs have

21  alleged no such claim.  Notably, in original, separate complaints, certain Plaintiffs

22  did assert a medical monitoring claim (*see, e.g., Mayhew, Sarjent, Monroe, Chow,*

23  and *Shah* Complaints), but those claims were left out of both the Consolidated

24  Amended Complaint and the Second Consolidated Amended Complaint.

25        Moreover, even if the Complaint could be viewed as including a medical

26  monitoring claim, there are numerous reasons why such a claim could not properly

27  proceed.  For example, several of the states of residence for the named Plaintiffs

28  either do not recognize medical monitoring claims at all or do not permit recovery

for medical monitoring absent proof of present physical injury. *See, e.g., Rosmer v. Pfizer, Inc.*, No. CIV.A. 9:99-2280-18RB, 2001 WL 34010613, at \*5 (D.S.C. March 30, 2001); *Houston County Health Care Auth. v. Williams*, 961 So.2d 795, 810-11 (Ala. 2006); *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 688-91, 473 Mich. 63 (Mich. 2005). Additionally, even if Plaintiffs were to attempt to assert a medical monitoring claim under the case law of those states that recognize it, simply alleging exposure is not sufficient.

The cases on which Plaintiffs rely demonstrate that those courts that have recognized a medical monitoring claim[7] limit it to cases in which the plaintiff alleges facts showing that "Plaintiff was *significantly* exposed to a proven hazardous substance through the … actions of the defendant." *Bocook v. Ashland Oil, Inc.*, 819 F. Supp. 530, 534 (S.D. W. Va. 1993) (emphasis added). In *Hansen*, the court held:

> First, the plaintiff must prove exposure, which we define as ingesting, inhaling, injecting or otherwise absorbing the substance in question into the body.

858 P.2d at 979. *Accord Miranda v. Shell Oil Co.*, 26 Cal. Rptr. 2d 655, 658, 17 Cal. App. 4th 1651 (Cal. Ct. App. 1993) (where plaintiffs alleged that they drank contaminated water, court held: "We do not mean to say a toxic-tort plaintiff is entitled to collect medical monitoring costs simply by proving the fact of exposure. . . . [T]he plaintiff's evidence must show the likelihood [of repercussions] amounts to such a degree of probability that it is reasonably certain the aftereffect will come about" based, in part, on the "significance and extent of the plaintiff's exposure.").

Plaintiffs' allegations are wholly insufficient to support any such claim. The "exposure" they allege is mere proximity to – not ingestion of – lead embedded in

---

[7] Many of the cases Plaintiffs cite are plainly inapposite precisely because they involve allegations of actual injury missing entirely from the Complaint. *See Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 826 (D.C. Cir. 1984) (infants suffered head trauma in an airplane crash); *Espinosa v. Beverly Hosp.*, 249 P.2d 843 (Cal. 1952) (parents traumatized by negligent delivery of infant).

paint on portions of the recalled toys.  Not a single Plaintiff's child is alleged actually to have ingested any lead from the toys, let alone to have suffered any increase in blood lead level or any other symptoms or injury.

Plaintiffs have failed to allege any cognizable "injury" and thus failed to state any claim.

### C.    The Purchase Price Of The Recalled Toys Is Not A Compensable Injury

Plaintiffs have effectively limited their claim for the purchase price of the recalled toys to their breach of warranty claims, which Defendants address below. Plaintiffs' Opposition states that "in support of their breach of warranty claims, Plaintiffs allege that they have been injured for the purchase price of the Hazardous Toys."  Opp. at 22; *see also* Compl. ¶¶ 183, 197.  With the exception of the claims for negligence (Count III) and strict liability (Count IV), Plaintiffs also sought a refund of the purchase price of the recalled toys under their remaining causes of action, but they make no effort in their Opposition to support such a claim under any of those remaining causes of action, and thereby effectively concede the unavailability of a refund under those theories.

