Elwood Lui (45538)
elui@jonesday.com
Rick L. Shackelford (151262)
rlshackelford@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone:   (213) 489-3939
Facsimile:    (213) 243-2539

Thomas E. Fennell
tefennell@jonesday.com
Michael L. Rice
mlrice@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, TX  75201-1515
Telephone:   (214) 220-3939
Facsimile:    (214) 969-5100

Hugh R. Whiting
hrwhiting@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX   77002
Telephone:   (832) 239-3939
Facsimile:    (832) 239-3600

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re MATTEL, INC., TOY LEAD PAINT PRODUCTS LIABILITY LITIGATION | Case No. MDL No. 1897<br><br>The Honorable Dale S. Fischer<br><br>**MEMORANDUM OF MATTEL, FISHER-PRICE, TARGET, TOYS "R" US, KMART, AND K-B TOYS IN RESPONSE TO COURT'S SEPTEMBER 8, 2008 ORDER REGARDING BRIEFING ON PREEMPTION** |

DLI-6212347v3

Defendants Mattel, Inc., Fisher-Price, Inc., Target Corporation, Kmart Corporation, Toys "R" Us, Inc., and KB Toys, Inc. ("Defendants") submit this memorandum in response to the questions posed in the Court's September 8, 2008 Order Regarding Further Briefing on Preemption Issue.

## I. HOW DOES THE RECENT AMENDMENT REMOVING THE ELECTION LANGUAGE FROM 15 U.S.C. § 2064 ALTER THE PREEMPTION ANALYSIS?

The amendment of 15 U.S.C. § 2064(d) by the Consumer Product Safety Improvement Act of 2008, H.R. 4040, 110th Cong. (2008) ("CPSIA"), does not alter the preemption analysis. That is so for two independent reasons: (1) the change to § 2064(d) is not retroactive, and (2) the amendment confirms Congress' intent to ensure that product recalls are implemented on a uniform basis through the direction and approval of the Consumer Product Safety Commission ("CPSC"). Thus, under the revised § 2064(d) – just as is the case under the law applicable here – any plaintiff's effort to use state law to modify the terms of a product recall would be barred by conflict preemption.

First, the CPSIA amendments to § 2064 are not retroactive. Indeed, "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). *See also In re NOS Commc'ns,* 495 F.3d 1052, 1062 (9th Cir. 2007) (holding Truth-in-Billing regulations could not be retroactively applied where "[n]othing in the language indicates a clear congressional intent favoring retroactivity" and "the regulation imposes new duties with respect to transactions already completed.") (citing *Landgraf v. USI Film Prods*., 511 U.S. 244, 280, 114 S. Ct. 1483, 128 L.E.2d 229 (1994) (where statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed, … our traditional

DLI-6212347v3

presumption teaches that it does not govern absent clear congressional intent favoring such a result")).

Here, under the express language of Section 239(a)(1) of the CPSIA, "[e]xcept as otherwise specifically provided in this Act, this Act and the amendments made by this Act shall take effect on the date of enactment of this Act." The CPSIA was enacted on August 14, 2008, well after the product recalls at issue here were implemented by Mattel and Fisher-Price in cooperation with the CPSC. Nothing in section 214 of the CPSIA, which amended 15 U.S.C. § 2064(d), would make the changes to that section retroactive.[1] Thus, amended § 2064(d) has no applicability to this litigation.

