1  Elwood Lui (45538)
   elui@jonesday.com
2  Rick L. Shackelford (151262)
   rlshackelford@jonesday.com
3  JONES DAY
   555 South Flower Street
4  Fiftieth Floor
   Los Angeles, CA  90071-2300
5  Telephone:   (213) 489-3939
   Facsimile:    (213) 243-2539
6

7  Thomas E. Fennell                    Hugh R. Whiting
   tefennell@jonesday.com               hrwhiting@jonesday.com
8  Michael L. Rice                      JONES DAY
   mlrice@jonesday.com                  717 Texas, Suite 3300
9  JONES DAY                            Houston, TX   77002
   2727 North Harwood Street            Telephone:   (832) 239-3939
10 Dallas, TX  75201-1515                Facsimile:    (832) 239-3600
   Telephone:   (214) 220-3939
11 Facsimile:    (214) 969-5100

12

13                    UNITED STATES DISTRICT COURT

14                    CENTRAL DISTRICT OF CALIFORNIA

15                           WESTERN DIVISION

16

17

18 In re MATTEL, INC., TOY LEAD            Case No. MDL No. 1897
   PAINT PRODUCTS LIABILITY
19 LITIGATION                              The Honorable Dale S. Fischer

20                                         **SUPPLEMENTAL BRIEF OF
                                           MATTEL, FISHER-PRICE,
21                                         TARGET, TOYS "R" US,
                                           KMART, AND K-B TOYS IN
22                                         RESPONSE TO PLAINTIFFS'
                                           SUPPLEMENTAL RESPONSE**

23

24

25

26

27

28

LAI-2978764v1

# INTRODUCTION

Pursuant to the Court's September 8, 2008 directive and order, Defendants Mattel, Fisher-Price, Target, Toys "R" Us, Kmart and KB Toys respectfully submit this Supplemental Brief in support of their Motion to Dismiss the Second Consolidated Amended Complaint. As directed, the focus of this Supplemental Brief is on Plaintiffs' injury allegations and the chart of claims and relief attached to Plaintiffs' September 22, 2008 Supplemental Response per Court's September 8, 2008 Order ("Plaintiffs' Chart").[1]

Plaintiffs' Chart confirms that virtually all of Plaintiffs' claims are predicated on the fact that Plaintiffs purchased toys that were later subject to a product recall. Indeed, Plaintiffs presume that the fact of a recall translates into injury and a claim for relief. But that is neither the law nor the facts. The fact that a particular toy was included in a product recall does not *ipso facto* mean that the toy was defective or that the purchase of the toy constituted an injury.

As the Court recognized at the September 8 hearing, this case involves three different categories of toys – and Plaintiffs – which present unique issues. Without question, however, these categories provide an important analytical framework, particularly with respect to the question of injury. On that issue, Plaintiffs' Chart makes certain things clear:

- The only injury claim alleged by the Magnet Plaintiffs is the purchase of a recalled toy, and the only relief they seek is "reimbursement for the amounts paid for the recalled toy."

- The Magnet Plaintiffs assert no alleged injury based on "exposure" to the toys.

- The Magnet Plaintiffs are not included in Plaintiffs' Chart as asserting claims for either negligence or strict liability.

- The only injury claims alleged by the Lead Recall Plaintiffs and the Cuff Plaintiffs are the purchase of a recalled toy and "exposure" to

---

[1] Defendants stand by all of the arguments in their prior briefing regarding the Motion to Dismiss and will not repeat those arguments here.

LAI-2978764v1

lead, which Plaintiffs defined at the September 8 hearing as no more than being "proximate or near the toy." Tr. at 13.

- Both the Lead Recall and Cuff Plaintiffs seek fundamentally three types of relief: (i) "reimbursement" for the amount paid for the toy; (ii) "the costs of initial diagnostic testing;" and (iii) undefined "treatment" costs for "those class members who screen positive for blood-lead levels."

- Although it is not specified in the prayer for relief or in any count of the complaint, Plaintiffs' Chart now indicates that Plaintiffs seek to obtain an injunction to "stop sale of blood pressure cuff."

Plaintiffs' Chart thus brings into sharp focus the core questions with respect to injury:

1. Does a Plaintiff who purchased a toy product that was recalled suffer any economic loss or injury when the alleged defect in the toy has not manifested itself and, under the terms of the recall, the Plaintiff is entitled to a replacement toy of equivalent value?

