UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | ML 07-1897 DSF (AJWx) | Date | 11/24/08 |
|---|---|---|---|
| Title | In re Mattel, Inc. Toy Lead Paint Products Liability Litigation | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (In Chambers) GRANTING IN PART and DENYING IN PART Defendants' Motions to Dismiss (Docket Nos. 70 and 71)

Before the Court are Defendants' motions to dismiss the second amended consolidated class action complaint ("SAC").[1] For the reasons given below, the motion is GRANTED IN PART and DENIED IN PART.

I.   BACKGROUND

Plaintiffs are consumers who bring a multi-district class action complaint against Defendants, who are manufacturers and retailers of children's toys. Plaintiffs allege that the Manufacturer Defendants[2] produced and the Retailer Defendants[3] sold certain toys that were defective and unsafe, and made actionable representations about the quality of the products. Three types of toys are involved: toys that were produced with allegedly unsafe levels of lead paint, toys that included small, swallowable magnets that allegedly pose a hazard to children, and a specific toy blood pressure cuff that allegedly contains

---

[1] Defendant Wal-Mart Stores, Inc. has filed a motion to dismiss and all other defendants filed a separate motion to dismiss. This order resolves both motions.

[2] The Manufacturer Defendants are Mattel, Inc. and Fisher-Price, Inc.

[3] The Retailer Defendants are Target Corp., Toys "R" Us, Inc., Wal-Mart Stores, Inc., KB Toys, Inc., and Kmart Corp.

high levels of lead, but is not specifically alleged to contain lead paint. The lead paint toys and magnet toys were subject to recalls ordered by the Consumer Product Safety Commission ("CPSC") in which the Manufacturer Defendants provided replacement toys. Plaintiffs allege that Defendants' actions constitute the torts of strict liability and negligence, are breaches of express and implied warrantees, and violate the federal Consumer Protection Safety Act ("CPSA"), the California Consumers Legal Remedies Act ("CLRA"), California unfair competition law, and the Song-Beverly Consumer Warranty Act.

## II.   LEGAL STANDARD

A motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks and citation omitted; alteration in original). But the Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

The plaintiff bears the burden of pleading sufficient facts to state a claim. Courts will not supply essential elements of a claim that are not initially pled. Richards v. Harper, 864 F.2d 85, 88 (9th Cir. 1988). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson, 127 S. Ct. at 2200. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (internal citations omitted). Dismissal is proper if a complaint is vague, conclusory, general, or fails to set forth any material facts in support of the allegations. See N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 583 (9th Cir. 1983).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

### III.  DISCUSSION

#### A.  A Voluntary Product Replacement Pursuant to Consumer Product Safety Commission Regulations Does Not Bar a State Law Refund Remedy

Under CPSC regulations, a company may submit a voluntary "corrective action plan" to correct an alleged violation of the consumer product safety laws.

> A corrective action plan is a document, signed by a subject firm, which sets forth the remedial action which the firm will voluntarily undertake to protect the public, but which has no legally binding effect. The Commission reserves the right to seek broader corrective action if it becomes aware of new facts or if the corrective action plan does not sufficiently protect the public.

16 C.F.R. § 1115.20(a).

Defendants argue that a voluntary product replacement pursuant to a 16 C.F.R. § 1115.20 corrective action plan preempts state law remedies seeking reimbursement for an allegedly hazardous product. Conflict preemption applies where it is "impossible for a private party to comply with both state and federal requirements" or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Sprietsma v. Mercury Marine, 537 U.S. 51, 65 (2002); Geier v. Am. Honda Motor Co., 529 U.S. 861, 873 (2000).

The CPSC regulations at issue explicitly state that actions taken in a voluntary corrective action plan have "no legally binding effect," and that the CPSC "reserves the right to seek broader corrective action." 16 C.F.R. § 1115.20(a). There appears to be little incentive for the CPSC to reject a corrective action plan – the CPSC is not barred from seeking greater remedies at a later date. As such, Defendants' preemption argument would essentially allow them to choose their own remedy to a CPSA violation with no guarantee for input from harmed parties, see 16 C.F.R. § 1115.20(a)(4), and little incentive on the part of the CPSC to ensure that the proposed remedy was completely adequate. Under the explicit terms of the relevant regulations, the CPSC has the right to seek additional remedies beyond those voluntarily provided if it believes that the voluntary plan did not provide an adequate remedy for the problem. Given this, the Court can see little justification in denying additional remedies to the purchasers of the product at issue if they can prove that the voluntary remedy offered by the defendant was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

inadequate.[4]

