COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR. (141757)
RACHEL L. JENSEN (211456)
THOMAS J. O'REARDON II (247952)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
johns@csgrr.com
rachelj@csgrr.com
toreardon@csgrr.com

WHATLEY, DRAKE & KALLAS, LLC
JOE R. WHATLEY, JR.
EDITH M. KALLAS
ELIZABETH ROSENBERG
1540 Broadway, 37th Floor
New York, NY 10036
Telephone: 212/447-7070
212/447-7077 (fax)
jwhatley@wdklaw.com
ekallas@wdklaw.com
erosenberg@wdklaw.com

Co-Lead Counsel for Plaintiffs

JONES DAY
ELWOOD LUI (45538)
555 South Flower Street, Fiftieth floor
Los Angeles, CA 90071-2300
Telephone: 213/489-3939
213/243-2539 (fax)
elui@jonesday.com

Attorneys for Defendant

JONES DAY
HUGH R. WHITING
717 Texas, Suite 3300
Houston, TX 77002
Telephone: 832/239-3939
832/239-3600 (fax)
hrwhiting@jonesday.com

THOMAS E. FENNELL
MICHAEL L. RICE
2727 N. Harwood St.
Dallas, TX 75201
Telephone; 214/220-3939
214/969-5100 (fax)
tefennell@jonesday.com
mlrice@jonesday.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re MATTEL, INC., TOY LEAD PAINT PRODUCTS LIABILITY LITIGATION | No. 2:07-ml-01897-DSF-AJW |
| | STIPULATION OF CLASS ACTION SETTLEMENT |

## STIPULATION OF CLASS ACTION SETTLEMENT

This Stipulation of Class Action Settlement, including its attached Exhibits, is entered into by and among Plaintiffs, on behalf of themselves and on behalf of each of the Settlement Class Members, and Mattel, Inc., on behalf of itself, its subsidiaries and affiliates, all other Defendants, and all Released Parties. Capitalized terms used herein are defined in Section A herein or indicated in parentheses elsewhere in the Agreement. Subject to Court approval as required by applicable Federal Rules of Civil Procedure, and as provided herein, the Parties hereby stipulate and agree that, in consideration of the promises and covenants set forth in the Agreement and upon the entry by the Court of a Final Judgment and Order Approving Settlement and the occurrence of the Effective Date, the Action and all Constituent Actions shall be settled and compromised upon the terms and conditions contained herein.

WHEREAS, in 2006 and 2007, Mattel and/or its wholly-owned subsidiary, Fisher-Price, Inc., voluntarily recalled and/or acted to accept returns by consumers of Recalled Toys;

WHEREAS, following the announcement of the first of the Recalls in August 2007, Plaintiffs filed a number of putative class actions against Mattel and other Defendants arising out of Defendants' sale, manufacture, distribution, or marketing of the Recalled Toys in various federal and state courts alleging claims for damages and injunctive and declaratory relief;

WHEREAS, the ten cases filed in or removed to federal courts around the country were transferred to the Central District of California pursuant to the provisions of 28 U.S.C. §1407 and, together with twelve cases pending in the Central District of California, were coordinated in this multidistrict litigation styled as *In re Mattel, Inc., Toy Lead Paint Products Liability Litigation,* No. 2:07-ml-01897-DSF-AJW, MDL No. 1897 (C.D. Cal.);

WHEREAS, on May 16, 2008, Class Representatives filed a Second Consolidated Amended Complaint in the Action naming Mattel, Fisher-Price Inc., and

certain retailer entities (Target Corporation; Toys "R" Us, Inc.; Wal-Mart Stores, Inc.; KB Toys, Inc.; and K Mart Corporation) as Defendants;

WHEREAS, on June 24, 2008, Mattel and the other Defendants filed motions to dismiss the Complaint and, on November 25, 2008, following briefing and argument, the Court ruled on Defendants' motions to dismiss, granting and denying them in part;

WHEREAS, Plaintiffs are members of the proposed classes alleged in the Complaint and in the original complaints filed in the Constituent Actions, and include the Class Representatives of the Settlement Class;

WHEREAS, Defendants have denied and continue to deny Plaintiffs' allegations and claims in the Complaint and in the Constituent Actions, and have denied any wrongdoing or liability to Plaintiffs;

WHEREAS, on March 10, 2008, the Court appointed the firms of Coughlin Stoia Geller Rudman & Robbins, LLP and Whatley Drake & Kallas, LLC as Co-Lead Counsel for Plaintiffs and the proposed class;

WHEREAS, Co-Lead Counsel have conducted an examination and investigation of the facts and law relating to the matters set forth in the Complaint and have conducted pretrial discovery into the claims and defenses alleged in the Action, including deposition and document discovery, as well as interviewing witnesses and consulting experts;

WHEREAS, after the filing of the Constituent Actions, Mattel has adopted or agrees that it shall adopt procedures designed to comply with applicable U.S. federal laws, rules, regulations, or requirements relating to lead, lead paint or magnets, including any such rules and regulations adopted under the Consumer Product Safety Act (the "CPSA") and the Consumer Product Safety Improvement Act (the "CPSIA"), as well as other injunctive relief requested by Plaintiffs and provided for herein;

WHEREAS, after the filing of the Constituent Actions, Mattel also has adopted or agrees that it shall adopt procedures designed to comply with the consent

1  judgments into which it entered with State Attorneys General relating to lead and lead

2  paint;

3      WHEREAS, Plaintiffs filed claims against the retailers named as Defendants in

4  the Action that relate to their marketing and sale of Recalled Toys purchased from

5  Mattel;

6      WHEREAS, those retailers have been fully indemnified by Mattel with respect

7  to all claims asserted in the Action;

8      WHEREAS, in reaching the Agreement, the Parties have engaged in extensive,

9  arms-length negotiations and have mediated under the auspices of Hon. Daniel J.

10 Weinstein of JAMS (the "Mediator");

11     WHEREAS, Plaintiffs believe that the claims asserted in the Action have

12 substantial merit; however, taking into account the extensive burdens and expense of

13 litigation, including the risks and uncertainties associated with protracted trials and

14 appeals, as well as the fair, cost-effective and assured method of resolving the claims

15 of the Settlement Class, Plaintiffs' Counsel have concluded that the Agreement

16 provides substantial benefits to the Settlement Class, and is fair, reasonable, adequate,

17 and in the best interests of Plaintiffs and the Settlement Class;

18     WHEREAS, although Mattel and all other Defendants deny Plaintiffs'

19 allegations in the Complaint and in the original complaints filed in the Constituent

20 Actions, deny any wrongdoing of any kind, and believe that the Action and all of the

21 Constituent Actions are without merit, Mattel also has taken into account the

22 uncertainty, risk, and delay inherent in litigation and agreed to enter into the

23 Agreement to avoid further litigation expense and inconvenience, and to remove the

24 distraction of burdensome and protracted litigation;

25     WHEREAS, it is the intention and desire of the Plaintiffs and Mattel to

26 compromise, resolve, dismiss and release all allegations and claims for damages or

27 other relief relating to the Recalled Toys that are set forth in the Complaint and that

28 have been or could have been brought against any Defendants in the Action, in any

1   Constituent Action and in any action filed, litigation pending or claim pursued by any

2   Person or entity who is a member of the Settlement Class, except for individual claims

3   of personal injury; and

4       WHEREAS, the Parties have agreed that an appropriate resolution of this

5   controversy is accomplished through the benefits and releases set forth in the

6   Agreement, and, with the exception of individual personal injury claims, intend that

7   the Settlement resolves all claims and disputes arising out of, or relating to, the

8   Recalled Toys, including those between Plaintiffs, Settlement Class Members, and all

9   Defendants in the Action and the Constituent Actions, on the terms set forth in the

10  Agreement.

11      NOW, THEREFORE, the Agreement is entered into by and among the Parties,

12  by and through their respective counsel and representatives, and the Parties agree that:

13  (a) upon approval of the Court after the hearing(s) provided for in the Agreement, the

14  Action and all Constituent Actions shall be settled and compromised as between

15  Plaintiffs and the Settlement Class, and all Defendants; and (b) upon Court approval

16  of the Agreement, the [Proposed] Final Judgment and [Proposed] Order Approving

17  Settlement, substantially in the form attached as Exhibits G-H hereto, shall be entered

18  dismissing the Action and all Constituent Actions with prejudice and releasing all

19  Released Claims, as defined herein, against all Defendants and all Released Parties, all

20  on the following terms and conditions:

21  **A.    DEFINITIONS**

22      As used in the Agreement and the Exhibits hereto, in addition to any definitions

23  elsewhere in the Agreement, the following terms shall have the meanings set forth

24  herein:

25      1.    Action means this MDL proceeding, *In re Mattel, Inc., Toy Lead Paint*

26  *Products Liability Litigation*, No. 2:07-ml-01897-DSF-AJW, MDL No. 1897 (C.D.

27  Cal.).

28

2.     <u>Agreement</u> means this Stipulation of Class Action Settlement (including all Exhibits attached hereto).

3.     <u>Award</u> means the monetary relief obtained by Settlement Class Members pursuant to Sections D.2. and D.3. of this Agreement.

4.     <u>Attorneys' Fees and Expenses</u> means such funds as may be awarded by the Court to Co-Lead Counsel to compensate them and all other Plaintiffs' Counsel in this Action and the Constituent Actions for their fees and expenses in connection therewith, as described more particularly in Section I of this Agreement.

5.     <u>Claim</u> means a request for relief pursuant to Sections D.2. and/or D.3. of this Agreement submitted by a Settlement Class Member on a Claim Form filed with the Claims Administrator in accordance with the terms of the Agreement.

6.     <u>Claim Form</u> means the form to be used by Settlement Class Members for filing Claims with the Claims Administrator.  The proposed Claim Form is subject to Court approval and attached hereto as Exhibit E.

7.     <u>Claims Administration Expenses</u> means the expenses incurred by the Claims Administrator in administering the Notice Program and processing all Claims by Settlement Class Members.

8.     <u>Claims Administrator</u> means the Person identified by the Parties and approved by the Court to administer the Notice Program, to respond to inquiries from Settlement Class Members, and to oversee the processing and payment of Claims as set forth in the Agreement.

9.     <u>Claims Deadline</u> means the date by which all Claim Forms must be postmarked or received by the Claims Administrator to be considered timely.  The Claims Deadline shall be clearly set forth in the Court Orders granting preliminary and final approval of the Settlement, the Notices, on the Claims Administrator's dedicated website, and the front page of the Claim Form.

1    10.    <u>Class Notice or Notice</u> means the forms of notice to be disseminated to

2    Settlement Class Members informing them about the Settlement.  Copies of each of

3    the proposed Notices are attached respectively in the form of Exhibits B, C, and L.