With respect to their warranty claims, Plaintiffs assert that, "in addition to general damages naturally flowing from the breach of warranty, Plaintiffs may also recover incidental damages …."  They then contend there is "no such contract" limiting their recovery and in a footnote refer to benefit of the bargain damages as the "standard measure of damages in a breach of warranty action."  Opp. at 22-23 & n.16.  Again Plaintiffs' arguments miss the point.[8]  The issue presented by Defendants' motion is Plaintiffs' failure to allege any cognizable injury.  Asserting

---

[8] Plaintiffs' warranty claims also raise a host of other issues, such as notice and privity, that vary widely under state law.  *See, e.g., Cole v. Gen. Motors Corp.*, 484 F.3d 717, 727-28 (5th Cir. 2007) (discussing variations in state law on key warranty issues).  While these issues are not part of this motion, Defendants reserve the right to address them at a later point if that should be necessary.

DLI-6206139v1

a conclusory entitlement to a refund of the purchase price is not an allegation of injury.

First, as indicated above and in Defendants' opening Memorandum, Plaintiffs have no cognizable injury because they received (or were entitled to receive) the full value of their toys through the recall replacement remedy. Plaintiffs provide no explanation as to how they have suffered compensable injury in the face of such replacement. *See O'Neil*, 553 F. Supp. 2d at 1116 n.7 ("The Court further notes that the 'defect' in the [plaintiffs'] crib is one of their own making. [Defendant] has made a Retrofit Kit available to them, but they have opted not to install it."). The reality is that, through the recall and replacement programs, Plaintiffs are economically whole and have suffered no injury, and their lack of response to this point concedes as much.

Second, Plaintiffs' argument that they are entitled to benefit of the bargain damages for a breach of warranty puts the cart before the horse. Plaintiffs are not entitled to the *remedy* set forth in U.C.C. § 2-714 because they have failed to allege an *injury* that would entitle them to receive that remedy.

Plaintiffs' warranty claims suffer from the same infirmities that resulted in the dismissal of the plaintiffs' claims in *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320-21 (5th Cir. 2002). The plaintiffs in *Rivera*, like Plaintiffs here, sought contract-type remedies based on their claims that the manufacturer failed to warn that the goods they purchased were unreasonably dangerous. The court, however, rejected the plaintiffs' attempt to create the illusion of injury:

> The confusion arises from the plaintiffs' attempt to recast their product liability claim in the language of contract law. The wrongs they allege-failure to warn and sale of a defective product-are products liability claims. Yet, the damages they assert-benefit of the bargain, out of pocket expenditures-are contract law damages. The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury. Such artful pleading, however, is not enough to create an injury in fact.

1  *Id.* (citations omitted).  Plaintiffs here attempt the same tactics that the court

2  rejected in *Rivera*, and their claims must fail for the same reason.

3         Third, even if Plaintiffs' Opposition could convert their products-liability

4  action into one in which warranty law could properly be applied, Plaintiffs have

5  also failed to plead facts to establish that their toys were defective.  *See Briehl*, 172

6  F.3d 623; *In re Bextra & Celebrex Marketing, Sales Practices & Prod. Liab. Litig.*,

7  No. MDL 05-01699 CRB, 2007 WL 2028408, at *7-8 (N.D. Cal. July 10, 2007).

8  Instead, in an attempt to articulate an injury on which their warranty claims can

9  stand, Plaintiffs assert that their toys were "worthless" and "hazardous."  *See* Opp.

10  at 23 n.16.  Missing from the Complaint is any allegation by even a single Plaintiff

11  that her toy contained lead at levels that presented any health hazard or that any

12  magnet on her toys ever became loose.