Second, even if § 2064(d), as amended by the CPSIA, were somehow applied to these recalls, plaintiffs' attempt to use state law claims to compel Mattel to refund the purchase price of the recalled toys would be preempted. Under the amended provision, Congress has now said that the CPSC, rather than the manufacturer, shall determine whether the appropriate recall method to be applied uniformly throughout the country is refund, repair, or replacement. CPSIA § 214(b)(3). Importantly, the amendment does not alter the Congressional scheme of determining the recall method at the federal level under the Consumer Product Safety Act ("CPSA") and, as a result, maintains the national uniformity underlying the Act. Thus, any attempt by plaintiffs to use state law to countermand the CPSC's determination of the appropriate recall method could create a patchwork of recall methods across the country that would be in direct conflict with the amended CPSA. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873, 120 S. Ct. 1913, 146 L. Ed. 2d 914 (2000); *Carden v. Gen. Motors Corp.*, 509 F.3d 227, 230 (5th Cir. 2007) ("Actual conflict between state and federal law exists where 'the federal

---

[1] There are a number of provisions in the CPSIA that call for *later* effective dates, including section 239(a)(2). That provision addresses the amendments made by section 214(a)(2), which amends 15 U.S.C. § 2064(b) and has no application here.

DLI-6212347v3

- 2 -

1  scheme expressly authorizes an activity which the state scheme disallows.'")
2  (quoting *Wells Fargo Bank of Tex. v. James*, 321 F.3d 488, 491 n.3 (5th Cir.
3  2003)), *cert. denied*, 128 S. Ct. 2911 (2008); *Griffith v. Gen. Motors Corp.*, 303
4  F.3d 1276, 1282 (11th Cir. 2002) (where plaintiff's suit "would foreclose an option
5  specifically permitted" by federal regulation, "it conflicts with that federal law and
6  is impliedly preempted").

7       Moreover, just as under the recall system in place at the time of the Mattel
8  and Fisher-Price recalls, the CPSA savings clauses (*see* 15 U.S.C. § 2072(a), (c),
9  § 2074(a)) do not alter the application of the basic preemption principle enunciated
10 in *Geier*.  Indeed, addressing the Motor Vehicle Safety Act and the regulations
11 under it, the Supreme Court made clear that "the saving clause (like the express pre-
12 emption provision) does *not* bar the ordinary working of conflict pre-emption
13 principles."  *Geier*, 529 U.S. at 869 (emphasis in original).  This is not an issue of
14 whether a state can adopt a more stringent safety standard as permitted by the
15 savings clause; thus, *Leipart v. Guardian Industries, Inc.*, 234 F.3d 1063 (9th Cir.
16 2000), simply has no application here.  Where Congress has said that the
17 determination of the uniform recall method shall be made under the express terms
18 of the CPSA, state law actions attempting to mandate a contrary determination are
19 plainly in conflict and, as a result, are preempted.

20 **II.**     **DOES THE ELECTION PROVISION IN THE FORMER VERSION OF SECTION 2064 ONLY PREEMPT UNELECTED REMEDIES WHEN THE CONSUMER PRODUCT SAFETY COMMISSION HAS MADE A FINDING THAT THE PRODUCT AT ISSUE IS A "SUBSTANTIAL PRODUCT HAZARD AND ACTION … IS IN THE PUBLIC INTEREST"?**

     Preemption applies independent of a finding by the CPSC that a product is a
"substantial product hazard and action … is in the public interest." *See generally*
15 U.S.C. § 2064.  Section 2064 of the CPSA does a number of things:  (1) the
definition of "substantial product hazard" is set forth in § 2064(a); (2) Section
2064(b) requires manufacturers and distributors to notify the CPSC if they become

DLI-6212347v3

- 3 -

aware that a product fails to comply with a CPSC rule or contains a defect that could create a substantial product hazard; (3) Subsections (c) and (d) of § 2064 set forth procedures that the CPSC is to follow to require notice of a substantial product hazard and to order a recall, including the submission by the manufacturer or distributor of a plan for the corrective action elected under § 2064(d). The predicate for formal CPSC action under either § 2064(c) or (d) is that the CPSC determine that "a product distributed in commerce presents a substantial product hazard and that action under this subsection is in the public interest." But such a determination can only be made – and a notice or recall order therefore issued – "after affording interested parties, including consumers and consumer organizations, an opportunity for a hearing."[2]  15 U.S.C. § 2064(c), (d).