2. Is an allegation of "exposure" to lead, without more, by the Lead Recall and the Cuff Plaintiffs sufficient to plead an injury-in-fact and satisfy the injury element of any of the causes of action asserted in Plaintiffs' Second Consolidated Amended Complaint?

Defendants submit that the answer to both questions is plainly "no."

## I. PLAINTIFFS' PURCHASE OF RECALLED TOYS DOES NOT CONSTITUTE AN INJURY

The sole rationale provided in Plaintiffs' Chart for Plaintiffs' standing is the fact that "plaintiffs purchased recalled toys." In addition, although they say it in slightly different ways, Plaintiffs assert that their injury is the purchase of allegedly defective products. But with the exception of "exposure" to lead addressed below, nowhere in either Plaintiffs' Chart or their Complaint is there any allegation that the supposed defects manifested themselves in any way. There is no allegation by any Magnet Plaintiff that magnets in toys they purchased actually came loose. No Lead Recall or Cuff Plaintiff alleges that they – or any of their children – actually ingested or absorbed any lead, let alone that they experienced any elevated blood-lead level attributed to a Mattel toy. But without such allegations, Plaintiffs cannot state a claim for relief.

As one court summarized it:

LAI-2978764v1

- 2 -

> 'While the sale of a defective product creates a potential for liability, the law grants no cause of action for inchoate wrongs. However egregious the legal fault, there is no cause of action for negligence or products liability until there is actual loss or damage resulting to the interests of another.' . . . The same principle applies to claims for breach of the implied warranty of merchantability. . . . An important and related rule is that the absence of a manifested defect precludes a cognizable claim.

*In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 805 (E.D. La. 1998) (citations omitted). *See also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law."); *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) ("Courts have been particularly vigilant in requiring allegations of injury or damages in products liability cases."); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99-100 (S.D.N.Y. 1997); *Yost v. General Motors Corp.*, 651 F. Supp. 656, 657 (D.N.J. 1986). These principles apply fully here. Plaintiffs' Chart demonstrates on its face that Plaintiffs have no injury, but instead complain of alleged defects without showing that those alleged defects have had any effect on them. For example, in the "injury" column entry for Count I and the Lead and Cuff Plaintiffs, Plaintiffs state: "The recalled toys did not conform to Defendants' representations and promises of safety because the toys contained lead, making them unsafe for children, not age appropriate, and defective." But even assuming the truth of that assertion, that is not an injury to a plaintiff that has come before the Court; that is a condition from which some person *might* be injured. Because Plaintiffs fail to allege any manifestation of claimed defects in recalled toys they purchased – or any consequence caused by the alleged defects – they fail to state a cognizable claim.[2]

In addition, Plaintiffs have no injury – and cannot allege one – because they have not suffered any actual economic loss. The Magnet, Lead and Cuff Plaintiffs

---

[2] The same is true with respect to Plaintiffs' claims under California statutes. To state a claim under those statutes, a plaintiff must allege an actual injury. For example, under the UCL, to bring a claim, a plaintiff must have "suffered injury in fact and … lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

LAI-2978764v1

- 3 -

all seek the same relief – a refund of the purchase price of the toys. Plaintiffs' claim for a refund fails because, in the face of the recalls, including the voluntary replacement offered for the cuffs, Plaintiffs do not state a present, compensable injury. Plaintiffs cannot dispute that they received (or were entitled to receive) the full value of their toys through the recall procedures and the nationwide replacement of the cuff. As a result, they have no economic injury because the recalls keep them economically whole. *See O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110, 1116 n.7 (D. Minn. 2008) ("The Court further notes that the 'defect' in the [plaintiffs'] crib is one of their own making. [Defendant] has made a Retrofit Kit available to them, but they have opted not to install it."). Because Defendants have made replacement magnet, lead and cuff toys available, the Magnet, Lead and Cuff Plaintiffs have suffered no economic injury and, for this independent reason, their claims for "reimbursement" of the purchase price should be dismissed.[3]

## II. PLAINTIFFS' ALLEGATION OF "EXPOSURE TO LEAD" IS NOT SUFFICIENT TO ALLEGE THE INJURY REQUIRED TO STATE A CLAIM FOR DAMAGES

Plaintiffs' Chart goes claim by claim and includes columns for, *inter alia*, "Injury," "Relief Sought," and "Citations to Complaint." The injury column of Plaintiffs' Chart is telling, because for both Lead Recall and Cuff Plaintiffs it includes only the bare allegation that "Plaintiffs were exposed to lead" (*see, e.g.,* Counts 3, 4, 5). The "Citations to Complaint" column contains references to paragraphs of the Complaint, but none of the cited paragraphs alleges anything *about the specific named Plaintiffs* other than that the Plaintiff "has been injured due to her children's increased exposure to lead." *See, e.g.*, ¶¶ 16-32. Plaintiffs claim "exposure" or "proximity" to the toys and nothing more.