    The voluntary regulatory scheme stands in contrast to the former statutory scheme enacted by Congress that allowed a company to elect remedies on a finding that its product constituted a "substantial product hazard." See 15 U.S.C. § 2064(d) (2007).[5] Under this regime, the company was able to choose its remedy, but this choice came with a price – a formal finding by the CPSC that the product at issue was hazardous. The voluntary regulatory scheme was designed to correct potential product hazards quickly and to save CPSC resources. See 43 Fed. Reg. 34996 (1978). And, on their face, the regulations contemplate that the voluntary remedy may not be completely sufficient. It is true that exposure to a state law replacement remedy may make a company less likely to participate in the voluntary program than if the company were shielded from such remedies, but there is nothing in the regulations that suggests that the CPSC ever considered the proper weighting of such incentives. Cf. Geier, 529 U.S. at 874-75 (regulations indicated that agency had "deliberately provided" manufacturers with choice in order to encourage technical experimentation). While there are advantages to restricting alternative recall remedies when a voluntary recall has taken place, there are also advantages to allowing alternative recall remedies – i.e., greater available remedies would encourage companies to take greater care in avoiding the production of hazardous products in the first place. Given that the regulatory record does not indicate a clear preference for a bar against a state law replacement remedy, the Court cannot say that allowing a replacement remedy in this case "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the CPSC voluntary recall regulations.

    **B.**    **Plaintiffs Have Properly Alleged Injury**

    Defendants argue that Plaintiffs have not properly alleged injury under the statutes

---

[4] In considering recent amendments to the CPSA, Congress pointed out the potential limitations of a repair or replacement remedy and recognized that in certain situations refund may be the only appropriate remedy. See H.R. Rep. No. 110-501 at 36 (2007).

[5] The statute has been recently amended to remove the election language. See 15 U.S.C. § 2064(d)(2008). This amendment – and many others to the CPSA – were partially in response to the events at issue in this lawsuit. See H.R. Rep. No. 110-501 at 18-21 (2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

and common law causes of action.[6] Contrary to Defendants' arguments with regard to the lead paint and toy blood pressure cuff plaintiffs,[7] recovery for future medical monitoring is allowed under California law. <u>Miranda v. Shell Oil Co.</u>, 17 Cal. App. 4th 1651, 1655-60 (1993). <u>Miranda</u> sets out several factors to be considered when deciding if medical monitoring damages are appropriate in a given case. <u>See</u> 17 Cal. App. 4th at 1657-58. Defendants did not argue the <u>Miranda</u> factors, but the Court notes that several of the factors are addressed by allegations in the SAC, including the toxicity of the chemicals, (SAC ¶¶ 150-52), the seriousness of diseases caused by exposure, (SAC ¶ 151), and the clinical value of early detection and diagnosis, (SAC ¶¶ 149-52).

Defendants' argument that Plaintiffs have not alleged that any children actually ingested lead begs the question. The main point of the medical monitoring claim is that no one knows whether the children in question actually ingested the lead – that is what the monitoring is for. Plaintiffs were injured through (potential) exposure to lead that required them to seek out the medical monitoring. Defendants' argument might be more persuasive in the context of adult exposure, but in the context of children who cannot reasonably be expected to state reliably whether they ingested the lead paint, there is no obvious way to know whether the exposure was actual or only "potential" without at least the initial testing that Plaintiffs seek.

Plaintiffs also properly allege damages for the purchase price of the toys that allegedly were defective and not fit for their represented use. Plaintiffs' claim is straightforward – they allege that they purchased toys that were unsafe and unusable and should get their money back. Defendants' argument that some Plaintiffs have not been injured because they received replacement toys in the voluntary recalls is unpersuasive.[8] While the replacement program is relevant to the preemption discussion above, unilateral offering of a remedy by a defendant does not change the fact that a plaintiff has been injured. The Court knows of no authority for the proposition that a defendant can defeat a plaintiff's claim on standing grounds through the unilateral offering of a remedy of the

---

[6] This issue is addressed by the parties both as an Article III standing issue, and as an element of the individual claims.

[7] The magnet plaintiffs do not seek medical monitoring damages.

[8] Defendants also argue, in passing, that the complaint does not allege that the toys were defective. (<u>See</u> Mattel Reply at 14.) Given the extensive allegations in the complaint concerning government-ordered safety recalls for all of the accused products, the Court finds ample pleading of the defectiveness of the toys.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

defendant's choosing.