4    11.    <u>Class Representatives</u> means the named plaintiffs in the Action listed on

5    Exhibit I.

6    12.    <u>Co-Lead Counsel</u> means the law firms of Coughlin Stoia Geller Rudman

7    & Robbins, LLP, and Whatley Drake & Kallas, LLC.

8    13.    <u>Complaint</u> means the Second Consolidated Amended Complaint filed by

9    those Plaintiffs who are Class Representatives in the Action on May 16, 2008.

10    14.    <u>Constituent Actions</u> means the twenty-two associated and/or related cases

11    pending in the Court as part of *In re Mattel, Inc., Toy Lead Paint Products Liability*

12    *Litigation*, No. 2:07-ml-01897-DSF-AJW, MDL No. 1897 (C.D. Cal.), including

13    those cases that were coordinated and consolidated before the Court by the Judicial

14    Panel on Multidistrict Litigation, all of which are listed on Exhibit K.

15    15.    <u>Covenant Not To Sue</u> is defined in Section H.1.a. herein.

16    16.    <u>Covered Product</u> means a finished "children's product" as defined in

17    Section 3(a) of the CPSA, 15 U.S.C. §2052(a)(16), and as amended by Section 235 of

18    the CPSIA that is manufactured by Mattel or for Mattel by a Vendor, and is sold or

19    offered for sale by Mattel in the United States on or after the Effective Date.

20    17.    <u>Court</u> means the United States District Court for the Central District of

21    California, the Honorable Dale S. Fischer presiding.

22    18.    <u>Defendants</u> means the Persons named as defendants in the Complaint, all

23    of which are listed on Exhibit J.

24    19.    <u>Effective Date</u> means either: (a) the date thirty-five (35) days after the

25    entry of the Final Judgment and Order Approving Settlement, if no timely motions for

26    reconsideration and/or no appeals or other efforts to obtain review have been filed; or

27    (b) in the event that an appeal or other effort to obtain review has been initiated, the

28    date thirty-five (35) days after such appeal or other review has been finally concluded

1  and is no longer subject to review, whether by appeal, petitions for rehearing, petitions

2  for rehearing en banc, petitions for writ of certiorari, or otherwise.  However, in the

3  event of an appeal or other effort to obtain review, the Parties may jointly agree in

4  writing to deem the Effective Date to have occurred in accordance with Section

5  A.19.(a) in the absence of a court order to the contrary.

6        20.    <u>Final Approval Hearing</u> means the hearing to be conducted by the Court

7  in connection with its determination of the fairness, adequacy and reasonableness of

8  the Settlement in accordance with applicable jurisprudence.

9        21.    <u>Final Judgment and Order Approving Settlement</u> means the Final

10  Judgment and Order Approving Settlement to be entered by the Court, substantially in

11  the form of Exhibits G-H and conforming to Section J herein, approving the

12  Settlement without material alteration, as fair, adequate and reasonable, confirming

13  the certification of the Settlement Class for purposes of the Settlement only, and

14  issuing such other findings and determinations as the Court and/or the Parties deem

15  necessary and appropriate to implement the Settlement.

16        22.    <u>Impermissible Lead</u> means lead in excess of the standards in effect on the

17  date Covered Products are sold by Mattel that have been established by the CPSIA or

18  promulgated by the Consumer Product Safety Commission ("CPSC") and that set the

19  maximum permissible levels of lead in Paint or Plastic Substrate (the "Federal Lead

20  Standards") as and to the extent "accessible" is defined by ASTM F 963-08 §§ 3.1.2

21  and 8.6 (hereinafter "Accessible").  In the event the CPSC establishes any exclusions

22  or exceptions to the application of the Federal Lead Standards, the exceptions or

23  exclusions apply thereafter for purposes of the Agreement.  The Federal Lead

24  Standards shall be deemed not to apply to electronic components or accessories.

25        23.    <u>Incentive Award</u> means the payment approved by the Court and made by

26  Mattel to compensate the Class Representatives for efforts undertaken by them on

27  behalf of the Settlement Class Members.

28

24.    <u>Magnet Toy</u> means a finished toy that contains SHP Magnets, is intended for children under fourteen years of age, is manufactured by Mattel or for Mattel by a Vendor, and is sold or offered for sale by Mattel in the United States on or after the Effective Date.

25.    <u>Mattel</u> means Mattel, Inc. and Fisher-Price, Inc. and all of their United States and foreign subsidiaries, predecessors, successors, parents, affiliates and assigns, that manufactured, contracted with Vendors to manufacture, distributed, marketed, offered for sale, donated and/or sold Recalled Toys.

26.    <u>Mattel's Counsel</u> means the law firm of Jones Day.

27.    <u>NACHRI</u> means the National Association of Childrens' Hospitals and Related Institutions.

28.    <u>Notice Date</u> means the date upon which the Class Notice is first disseminated to the Settlement Class.

29.    <u>Notice Expenses</u> means the reasonable costs and expenses incurred in connection with preparing, printing, mailing, disseminating, posting, emailing, internet hosting and publishing the Class Notice, and all other aspects of administering the Notice Program.

30.    <u>Notice Program</u> means the plan approved by the Court for disseminating the Class Notice directly and by publication to Settlement Class Members.

31.    <u>Opt Out and Objection Date</u> means the date, to be set by the Court, by which a Request For Exclusion must be filed with the Claims Administrator in order for a Settlement Class Member to be excluded from the Settlement Class, and the date by which Settlement Class Members must file objections, if any, to the Settlement in accordance with Section F herein.

32.    <u>Paint</u> means Accessible paints and other similar surface coating materials used on Covered Products, as defined and limited by 16 C.F.R. §1303.2(b)(1).

33.    <u>Party or Parties</u> means the parties to this Agreement, *i.e.*, the Plaintiffs and/or Mattel.

34. <u>Person</u> means any adult individual and any minor child of whom such adult individual is the parent or guardian, any corporation, trust, partnership, limited liability company or other legal entity, and their respective successors or assigns.

35. <u>Plaintiffs</u> means the Class Representatives and all named Plaintiffs in the Constituent Actions listed on Exhibit K.

36. <u>Plaintiffs' Counsel</u> means all attorneys representing Plaintiffs.

37. <u>Plastic Substrate</u> means any Accessible polyvinyl chloride or polyurethane used in Covered Products.

38. <u>Preliminary Approval</u> means the order to be entered by the Court, substantially in the form of Exhibit F and conforming to Section C.1. herein, conditionally certifying the Settlement Class, preliminarily approving the Settlement, setting the date of the Final Approval Hearing, appointing Co-Lead Counsel as Counsel for the Settlement Class, approving the Notice Program, Class Notice, and Claim Form, and setting dates for the Claims Deadline, Opt Out and Objection Date, and Notice Date.

39. <u>Proof of Purchase</u> means documentation from a third-party commercial source reasonably establishing the fact of purchase of a Recalled Toy(s).

40. <u>Quality Assurance System</u> means the totality of Mattel's quality assurance procedures, including but not limited to inspection, auditing and/or testing procedures, designed as a system, even where individual tests or procedures may fail, to identify and prevent the sale by Mattel of Covered Products that contain Paint or Plastic Substrate with Impermissible Lead or Magnet Toys that release SHP Magnets.

41. <u>Recalls</u> means the recall of Mattel toy products on November 21, 2006, August 2, 2007, August 14, 2007, September 4, 2007, and October 25, 2007, as well as the withdrawal of certain products from the market in November and December 2007.

42. <u>Recall Price(s)</u> means the price(s) for Recalled Toys set forth in the notices of the Recalls identified in Exhibit A, which prices include an amount to

1  compensate Class Members for taxes paid at the time of the original purchase of a
2  Recalled Toy.

3      43.   Recall Voucher means a voucher received by a consumer in accordance
4  with the terms of one of the Recalls.

5      44.   Recalled Toys means those toy products made by Mattel or for Mattel by
6  a Vendor, sold in the United States, and subject to the Recalls as identified more
7  particularly in the attached Exhibit A.

8      45.   Released Claim is defined in Paragraph H.1. herein.

9      46.   Released Party is defined in Paragraph H.1. herein.

10     47.   Releasing Party is defined in Paragraph H.1. herein.

11     48.   Request For Exclusion means the written communication that must be
12 filed with the Claims Administrator and postmarked on or before the Opt Out and
13 Objection Date by a Settlement Class Member who wishes to be excluded from the
14 Settlement Class.

15     49.   Settlement means the terms and conditions of the Agreement.

16     50.   Settlement Class and Settlement Class Member(s) each means all Persons
17 who: (a) purchased or acquired (including by gift) a new Recalled Toy for or on
18 behalf of themselves or a minor child over whom they have custody and control as a
19 parent or guardian, or to be given as a gift to another Person; or (b) are the parent or
20 guardian of a minor child who purchased or acquired (including by gift) a new
21 Recalled Toy.  Excluded from the Settlement Class are: (i) all Persons who purchased
22 or acquired a Recalled Toy for resale, or purchased or acquired a used Recalled Toy;
23 (ii) all Defendants and their affiliated entities, legal representatives, successors and
24 assigns; (iii) any Person who files a valid, timely Request for Exclusion; and (iv) the
25 Judges to whom this Action is assigned and any members of their immediate families.

26     51.   Settlement Consideration means the consideration exchanged by and
27 between Mattel and the Settlement Class, as set forth in the Agreement.

28

52. <u>SHP Magnet</u> means a "hazardous magnet" as defined by ASTM F963-08 § 3.1.33, or "hazardous magnet component" as defined by ASTM F963-08 § 3.1.34.

53. <u>SKU</u> means Stock-Keeping Unit.

54. <u>United States</u> includes the fifty states of the United States and all territories and possessions of the United States.

55. <u>Vendor</u> means a third party that manufactures for Mattel Covered Products sold at wholesale by Mattel.

56. <u>Voucher</u> means the document that Settlement Class Members may elect to receive for relief under Sections D.2.b.-D.2.d. herein and that will entitle the Person presenting such Voucher to a participating retailer to purchase products manufactured by or for Mattel.

57. <u>Wet Chemistry Test</u> means using a working Inductively Coupled Plasma-mass Spectrometry machine or a working Atomic Absorption Spectrophotometry machine, in the manner prescribed by the manufacturer of the machine, to conduct an analysis of Paint or of Plastic Substrate for Impermissible Lead.

58. <u>XRF Test</u> means using a working XRF test gun, in the manner prescribed by the manufacturer of the machine, to conduct an analysis of wet Paint or Plastic Substrate for Impermissible Lead.