13         To the contrary, Plaintiffs try to bootstrap an argument that their toys were

14  defective or "hazardous" based on the fact that Mattel recalled the toys.  But the

15  fact of a recall establishes nothing about the existence of a defect in any particular

16  toy.  Pleading that their toys were recalled is not a substitute for pleading facts that

17  would, if true, establish that Plaintiffs themselves were injured.  *Bishop v.*

18  *Bombardier, Inc.*, 399 F. Supp. 2d 1372, 1381-82 (M.D. Ga. 2005); *see also Ryan*

19  *v. Brookdale Int'l Sys. Inc.*, 230 F. App'x 366, 367-68 (5th Cir. 2007) (rejecting

20  warranty claims against manufacturer of recalled product alleged to be "useless"

21  because suit was based on "no-injury product liability claim" and plaintiff had

22  failed to show injury for purposes of the warranty claim).  The fact that Plaintiffs'

23  toys have been recalled does not equate to an allegation that Plaintiffs' toys were

24  defective or that Plaintiffs were injured.  As one court stated in rejecting claims

25  based on recalled baby cribs:

26         [Plaintiffs] apparently believe that the mere fact
           [Defendant] has recalled the cribs, based on *others*
27         encountering problems, necessarily means that their crib
           has a 'manifest' defect.  …  That the crib has been
28         recalled … does not *ipso facto* mean that the crib has a

1    manifest defect sufficient to permit their claim to proceed.

2    *O'Neil*, 553 F. Supp. 2d at 1116 (emphasis in original).  Plaintiffs here have

3    likewise failed to allege such an injury.

4    **IV.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER 15 U.S.C. § 2072**

5        **A.    The Magnet Recall and Cuff Plaintiffs Have Alleged No Violation
                  of A Consumer Product Safety Rule**

6        Section 2072(a) requires that Plaintiffs allege a knowing violation of "a

7    consumer product safety rule, or any other rule or order by the Commission . . . ."

8    In turn, § 2052 defines a "consumer product safety rule" as "a consumer products

9    safety standard described in section 2056(a) of this title, or a rule under this chapter

10   declaring a consumer product a banned hazardous product."[9]  Thus, any action

11   under § 2072(a) must be based on a consumer product safety rule or some other rule

12   or order issued by the CPSC.

13       The only CPSC rules, standards or orders referenced in the Complaint are 16

14   C.F.R. § 1303 (Sept. 1, 1977), 16 C.F.R. § 1117.1 (Feb. 27, 1995), *et seq.*, and 16

15   C.F.R. § 1500.18(a)(2) (Sept. 27, 1973).  Compl. ¶ 223.  Section 1303, of course,

16   only addresses lead in paint; that section has no application to the magnet toys or

17   the cuff.  Part 1117 "set[s] forth the Commission's interpretative regulations for

18   reporting of choking incidents required by the Child Safety Protection Act."  16

19   C.F.R § 1117.1.  And, as discussed in Defendants' opening Memorandum,

20   § 1500.18(a)(2) applies only to "noisemaking" parts, which on its face does not

21   include the magnet toys.  In their response, Plaintiffs have abandoned any reliance

22   on any of these provisions – the only standards identified in the Complaint – and

23   have thus effectively conceded that they have no claim under 15 U.S.C. § 2072.

24       Instead, Plaintiffs' Opposition is an attempt at misdirection.  Plaintiffs argue

25   (Opp. at 17) that Defendants misled the Court by not including the part of the

26

27       [9] Section 2056(a) references the procedures that the CSPC must follow in
establishing standards and the types of requirements that may be in such standards,
28   but does not itself set any standards.

1    definition of "consumer product safety rule" that includes a "rule under this

2    chapter[10] declaring a consumer product a banned hazardous product."  15 U.S.C.

3    § 2052(a)(2).  But that language in the definition has no applicability here.