The CPSC adopted regulations to implement § 2064. *See* 16 C.F.R. Part 1115. Because mandatory recalls require notice and a hearing before the CPSC can declare a product a "substantial product hazard," *see* 16 C.F.R. § 1115.21, the CPSC adopted provisions for voluntary remedial actions. *See* 16 C.F.R. § 1115.20 (Aug. 7, 1978). In adopting those regulations, the Commission concluded that voluntary corrective action plans provide "efficient and effective methods of dealing with potential hazards" so that "the hazard is remedied faster, and the consumer is protected earlier." 43 Fed. Reg. 34988, 34996 (Aug. 7, 1978). Just as with the mandatory recall provisions, under the regulations for voluntary recalls, companies submit a corrective action plan that "indicate[s] whether it is repairing or replacing the product or refunding its purchase price." 16 C.F.R. § 1115.20(a)(1)(vi); *see also id.* (b)(1)(xiii).

To be clear, the CPSC regulations provide that the corrective action plan submitted for purposes of a voluntary recall does not bind the CPSC. 16 C.F.R.

---

[2] Once the CPSC has initiated proceedings under § 2064(d) to order a recall, the CPSC or the Attorney General can seek a preliminary injunction "to restrain the distribution in commerce of such product pending the completion of such proceeding." 15 U.S.C. § 2064(g)(1). However, any recall order would still have to await the completion of the proceedings under § 2064(d).

DLI-6212347v3

- 4 -

§ 1115.20(a). Rather, the CPSC "reserves the right to seek broader corrective action if it becomes aware of new facts or if the corrective action plan does not sufficiently protect the public." *Id.* To the extent the CPSC were to seek any such broader corrective action, however, its authority for doing so rests, again, in § 2064(d) and, therefore, necessarily encompasses the election of the recall method pursuant to that provision. Thus, under all scenarios, the decision as to the recall method is made exclusively under the federal scheme.

Moreover, the Supreme Court found preemption in *Geier* based on regulations adopted pursuant to the Motor Vehicle Safety Act. *Geier*, 529 U.S. at 873. As in *Geier,* if the CPSC regulations implementing § 2064(d) for voluntary recalls can be overridden by state law, that would undermine Congress's objective of uniformity in dealing with potential product hazards. In addition, if companies contemplating a potential recall would be subjected to the vagaries of potentially conflicting state law requirements if they proceed under the regulations for voluntary recalls, the incentives to undertake a voluntary recall – rather than await a formal determination of "substantial product hazard" under § 2064(d) – would be substantially lessened, if not entirely eliminated. That result would directly conflict with the CPSC's purposes for adopting the voluntary recall procedures and unnecessarily delay product recalls, potentially putting the public at greater risk. *See* 43 Fed. Reg. at 34996 (recognizing that, through voluntary recalls, "the hazard is remedied faster, and the consumer is protected earlier").

The corrective action plan provisions applicable to voluntary product recalls in the CPSC regulations are based upon and directly implement § 2064(d) of the CPSA. Mattel and Fisher-Price complied with those provisions and implemented a uniform recall that provided for replacement of the recalled toys. As a result, Plaintiffs' attempt to use state law to substitute a refund for the replacement method used for the recalls is preempted.

| | | |
|---|---|---|
| 1 | Dated: September 29, 2008 | JONES DAY |

By: _____/s/ Rick L. Shackelford_____
Elwood Lui
Rick L. Shackelford
555 South Flower Street, 50th FL
Los Angeles, CA  90071
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539

Thomas E. Fennell
Michael Rice
JONES DAY
2727 North Harwood Street
Dallas, TX  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

Hugh R. Whiting
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone:  (832) 239-3939
Facsimile:  (832) 239-3600

Attorneys for Defendants
MATTEL, INC., FISHER-PRICE, INC., TARGET CORPORATION, TOYS "R" US, INC., KB TOYS, INC., AND KMART CORPORATION

DLI-6212347v3

- 6 -