---

[3] Plaintiffs' claims for "reimbursement" of the purchase price of the recalled toys also should be dismissed because they are barred by conflict preemption, which has been fully addressed in separate briefing. Should the Court rule that these claims are preempted, then all of Plaintiffs' claims for reimbursement – *i.e.*, refund – of the purchase price of those toys should be dismissed on that independent ground, as well.

Thus, while Plaintiffs reference their generalized allegations about the possible health consequences from lead (*see* ¶¶ 45-49) and the alleged need for screening to determine blood lead levels (*see* ¶¶ 148-53), they nowhere make any allegation that any child of any Plaintiff actually ingested any lead from a Mattel toy. They nowhere allege that any "exposure" has resulted in any actual consequence. They make no allegation that connects the named Plaintiffs' children to any of the effects they say *can* result from lead. The Complaint does not allege that any child of a Plaintiff had an elevated blood lead level, much less that such condition was the result of some actual, measurable ingestion of lead from Mattel toys. In other words, Plaintiffs' Chart reinforces the reality that, in their Complaint, the most that Plaintiffs allege is that their claimed "exposure" to these toys raises the *possibility* of injury. That does not state a claim.

And Plaintiffs have not provided any authority or decision holding that alleging mere "exposure" to a toxic substance is sufficient to state a claim for damages. To be sure, in their Opposition to the Motion to Dismiss, Plaintiffs cited to several decisions for the proposition that exposure to a toxic substance or the threat of injury can be sufficient to satisfy Article III standing requirements in the context of actions challenging government plans or programs and seeking declaratory or injunctive relief. *See* Plaintiffs' Opp. at 20-21. Defendants do not dispute those cases or that abstract proposition. But Plaintiffs' cases are simply inapposite to the question of the injury required to state a claim for damages under the tort or statutory causes of action asserted in the Complaint.[4]

---

[4] Plaintiffs cite a single decision stating that a plaintiff exposed to asbestos has standing to seek damages. *See Carlough v. Amchem Prods., Inc.*, 834 F. Supp. 1437 (E.D. Pa. 1993). In that decision the District Court was addressing a proposed class action settlement of asbestos claims. Of course, that settlement resulted in the Supreme Court's landmark decision in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997), in which the settlement was rejected. In *Amchem*, the Supreme Court declined to reach the standing issue. *See* 521 U.S. at 612-13.

LAI-2978764v1

- 5 -

1    Mere "exposure" to a substance is simply not enough to sustain a cause of
2  action for damages. *See Schweitzer v. Consol. Rail Corp.*, 758 F.2d 936, 942 (3d
3  Cir. 1985) (holding that "subclinical injury resulting from exposure to asbestos is
4  insufficient to constitute the actual loss or damage to a plaintiff's interest required
5  to sustain a cause of action under generally applicable principles of tort law").
6  Similarly, in *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970 (Utah 1993), one
7  of the cases Plaintiffs cited in the principal briefing, the court confirmed that
8  "[m]ere exposure to an allegedly harmful substance, however, is not enough for
9  recovery." 858 P.2d at 978. The Utah Supreme Court went on to set forth the
10 requirements for a plaintiff in that state to obtain medical monitoring relief. In
11 doing so, it characterized the necessary exposure to be "ingesting, inhaling,
12 injecting or otherwise absorbing the substance in question into the body … [in]
13 sufficient intensity and/or duration to increase … [the] risk of anticipated harm
14 significantly over the plaintiff's risk prior to exposure." 858 P.2d at 979. While
15 there is far from uniform acceptance of the medical monitoring theory, requiring
16 such a showing just makes sense. Anything less permits claims to go forward
17 based upon theoretical possibilities and speculation.[5]
18   As the Supreme Court recognized in its landmark *Twombly* decision,
19 "[f]actual allegations must be enough to raise a right to relief above the speculative
20 level …." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929
21 (2007). Rejecting the "no set of facts" approach spawned by *Conley v. Gibson*, 355
22 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957), the Court held that a plaintiff must plead
23 enough facts to move their prospect of recovery from possibility to plausibility.
24 *Twombly*, 127 S. Ct. at 1966-68. The Lead and Cuff Plaintiffs do not satisfy this

---

[5] Although Plaintiffs relied upon *Hansen* and other medical monitoring cases in their Opposition (*see* Opp. at 22), Plaintiffs' Chart makes clear that Plaintiffs are not seeking such relief.