### C. The Magnet and Cuff Plaintiffs Have Not Properly Alleged Violations of the CPSA

The CPSA provides that "[a]ny person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order . . . ." 15 U.S.C. § 2072(a). Plaintiffs have not alleged a violation of any consumer product safety rule promulgated by the CPSC or other act of the CPSC with respect to the magnet toys or the toy blood pressure cuffs. Contrary to the allegation in the complaint, 16 C.F.R. § 1500.18(a)(2) is not applicable to the magnets because the regulation, on its face, only applies to "noisemaking components or attachments." See id. 16 C.F.R. § 1303 only applies to "lead-containing paint," not to lead content in general. See 16 C.F.R. § 1303.1. There is no allegation that the toy blood pressure cuffs "bear lead-containing paint," only that they are high in lead content. (See SAC ¶¶ 132-43.) Plaintiffs' attempt to rely on a section of the Federal Hazardous Substance Act, 15 U.S.C. § 1261(q)(1), to challenge the cuffs is unavailing because the act is not a "consumer product safety rule" or "other order of the Commission." Plaintiffs' failure to identify a consumer product safety rule or order of the CPSC is fatal as there is no private right of action under the CPSA itself absent a specific rule promulgated by the CPSC.[9] See In re All Terrain Vehicle Litig., 979 F.2d 755, 756-57 (9th Cir. 1992).[10]

### D. Plaintiffs' Claims Do Not Sound In Fraud and Need Not Be Pleaded With Particularity

Defendants argue that Plaintiffs' claims "sound in fraud" and therefore must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b), which

---

[9] In a footnote to their "Supplemental Response per Court's September 8, 2008 Order," Plaintiffs state that the "magnets are regulated by 16 C.F.R. § 1500.18(a)(3)." This regulation is not alleged in the complaint, nor was it mentioned in any of the original briefing on this motion. As such, the Court declines to consider the potential application of 16 C.F.R. § 1500.18(a)(3) to the magnet toys.

[10] Although the Court does not reach the issue because Plaintiffs have not pleaded an FHSA cause of action, other courts have found that there is no private right of action under the FHSA. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word "fraud" is not used)." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003). The complaint neither specifically alleges fraud nor alleges facts that necessarily constitute fraud. Plaintiffs do allege that Defendants "engaged in 'fraudulent' business acts or practices" under California Business and Professions Code § 17200, (SAC ¶¶ 235, 248), but "fraudulent" under section 17200 is not the same as common law fraud – as section 17200 does not require a plaintiff to plead all of the elements of fraud. See Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal. 3d 197, 211 (1983).[11] Vess does not compel a contrary result. In Vess, the plaintiffs based their section 17200 claim on fraudulent scheme. See Vess, 317 F.3d at 1101. Here, Plaintiffs merely allege that the representations were likely to deceive and that Plaintiffs were damaged by the deception; they make no effort to allege common law fraud elements such as intent to deceive or any overarching fraudulent scheme to defraud the individual Plaintiffs or the public.[12]

### E.  Plaintiffs Have Stated a Negligence Claim Against the Retailers

The Retailer Defendants argue that the negligence claim against them should be dismissed because they do not have a duty to inspect for latent defects. A retailer has a duty to inspect a product if it knows or has reason to know that the product might be dangerous. Restatement (Second) of Torts § 402. The complaint alleges that the Retailers knew or had reason to know that the toys that are the basis of this suit were defective by virtue of several recalls of toys from China made with lead paint, (SAC ¶¶ 100-102), reports from the CPSC about harm from small magnets, and a 2006 recall of

---

[11] Proposition 64 has added the requirement that the plaintiff in a section 17200 case "has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code § 17204. This language may require a plaintiff to plead both damages and reliance, but there is no indication that a section 17200 plaintiff has to plead knowledge of falsity or intent to defraud.

[12] Defendants also argue that the alleged misrepresentations in the complaint are not actionable as a matter of law. However, Defendants' argument relies on their characterization of Plaintiffs' complaint as one for fraud – a characterization the Court rejects. While some or all of the statements may eventually fail to provide grounds for section 17200 liability, the parties do not directly address this issue and the Court declines to do so at this stage of the proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Mattel magnet toys under similar circumstances, (SAC ¶¶ 97-98). The Retailers are alleged to have reason to know of the dangerousness of the toy blood pressure cuff due to a report from Consumer Reports, the products removal from the shelves in Illinois, and a letter from members of Congress. (SAC ¶¶ 132-38.)

Though Plaintiffs may not uncover facts sufficient to allow them to prevail on this claim, the Court finds that they have met the rather minimal pleading standard.