**B.     FOR SETTLEMENT PURPOSES ONLY**

1. This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in, this Agreement or its Exhibits, nor any action taken hereunder shall constitute, be construed as, or be admissible in evidence as an admission of: (a) the validity of any claim or allegation by Plaintiffs, or of any defense asserted by Defendants, in the Action, any Constituent Action, or any other action or proceeding; or (b) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, Defendant, Released Party, Settlement Class Member or their respective counsel.

2.      The Agreement is without prejudice to the rights of each Releasing Party and each Released Party to: (a) seek or oppose class certification in the Action or any Constituent Action should the Agreement not be finally approved or implemented for any reason; (b) seek or oppose class certification in any other action (except to the extent barred by the Releases and/or the Covenant Not To Sue); or (c) use the certification of the Settlement Class to oppose certification of any other proposed or existing class arising out of the claims asserted in the Action or any Constituent Action.

**C.     REQUIRED EVENTS AND COOPERATION BY THE PARTIES**

1.    Preliminary Approval

As soon as reasonably practicable after execution of the Agreement, the Parties shall submit the Agreement, including all Exhibits, to the Court for its Preliminary Approval and shall jointly move the Court for entry of an order, substantially in the form of Exhibit F hereto, which by its terms shall:

a.      Determine preliminarily that this Agreement and the Settlement set forth herein fall within the range of reasonableness meriting possible final approval and dissemination of Notice to the Settlement Class;

b.      Determine preliminarily that the Class Representatives are members of the Settlement Class and that, for purposes of the Settlement, they satisfy the requirements of typicality, and that they adequately represent the interests of the Settlement Class Members, and appoint them as the representatives of the Settlement Class;

c.      Determine preliminarily that the Settlement Class meets all applicable requirements of Fed. R. Civ. P. 23 ("Rule 23"), and conditionally certify the Settlement Class for purposes of the Agreement under Rule 23 for settlement purposes only;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     d.    Appoint Co-Lead Counsel as Class Counsel pursuant to Rule 23(g).

     e.    Schedule the Final Approval Hearing to: (i) determine finally whether the Settlement Class satisfies the applicable requirements of Rule 23 and should be finally certified for settlement purposes only; (ii) review objections, if any, regarding the Agreement; (iii) consider the fairness, reasonableness and adequacy of the Settlement; (iv) consider Co-Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses; (v) determine the validity of Requests for Exclusion and exclude from the Settlement Class those Persons who validly and timely opt out; and (vi) consider whether the Court shall issue the Final Judgment and Order Approving Settlement approving the Settlement and dismissing the Action and all Constituent Actions with prejudice;

     f.    Set a briefing schedule for the Final Approval Hearing;

     g.    Approve the proposed Class Notice and Notice Program;

     h.    Approve the designation of Gilardi & Co., LLC as the Claims Administrator;

     i.    Direct Mattel or its designee(s) to cause the Class Notice to be disseminated in the manner set forth in the Notice Program on or before the Notice Date;

     j.    Determine that the Class Notice and the Notice Program: (i) meets the requirements of Rule 23(c)(3) and due process; (ii) is the best practicable notice under the circumstances; (iii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed Settlement or opt out of the Settlement Class; and (iv) is reasonable and constitutes due, adequate and sufficient notice to all those entitled to receive notice.

k.      Require each Settlement Class Member who wishes to opt out of the Settlement Class to submit a timely written Request for Exclusion, on or before the Opt Out and Objection Date, to the Court, to Co-Lead Counsel, and to Mattel's Counsel, as specified in Section F herein;

l.      Rule that any Settlement Class Member who does not submit a timely written Request for Exclusion will be bound by all proceedings, orders and judgments in the Action;

m.      Require any Settlement Class Member who wishes to object to the fairness, reasonableness or adequacy of the Agreement or to the award of attorneys' fees, costs and expenses, to deliver to Co-Lead Counsel and Mattel's Counsel and to file with the Court, by the Opt Out and Objection Date, a statement of his or her objection, as well as the specific reason, if any, for each objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence the Settlement Class Member wishes to introduce in support of his or her objection, and to state whether the Settlement Class Member and/or his or her counsel wishes to make an appearance at the Final Approval Hearing, or be forever barred from separately objecting; and

n.      Establish the following:

(i)      The date and time of the Final Approval Hearing.

(ii)      The Notice Date: The Parties propose that the Notice Date be eighty-five (85) days before the Final Approval Hearing.

(iii)      The Opt Out and Objection Date: The Parties propose that the Opt Out and Objection Date be twenty-one (21) days before the Final Approval Hearing.

(iv)      The Claims Deadline: The Parties propose that the Claims Deadline be seventy-five (75) days after the Final Approval Hearing.

   2. <u>Cooperation</u>

  The Parties acknowledge that each intends to implement the Settlement. The Parties shall, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use their best efforts to implement all terms and conditions of the Agreement.

   3. <u>Certification of Settlement Class</u>

  The Parties stipulate to the certification of the Settlement Class for purposes of the Agreement and settlement purposes only.

**D.** **<u>SETTLEMENT CONSIDERATION</u>**

   1. <u>Injunctive Relief</u>

    a. <u>Quality Assurance Injunctive Relief Provisions</u>

     (1) In addition to the monetary relief to Settlement Class Members and the *Cy Pres* contributions specified herein, Mattel has agreed that it shall on the Effective Date implement and/or maintain for the period of time required herein the Quality Assurance System described herein:

     (A) Mattel shall implement and/or maintain a Quality Assurance System designed to ensure that Magnet Toys comply with the provisions of ASTM F 963-08 applicable to toys containing magnets. The Quality Assurance System, described in Mattel's proprietary Quality and Safety Operating Procedures ("QSOPs"), will include application of the following tests, where applicable to the design, to samples of each Magnet Toy SKU, performed prior to offering it for sale.

       (i) Torque & Tension Test: No test sample may fail at less than ten (10) lb. greater than the safety requirement;

       (ii) Drop Test: All test samples must pass a drop test six (6) inches above the otherwise applicable safety requirement;

(iii)    Life Test:  No magnet liberation after 1,000 cycles; and/or

(iv)    Visual inspection of the integrity of the retention system.

(B)    Mattel shall implement and/or maintain a Quality Assurance System, described in Mattel's QSOPs, designed to identify and prevent the sale by Mattel of Covered Products with Paint or Plastic Substrate in or on Accessible parts containing Impermissible Lead.  The Quality Assurance System shall include:

(i)    the use of an XRF Test or a Wet Chemistry Test for screening and/or spot testing of Paint and Plastic Substrate used in Covered Products, where such testing is considered to be reliable and feasible;

(ii)    testing, inspecting and/or auditing protocols designed to identify Paint or Plastic Substrate containing Impermissible Lead in or on Covered Products at various stages of the manufacturing process;

(iii)    procedures designed to verify the accuracy of any test failures indicating that Paint or Plastic Substrate in or on a Covered Product may contain Impermissible Lead;

(iv)    periodic inspections and/or audits of Vendors designed to prevent the manufacture of Covered Products with Paint or Plastic Substrate containing Impermissible Lead;

(v)    periodic inspections and/or audits of certified Paint suppliers following the certification process outlined in Mattel's QSOPs, designed to prevent the manufacture of Covered Products with Paint on Accessible parts containing Impermissible Lead;

(vi)    procedures designed to ensure that testing for Impermissible Lead in Covered Products is conducted by laboratories accredited in accordance with the CPSIA; and

(vii)    a formalized procedure for Mattel Asia Pacific Sourcing, Ltd. ("MAPS") to report to Mattel's U.S. Product Integrity Group any verified lead test failure involving Paint or Plastic Substrate in or on an Accessible part of a Covered Product that contains Impermissible Lead.

- 16 -

(2)    Mattel shall require in its contracts with Vendors manufacturing Magnet Toys or Covered Products that the Vendor comply with Mattel's QSOPs applicable to Magnet Toys or Covered Products that may contain Impermissible Lead.

(3)    Mattel's Quality Assurance System, including any testing, auditing and inspection procedures specified therein, may be changed, modified or revised by Mattel over time to accommodate changed circumstances or needed improvements in technology or efficiencies in production methods, including changes in laws or regulations or restrictions in the United States or in any location where Mattel's children's products are manufactured, distributed or sold.  Mattel shall be in good faith compliance with its obligation to implement the foregoing Quality Assurance System following the Effective Date and up to and until three (3) years thereafter, at which time Mattel's obligations under this Section D.1. shall terminate.

(4)    Commencing one (1) year after the Effective Date, and annually thereafter for two (2) years, Mattel will certify to Co-Lead Counsel and the Court, through a Declaration signed under penalty of perjury by a knowledgeable corporate representative, that it is in compliance with its commitments under Section D.1.a.(1).

2.    <u>Monetary Relief for Settlement Class Members</u>

In addition to all other Settlement Consideration set forth in the Agreement, Settlement Class Members who timely file Claims by the Claims Deadline and provide all required proof or documentation and comply with all other conditions and requirements specified herein, all as approved and validated by the Claims Administrator, shall have the right to obtain relief, as detailed herein.

a.    <u>For Settlement Class Members Who Returned Recalled Toys Pursuant To A Recall</u>

Settlement Class Members who returned Recalled Toy(s) to Mattel pursuant to a Recall prior to the Notice Date shall be entitled to receive a check from Mattel in an

1  amount equal to the greater of: (i) 50% of the total amount of the Recall Voucher(s)

2  previously sent to the Settlement Class Member in connection with the prior return of

3  Recalled Toy(s); or (ii) $10.00.  The amount of any checks under this Subsection

4  (D.2.a.) that cannot be delivered to Settlement Class Members because of inability to

5  locate those Settlement Class Members after a good faith effort to locate them, which

6  shall in no case exceed six months following the initial mailing of the checks, will

7  cease to be the property of those Settlement Class Members, and the amount of such

8  checks, if any, shall be contributed to the NACHRI.

9              b.      For Settlement Class Members In Possession Of Recalled Toys

10             Settlement Class Members who have retained possession of any Recalled

11  Toy(s), other than those specified in Section D.2.e. herein, upon submitting a timely,

12  valid Claim Form, together with the return of all, or substantially all, of the Recalled

13  Toy(s), shall be entitled to elect to receive either a check or a Voucher in the amount

14  of the total Recall Price(s) of such returned Recalled Toy(s).    The Claims

15  Administrator shall make available by mail and online to Settlement Class Members

16  who wish to submit Claims a pre-addressed, pre-paid shipping label(s) for Settlement

17  Class Members to return the Recalled Toy(s).    Notwithstanding the foregoing,

18  Settlement Class Members may return Recalled Toy(s), at their own cost, along with a

19  completed Claim Form.    In such event, Mattel shall not be responsible for

20  reimbursement of such Settlement Class Members' cost of shipping.