4    Plaintiffs do not identify any rule declaring a consumer product a "banned

5    hazardous product" that is applicable to either the magnet toys or the cuff, and no

6    such rule exists.[11]

7           Indeed, Plaintiffs do not address products identified by the CPSC as banned

8    hazardous *products* at all.  Instead, they turn without explanation to the definition

9    of a "banned hazardous *substance*" under the Federal Hazardous Substance Act, 15

10   U.S.C. § 1261(q)(1), and argue that it applies to the cuff (but not the magnet toys)

11   and, as a result, provides a basis for suit.  Opp. at 17.  In addition, Plaintiffs refer to

12   15 U.S.C. § 2064, which sets forth the standards for notice to the CPSC and to the

13   public of product issues, although it was not alleged as a basis for their § 2072

14   claims in the Complaint.

15          It is clear, however, that, even assuming, *arguendo*, these statutory

16   provisions were violated, they cannot form the basis for an action under § 2072.

17   Neither is a "consumer product safety rule" or "other order of the Commission."  15

18   U.S.C. § 2072(a).  "The [CPSA] does not provide an express private right of action

19   for violation of the provisions of the Act itself, as distinguished from rules or orders

20   issued by the Commission."  *In re All Terrain Vehicle Litig.*, 979 F.2d 755, 756 (9th

21   Cir. 1992).  Moreover, it is also clear that there is no separate implied right of

22   action for violating these statutory provisions.  *See id.* at 757 (examining attempted

23   claim under § 2064 and "join[ing] the other circuits that have rejected implied

24   _____

25          [10] Plaintiffs quote § 2052(a)(2) as saying "under this Act" (Opp. at 17), but
     the actual word used in the statute is "Chapter," referring to Chapter 47 (Consumer
     Product Safety) of Title 15.

26          [11] In 16 C.F.R. Parts 1301-1306, the CPSC declares certain unstable refuse

27   bins, extremely flammable contact adhesives, paint with lead in excess of the stated
     measure, consumer patching compounds containing asbestos, artificial emberizing

28   materials containing asbestos, and lawn darts as "banned hazardous products."

private rights of action under the Act"); *Riegel Textile Corp. v. Celanese Corp.*, 649
F.2d 894, 903 (2d Cir. 1981) (holding § 1263 of the Federal Hazardous Substances
Act[12] did not create a private right of action).

Because the Complaint fails to allege a violation of a CPSC rule or standard
with respect to the magnet toys or the cuff, the Magnet Recall and Cuff Plaintiffs'
claims under § 2072 must be dismissed.

**B.    Plaintiffs Do Not Allege Injury Compensable Under CPSA § 2072**

Plaintiffs rely on *Griswold Insulation Co. v. Lula Cotton Processing Co.*, 540
F. Supp. 1334 (D. Tenn. 1982), to argue that § 2072(a) permits actions for more
than personal injuries.  That reliance is misplaced.  In *Griswold*, the plaintiff was an
insulation installer and wholesaler that sued for damages associated with the use of
a cellulose insulation product manufactured by the defendant.  The *Griswold* court
based its opinion upon 15 U.S.C. § 2082 that was enacted "to preserve the
reputation of the [insulation] industry."  *Griswold*, 540 F. Supp. at 1340 (noting the
exclusive purpose of § 2082).  The *Griswold* court concluded that § 2082 "reflects
[the CPSA's] dual purpose *with regard to the insulation industry*."  *Id.* (emphasis
added).  Because of the unique issues involved with § 2082:

> The *Griswold* case is not persuasive on the critical issue –
> what was Congress' intention in enacting § 2072. … The
> legislative history provides no basis for concluding that
> Congress intended that § 2072 would provide a federal
> right of action … for purely economic injury.

*Sanitoy, Inc. v. Shapiro*, 705 F. Supp. 152, 159 (S.D.N.Y. 1989), With § 2072,
Congress "wished to create a federal remedy only for injured consumers."  *Id.*
Thus, § 2072 does not encompass claims for the refund of the purchase price of a
recalled product.

---

[12] As the court noted in *Riegel Textile*, while § 1261 defines a "banned
hazardous substance," section 1263 actually imposes the ban on the sale of such
products in interstate commerce, so the issue is more accurately analyzed as
whether there is a private right of action under § 1263.  649 F.2d at 899 n.10.