LAI-2978764v1

- 6 -

1  requirement by merely alleging "exposure," which Plaintiffs' counsel indicated at
2  the hearing means simply being "proximate or near to the toy."  Tr. at 13.
3        In their Complaint, Plaintiffs allege two things.  First, they allege that their
4  children were injured by "increased exposure to lead."  Compl. ¶¶ 16-32.  Second,
5  they make abstract allegations about the "dangers of lead exposure to young
6  children."  Compl. ¶¶ 45-48.  But nowhere do they make any allegations that
7  connect the dots.  Nowhere do they allege the lead in paint on certain parts of some
8  of the Mattel toys resulted in any actual ingestion of lead, let alone that their alleged
9  "exposure" produced a measurable increase in blood lead level.  Moreover,
10 Plaintiffs' apparent position that "exposure" to even minute levels of lead is
11 sufficient to warrant a cause of action is simply wrong.  *See Koronthaly v. L'Oreal*
12 *USA, Inc.*, No. 07-CV-5588 (DMC), 2008 WL 2938045 (D.N.J. July 29, 2008)
13 (dismissing claims brought by plaintiff who purchased lipstick containing lead for
14 lack of injury-in-fact).
15       Indeed, Plaintiffs' position is belied by the policy statement published by the
16 Consumer Product Safety Commission ("CPSC") to provide guidance to
17 manufacturers and others on lead in consumer products.  In that statement, the
18 CPSC noted that the "scientific community generally recognizes a level of 10
19 micrograms of lead per deciliter of blood as a threshold level of concern," and
20 stated that, "[t]o avoid exceeding that level, young children should not *chronically*
21 ingest more than 15 micrograms of lead per day from consumer products."  16
22 C.F.R. § 1500.230(b) (emphasis added).  The 10 mg threshold is a measure of long
23 term accumulation from repeated ingestion.
24       There is no dispute that Mattel recalled certain toys because the paint on
25 certain parts of some of those toys exceeded the CPSC standard for lead content.
26 *See* 16 C.F.R. § 1303 (banning paint with more than 0.06% lead content).  But that
27 fact does not translate automatically to injury.  That fact also says nothing about
28

LAI-2978764v1

- 7 -

what lead – if any – could actually be ingested or absorbed by chronic "exposure" to those toys.

Plaintiffs' allegation of mere exposure – of "proximity" to toys – is nothing more than a speculative assertion of *possible* injury. Without more, Plaintiffs' allegations fail to "nudge[] their claims across the line from conceivable to plausible" as required by *Twombly*. 127 S. Ct. at 1974. Plaintiffs' Chart refers to many paragraphs of the Complaint, but not one of those paragraphs alleges that any Plaintiff's child has actually ingested any lead from the toys, let alone suffered any increase in blood lead level or other symptoms or injury. Plaintiffs have not pleaded the required injury and their claims must, therefore, be dismissed.[6]

### III. PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF AS TO THE CUFF DOES NOT SAVE THEIR CLAIMS

Plaintiffs' Chart describes Plaintiffs' only injunction claim as seeking to "stop sale of [the] blood pressure cuff." Plaintiffs do not seek injunctive relief regarding magnets, nor do they seek an injunction regarding any of the toys purchased by the Lead Recall Plaintiffs. As a result, although the relief sought regarding such an injunction is identified in Plaintiffs' Chart as on behalf of "All Plaintiffs," it is clear that neither the Magnet Plaintiffs nor the Lead Plaintiffs have standing for such an injunction. For example, under the UCL, to bring a claim, a plaintiff must have "suffered injury in fact and … lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Similarly, under the CLRA, injunctive relief, like other relief under the statute, may only be obtained by

---

[6] Because Plaintiffs have not sustained any actual injury, they have no right to seek punitive damages, which are not requested in the Complaint. The Supreme Court has made clear that one of the three guideposts used to determine the constitutionality of a punitive damage award is the relationship between the harm or potential harm suffered and the punitive damage award. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 134 L.Ed.2d 809 (1996). The "measure of punishment [must be] both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426, 123 S. Ct. 1513, 155 L.Ed.2d 585 (2003). An award of punitive damages in this case cannot stand alone and would be contrary to *Gore* and *State Farm*.