### F. Non-California Plaintiffs May State a Claim Under California State Laws Against Mattel and Fisher-Price

Mattel and Fisher-Price contend that the non-California Plaintiffs may not assert claims under section 17200 and the CLRA against them. But "state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California." Norwest Mortgage, Inc. v. Superior Ct., 72 Cal. App. 4th 214, 224-25 (1999).[13] Plaintiffs have adequately alleged that Mattel and Fisher-Price's conduct occurred, if at all, in – or had strong connections to – California. Cf. Sullivan v. Oracle Corp., ___ F.3d.___, 2008 DJDAR 16630, 16635 (9th Cir. Nov. 6, 2008) (Section 17200 does not apply to claims of nonresidents of California complaining of conduct that took place outside of California). Plaintiffs complain of misrepresentations made in reports, company statements, and advertising that are reasonably likely to have come from or been approved by Mattel corporate headquarters in California. (See SAC ¶¶ 53-68.) The connections between Fisher-Price and California are weaker, but the complaint does allege that "many of [Fisher-Price's] executives, including its Vice President of Consumer Products, are located in California." (SAC ¶ 232.) While these connections may, after a more thorough development of the facts, prove to be specious or irrelevant, the Court finds that the alleged California connections are sufficient to state claims by non-California plaintiffs.

### G. Defendants Have Not Established That Plaintiffs Did Not Provide

---

[13] Defendants' moving papers implied that they were making a choice of law argument, which Plaintiffs correctly note requires Defendants to demonstrate that use of California law would be incompatible with other laws that may apply. See Phillips Petroleum Corp. v. Shutts, 472 U.S. 797, 816 (1985) ("We must first determine whether Kansas law conflicts in any material way with any other law which could apply. There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit."). The Court interprets Defendants' reply as clarifying that Mattel and Fisher-Price's argument is focused on California's interpretation of the breadth of its statutes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**Adequate CLRA Notice**

Under the CLRA, a plaintiff must provide notice that he is anticipating a suit for damages 30 days before filing such suit. Cal. Civ. Code § 1782(a). A plaintiff may alternatively file suit for injunctive relief without notice, give notice of intent to amend the claims to add a claim for damages, and amend thirty days after the notice. Cal. Civ. Code § 1782(d). The complaint alleges that adequate notice was given. (See SAC ¶¶ 262-63, 273-74.) From the materials presented by the parties, it is unclear whether adequate notice was given. The Court does not agree that the first amended consolidated class action complaint ("FAC") demands damages under the CLRA. The FAC demands restitution and disgorgement, (see FAC ¶¶ 239, 248), which do not appear to be "damages" for the purposes of the CLRA. See Cal. Civ. Code § 1780 (allowing "actual damages," "punitive damages," and "restitution" as remedies under the CLRA).[14] As Defendants have not demonstrated that Plaintiffs did not provide proper CLRA notice, the Court does not strike the CLRA damages claims from the complaint.[15]

**H.     The Court Denies Wal-Mart's Requested Stay**

Wal-Mart argues that the Court should abstain from deciding Plaintiffs' section 17200 claims for injunctive relief in light of a currently pending action by the California Attorney General for similar relief.

A federal court may stay or dismiss its proceedings where a parallel state action is pending for reasons of "[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). However, a court should only abstain from exercising its jurisdiction in "exceptional circumstances." Nakash v. Marciano, 882 F.2d 1411, 1415 (9th Cir. 1989).

The first step in the Colorado River analysis is to determine whether the state and

---

[14] Defendants also incorrectly assert that the Luttenberger complaint filed on August 23, 2007, alleged damages under the CLRA. The complaint does allege damages, but not specifically pursuant to the CLRA.

[15] Wal-Mart appears to take the position that referencing a CLRA notice letter in an initial complaint filed less than 30 days after the notice letter was sent requires dismissal of the CLRA damages claim in a later complaint even if the initial complaint itself did not demand CLRA damages. This position has no support in the statute.

federal actions are "substantially similar." Id. at 1416. "Exact parallelism" is not required. Id. Even if the actions meet this test, the requested relief must be denied if, despite the similarity of the claims, there is substantial doubt that the state court proceeding "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Moses H. Cone Memorial Hospital v. Mercury Const. Corp., 460 U.S. 1, 28 (1983). "[T]he decision to invoke Colorado River necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." Id.

The Attorney General's case and this case are not substantially similar. Only one part of one cause of action is duplicated in the Attorney General's case. No one disputes that the Attorney General's case will not resolve all issues here, and the plaintiffs in the two cases are completely different. Even so, Wal-Mart requests a stay of one aspect of one claim – the request for injunctive relief under California Business and Professions Code § 17200. As all of the claims in this matter are based on essentially the same facts, it makes no sense to stay one aspect of a single claim that might be similar to the Attorney General's case because it will make no practical difference in how this matter is litigated. This is not an exceptional circumstance warranting a stay under Colorado River.

## IV.   CONCLUSION

For the reasons given above, the motions are GRANTED with regard to the CLRA claims for the magnet and blood pressure cuff plaintiffs. They are DENIED in all other respects.

IT IS SO ORDERED.