21             c.      For Settlement Class Members Who Have Documentation
                       Demonstrating Purchase Of Recalled Toys But Who Destroyed Or
22                     Discarded Them

23             Settlement Class Members who no longer have possession of a Recalled Toy(s)

24  because such Settlement Class Member destroyed or discarded the Recalled Toy(s) as

25  a result of the announcements of the Recalls, but submit:  (1) a timely, valid Claim

26  Form certifying that the Recalled Toy(s) was destroyed or discarded as a result of the

27  Recall announcements; (2) the date on which the Recalled Toy(s) was destroyed or

28  discarded; and (3) Proof of Purchase; shall be entitled to elect to receive either a check

1  or a Voucher in the amount of the total of the actual price(s) paid for the Recalled

2  Toy(s). In order to claim relief under this subsection (D.2.c.), the Settlement Class

3  Member must have destroyed or discarded the Recalled Toy as a result of the Recall

4  announcements, and not simply transferred ownership to another Person.

5

6              d.     For Settlement Class Members Who Have No Proof Of Purchase And Who Destroyed Or Discarded Those Recalled Toys

7        Subject to the limitations set forth in Section D.3.f. herein, Settlement Class

8  Members who do not possess Proof(s) of Purchase and no longer have possession of

9  the Recalled Toy(s) because such Settlement Class Member destroyed or discarded

10  the Recalled Toy(s) as a result of the announcements of the Recalls, upon submitting a

11  timely, valid Claim Form declaring that the Settlement Class Member purchased or

12  acquired any Recalled Toy(s), other than those specified in Section D.2.e. herein,

13  within the applicable date range set forth in Exhibit A, and that the Recalled Toy(s)

14  was destroyed or discarded as a result of the Recall announcements, shall receive a

15  Voucher in the amount of the Recall Price for not more than three (3) Recalled Toy(s)

16  per Person and/or address. The total value of all Vouchers issued under this

17  Subsection (D.2.d.) to all Settlement Class Members shall not exceed $10 million

18  ($10,000,000.00). In the event that Settlement Class Members file valid Claims

19  seeking relief in an amount exceeding $10 million under this Subsection (D.2.d.), the

20  face value of all Vouchers issued to Settlement Class Members hereunder shall be

21  reduced pro rata to a total of $10 million.

22              e.     For Settlement Class Members Who Purchased One Of The Following Recalled Toys For Which Mattel Offers A Replacement Remedy

23

24        Subject to the limitations in Section D.2.f. herein, Settlement Class Members

25  who purchased or acquired any of the following Recalled Toys:

26  H5705    GeoTrax Rail & Road System Freightway Transport, date coded 2126-2327

27  K8606    Barbie Table & Chairs, date coded 2866-2327

28

| | | |
|---|---|---|
| 1 | K8608 | Barbie Futon & Table Living Room Playset, date coded 2866-2327 |
| 2 | K8609 | Barbie Desk & Chair Bedroom Playset, date coded 2866-2327 |
| 3 | J9485 | Barbie Dream Puppy House Playset, date coded 2866-2327 |
| 4 | J9486 | Barbie Dream Kitty Condo Playset, date coded 2866-2327 |
| 5 | K8607 | Barbie Bathtub & Toilet Bathroom Playset, date coded 2866-2327 |
| 6 | K8613 | Barbie Couch & Table Living Room Playset, date coded 2866-2327 |
| 7 | K3013 | GeoTrax Rail & Road System Special Track Pack, date coded 2126-2327 |
| 8 | K9343 | It's a Big Big World 6-in-1 Bongo Band, date coded 1397-2327 |
| 9 | J9472 | Barbie Doll & Tanner, containing a silver-tipped, blue pooper scooper |
| 10 | J9560 | Barbie Doll & Tanner, containing a silver-tipped, blue pooper scooper |
| 11 | K4674 | Sesame Street Giggle Medical Kit, containing a green blood pressure monitor cuff |
| 12–13 | M0533 | Sesame Street Giggle Medical Kit, containing a green blood pressure monitor cuff |
| 14 | 39107 | Sesame Street Giggle Medical Kit, containing a green blood pressure monitor cuff |
| 15 | J2526 | Fisher-Price Medical Kit, containing a red blood pressure monitor cuff |
| 16 | M1955 | Fisher-Price Medical Kit, containing a red blood pressure monitor cuff |

shall, upon submitting a timely, valid Claim Form be entitled to receive a check from Mattel in the amount of $4.00 per Recalled Toy, with a limit of three (3) Recalled Toys ($12.00 total) per Person and/or address. Settlement Class Members who return the affected parts specified on Exhibit A from one or more of the Recalled Toys enumerated in this Subsection (D.2.e.), along with the Claim Form, will also be entitled to receive replacement parts to the extent available in Mattel's inventory. If the Settlement Class Member neither possesses the affected parts of the Recalled Toys specified on Exhibit A, nor Proof of Purchase, he/she must submit a timely, valid Claim Form declaring that the Settlement Class Member purchased or acquired one of the enumerated Recalled Toys during the applicable period specified in Exhibit A.

f.    <u>Claims Limitation and Validation</u>

(1)    <u>Limitations on Claims</u>

For purposes of this Subsection (D.2.f.), Settlement Class Members who file Claims without returning the Recalled Toy(s) or Proof(s) of Purchase of the Recalled Toy(s) are referred to as filing "Claims by Declaration Only."

(A)    Except as provided in the next Subsection, Settlement Class Members may file Claims under any of Section D.2.b., c., d. and/or e. for which they qualify.

(B)    Settlement Class Members may not file Claims by Declaration Only under both Sections D.2.d. and Section D.2.e.  Settlement Class Members who have Proof of Purchase or return the affected parts of the Recalled Toys specified in Section D.2.e. will be permitted to file Claims under Section D.2.d. if they also qualify for an Award under Section D.2.d.  However, Settlement Class Members who file Claims by Declaration Only under Section D.2.e., *i.e*., without Proof of Purchase or returning the affected parts of the Recalled Toys specified in Section D.2.e., will not be permitted also to file Claims by Declaration Only under Section D.3.d., and Settlement Class Members who file Claims by Declaration Only under Section D.2.d. will not be permitted also to file Claims by Declaration Only under Section D.2.e.

(2)    <u>Validation by Purchase Date</u>

For the sole purpose of validating Claims:

(A)    under Section D.2.c. and d. and all Claims by Declaration Only under Section D.2.e.; or

(B)    based on Recalled Toys or parts thereof that do not contain a date code and are returned under Sections D.2.b. and/or D.2.e.; the Claims Administrator will validate Claims if the Class Member affirms that the Recalled Toy(s) were purchased or received as a gift during the date ranges specified on Exhibit A.  The Claims Administrator shall have the discretion to validate Claims

- 21 -

1   based upon gifts received outside the date ranges specified on Exhibit A where the

2   totality of circumstances indicates that the gift was purchased during the applicable

3   date range.

4   g.    Voucher Terms

5   Vouchers issued under Sections D.2.b.-D.2.d. may be used only for the

6   purchase of products manufactured by or for Mattel.  Only one Voucher may be used

7   in any retail transaction.  All Vouchers will expire one year after issuance.  Vouchers

8   will be issued in the name of the Settlement Class Member filing the Claim but may

9   be used by another Person without endorsement.  Lost or stolen Vouchers are the

10  responsibility of the Settlement Class Member and will not be replaced or reissued.

11

12  h.    Mattel's Right To Dispose Of Recalled Toys Returned By
          Settlement Class Members

13  Mattel will submit a motion to the Court seeking leave to dispose of all toys

14  withheld from sale by Mattel and all toys returned by retailers in the recalls, with the

15  exception of specified samples of each SKU, as agreed upon by the Parties.  After

16  reviewing and approving the motion, Plaintiffs will agree not to oppose it.  Any toy

17  returned to Mattel by Settlement Class Members pursuant to the Settlement becomes

18  the property of Mattel.  Mattel will retain all products returned by consumers in the

19  Recalls or by Settlement Class Members pursuant to the Settlement until the Effective

20  Date.  Mattel shall have no obligation to preserve or maintain, and may dispose of or

21  destroy, any returned Recalled Toys after the Effective Date.  Settlement Class

22  Members expressly waive any claims for spoliation arising from or related to the

23  disposal of any Recalled Toy(s) withheld from sale by Mattel and all toys returned to

24  Mattel by retailers pursuant to the Recalls, or the destruction or disposal after the

25  Effective Date of Recalled Toy(s) returned by consumers or Settlement Class

26  Members pursuant to the Recalls or the Settlement.  In the event that the Settlement

27  does not receive Final Approval, Mattel shall provide a Recall Voucher for the

28  specified price(s) of the Recalled Toy(s), or a replacement for such Recalled Toy(s),

1  as set forth in the terms of the Recalls identified in Exhibit A, to any Settlement Class

2  Member who returned a Recalled Toy(s) to Mattel in accordance with the provisions

3  of the Settlement.

4       3.   <u>Lead Testing of Minor Children</u>

5       Settlement Class Members who incurred out-of-pocket costs for testing the lead

6  level of a minor child of whom the Settlement Class Member is the parent or guardian

7  as the result of the child's exposure to a Recalled Toy(s), which testing occurred

8  within six (6) weeks after the announcement of the Recall of the Recalled Toy(s) to

9  which the child was exposed and which was done as a result of the child's exposure to

10 such Recalled Toys, may seek reimbursement for such costs under the terms set forth

11 in this Section (D.3.). Each such Settlement Class Member, upon submitting a timely,

12 valid Claim Form containing the information and affirmations set forth herein shall

13 receive reimbursement for the actual out-of-pocket and unreimbursed costs of testing

14 for not more than one (1) test per child. Mattel shall not be obligated to pay more than

15 $600,000 in total for such reimbursements, and, in the event that Settlement Class

16 Members file valid Claims seeking relief under this Section in an amount exceeding

17 $600,000, the amount of the reimbursements paid to Settlement Class Members

18 hereunder shall be reduced pro rata to a total of $600,000. In order to qualify for

19 relief under this Section, a Settlement Class Member must submit a valid Claim Form

20 containing the following information:

21      a.   Name, address, telephone number, e-mail, and any other pertinent

22 contact information for use in validating the Claim;

23      b.   Name, gender, age, and address of each child tested;

24      c.   Affirmation that the Settlement Class Member is the parent or

25 guardian of each child who was tested;

26      d.   The Recalled Toy(s) to which each child was exposed and, as to

27 each:

28      (1)   The date on which it was purchased or acquired; and

1                     (2)     The date(s) during which the child was exposed.