Indeed, the CPSA defines "risk of injury" not as risk of economic, financial or pecuniary loss; rather, it defines the risk of injury as "risk of death, personal injury, or serious or frequent illness." 15 U.S.C. § 2052(a)(3). Thus, Defendants argued in their opening Memorandum that § 2072 allows for claims predicated only on physical injuries, not alleged economic loss. This application of § 2072 is buttressed by the Act's legislative history, where it was stated that "[t]he burden would be on the [§ 2072] plaintiff first to show that the victim **died or sustained personal injury . . . or became ill**." 118 Cong. Rec. 31,384 (emphasis added). Accordingly, the court in *Sanitoy* held that "the legislative history shows that Congress believed that it was creating a private federal remedy for [physically] injured consumers." 705 F. Supp. at 158-59.

Here, while no Plaintiff alleges a cognizable injury of any kind, as demonstrated in the prior section, they certainly have not alleged physical injury. The Magnet Recall Plaintiffs concede that physical harm occurs, if at all, only when magnets are swallowed (Compl. ¶ 50; Opp. at 4), but they do not allege that their children swallowed a single magnet, much less incurred injury from such magnets. Likewise, the Lead Recall Plaintiffs and the Cuff Plaintiffs do not allege anything more than "exposure" to lead, which does not constitute injury for purposes of § 2072. Thus, Plaintiffs' § 2072 claims should be dismissed in their entirety.

## V. PLAINTIFFS' FRAUD-BASED UCL AND CLRA CLAIMS FAIL TO SATISFY RULE 9(B)

Plaintiffs' Opposition argues that none of their claims under the UCL or CLRA are fraud-based and, even if they were, the Rule 9(b) standard would not apply.[13] Plaintiffs are wrong on both fronts. Moreover, Plaintiffs failed to make any argument that the fraud-based statements identified by Defendants in their

---

[13] To the extent Plaintiffs suggest that Defendants argue that any UCL or CLRA claims that do not sound in fraud are nevertheless subject to Rule 9(b), they are mistaken. Defendants' Rule 9(b) argument pertains to the fraud-based allegations in the Complaint.

1   opening Memorandum would, in any event, be actionable.  Instead, Plaintiffs

2   merely argue that such statements are not fraud-based.

3        Plaintiffs repeatedly argue that their UCL and CLRA claims are not based in

4   fraud.  Opp. at 26 ("a plain reading of the Complaint reveals neither claim is based

5   on, or relies upon, allegations of fraud"); *id*. at 30 ("Because Plaintiffs have not

6   averred fraud in their unfair competition and CLRA claims they must only plead

7   under [Rule 8].").  They chastise Defendants for allegedly failing "to point to a

8   single allegation or averment of Plaintiffs' that sounds in fraud." *Id*. at 25.  These

9   statements are puzzling in light of the allegations in the Complaint, which leave no

10  doubt that Plaintiffs have asserted fraud-based claims.

11       By way of example, Plaintiffs allege:

12            California Business and Professions Code § 17200 also
             prohibits any 'fraudulent business act or practice.'  By
13            engaging in the above-described conduct, *the
             Manufacturer Defendants engaged in "fraudulent"*
14            *business acts or practices* in that the business acts and
             practices described above had a tendency and likelihood
15            to deceive persons to whom such conduct was and is
             targeted by selling, marketing and distributing the
16            Hazardous Toys as safe, quality and age-appropriate
             products, when in fact the Hazardous Toys contained
17            hazardous lead, lead paint or loose magnets.

18  Compl. ¶ 235 (emphasis added).  Plaintiffs further allege that consumers relied on

19  and were deceived by Defendants' representations. *Id*. ¶¶ 236-37.  Plaintiffs make

20  similar allegations regarding "'fraudulent' business acts or practices" by the

21  Retailers. *Id*. ¶¶ 248-251.  Finally, Plaintiffs' CLRA counts also include allegations

22  concerning alleged misrepresentations by the Defendants. *Id*. ¶¶ 261, 272.  It is

23  simply disingenuous for Plaintiffs to attempt to avoid their pleading obligations by

24  arguing that none of their UCL or CLRA claims sound in fraud.