LAI-2978764v1

a consumer "who suffers any damage …." Cal. Civ. Code § 1780; *see also* Song-Beverly, Cal. Civ. Code § 1794 (only buyers of consumer goods who are damaged are entitled to seek injunctive relief). Magnet and Lead Recall Plaintiffs who never purchased the cuff plainly cannot have been injured by the sale of the cuff.[7]

Even as to the Cuff Plaintiffs, the Complaint does not contain allegations supporting the injunctive relief identified in Plaintiffs' Chart. First, for the reasons discussed in section I, above, the Cuff Plaintiffs have suffered no injury or damages. As a result, like the Magnet and Lead Recall Plaintiffs, the Cuff Plaintiffs lack a basis to invoke any of the California statutes to seek injunctive relief.[8]

More fundamentally, to obtain any injunction, the Cuff Plaintiffs must plead and show irreparable injury or lack of an adequate remedy at law. *See, e.g., Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 72 L.Ed.2d 91 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."); *United States v. White*, 893 F. Supp. 1423, 1430 (C.D. Cal 1995) ("To obtain the equitable remedy of an injunction, whether preliminary or permanent, the moving party must establish irreparable injury and inadequate legal remedies."). Even assuming that Plaintiffs had alleged a defect in the cuff and actual, measurable effects on their children from that defect, which they have not, the Complaint makes no attempt at explaining how damages would not be an adequate remedy at law. *See* Compl. ¶¶ 168, 171, prayer for relief. As a result, the Complaint does not contain allegations that would support injunctive relief.

---

[7] Other than Nicole White, there is no overlap of plaintiffs within the three categories of toys. White is both a Lead Recall Plaintiff and a Cuff Plaintiff.

[8] In addition, no Cuff Plaintiff asserts claims in Counts VII, IX or XI, each of which is brought solely by California resident plaintiffs. As a result, even if the Cuff Plaintiffs had sustained an injury (which they did not), there would be no basis for the claims asserted by other Plaintiffs in those counts. As to the Cuff Plaintiffs themselves, neither of them are California residents, and for this additional reason addressed in Defendants' principal briefing, they are not entitled to rely on the California statutes. *See* Section VII of Defendants' Opening Brief.

## **CONCLUSION**

The Magnet Plaintiffs now concede they have no claim for "exposure" to the magnets, leaving them only with claims for a refund of the purchase price. The Magnet Plaintiffs – like the Lead Recall and Cuff Plaintiffs – failed to allege any facts connecting alleged defects in Mattel's toys with any alleged manifestation of the defect or any effects on their children from those toys. In the absence of such allegations, Plaintiffs have failed to allege injury from the purchase of an allegedly defective toy. Moreover, not only are the claims for a refund by the Magnet and Lead Recall Plaintiffs preempted, the recalls of the magnet and lead toys, as well as the replacement of the cuff toys, means that Plaintiffs suffered no economic injury in any event. Finally, the Lead Recall and Cuff Plaintiffs' additional claims of injury from the mere "exposure" to the lead and cuff toys fail to allege any effect on Plaintiffs' children that would constitute an injury and does not make their right of recovery plausible rather than merely possible. For these reasons, all of Plaintiffs' claims should be dismissed.

Dated:  October 6, 2008

JONES DAY

By:   s/ Rick L. Shackelford
Elwood Lui
Rick L. Shackelford
555 South Flower Street, 50th FL
Los Angeles, CA   90071
Telephone:   (213) 489-3939
Facsimile:   (213) 243-2539

Thomas E. Fennell
Michael Rice
JONES DAY
2727 North Harwood Street
Dallas, TX   75201
Telephone:   (214) 220-3939
Facsimile:   (214) 969-5100

Hugh R. Whiting
JONES DAY
717 Texas, Suite 3300
Houston, TX   77002
Telephone:   (832) 239-3939
Facsimile:   (832) 239-3600

Attorneys for Defendants
MATTEL, INC., FISHER-PRICE, INC., TARGET CORPORATION, TOYS "R" US, INC., KB TOYS, INC., AND KMART CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 6, 2008

                s/ Rick L. Shackelford
                Rick L. Shackelford

                JONES DAY
                555 S. Flower St., 50th Flr.
                Los Angeles, CA  90071
                Telephone: 213/489-3939
                Facsimile: 213/243-2539

                E-mail:  rlshackelford@jonesday.com

LAI-2978764v1