2          e.     The date on which the test was performed;

3          f.     The name of the medical service provider who performed the test;

4 and

5          g.     The total cost of the test and the amount of reimbursement from

6 health insurance or any other source that the Settlement Class Member

7 received.

8     Settlement Class Members must submit with the Claim Form documentary

9 evidence reasonably establishing the out-of-pocket expenses incurred and all other

10 elements of the Claim. All information submitted under this Section shall be kept

11 confidential by the Claims Administrator and will be used solely for the purpose of

12 validating the Claims made. Such Claim Forms shall be destroyed within one week

13 after all Claims have been paid under this Section.

14     4.    *Cy Pres* Fund

15     Mattel will make total *Cy Pres* contributions in the amount of $275,000 to the

16 NACHRI.

17     5.    Costs of Notice, Administration, and Other Costs and Expenses

18     Mattel shall be responsible to pay all Claims Administration Expenses and all

19 Notice Expenses.

20 **E.    CLAIMS DEADLINES, CLAIM FORMS, AND ADMINISTRATION**

21     1.    All Claims must be submitted with a Claim Form and received by the

22 Claims Administrator or postmarked by the Claims Deadline. The Claims Deadline

23 shall be clearly set forth in the Settlement Class Notice, the websites of the Claims

24 Administrator and of Co-Lead Counsel, and the Claim Form. Settlement Class

25 Members who do not timely submit a completed Claim Form shall not be eligible for

26 an Award except as provided under Section D.2.a. However, the Claims

27 Administrator may, in its discretion, permit a Settlement Class Member who makes a

28

1  timely Claim to remedy deficiencies in such Settlement Class Member's Claim Form

2  or related documentation.

3      2.    Those Settlement Class Members submitting Claims under any of

4  Sections D.2.b.-D.2.e. and D.3. herein must submit to the Claims Administrator a

5  timely Claim Form. Claim Forms must be signed by the Class Member by hand or

6  electronically under penalty of perjury. Claim Forms will be made available by mail

7  and for downloading from the Settlement Website maintained by the Claims

8  Administrator and may be made available on the websites of Co-Lead Counsel. Such

9  Claim Form must include the following information and/or affirmations:

10      a.    Telephone number or contact information for use, if necessary, in

11  validating Claims.

12      b.    The following information relating to purchase and Recalled Toy:

13      (1)    Settlement Class Member name and address;

14      (2)    Identification of the Recalled Toy(s) for which the Claim is

15  made, sufficient to show that the Claim relates to a Recalled

16  Toy(s);

17      (3)    Date(s) of purchase or, if received as a gift, the date(s) of

18  acquisition;

19      (4)    Price(s) paid;

20      (5)    Name(s) and location(s) of retailer(s);

21      (6)    Gender(s) and age(s) of child(ren) for whom the Recalled

22  Toy(s) was purchased; and

23      (7)    The date(s) on which the Recalled Toy(s) was destroyed or

24  discarded as a result of a Mattel Recall announcement.

25  Class Members may submit completed and signed (either by hand or electronically)

26  Claim Forms to the Claims Administrator by mail, private courier, facsimile, online or

27  as an attachment to an email. Mattel agrees that information provided by Settlement

28  Class Members on Claim Forms shall be kept confidential, shall be used only for

1  purposes of administering the Settlement, and shall not be used for marketing or any

2  other commercial purposes.

3        3.     The Parties agree that the Claims Administrator shall be Gilardi & Co.,

4  LLC.  The Claims Administrator will be approved by the Court, will be an agent of

5  the Court, and will be subject to the Court's supervision and direction as

6  circumstances may require.  The Claims Administrator will administer the Notice

7  Program and Claims process, and oversee the distribution of Awards to Settlement

8  Class Members in accordance with the terms of the Settlement and orders of the

9  Court.

10        4.     The Claims Administrator shall administer the monetary relief for

11  Settlement Class Members provided by the Agreement by resolving Claims in a cost

12  effective and timely manner.  The Claims Administrator may utilize the resources of

13  Mattel to identify Class Members; to train the Claims Administrator's personnel on

14  toy identification; to facilitate providing notice directly or by publication; to assist

15  with establishing the Settlement website; to store and/or dispose of toys returned by

16  Settlement Class Members; and to accomplish such other purposes as may be

17  approved by Mattel and Co-Lead Counsel; provided, however, that the determination

18  of the validity of Claims shall be made by the Claims Administrator.  The Claims

19  Administrator shall maintain records of all Claims submitted.  The Claims

20  Administrator shall maintain all such records until the later of 90 days after either the

21  Effective Date or all Claims have been finally resolved, and such records will be made

22  available upon request to Co-Lead Counsel and Mattel's Counsel.  Claim Forms and

23  supporting documentation will be kept confidential by the Claims Administrator and

24  will be provided only to the Court upon request and to Co-Lead Counsel and Mattel's

25  Counsel to the extent necessary to resolve issues pursuant to Section E.5.  The Claims

26  Administrator also shall provide such reports and such other information to the Court

27  as it may require.

28

5.      The Claims Administrator will review and validate all Claims submitted by Settlement Class Members.  With respect to Claims under Section D.2.b, the Parties agree that one objective of the Settlement is to secure the return of substantially the entire Recalled Toy.  The Claims Administrator shall have the discretion to review Claims with the objectives of efficiency and effecting substantial justice to the Parties and the Settlement Class Members.  The Claims Administrator shall have the right to contact Settlement Class Members to validate Claims.  The validity of a Claim will be assessed based on the totality of the Claim.  The inability of a Settlement Class Member to provide precise dates of purchase, price paid, or the identity of the selling retailer will not *per se* invalidate a Claim, but will be assessed with other factors for purposes of validation.  Issues regarding the validity of Claims that cannot be resolved by the Claims Administrator shall be submitted to Counsel for Mattel and Co-Lead Counsel for resolution and, if no resolution is reached, to the Court.

6.      The Claims Administrator shall cause a website to be created containing Claims information and relevant documents, including but not limited to, all applicable deadlines; the long-form Class Notice; a downloadable Claim Forms that may be submitted online or by mail; FAQs and answers; orders of the Court pertaining to the Settlement; this Stipulation; a toll-free telephone number and addresses to contact the Claims Administrator by e-mail and mail; means to identify Recalled Toys, including purchase date ranges; the dates of the Recalls; and the Recalled Toys affected by such Recalls.  Mattel shall pay the cost of creating and maintaining this website.  The website may be rendered inactive at Mattel's sole discretion after the Claims Deadline.  The Parties shall agree on all information and documents to be posted on this website.

**F.     NOTICE TO THE SETTLEMENT CLASS, OBJECTION, AND OPT OUT RIGHTS**

1.     Upon Preliminary Approval of the Settlement, as the Court may direct, the Claims Administrator shall cause the Class Notice to be disseminated to potential Settlement Class Members as provided herein. Notice shall be disseminated pursuant to the Notice Program on or before the Notice Date. Copies of the proposed forms of Class Notice and the Notice Program are attached as Exhibits B, C, D, and L.

2.     The Class Notice shall:

a.     contain a short, plain statement of the background of the Action and the proposed Settlement;

b.     describe the proposed Settlement relief as set forth in this Agreement;

c.     inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive relief;

d.     describe the procedures for participating in the Settlement and advise Settlement Class Members of their rights, including their right to file a Claim to receive an Award under the Settlement, to opt out of same, or object thereto;

e.     explain the scope of the Release and Covenant Not To Sue, and the impact of the proposed Settlement on any existing litigation, arbitration or other proceeding;

f.     state that any Award to Settlement Class Members under the Settlement is contingent on the Court's final approval of the proposed Settlement;

g.     explain that neither Counsel for the Parties, nor the Claims Administrator may advise on the tax consequences of participating or not participating in the Settlement;

h.    explain the procedures for opting out of the Settlement and specifying that so-called "mass" or "class" opt outs shall not be allowed; and

i.    provide that any objection to the Settlement and any papers submitted in support of said objection will be considered only if the Settlement Class Member making an objection has filed timely notice of his or her intention to do so, with the grounds for the objection, and has filed copies of such papers he or she proposes to submit at the Final Approval Hearing with the Clerk of the Court and served copies of such papers on Co-Lead Counsel and Mattel's Counsel on or before the Opt Out and Objection Date, as approved by the Court and specified in the Class Notice.

3.    Any Settlement Class Member who intends to object must do so on or before the Opt Out and Objection Date.  In order to object, the Settlement Class Member must include in the objection submitted to the Court and served on Co-Lead Counsel and Mattel's Counsel: (a) the name, address, telephone number of the Person objecting and, if represented by counsel, of his/her counsel; and (b) Proof of Purchase or acquisition of a Recalled Toy.  An objecting Settlement Class Member must state, specifically and in writing, all objections and the basis for any such objections, and provide a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel.  Any Settlement Class Member who fails to file and serve timely a written objection and notice of his or her intent to appear at the Final Approval Hearing pursuant to this Section F.3., as detailed in the Notice, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.

4.    Prior to the Final Approval Hearing, the Claims Administrator shall provide to the Court documentation that Notice was provided in accordance with the Notice Program.

5.    A Settlement Class Member who wishes to opt out of the Settlement Class must do so on or before the Opt Out and Objection Date.  In order to opt out, a Settlement Class Member must complete and send to the Claims Administrator a Request For Exclusion that is post-marked no later than the Opt Out and Objection Date.  The Request for Exclusion must be personally signed by the Settlement Class Member requesting exclusion and contain a statement that indicates a desire to be excluded from the Settlement Class.  So-called "mass" or "class" opt-outs shall not be allowed.

6.    Except for those Settlement Class Members who timely and properly file a Request for Exclusion, all other Settlement Class Members will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon the Effective Date, will be bound by its terms, regardless of whether they file a Claim or receive any monetary relief.

7.    Any Settlement Class Member who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments entered in the Action relating to the Settlement; (b) be entitled to relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.

8.    The Claims Administrator shall provide Co-Lead Counsel and Mattel's Counsel with a list of all timely Requests For Exclusion within five (5) business days after the Opt Out and Objection Date.

## G.    EXCLUSIVE REMEDY; RELEASES; JURISDICTION OF COURT

The Agreement shall be the sole and exclusive remedy for any and all Released Claims of all Releasing Parties against all Released Parties.  No Released Party shall be subject to liability or expense of any kind to any Releasing Party with respect to any Released Claim.  Upon entry of the Final Judgment and Order Approving Settlement, each and every Releasing Party shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any Released Claim against any Released

Party in any court or any forum, and each Settlement Class Member shall be enjoined from violating the Covenant Not To Sue. However, notwithstanding any of the foregoing, no individual claim for personal injury is Released under this Agreement.