25       With respect to the applicability of Rule 9(b) to averments of fraud, Plaintiffs

26  concede that the Ninth Circuit's decision in *Vess v. Ciba-Geigy Corp*., 317 F.3d

27  1097, 1104-05 (9th Cir. 2003), requires that allegations of fraudulent conduct are

28  subject to Rule 9(b)'s pleading standards.  Opp. at 25.  In *Vess*, the Ninth Circuit

1  held that while fraud is not an essential element of the UCL and CLRA, to the

2  extent that the plaintiff alleged fraud-based UCL or CLRA claims, allegations that

3  failed to satisfy Rule 9(b) should be "disregarded" or "stripped" from the

4  complaint.  *Vess*, 317 F.3d at 1104-05.[14]

5          Despite this clear controlling law, Plaintiffs nevertheless argue that "Rule

6  9(b) does not apply to the 'fraudulent' prong of the UCL."  Opp. at 29.  In that

7  regard, Plaintiffs rely on *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046,

8  1052 (N.D. Cal. 2004), a case that concerned the alleged bad-faith enforcement of a

9  patent.  In addressing whether Rule 9(b) applied to the claim, the court noted that

10  the claim "does not allege fraudulent conduct because the assertions neither contain

11  the word fraud nor do they allege facts that would necessarily constitute fraud."  *Id.*

12  at 1052.  *Qarbon.com* is therefore readily distinguishable because here, as noted

13  above, Plaintiffs repeatedly assert that Defendants engaged in fraudulent conduct.

14  *See Meinhold v. Spectrum, L.P.*, No. CIV S-07-00456 FCD EFB, 2007 WL

15  1456141, at *6 & n.7 (E.D. Cal. May 16, 2007) (distinguishing *Qarbon.com* and

16  applying Rule 9(b) in context of consumer claim based on allegedly false and

17  misleading advertising and marketing statements).

18          In *Meinhold*, the court addressed the sufficiency of a consumer's UCL and

19  CLRA claims that were based upon allegedly false and misleading statements made

20  by Sprint through its advertising and marketing campaign.  In holding that the

21  claims failed to satisfy Rule 9(b), the court noted that:

22              Meinhold does not identify what advertisements she is
               referring to, when she saw them, where she saw them, or
23              how the statements made in those specific advertisements
               were untrue or misleading. Such general allegations are
24              insufficient to give defendant notice of the particular
               misconduct charged by plaintiff.
25

26          [14] Indeed, a California court in a case cited by Plaintiffs recognized that Rule
      9(b) applies to unfair competition law claims "to the extent that a pleading avers
27      facts constituting common law fraud, whether or not the term 'fraud' is used."
      *Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D. Cal.
28      2007).

1  *Id.* at *6.  Plaintiffs' Complaint suffers from the same fatal infirmities.

2  **VI.    CALIFORNIA'S UNFAIR COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT DO NOT APPLY TO PLAINTIFFS WHO RESIDE OUTSIDE CALIFORNIA**

3

4      In response to Defendants' motion to dismiss the non-California Plaintiffs'

5  claims under California's UCL and CLRA, Plaintiffs once again construct an

6  argument that Defendants did not make (choice of law) and spend pages refuting

7  that argument.  Defendants have not moved to dismiss the non-California Plaintiffs'

8  statutory claims based on choice of law principles, but rather on the straightforward

9  basis that those non-California residents lack standing to state a claim under

10  California statutes on these facts against Mattel or Fisher-Price.[15]  "California law

11  embodies a presumption against the extraterritorial application of its statutes."