## H.    RELEASES AND COVENANT NOT TO SUE

1.    The following terms have the meanings set forth herein:

a.    Covenant Not To Sue means, for and in consideration of the Settlement, each Settlement Class Member shall be deemed to have covenanted that he or she will not in the future: (1) assert any claim for personal injury claimed to have been caused by, or related to, the Recalled Toys (including, but not limited to, claims for testing, medical monitoring or medical treatment, whether asserted as a claim for damages or a remedy for a claim) on behalf of any Person other than (a) the Settlement Class Member individually, or (b) a minor child of whom the Settlement Class Member has custody or control as a parent or guardian; (2) in any action permitted under Section H.1.a.(1), seek to represent or assert claims on behalf of, or to have a minor child of whom the Settlement Class Member has custody or control as parent or guardian represent or assert claims on behalf of, any class or group of other Persons asserting or alleged to have claims similar to the individual claims asserted in such action; or (3) assert or maintain any Released Claim, directly or indirectly, against any Released Party in any court or other forum on behalf of the Settlement Class Member, any minor child of whom the Settlement Class Member has custody or control as a parent or guardian, or any other Person.

b.    Released Claim means any individual, class, representative, group or collective claim, liability, right, demand, suit, matter, obligation, damage, loss, action or cause of action, of every kind and description that a Releasing Party has or may have, including assigned claims, whether known or unknown, asserted or unasserted, latent or patent, that is, has been, could reasonably have been or in the future might reasonably be asserted under any body of law by the Releasing Party

either in the Court or any other court or forum, regardless of legal theory or relief claimed, and regardless of the type of relief or amount of damages claimed, against any of the Released Parties arising from, or in any way relating to, the design, sale, marketing, advertising, manufacture, distribution, donation, purchase, recall, withdrawal from sale, possession, handling, ingestion, exposure, touching or contact of any kind, or use of a Recalled Toy.

Notwithstanding the foregoing, the term "Released Claim" does not include an individual claim for personal injury of a Releasing Party claimed to have been caused by, or related to, the Recalled Toys (including, without limitation, individual claims for testing, medical monitoring, or medical treatment, whether asserted as a claim for damages or a remedy for a claim); provided, however, that the cost of any lead testing of a minor child that is reimbursed by Mattel to a Settlement Class Member pursuant to a Claim submitted under Section D.3. of this Agreement shall be included in the term "Released Claim."

c. <u>Released Party</u> means all Defendants and any entity that manufactured, tested, inspected, audited, certified, purchased, distributed, licensed, transported, marketed, advertised, donated, promoted, sold or offered for sale at wholesale or retail any Recalled Toy, or any part thereof, including all of their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present and future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, insurers, representatives, licensees, licensors, customers, subrogees and assigns. It is expressly understood that, to the extent a Released Party is not a Party to the Agreement, all such Released Parties are intended third party beneficiaries of the Agreement.

d. <u>Releasing Party</u> means each Plaintiff and each Settlement Class Member and any Person claiming by or through him/her/it as his/her/its spouse, child, ward, next friend, heir, devisee, legatee, invitee, employee, customer, associate, co-

owner, attorney, agent, administrator, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, or affiliate.

2.      Upon entry of the Final Judgment and Order Approving Settlement: (a) each Releasing Party shall be deemed to have released and forever discharged each Released Party of and from liability for any and all Released Claims, and (b) each Settlement Class Member shall be deemed to have given and will be forever bound by the Covenant Not To Sue in favor of each Released Party; provided, however, that individual personal injury claims of the Releasing Parties are not released hereunder.

3.      With respect to any and all Released Claims, and upon entry of the Final Judgment and Order Approving Settlement without further action, for good and valuable consideration, Plaintiffs, on behalf of themselves and the Settlement Class and as the representatives of the Settlement Class, shall expressly, and Releasing Parties shall be deemed to have, and by operation of the Final Judgment and Order Approving Settlement shall, to the fullest extent permitted by law, fully, finally, and forever expressly waived and relinquished with respect to the Released Claims, any and all provisions, rights, and benefits of Section 1542 of the California Civil Code and any and all similar provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

4.      <u>Additional Mutual Releases</u>

a.      On and after the Effective Date, each of the Released Parties shall be deemed to have fully, finally, and forever released, relinquished and discharged each and all of the Plaintiffs and Settlement Class Members, and

their respective present and former parents, subsidiaries, divisions, and affiliates, the present and former partners, employees, officers and directors of each of them, the present and former attorneys, accountants, experts, consultants, insurers, and agents of each of them, each of the foregoing solely in their capacity as such, and the predecessors, successors, heirs, and assigns of each, from all claims of every nature and description, known and unknown, relating to the initiation, assertion, prosecution, non-prosecution, settlement, and/or resolution of the Action or the Constituent Actions or the Released Claims.

b.      On and after the Effective Date, each of the Releasing Parties shall be deemed to have fully, finally, and forever released, relinquished and discharged each and all of the Defendants, their respective present and former parents, subsidiaries, divisions, and affiliates, the present and former partners, employees, officers and directors of each of them, the present and former attorneys, accountants, experts, consultants, insurers and agents of each of them, each of the foregoing solely in their capacity as such, and the predecessors, successors, heirs, and assigns of each of them, from all claims of every nature and description, known and unknown, relating to the defense, settlement and/or resolution of the Action, the Constituent Actions, or the Released Claims.

5.      The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Parties, Settlement Class Members, and the Claims Administrator to interpret and enforce the terms, conditions, and obligations under the Agreement.

## I.      COUNSEL FEES AND COSTS

1.      Co-Lead Counsel agree to make, and Mattel agrees not to oppose, an application for the award of Attorneys' Fees and Expenses in this Action not to exceed a total of $12,900,000. Such fees and expenses will be paid by Mattel within ten (10) business days after entry of Final Judgment and Order Approving Settlement, subject

to the conditions in this Section.  If the Final Judgment and Order Approving Settlement is reversed, vacated, modified, and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in affirmance of the Final Judgment and Order Approving Settlement as to any matter other than a reduction of Attorneys' Fees and Expenses, and if Mattel or Co-Lead Counsel properly and timely terminates the Agreement in accordance with Section N of this Agreement, then Co-Lead Counsel shall within ten (10) business days return to Mattel the amount of Attorneys' Fees and Expenses paid by Mattel.  If the award of Attorneys' Fees and Expenses is reduced after entry of the Final Judgment and Order Approving Settlement, then Co-Lead Counsel shall within ten (10) business days return to Mattel the amount by which the Attorneys' Fees and Expenses have been reduced.  Any return of Attorneys' Fees and Expenses under this Section shall be increased by interest accrued at the Federal Funds Rate from the date of payment of the Attorneys' Fees and Expenses to Co-Lead Counsel.  Co-Lead Counsel's obligation to return any of the Attorneys' Fees and Expenses, as described herein, shall be evidenced by a promissory note, which note shall be executed by the law firms Coughlin Stoia Geller Rudman & Robbins, LLP and Whatley Drake & Kallas, LLC.

2.     Co-Lead Counsel, in their sole discretion, shall allocate and distribute this award of Attorneys' Fees and Expenses among Plaintiffs' Counsel.

3.     Mattel agrees to pay each Class Representative the amount of such Incentive Award, if any, as may be approved by the Court.  Mattel agrees that it will not object to, or otherwise challenge, the Class Representatives' applications for Incentive Awards, so long as the Class Representatives do not seek awards in excess of $500 per family or address.  If awarded by the Court, such Incentive Awards will be paid to Co-Lead Counsel on behalf of the Class Representatives within thirty (30) days after the Effective Date.  Any Incentive Awards awarded by the Court shall be paid by Mattel, in addition to the Settlement benefits to Settlement Class Members and the Attorneys' Fees and Expenses otherwise provided for in this Agreement.

**J.      THE FINAL JUDGMENT AND ORDER APPROVING SETTLEMENT**

1.      This Agreement is subject to and conditioned upon the issuance by the Court of the Final Judgment and Order Approving Settlement that finally certifies the Settlement Class for the purposes of settlement only, and grants final approval of the Settlement, and provides the relief specified herein, which relief shall be subject to the terms and conditions of the Agreement and the Parties' performance of their continuing rights and obligations hereunder.   Such Final Judgment and Order Approving Settlement shall:

a.      Confirm the final certification, for settlement purposes only, of the Settlement Class;

b.      Confirm the compliance of the Settlement Class with all requirements of Rule 23, including confirmation of the adequacy of the representation of the Class Representatives as representatives of the Settlement Class;

c.      Confirm that the Notice Program complied in all respects with the requirements of due process and Rule 23 by providing due, adequate, and sufficient notice to the Settlement Class;

d.      Determine that the Agreement is entered into in good faith, is reasonable, fair and adequate, and is in the best interest of the Settlement Class;

e.      Dismiss the Complaint and all complaints in the Constituent Actions with prejudice as to the Released Parties and without cost;

f.      Release each Released Party from the Released Claims that any Releasing Party has, had, or may have in the future, against each Released Party and provide that the Covenant Not To Sue has been given by each Settlement Class Member in favor of each Released Party and that all Settlement Class Members are bound thereby;

g.      Bar and enjoin all Releasing Parties from asserting against any Released Party any Released Claim  and bar and enjoin all Settlement Class

1    Members from initiating or pursuing any claim or action barred by the

2    Covenant Not To Sue;

3         h.      Release each Releasing Party and Settlement Class Member, and

4    their respective present and former parents, subsidiaries, divisions and affiliates,

5    the present and former partners, employees, officers and directors of each of

6    them, the present and former attorneys, accountants, experts, consultants and

7    insurers, and agents of each of them, each of the foregoing solely in their

8    capacity as such, and the predecessors, successors, heirs and assigns of each of

9    them, from all claims of every nature and description, known and unknown,

10   that any Released Party has had, or may in the future have relating to the

11   initiation, assertion, prosecution, non-prosecution, settlement and/or resolution

12   of the Action, Constituent Actions, or the Released Claims, and bar and enjoin

13   all Released Parties from asserting the same;

14        i.      Release each Defendant and their respective present and former

15   parents, subsidiaries, divisions and affiliates, the present and former partners,

16   employees, officers, and directors of each of them, the present and former

17   attorneys, accountants, experts, consultants, insurers and agents of them, and

18   the predecessors, successors, heirs and assigns of each of them from all claims

19   of every nature and description, known and unknown, that any Releasing Party

20   has, had or may in the future have relating to the defense, settlement and/or

21   resolution of the Action, the Constituent Actions or the Released Claims, and

22   bar and enjoin all Releasing Parties from asserting the same;

23        j.      Provide that all Settlement Class Members are deemed to have

24   waived and released all claims relating to Mattel's disposal or destruction of

25   Recalled Toys pursuant to orders of the Court and the terms of the Settlement;

26   and

27        k.      Retain the Court's continuing and exclusive jurisdiction over the

28   Parties to the Agreement, including all Settlement Class Members, to construe

1    and enforce the Agreement in accordance with its terms for the mutual benefit

2    of the Parties.