12  *Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225

13  (E.D. Cal. 2005).  Plaintiffs' allegations do not overcome this presumption, and

14  Plaintiffs spend virtually no time supporting the factual basis for permitting non-

15  California Plaintiffs to assert claims under California statutes.

16      First, Plaintiffs do nothing to tie the alleged minimal contacts between

17  Fisher-Price and California to their claims.  Instead, they merely recite the

18  allegations in the Complaint without explaining how those sparse alleged contacts

19  justify application of the California statutes to Fisher-Price, a New York-based

20  entity, by non-California Plaintiffs.  As noted in Defendants' opening

21  Memorandum, the alleged "recall-related activities," presence of certain executives

22  of Fisher-Price in California, and the entry of some Fisher-Price toys into the U.S.

23  through California have nothing to do with their claims.  Nonetheless, Plaintiffs'

24  Opposition makes no attempt to explain such a connection.  Thus, the UCL and

25  CLRA claims by non-California Plaintiffs against Fisher-Price must be dismissed.

26

27  _____

    [15] Defendants were under no obligation to make a choice of law argument at this juncture, and Plaintiffs' suggestion of waiver (Opp. at 33) is baseless.

28

DLI-6206139v1

1    Likewise, Plaintiffs make no effort to explain how Mattel's presence in

2  California justifies the use of the UCL and CLRA by non-California residents to

3  assert claims based on transactions and alleged misrepresentations that, as to the

4  non-California Plaintiffs, occurred entirely outside California.  The conclusory

5  allegation that Mattel's "wrongful conduct emanated . . . from California" (Compl.

6  ¶ 232) is not sufficient to meet Plaintiffs' burden.  *See Norwest Mortgage, Inc. v.*

7  *Superior Court*, 72 Cal. App. 4th 214, 217, 222-24, 85 Cal. Rptr. 2d 18, 20, 23-24

8  (Cal. Ct. App. 1999) (rejecting the UCL claims alleged by non-California residents

9  against a defendant incorporated in California where the alleged conduct occurred

10  outside California).

11    Plaintiffs who do not reside in California and who purchased their toys from

12  retailers outside California do not and cannot claim that they possess sufficient

13  contacts with California that would permit the constitutional application of

14  California's statutes to the out-of-state transactions.  Because the non-California

15  Plaintiffs have not plead sufficient contacts with California to establish the extra-

16  territorial application of California's UCL and CLRA statutes, their claims should

17  be dismissed.

18    ## CONCLUSION

19    Plaintiffs' attempt to recover the purchase price of the recalled toys seeks a

20  remedy that is preempted by the CPSA.  The Complaint also fails to state a claim

21  for relief under any theory because Plaintiffs have not and cannot allege a

22  cognizable injury.  For these reasons, the Complaint should be dismissed in its

23  entirety.  Moreover, Plaintiffs' claims under § 2072(a) of the CPSA; their fraud-

24  based claims under the UCL and the CLRA; the claims of non-California residents

25  under the UCL and CLRA; their negligence claims stated against the Retailer

26  Defendants; their CLRA damages claims; and their claims for unjust enrichment

27  should be dismissed because the Complaint fails to allege facts sufficient to sustain

28  such claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 19, 2008

JONES DAY

By:_____
Elwood Lui
Rick L. Shackelford
555 South Flower Street, 50th FL
Los Angeles, CA   90071
Telephone:   (213) 489-3939
Facsimile:    (213) 243-2539

Thomas E. Fennell
Michael Rice
JONES DAY
2727 North Harwood Street
Dallas, TX   75201
Telephone:   (214) 220-3939
Facsimile:    (214) 969-5100

Hugh R. Whiting
JONES DAY
717 Texas, Suite 3300
Houston, TX   77002
Telephone:   (832) 239-3939
Facsimile:    (832) 239-3600

Attorneys for Defendants
MATTEL, INC., FISHER-PRICE,
INC., TARGET CORPORATION,
TOYS "R" US, INC., KB TOYS, INC.,
AND KMART CORPORATION

DLI-6206139v1

- 23 -