3    **K.    REPRESENTATIONS AND WARRANTIES**

4         1.    Mattel represents and warrants:  (a) that it has the requisite corporate

5    power and authority to execute, deliver and perform the Agreement and to

6    consummate the transactions contemplated hereby; (b) that the execution, delivery and

7    performance of the Agreement and the consummation by it of the actions

8    contemplated herein have been duly authorized by necessary corporate action on the

9    part of Mattel; and (c) that the Agreement has been duly and validly executed and

10   delivered by Mattel and constitutes its legal, valid and binding obligation.  Mattel's

11   Counsel represents and warrants that they are fully authorized to execute this

12   Agreement on behalf of Mattel and thereby to bind Mattel to the Agreement.

13        2.    Plaintiffs represent and warrant that they are entering into the Agreement

14   on behalf of themselves and the minor children of whom they have custody and

15   control as parents or guardians, individually and as representatives of the Settlement

16   Class Members and the Releasing Parties, of their own free wills and without the

17   receipt of any consideration other than what is provided in the Agreement or disclosed

18   to, and authorized by, the Court.  Each Plaintiff represents and warrants that he or she

19   has reviewed the terms of the Settlement, believes them to be fair and reasonable, and

20   each covenants that he or she will not file a Request for Exclusion from the Settlement

21   Class or object to the Settlement.  Co-Lead Counsel represents and warrants that they

22   are fully authorized to execute the Agreement on behalf of the Plaintiffs, individually

23   and as representatives of the Settlement Class Members and Releasing Parties.

24        3.    The Parties warrant and represent that no promise, inducement or

25   consideration for the Settlement has been made, except those set forth herein.  No

26   consideration, amount or sum paid, accredited, offered or expended by Mattel in its

27   performance of this Agreement and the Settlement constitutes a fine, penalty, punitive

28   damages or other form of assessment for any claim against it or any of the Defendants.

**L.      NO ADMISSIONS; NO USE**

1.      The Agreement shall in no event be construed or deemed to be evidence or an admission or a concession on the part of any Plaintiff, any Defendant, any Releasing Party, or any Released Party with respect to any claim of any fault or liability, any defense, or any claim of injury or damages.

2.      The Agreement, whether or not consummated, and any proceedings taken pursuant to the Agreement, are not and shall not in any event be:

a.      Construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission by any Plaintiff, Defendant, Settlement Class Member, or Released Party of the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in any litigation or the deficiency of any claim or defense that has been, could have been, or in the future might be asserted in any litigation, or of any liability, fault, wrongdoing or otherwise of such Party; or

b.      Construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission of any liability, fault or wrongdoing, or in any way referred to for any other reason, by any Plaintiff, Defendant, Releasing Party or Released Party in the Action or in any other civil, criminal or administrative action or proceeding other than such proceedings as may be necessary to effectuate the provisions of the Agreement.

//
//
//
//
//

**M.     MISCELLANEOUS PROVISIONS**

1.     <u>Entire Agreement</u>

The Agreement, including all Exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the Settlement and shall supersede any previous agreements, representations, communications and understandings among the Parties with respect to the subject matter of the Settlement.  The Agreement may not be changed, modified, or amended except in a writing signed by all Parties and, if required, approved by the Court.  The Parties contemplate that certain of the Exhibits to the Agreement relating to Class Notice may be modified by subsequent agreement of Mattel and Co-Lead Counsel prior to dissemination to the Settlement Class.

2.     <u>Governing Law</u>

The Agreement shall be construed under and governed by the laws of the State of California, applied without regard to laws applicable to choice of law.

3.     <u>Execution by Counterparts</u>

The Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Facsimile signatures or signatures sent by e-mail shall be treated as original signatures and shall be binding.

4.     <u>Notices</u>

Any notice, instruction, application for Court approval or application for Court orders sought in connection with the Settlement and the Agreement or other document to be given by any Party to any other Party shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, if to Mattel to the attention of Mattel's Counsel, and if to Settlement Class Members to the attention of Co-Lead Counsel on their behalf.

All notices to the Parties or counsel required by the Agreement shall be made in writing and communicated by fax and mail to the following addresses:

1

      a.     If to Plaintiffs or Co-Lead Counsel:

2

COUGHLIN STOIA GELLER      WHATLEY, DRAKE & KALLAS, LLC

3

RUDMAN & ROBBINS LLP      Joe R. Whatley, Jr.
John J. Stoia, Jr.      Edith M. Kallas

4

Rachel L. Jensen      Elizabeth Rosenberg
Thomas J. O'Reardon II      1540 Broadway, 37th Floor

5

655 West Broadway, Suite 1900      New York, New York  10036
San Diego, California  92101      Telephone:  212-447-7070

6

Telephone:  619-231-1058      Facsimile:  212-447-7077
Facsimile:  619-231-7423      jwhatley@wdklaw.com

7

johns@csgrr.com      ekallas@wdklaw.com
rachelj@csgrr.com      erosenberg@wdklaw.com

8

toreardon@csgrr.com

9

      b.     If to Mattel or Mattel's Counsel:

10

JONES DAY      JONES DAY
Hugh R. Whiting      Thomas E. Fennell

11

North Point      Michael L. Rice
901 Lakeside Avenue      2727 North Harwood Street

12

Cleveland, Ohio 44114      Dallas, Texas  75201-1515
Telephone:  (216) 586-3939      Telephone:  (214) 220-3939

13

Facsimile:  (216) 579-0212      Facsimile:  (214) 969-5100
hrwhiting@jonesday.com      tefennell@jonesday.com

14

      mlrice@jonesday.com

15

    5.    <u>Protective Orders</u>

16

      All orders, agreements and designations regarding the confidentiality of

17

documents and information ("Protective Orders") remain in effect, and all Parties and

18

counsel remain bound to comply with the Protective Orders.  Within thirty (30) days

19

of the Effective Date, the Parties will certify in writing that they have used their best

20

efforts to destroy or return to the producing Defendant all documents and information

21

produced in the Actions that were designated as "Confidential" or "Attorneys' Eyes

22

Only" pursuant to the Protective Order, previously entered in the Action.

23

    6.    <u>Miscellaneous Provisions</u>

24

      a.     The Agreement shall be binding upon, and inure to the benefit of,

25

the heirs, successors, assigns, executors and legal representatives of the Parties

26

to the Agreement and all Defendants and Released Parties.

27

      b.     Subject to Court approval, the Parties may agree to reasonable

28

extensions of time to carry out any of the provisions of the Agreement.

c.    The determination of the terms of, and the drafting of, the Agreement has been by mutual understanding after negotiation, with consideration by, and participation of, the Parties hereto and their counsel.

d.    The waiver by one Party of any provision or breach of the Agreement shall not be deemed a waiver of any other provision or breach of the Agreement.

e.    In the event of any variance between the terms of this Agreement and any of the Exhibits hereto, the terms of this Agreement shall control and supersede the Exhibit(s).

f.    All Exhibits to this Agreement are material and integral parts hereof, and are incorporated by reference as if fully rewritten herein.

g.    No opinion concerning the tax consequences of the Settlement to any Settlement Class Member is given or will be given by Mattel, Mattel's Counsel, Co-Lead Counsel, or Plaintiffs' Counsel; nor is any Party or their counsel providing any representation or guarantee respecting the tax consequences of the Settlement as to any Settlement Class Member. The Class Notice will direct Settlement Class Members to consult their own tax advisors regarding the tax consequences of the Settlement and any tax reporting obligations with respect thereto. Each Settlement Class Member is responsible for his/her tax reporting and other obligations respecting the Settlement, if any.

**N.    TERMINATION OF THIS AGREEMENT**

1.    In the event that:

a.    The Court does not enter an order granting Preliminary Approval Order conforming in all material respects to Section C.1 herein and Exhibit F hereof;

b.    The Court does not conditionally and finally certify the Settlement Class as defined herein or the Court's order certifying the Settlement Class is reversed, vacated, or modified in any material respect by another court; or

c.     The Court does not enter a Final Judgment and Order Approving Settlement conforming in all material respects to Section J herein and Exhibits G and H, or if entered, such Final Judgment and Order Approving Settlement is reversed, vacated, or modified in any material respect by another court,

then either of the Parties may terminate this Agreement within ten (10) business days of the event giving rise to the right to terminate by serving written notice upon the other Party and Court.  In the event of a termination under Sections N.1.b. or N.1.c. herein, Mattel shall cause the Claims Administrator to post information regarding the termination on the website established for the Settlement and to e-mail such information to those Settlement Class Members who provided an e-mail address to the Claims Administrator.  It is expressly agreed that neither the failure of the Court to award Attorneys' Fees and Expenses to Co-Lead Counsel or Incentive Awards to Plaintiffs, nor the amount of such Attorney's Fees and Expenses or Incentive Awards that may be finally determined and awarded, shall provide a basis for termination of this Agreement.

2.     In the event that the number of Settlement Class Members who exercise their rights to opt out under Section F.5. herein exceeds the number set forth in the Separate Supplemental Agreement between the Parties, Mattel may terminate this Agreement by serving written notice upon Co-Lead Counsel within five (5) business days of receiving the Requests for Exclusion pursuant to Section F.8. herein but no later than ten (10) days prior to the Final Approval Hearing.  Mattel may withdraw its election by providing written notice of such withdrawal to Co-Lead Counsel not later than five (5) days prior to the Final Approval Hearing.  In the event that Mattel terminates the Agreement pursuant to this provision, it shall cause the Claims Administrator to post information regarding the termination on the website established for the Settlement and to e-mail such information to those Settlement Class Members who provided an e-mail address to the Claims Administrator.  The Separate

1   Supplemental Agreement shall be available upon request to the Court but shall not be
2   filed with the Court or otherwise disclosed to any Person other than Co-Lead Counsel,
3   the Class Representatives, Mattel's Counsel and Mattel.
4         3.      In the event of the termination of this Agreement, all Parties shall be
5   restored to their respective positions as of immediately prior to the date of execution
6   of this Agreement.  Upon termination, Sections B and L herein shall survive and be
7   binding on the Parties, but this Agreement shall otherwise be null and void.
8         //
9         //
10        //
11        //
12        //
13        //
14        //
15        //
16        //
17        //
18        //
19        //
20        //
21        //
22        //
23        //
24        //
25        //
26        //
27        //
28        //

1  IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be

2  executed on its behalf by its duly authorized counsel of record, all as of the day set

3  forth below.

4  AGREED:

5  Dated: October 12, 2009          JONES DAY

6

7                                   By: *Hugh R. Whiting* /Jwet

8                                       Hugh R. Whiting

9                                   Attorneys for Defendant

10 Dated: _____, 2009     COUGHLIN STOIA GELLER RUDMAN
                                     & ROBBINS, LLP
11

12                                   By:_____

13                                       John J. Stoia, Jr.

14 Dated: _____, 2009     WHATLEY DRAKE & KALLAS, LLC

15

16                                   By:_____

17                                       Joe R. Whatley, Jr.

18                                       Co-Lead Counsel for Plaintiffs

19

20

21

22

23

24

25

26

27

28

1    IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement
2  to be executed on its behalf by its duly authorized counsel of record, all as of the day
3  set forth below.

4  AGREED:

5  Dated: _____ __, 2009          JONES DAY
6

7                                         By:_____
8                                            Hugh R. Whiting

9                                         Attorneys for Defendant

10 Dated: _October 12_, 2009             COUGHLIN STOIA GELLER RUDMAN
                                          & ROBBINS, LLP
11

12                                        By:_____
13                                           John J. Stoia, Jr.

14 Dated: _October 12_, 2009             WHATLEY DRAKE & KALLAS, LLC
15

16                                        By:_____
17                                           Joe R. Whatley, Jr.

18                                        Co-Lead Counsel for Plaintiffs
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 13, 2009.

s/ John J. Stoia, Jr.
JOHN J. STOIA, JR.

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:      johns@csgrr.com

# Mailing Information for a Case 2:07-ml-01897-DSF-AJW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael David Abraham**
  mabraham@bztm.com

- **Ivy D Arai**
  ivy@hbsslaw.com

- **Ben Barnow**
  b.barnow@barnowlaw.com,e.schork@barnowlaw.com,s.harris@barnowlaw.com

- **Mila F Bartos**
  mbartos@finkelsteinthompson.com

- **Steve W Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com

- **Michael D Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Mitchell M Breit**
  mbreit@wdklaw.com,ecf@wdklaw.com

- **Lori S Brody**
  lbrody@kaplanfox.com,kweiland@kaplanfox.com

- **Robert H Bunzel**
  rbunzel@bztm.com,bsage@bztm.com

- **Elaine T Byszewski**
  elaine@hbsslaw.com,JenniferB@hbsslaw.com,sharons@hbsslaw.com

- **Gretchen Freeman Cappio**
  gcappio@kellerrohrback.com,mbates@kellerrohrback.com

- **Stuart A Davidson**
  sdavidson@csgrr.com

- **Kimberly M Donaldson**
  kimdonaldson@chimicles.com

- **Juli E Farris**
  jfarris@kellerrohrback.com,kzajac@kellerrohrback.com

- **Elizabeth A Fegan**
  beth@hbsslaw.com,Chi_Filings@hbsslaw.com

- **Thomas E Fennell**
  tefennell@jonesday.com

- **Linda M Fong**
  lfong@kaplanfox.com,kweiland@kaplanfox.com

- **Paul J Geller**
  pgeller@csgrr.com

- **Pamela Gilbert**
  pamelag@cuneolaw.com

- **Lee M Gordon**
  lee@hbsslaw.com,JenniferB@hbsslaw.com,sharons@hbsslaw.com

- **Lance August Harke**
  lharke@harkeclasby.com

- **Amber S Healy**
  amberh@kallawgroup.com

- **Brian M Hoffstadt**
  bhoffstadt@jonesday.com

- **Ruben Honik**
  rhonik@golombhonik.com,lpena@golombhonik.com,emalloy@golombhonik.com

- **Heather Necklaus Hudson**
  hnhudson@eysterkey.com

- **Rachel L Jensen**
  rjensen@csgrr.com

- **Mitch H Kalcheim**
  mitch@kallawgroup.com

- **Edith M Kallas**
  ekallas@wdklaw.com,ecf@wdklaw.com

- **Michael L Kelly**
  mlk@kirtlandpackard.com

- **Jamie Ranah Kendall**
  jkendall@price-law.com,eamos@price-law.com,cnolan@price-law.com,mmendel@price-law.com

- **Jeffrey B Killino**
  jkillino@wklawyer.com

- **Laurence D King**
  lking@kaplanfox.com,kweiland@kaplanfox.com

- **Daniel J Kurowski**

dank@hbsslaw.com,chi_filings@hbsslaw.com

- **Elizabeth A Leland**
  bleland@kellerrohrback.com

- **Elwood G Lui**
  elui@jonesday.com

- **Timothy Mahoney**
  timm@hbsslaw.com,chi_filings@hbsslaw.com

- **Stephan Matanovic**
  smatanovic@golombhonik.com,lpena@golombhonik.com,emalloy@golombhonik.com

- **William A McKinnon**
  bmckinnon@mcgowanhood.com,bmcgovern@mcgowanhood.com

- **Manfred Patrick Muecke**
  mmuecke@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Thomas Joseph O'Reardon , II**
  toreardon@csgrr.com

- **Joseph L Paller , Jr**
  jlpaller@gslaw.org

- **Behram V Parekh**
  bvp@kirtlandpackard.com

- **Mark L Punzalan**
  mpunzalan@finkelsteinthompson.com

- **Julio J Ramos**
  ramosfortrustee@yahoo.com,ramosforsupervisor@yahoo.com

- **Thomas Ailbe Rector**
  tarector@jonesday.com

- **Jack Reise**
  jreise@csgrr.com

- **Michael L Rice**
  mlrice@jonesday.com,jameseyoung@jonesday.com,deborahsimmons@jonesday.com

- **Karen Hanson Riebel**
  khriebel@locklaw.com,crbaehman@locklaw.com

- **William N Riley**
  wriley@price-law.com

- **Rosemary M Rivas**
  rrivas@finkelsteinthompson.com,srenwick@finkelsteinthompson.com,jdito@finkelsteinthompson.com

- **Nicholas B Roth**
  nbroth@eysterkey.com

- **Lynn L Sarko**
  lsarko@kellerrohrback.com

- **Denise Davis Schwartzman**
  deniseschwartzman@chimicles.com

- **Rick L Shackelford**
  shackelfordr@gtlaw.com,gutierrezd@gtlaw.com

- **Jay Edward Smith**
  js@gslaw.org

- **John J Stoia , Jr**
  johns@csgrr.com,e_file_sd@csgrr.com

- **Paul A Traina**
  ptraina@elllaw.com

- **Laurie A Traktman**
  lat@gslaw.org

- **Gregory P Waters**
  gwaters@elllaw.com

- **Joe R Whatley , Jr**
  jwhatley@wdklaw.com,kgault@wdklaw.com,ecf@wdklaw.com

- **Hugh R Whiting**
  hrwhiting@jonesday.com

- **Joseph N Williams**
  jwilliams@price-law.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Gilbert Scott Bagnell
Bagnell and Eason
PO Box 11852
Columbia, SC 29211

Frank Baliant
Bonnett Fairbourn Friedman & Baliant PC
2901 North Central Avenue – Suite 1000
Phoenix, AZ 85012

Matthew C Branic
Krieg Devault LLP
```

One Indiana Square Suite 2800
Indianapolis, IN 46204

**Robert H Brunson**
Nelson Mullins Riley and Scarborough
PO Box 1806
Charleston, SC 29402

**Michael G. Crow**
Crow Law Firm LLC
1100 Poydras Street - Suite 1175
New Orleans, LA 70163

**Ryan D Dahl**
Jones Day
50 Grant Street Suite 3100
Pittsburgh, PA 15219

**John Gressette Felder**                                      **, Jr**
McGowan Hood Felder and Johnson
1405 Calhoun Street
Columbia, SC 29201

**Burton H Finkelstein**
Finkelstein Thompson & Loughran
Duvall Foundry
1050 30th St NW
Washington, DC 20007

**Frederic S Fox**
Kaplan Fox & Kilsheimer
850 Third Avenue 14th Fl
New York, NY 10022

**Andrew C Friedman**
Bonnett Fairbourn Friedman and Balint
2901 N Central Avenue - Suite 1000
Phoenix, AZ 85012

**Richard M Golomb**
Golomb & Honik
121 South Broad Street 9th Floor
Philadelphia, PA 19107

**Michael D Gottsch**
Chimicles and Tikellis LLP
One Haverford Center
361 West Lancaster Avenue
Haverford, PA 19041-0100

**Donald R Hall**
Kaplan Fox and Kilsheimer
850 Third Avenue 14th Floor
New York, NY 10022

**Steven Michael Hayes**
Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP
112 Madison Avenue
New York, NY 10016

**Danielle Marie Hohos**
Jones Day
51 Louisiana Avenue

Washington, DC 20001

**Steven Randall Hood**
McGowan Hood and Felder
1539 Healthcare Drive
Rock Hill, SC 29732

**John E Iole**
Jones Day
500 Grant St, 31st Fl
Pittsburgh, PA 15219

**Walter J Lack**
Engstrom Lipscomb & Lack
10100 Santa Monica Boulevard  12th Floor
Los Angeles, CA 90067-4107

**Michael S Levin**
Golomb and Honik
121 South Broad Street  9th Floor
Philadelphia, PA 19107

**Karen Jennifer Marcus**
Finklestein Thompson LLP
1050 30th Street NW
Washington, DC 20007

**Deirdre Shelton McCool**
Nelson Mullins Riley and Scarborough
PO Box 1806
Charleston, SC 29402

**Chad A McGowan**
McGowan Hood Felder and Johnson
1539 Healthcare Drive
Rock Hill, SC 29732

**Mark J R Merkle**
Krieg Devault LLP
One Indiana Square Suite 2800
Indianapolis, IN 46204

**Stephen G Morrison**
Nelson Mullins Riley and Scarborough
P O Box 11070
Columbia, SC 29211

**Marc T Quigley**
Krieg Devault LLP
One Indiana Square Suite 2800
Indianapolis, IN 46204

**Elizabeth A Shonson**
Coughlin Stoia Geller Rudman and Robbins
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809

**Michael J Templeton**
Jones Day
222 East 41st Street
New York, NY 10017

**John B Williams**

Jones Day
51 Louisiana Avenue
Washington, DC 20004

**David L Woloshin**
Woloshin and Killino
1800 John F Kennedy Boulevard, 11th Floor
Philadelphia, PA 19103-2925