COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR. (141757)
RACHEL L. JENSEN (211456)
THOMAS J. O'REARDON II (247952)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
johns@csgrr.com
rachelj@csgrr.com
toreardon@csgrr.com

WHATLEY, DRAKE & KALLAS, LLC
JOE R. WHATLEY, JR.
EDITH M. KALLAS
ELIZABETH ROSENBERG
1540 Broadway, 37th Floor
New York, NY 10036
Telephone: 212/447-7070
212/447-7077 (fax)
jwhatley@wdklaw.com
ekallas@wdklaw.com
erosenberg@wdklaw.com

Co-Lead Counsel for Plaintiffs

JONES DAY
ELWOOD LUI (45538)
555 South Flower Street, Fiftieth floor
Los Angeles, CA 90071-2300
Telephone: 213/489-3939
213/243-2539 (fax)
elui@jonesday.com

Attorneys for Defendant

JONES DAY
HUGH R. WHITING
717 Texas, Suite 3300
Houston, TX 77002
Telephone: 832/239-3939
832/239-3600 (fax)
hrwhiting@jonesday.com

THOMAS E. FENNELL
MICHAEL L. RICE
2727 N. Harwood St.
Dallas, TX 75201
Telephone: 214/220-3939
214/969-5100 (fax)
tefennell@jonesday.com
mlrice@jonesday.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re MATTEL, INC., TOY LEAD PAINT PRODUCTS LIABILITY LITIGATION | No. 2:07-ml-01897-DSF-AJW |
| | MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................. 1

II.  BACKGROUND .................................................................................. 2

    A.   The Prior Proceedings ............................................................... 2

    B.   The History of the Negotiations Leading Up to the Settlement ........... 5

III. THE PROPOSED SETTLEMENT CLASS SATISFIES THE
REQUIREMENTS FOR CONDITIONALLY CERTIFYING A
SETTLEMENT CLASS ......................................................................... 5

    A.   The Proposed Settlement Class, Class Representatives, and Co-
Lead Class Counsel .................................................................... 5

    B.   The Requirements for Certification of a Rule 23(b)(3)
Settlement Class Are Satisfied ..................................................... 6

        1.   The Settlement Class Satisfies Rule 23(a) ............................ 7

        2.   The Settlement Class Satisfies Rule 23(b)(3) ........................ 8

IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED ........... 8

    A.   The Standard for Preliminary Approval .......................................... 8

    B.   The Terms of the Proposed Settlement ............................................ 9

    C.   The Proposed Settlement Warrants Preliminary Approval as
Fair, Reasonable, and Adequate .................................................. 11

        1.   The Terms of the Stipulation Favor Preliminary Approval ..... 12

        2.   The Risks Inherent in Continued Litigation and the Risks
of Obtaining and Maintaining Class-Action Status
Through Trial Support Preliminary Approval ........................ 12

        3.   The Progress in the Litigation Favors
Preliminary Approval ...................................................... 13

V.   THE PROPOSED NOTICE PROGRAM CONSTITUTES
ADEQUATE NOTICE AND SHOULD BE APPROVED ........................ 14

    A.   The Publication Schedule Depends Upon the Final Hearing ............. 14

    B.   The Four-Part Notice Program Will Provide the Best
Practicable Notice, Including Individual Notice to All
Identifiable Settlement Class Members .......................................... 16

        1.   Notice Will Be Posted on a Designated Website ................... 17

**Page**

     2.   Direct Notice Will Be Provided to Settlement Class Members for Whom Records Provide Address Information ..................................................................... 17

     3.   Notice Will Be Published in Twenty Targeted Publications ............................................................................. 18

     4.   The Notice Program Includes Internet Placement .................... 18

C.   The Proposed Notice Adequately Informs Settlement Class Members of the Class-Action Settlement ............................................ 19

D.   The Notice Adequately Explains the Procedures to Request Exclusion or to Object .......................................................................... 20

E.   The Notice Adequately Informs the Settlement Class Members of the Final Fairness Hearing ................................................................. 22

F.   The Notice Program Should Be Approved ......................................... 22

VI.   CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ...................................................................... 6, 8

*Churchill Village, LLC v. Gen. Elec. Co.,*
    361 F.3d 566 (9th Cir. 2004) ....................................................... 8, 20

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ..................................................... *passim*

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 14

*Officers for Justice* v. *Civil Serv. Comm'n.,*
    688 F.2d 615 (9th Cir. 1982) ......................................................... 1, 9

*Pacific Enter. Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995) ............................................................... 8

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23................................................................................. 6, 22, 23
    Rule 23(a) ................................................................................... 7, 8
    Rule 23(a)(4) .................................................................................. 8
    Rule 23(b)(3) ................................................................... 5, 6, 8, 15
    Rule 30(b)(6) .................................................................................. 4
    Rule 23(c)(2) ................................................................................ 15
    Rule 23(c)(2)(B) ................................................................ 2, 15, 19, 20
    Rule 23(c)(3) ................................................................................ 20
    Rule 23(e) ............................................................................. 15, 20
    Rule 23(e)(1) ................................................................................ 15
    Rule 23(e)(B) .................................................................................. 2
    Rule 23(g) ...................................................................................... 6
    Rule 23(h)(1) ................................................................................ 20
    Rule 30(b)(6) .................................................................................. 4

California Business & Professions Code
    §17200 ............................................................................................ 3

|  |  | **Page** |
|---|---|---|

California Civil Code

§1750 .................................................................................................................3
§1791.1(a) .........................................................................................................3
§1791.1(b) .........................................................................................................3
§1792 .................................................................................................................3
§1792.1 ..............................................................................................................3
§1792.2 ..............................................................................................................3

**SECONDARY AUTHORITIES**

David F. Herr, Annotated *Manual for Complex Litigation* (4th ed. 2005)

§21.312 .............................................................................................................20
§21.632 .......................................................................................................1, 8, 9
§21.633 ...............................................................................................15, 20, 22
§21.634 .............................................................................................................22
§21.722 .............................................................................................................20

# I.     INTRODUCTION

The parties have entered into a settlement agreement that achieves an excellent result for twenty-two federal actions that comprise this Multi-District Litigation ("MDL") concerning millions of children's toys recalled by Mattel and its subsidiary Fisher-Price (collectively "Mattel").  In early 2009, plaintiffs and Mattel entered into settlement discussions to determine whether the claims brought in this action could be resolved in a fair and reasonable manner.  After extended and intense negotiations, as well as several mediation sessions before Judge Daniel Weinstein (Ret.) of JAMS, the parties concurrently file with this motion and memorandum the Stipulation of Class Action Settlement ("Stipulation") into which they have entered and respectfully request that the Court grant preliminary approval for their class action settlement.

The Stipulation provides for substantial economic relief to the putative Class, including refunds for the purchase price of the toys and additional relief for those who previously participated in Mattel's recalls.  Further, the Stipulation provides for valuable injunctive relief in the form of a Quality Assurance System Program, with which Mattel will certify to be in compliance to the Court for three years.  Finally, the Stipulation provides for payments to parents and guardians for the unreimbursed costs of any lead testing of their children done within six weeks of the recall announcements.

At the preliminary approval stage, the Court need only "make a preliminary determination on the fairness, reasonableness, and adequacy" of the settlement. David F. Herr, Annotated *Manual for Complex Litigation* §21.632 at 321 (4th ed. 2005) (hereinafter, the "*Manual*").  In so doing, the Court reviews the settlement only to determine that the settlement is not collusive and, "taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice* v. *Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982).

The Stipulation was the product of difficult negotiations and will fairly resolve this litigation through the conditional certification of a settlement class comprised of

all persons who purchased or acquired a new Recalled Toy (the "Settlement Class"), as detailed below. The proposed Settlement Class meets all of the requirements for certification of a settlement class, and the proposed class notice program satisfies all of the requirements of Fed. R. Civ. P. Rules 23(c)(2)(B) and 23(e)(B), providing the best notice practicable under the circumstances to Settlement Class members.

Plaintiffs and Mattel therefore move this Court for an order (1) conditionally certifying the Settlement Class, (2) granting preliminary approval of the proposed settlement, (3) approving the proposed notice program and directing that notice be disseminated to the Settlement Class as provided therein, (4) appointing Co-Lead Counsel for Plaintiffs to serve as Co-Lead Class Counsel, and (5) appointing Gilardi & Co. LLC as the Claims Administrator.

## II.     BACKGROUND

### A.     The Prior Proceedings

In August, September, and October 2007, Mattel announced the recall of approximately 1.5 million toys because the levels of lead in the surface paint on portions of some of the toys exceeded applicable federal standards (the "Lead Recalls"). Also in August 2007, Mattel announced the expansion of a November 2006 recall of toys that incorporated small, rare earth magnets, even though those toys violated no safety standard, in order to retroactively apply a new magnet retention standard adopted by Mattel. The combined 2006 and 2007 recalls affected approximately 12.6 million toys sold by Mattel in the U.S. between 2002 and early 2007 (the "Magnet Recalls," and together with the Lead Recalls, the "Recalls"). Finally, in November and December 2007, certain plastic cuffs from toy blood pressure monitors (the "Cuffs") were withdrawn from the retail market in Illinois because some indeterminate number of the plastic Cuffs contained lead that exceeded an Illinois statutory standard. Mattel estimated that there were approximately 1.6 million affected Cuffs likely still in the hands of consumers.

Shortly after the August 2, 2007 recall was announced, the first consumer class action was filed in this Court on August 7, 2007. Over the next two months, a total of twenty-two lawsuits were filed in federal, state, and District of Columbia courts. The state court and District of Columbia cases were removed to federal court, and on December 17, 2007, the Judicial Panel on Multidistrict Litigation established this coordinated proceeding, and all cases were transferred to this Court.

Thereafter, on May 16, 2008, Plaintiffs filed a Second Consolidated Amended Complaint (the "Complaint"), asserting a total of 13 Counts. The Complaint includes claims for (1) breach of express warranty; (2) breach of implied warranty; (3) negligence in design, manufacturing, and warnings; (4) strict liability in design, manufacturing and warnings; (5) violation of the Consumer Product Safety Act ("CPSA"); (6) as to plaintiffs nationwide, violation of Cal. Bus. & Prof. Code §17200 by manufacturers; (7) as to California plaintiffs, violation of Cal. Bus. & Prof. Code §17200 by retailers; (8) as to plaintiffs nationwide, violation of Cal. Consumer Legal Remedies Act (Cal. Civil Code §1750) by manufacturers; (9) as to California plaintiffs, violation of Cal. Consumer Legal Remedies Act (Cal. Civil Code §1750) by retailers; (10) as to California plaintiffs, violation of Cal. Song-Beverly Consumer Warranty Act implied warranty of merchantability (Cal. Civ. Code §§1792 & 1791.1(a)); (11) as to California plaintiffs, violation of Cal. Song-Beverly Consumer Warranty Act implied warranty of fitness for particular purpose (Cal. Civ. Code §§1792.1 & 1791.1(b)) by manufacturers; (12) as to California plaintiffs, violation of Cal. Song-Beverly Consumer Warranty Act implied warranty of fitness for particular purpose (Cal. Civ. Code §§1792.2 & 1791.1(b)) by retailers; and (13) unjust enrichment.

On June 24, 2008, defendants filed motions to dismiss the Complaint. After a hearing and supplemental briefing, the Court granted in part and denied in part the motions. The Court upheld all of plaintiffs' claims except the CPSA claims concerning toys with magnets and the Cuffs. On the remaining claims, all plaintiffs

sought reimbursement for the purchase price of the toys. The plaintiffs suing based on lead in the paint and the Cuffs also sought costs of diagnostic screening and costs of treatment. In the Complaint, plaintiffs also included a prayer for an injunction and, under the CLRA and Song-Beverly Consumer Warranty Act, assert a claim for punitive damages.

Before and after the motions to dismiss were decided, the parties engaged in significant discovery. Plaintiffs served comprehensive document requests on defendants. In response, and over the course of months of meet and confer negotiations regarding topics such as electronically stored information ("ESI"), document custodians and search terms, defendants produced over 117,000 pages of documents, including substantial electronic files. In response to subpoenas duces tecum, plaintiffs also obtained nearly 40,000 pages of documents from more than eight third-party retailers, toy industry groups, and laboratories that tested some of the toys at issue. Plaintiffs also drafted and negotiated numerous letters rogatory to obtain discovery from the Chinese manufacturing entities implicated by the recalls. Plaintiffs propounded, and Mattel responded to, several sets of interrogatories as well as requests for admissions. Plaintiffs deposed Mattel pursuant to an initial Fed. R. Civ. P. Rule 30(b)(6) deposition notice. Likewise, the five retailer defendants individually responded to interrogatories and requests for admissions, and provided written information in lieu of a testimony in response to the Rule 30(b)(6) deposition notices served by plaintiffs. Plaintiffs also requested an inspection of, and Mattel provided access to, Mattel's overflow warehouse space in Redlands, California, which stores Recalled Toys that Mattel withheld from sale and received as returns from retailers.

In addition, plaintiffs consulted experts, including toxicologists, recall specialists, and industry experts, to help formulate and substantiate the claims in their case in preparation for a possible motion for preliminary injunction, for dispositive motions, and ultimately for trial.

**B. The History of the Negotiations Leading Up to the Settlement**

The parties' Stipulation is the product of lengthy and intense arm's-length negotiations that took place in direct negotiations between the parties and in mediation spanning more than a year. Negotiations regarding potential resolution of this case began in earnest early this year. In addition to direct negotiations, plaintiffs and Mattel agreed to mediate before the Honorable Daniel J. Weinstein (Ret.) of JAMS to assist them in reaching agreement on the most difficult issues surrounding the provisions for consumer relief. Plaintiffs and Mattel held a day-long mediation session with Judge Weinstein on April 1, 2009, followed by at least four substantive conference calls and three additional in-person meetings. These efforts resulted in a June 5, 2009 Term Sheet reflecting the principal terms of a settlement. At least five more substantive and lengthy conference calls followed the Term Sheet as the parties negotiated the Stipulation and the Exhibits thereto. The parties exchanged over a dozen versions of the Stipulation and the various exhibits attached thereto, the Class Notices, and built out the Settlement website and the claims administration process in conjunction with the proposed claims administrator, Gilardi & Co.

During the negotiations and the mediation, the parties did not address attorneys' fees until all of the substantive terms of the class settlement had been agreed upon. A further mediation session with Judge Weinstein was required to address Co-Lead Counsel's request for fees. The parties now respectfully submit the Stipulation that resulted from these lengthy discussions to the Court for preliminary approval.

**III. THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CONDITIONALLY CERTIFYING A SETTLEMENT CLASS**

**A. The Proposed Settlement Class, Class Representatives, and Co-Lead Class Counsel**

The parties request that the Court conditionally certify, under Federal Rule of Civil Procedure 23(b)(3), the Settlement Class defined as follows:

> All Persons who (a) purchased or acquired (including by gift) a new "Recalled Toy' (as defined in the Agreement) for or on behalf of themselves or a minor child over whom they have custody and control as a parent or guardian, or to be given as a gift to another Person; or (b) are the parent or guardian of a minor child who purchased or acquired (including by gift) a new Recalled Toy.

("Settlement Class" or "Settlement Class Members"); Stipulation, §A.50. The following persons would be expressly excluded from the Settlement Class:

> Excluded from the Settlement class are: (1) all Persons who purchased or acquired a Recalled Toy for resale, or purchased or acquired a used Recalled Toy; (2) all Defendants and their affiliated entities, legal representatives, successors and assigns; (3) any Person who files a valid, timely Request for Exclusion; and (4) the Judges to whom this Action is assigned and any members of their immediate families.

*Id.* "Recalled Toy" is defined in the Stipulation as:

> Recalled Toys means those toy products made by Mattel or for Mattel by a Vendor, sold in the United States, and subject to the Recalls as identified more particularly in [Exhibit A to the Stipulation].

*Id.* §A.44.

The parties also move the Court to designate the named plaintiffs in the Complaint filed in this Action as Class Representatives of the Settlement Class. Mattel agrees that the named plaintiffs in the Complaint satisfy the requirements for Settlement Class representatives, and Mattel agrees to the appointment of Co-Lead Counsel as satisfying Rule 23(g).

## B. The Requirements for Certification of a Rule 23(b)(3) Settlement Class Are Satisfied

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. But in assessing those class-certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if

tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### 1. The Settlement Class Satisfies Rule 23(a)

The parties agree that the proposed Settlement Class satisfies the four requirements of Rule 23(a) for purposes of settlement. Numerosity is evidenced by the fact that it is estimated that more than 15 million toys come within the Stipulation's definition of Recalled Toys. Commonality for purposes of the Stipulation and Rule 23(a) exists among plaintiffs. The common questions are whether the claims that might be asserted in their behalf have been settled on terms that are fair, reasonable and adequate. The parties agree that, for purposes of settlement, the named plaintiffs satisfy the typicality requirement. Finally, the difficult, arms-length settlement negotiations that followed discovery and motion practice demonstrates that Co-Lead Counsel and the named plaintiffs adequately represent the Settlement class.

In considering the adequacy requirement of Rule 23(a), the Court should resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *See Hanlon*, 150 F.3d at 1020.

The Stipulation avoids conflicts of interest because each class Settlement Class Member will benefit from the quality assurance provisions in the Stipulation, and all Settlement Class Members are entitled to some form of compensation. Differences in the form of compensation within the Settlement Class principally reflect variations in the Settlement Class Members' ability to prove that they purchased or received an affected toy, and to reward those who previously participated in the Recalls, while providing incentive to those who did not participate to return the Recalled Toys to Mattel for disposal.

Furthermore, the named plaintiffs have demonstrated vigorous prosecution of the Settlement Class claims, as described above. Furthermore, proposed Co-Lead Counsel have represented the interests of the proposed Settlement Class in motion practice on both procedural issues and on the merits. *See Hanlon*, 150 F.3d at 1022 (finding "counsel's prosecution of the case sufficiently vigorous to satisfy any Rule 23(a)(4) concerns"). Accordingly, for purposes of the Stipulation, the parties agree that the named plaintiffs and Co-Lead Counsel are adequate representatives of the Settlement Class under Rule 23(a)(4).

### 2. The Settlement Class Satisfies Rule 23(b)(3)

As for the Rule 23(b)(3) factors, Mattel does not dispute that the predominance requirement is satisfied in the context of the proposed settlement. And as the United States Supreme Court has explained, a settlement class need not be manageable as a **trial** class action in order to be certified as a **settlement-only** class. *Amchem*, 521 U.S. at 619. Thus, irrespective of whether this case would be maintainable as a trial class, it can be certified as a settlement class because all of the requirements of Rule 23(a) and all of the relevant requirements of Rule 23(b)(3) have been met in the settlement context.

Accordingly, this Court should conditionally certify the Settlement Class proposed by the parties.

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED

### A. The Standard for Preliminary Approval

Settlements of complex class actions prior to trial are strongly favored. *See Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re; Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The preliminary-approval step requires the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms . . . ." *Manual* §21.632, at 321. At this preliminary-approval step, the Court must conduct a *prima facie* review of the

- 8 -

relief and notice provided by the Stipulation to determine that notice should be sent to the Settlement Class Members. *See id.* The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *accord Hanlon*, 150 F.3d at 1027. In making this determination, the Court should evaluate the fairness of the settlement in its entirety. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . . The settlement must stand or fall in its entirety."). The decision to grant preliminary approval is committed to the Court's sound discretion. *Officers for Justice*, 688 F.2d at 625.

**B.     The Terms of the Proposed Settlement**

Under the terms of the Stipulation, Mattel has agreed to, and has implemented, a Quality Assurance System, as defined in the Stipulation, that incorporates testing for magnet retention, procedures to identify and prevent the sale of product with impermissible levels of lead in the paint or plastic substrate in or on accessible parts, and contractual requirements for third-party vendors manufacturing products for Mattel. The Quality Assurance System will remain in effect for three years, and Mattel will certify annually during that period to Co-Lead Counsel and the Court that it is in good-faith compliance. (Stipulation, §D.1.) These provisions inure to the benefit of all consumers of Mattel's products and provide remedies that might not be available even if plaintiffs were to prevail on all of the claims asserted in the Complaint.

Subject to the limits set forth below, Settlement Class Members are entitled to claim economic relief from Mattel. (Stipulation, §D.2.) The forms of compensation provided reflect the value of the particular Recalled Toys purchased or acquired by the Settlement Class Member, whether the Settlement Class Member already has

participated in Mattel's voluntary Recalls, and the degree of proof underlying the Settlement Class Member's claim.

- Each Settlement Class Member who earlier participated in Mattel's voluntary Recalls will receive a cash payment. Those persons who previously received vouchers in a Recall will be sent a check equal to 50% of the Recall voucher they received or $10, whichever is higher. Returned checks will become a *cy pres* contribution to the National Association of Children's Hospitals and Related Institutions ("NACHRI").

- Those Settlement Class Members who now return a Recalled Toy(s) without proof of purchase will be entitled to choose either a check or voucher equal to the Recall Price(s) of the Recalled Toy(s) (or, if accompanied with valid proof of purchase, equal to the actual price paid).

- Those Settlement Class Members who discarded a Recalled Toy(s) because of the Recalls, but now submit a valid proof of purchase, will be entitled to choose either a check or voucher equal to the actual price they paid for the Recalled Toy(s).

- Settlement Class Members who purchased or acquired Recall Toy(s) but discarded them because of the Recalls and no longer have proof of purchase may submit declarations and receive vouchers for the Recall price of up to three toys per address/household. The total relief available for this category is $10,000,000.

- Settlement Class Members who purchased or acquired one of the small toys for which replacements were offered in a Recall may submit claims for $4 per toy, up to $12 per household for those Class Members that do not possess the toys or proof of purchase. Settlement Class Members who return one of the toys will also receive a free replacement toy, if available in Mattel's inventory.

- Settlement Class Members who had lead testing performed on a minor child of whom they are the parent or guardian within six weeks of the announcement of the Recall of the Recalled Toy to which the child was exposed may submit claims for unreimbursed testing costs. The total available for lead testing reimbursement is $600,000.

Stipulation, §D.3.

In addition to the economic relief to Settlement Class Members, Mattel will contribute $275,000 to the NACHRI to fund programs related to child safety. (Stipulation §D.4.) NACHRI is an organization of children's hospitals that promotes the health and well-being of all children and their families through support of children's hospitals and health systems that are committed to excellence in providing health care to children. *See* www.childrenshospitals.net.

The settlement will result in the dismissal with prejudice of all of the class actions pending against defendants and the release of all individual and class claims that were or could be raised against the defendants relating to the Recalled Toys, with the exception that the Settlement Class Members will not release individual claims for personal injury. (Stipulation, §§G, H)

Additionally, Mattel will pay the costs of the Class notice program and of claims administration.

Mattel also agreed not to oppose Class Representatives' applications for Incentive Awards up to $500 per family or address. Finally, Mattel will not oppose Co-Lead Counsel's application for fees and expenses up to $12.9 million. The fees and expenses awarded by the Court will be paid by Mattel separately and will not affect the relief to the Settlement Class Members.

## C. The Proposed Settlement Warrants Preliminary Approval as Fair, Reasonable, and Adequate

Three key factors warrant a preliminary finding by the Court that the Stipulation is fair, reasonable, and adequate. First, the terms of the Stipulation, which were the product of arm's-length negotiations, are fundamentally fair, reasonable, and adequate, and favor preliminary approval. Second, the putative Settlement Class Members would face substantial risks of continued litigation, including the risk of obtaining, (and, if obtained, maintaining) class-action status for trial. Third, this case has proceeded beyond the initial stages of litigation, so the parties and the Court can fairly assess the benefits of the proposed settlement in light of the strength of the case.[1]

---

[1] Later, at the final approval stage, courts balance similar factors in evaluating a proposed class-action settlement: (1) the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class-action status throughout the trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceeding; (5) the experience and views of counsel; (6) the presence of a governmental participant; and (7) the reaction of the class members to the proposed

- 11 -

### 1. The Terms of the Stipulation Favor Preliminary Approval

The specific terms of the Stipulation easily meet the standard for "overall fairness." *See Hanlon*, 150 F.3d at 1026. The relief offered to Settlement Class Members both provides the principal relief sought in this action – a full refund for anyone possessing either a Recalled Toy or Proof of Purchase – and incorporates provisions designed to help avoid the recurrence of such incidents in the future, while also providing compensation to other Settlement Class Members who may face substantial proof problems either with respect to their claim of purchasing a Recalled Toy or their right to reimbursement for past lead level testing.

In addition, the relief offered in the Stipulation is desirable because those Settlement Class Members who have already participated in the Recalls will automatically get a check, while Settlement Class Members who have either the Recalled Toys or a valid Proof of Purchase can choose whether they receive a voucher for new toys or a cash refund. Significantly, the Settlement Class Members are in a particularly favorable position here, since they can individually assess the value of the settlement relief offered at the same time they receive their right to opt to out of the Settlement Class.

Finally, in the Stipulation, the parties have agreed to a release that is properly tailored to this case and is fair and reasonable. (*See* Stipulation, §H.)

### 2. The Risks Inherent in Continued Litigation and the Risks of Obtaining and Maintaining Class-Action Status Through Trial Support Preliminary Approval

The substantial risks of continued litigation on the merits, as well as risks associated with obtaining, (and, if obtained, maintaining) class-action status for trial, also warrant preliminary approval by the Court. First, Mattel would raise substantial

---

settlement. *Hanlon*, 150 F.3d at 1026. In addition, courts should evaluate the possibility of collusion. *Id.* at 1027.

defenses and legal challenges to plaintiffs' claims, many of which were previewed in defendants' motions to dismiss. Second, there is a risk that no class would be certified, or if certified, that the class could not be maintained throughout a trial. These risks that the putative Settlement Class Members would face if litigation were to continue, together with the certainty that further litigation would be expensive, complex, and time consuming, as the Court proceeded to resolve difficult and complicated issues on the merits and to decide the limits of the class-certification procedure, favor the Court's approval of the Stipulation as fair, reasonable, and adequate. *Cf. Hanlon*, 150 F.3d at 1026 (providing that a court should consider "the risk, expense, complexity, and likely duration of further litigation" and "the risk of maintaining class action status throughout the trial" in making a final-approval determination).

### 3. The Progress in the Litigation Favors Preliminary Approval

Finally, the terms of the Stipulation were agreed upon following sufficient fact discovery and litigation on the merits of plaintiffs' claims, including the resolution of defendants' motions to dismiss, and after extensive, arm's-length negotiations by experienced counsel with the assistance of a skilled mediator. Thus, the parties and the Court are in a position to assess the strength of this case and the comparative benefits of the proposed settlement. *Cf. Hanlon*, 150 F.3d at 1026 (providing that a court should consider "the extent of discovery completed and the stage of the proceedings" in making a final-approval determination). This is not a case where a lawsuit is filed and the proposed settlement arose quickly. Here, the risks of continued litigation are clear from the discovery done to date and the issues raised in the motions to dismiss. Moreover, the parties are in a position to assess those risks and possible litigation outcomes, as compared to the benefits to be gained from the specific terms of the Stipulation, including both monetary and injunctive relief for

Settlement Class Members.  Thus, the progress in the litigation also favors approval of the settlement as fair.

In addition to the litigation on the merits to date, the lengthy and extensive arm's-length settlement negotiations also indicate the fairness of the settlement that was reached.  The history of the negotiations recounted above creates a presumption that the Stipulation's terms are facially fair, adequate, and reasonable.  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair."); *cf. Hanlon*, 150 F.3d at 1027.

Based on the foregoing factors, the parties request that the Court determine preliminarily that the Stipulation is fair, reasonable, and adequate, and grant preliminary approval of the settlement, subject to further consideration at the Final Fairness Hearing.

## V. THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE AND SHOULD BE APPROVED

### A. The Publication Schedule Depends Upon the Final Hearing

In order to provide the broadest possible coverage, the parties have agreed to publish advertisements in a targeted group of nationwide publications.  The advertisements must contain the relevant dates for actions by Settlement Class Members.  Lead times for placements of advertisements in those publications run up to three months.  Thus, the parties' proposed schedule depends upon the Court's approval and scheduling of the Final Approval Hearing.  The key dates, relevant factors, and the parties' request are:

| Milestone | Factors | Date Requested |
|-----------|---------|----------------|
| Notice Date | Date Notice first sent to Settlement Class | Begins after Preliminary Approval |
| Opt-Out/Objection Deadline | 21 days before Final Approval Hearing | February 22, 2010 |

| Final Approval Hearing | 1. Court's schedule | March 15, 2010 |
| | 2. 85 days after Notice Date | |
| | 3. 51 days after last advertisement published (1/20/2010 on current schedule) | |
| Claims Deadline | 75 days after Final Approval Hearing | May 29, 2010 |

Any significant delay in setting the dates could delay publication of the last advertisements beyond January 20, 2010, which would require extending all other dates.

Once preliminary approval of the settlement is granted, notice must be directed to the Settlement Class Members. For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *Id.*

When a court is presented with a class, the class-certification notice and notice of settlement may be combined in the same notice. *Manual* §21.633, at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice will allow the Settlement Class Members to decide whether to opt out of or participate in the class, and/or to object to the settlement and argue against final approval by the Court. *See id.* The proposed notice program here, which informs Settlement Class Members of their rights and includes a comprehensive plan for delivery of notice by email, U.S. postal mail, publication, internet placements, and

newswire services, constitutes the best notice practicable under the circumstances of this case.

**B.    The Four-Part Notice Program Will Provide the Best Practicable Notice, Including Individual Notice to All Identifiable Settlement Class Members**

As provided in the Stipulation, the parties have agreed to a comprehensive notice program to ensure the best notice practicable is directed to the Settlement Class Members.  To facilitate the notice process, the parties have agreed to request that the Court approve Gilardi & Co. LLC ("Gilardi"), an experienced and highly qualified settlement administrator, as the Claims Administrator to assist and provide professional guidance in the implementation of the notice program, as well as the claims filing process and other aspects of the settlement administration.  Gilardi is the nation's largest sole-purpose administrator of class action settlements and in over a quarter-century has managed more than 2,500 administrations, with distributions totaling more than $20 billion.  Gilardi has experience in all aspects of settlement administration, from creating and implementing large-scale notice programs, to sending notices to millions of individuals and businesses through U.S. mail and email, to processing and distributing claim information.   A description of Gilardi's experience and capabilities in class-action settlements is provided in the Declaration of Dennis Gilardi, filed concurrently herewith.[2]

Gilardi has worked with Larkspur Design Group, LLC ("LDG"), to develop the notice program for this settlement.   For more than a quarter-century, LDG has provided expertise in the advertising and communications industry, with specific focus on legal notice campaigns.  LDG has provided notice in a wide variety of class action cases, including consumer fraud and product liability cases.  Indeed, LDG has

---

[2]    *See also* www.gilardi.com.

designed and implemented over 1,200 advertising and notification plans. *See* Gilardi Decl. ¶6.

Given the experience and resources of Gilardi, the parties respectfully request that the Court approve Gilardi as the Claims Administrator. The parties have agreed to the form of the long-form and publication notices, as set forth in the exhibits to the Stipulation, and Mattel will pay for the costs of preparing, printing, emailing, posting, mailing, and publishing the approved notice.

The specific elements of the class notice program are described further below. The notice program was designed to maximize exposure to a target audience of parents or guardians of children under the age of 12. A particular focus was placed upon women with children under the age of 12, because demographic data suggests that women are at least two times more likely to be the purchasers of the products at issue here. The publications selected for the notice program reflect an emphasis on this target audience. The program accomplished over a 90% reach to this target audience, as set forth in detail in Exhibit D to the Stipulation.

### 1. Notice Will Be Posted on a Designated Website

First, the notice program outlined in the Stipulation provides for an official settlement website, www.mattelsettlement.com, on which copies of the Stipulation, the long-form notice, and other documents important to the case are available for Settlement Class Members to view and print. There is also a contact email and toll-free number for Settlement Class Members to contact the Claims Administrator if they have questions.

### 2. Direct Notice Will Be Provided to Settlement Class Members for Whom Records Provide Address Information

Second, the notice program outlined in the Stipulation provides that a summary notice postcard directing individuals to the settlement website be sent to the Settlement Class Members for whom address information is known. The names and contact information for all purchasers has been collected from the records of Mattel

and all retailer defendants, except KB Toys, which is in bankruptcy. The final total number of purchaser contacts will not be known until the combined records have been "de-duplicated," but Mattel has over 600,000 names and addresses, and more than 500,000 more should be available from the retailer defendants. The notice will also provide an option by which Settlement Class Members can contact Gilardi and request that a printed long-form notice and a paper claim form be mailed to them. The summary notice method is effective because the recipient does not have to open anything to be instantly exposed to having an opportunity to read the notice.

### 3. Notice Will Be Published in Twenty Targeted Publications

LDG will implement one-third page or half page ads in USA Today and consumer magazines, with equivalent space in targeted Sunday Supplement magazines. LDG will seek to have the ad positioned near a lead article that would likely draw interest from the target audience demographic. To develop the list of publications, LDG identified the demographics of the target audience for class notice in this case, and then ranked the consumer magazines and national newspapers by composition and coverage. After ranking the magazines and national newspapers by composition and coverage, LDG chose the most effective magazines and newspapers for this specific class. For the Settlement Class Members who will receive notice by publication, the summary notice will direct individuals to the settlement website where they can file their claims online. For those Settlement Class Members without internet access, the summary notice will include an option by which the Settlement Class Members can contact Gilardi and request that a printed long-form notice (Stipulation, Ex. B) and a paper claim form (Stipulation, Ex. E) be mailed to them.

### 4. The Notice Program Includes Internet Placement

In addition to print publication, LDG will submit the settlement website to the major search engines on the internet and develop a comprehensive Search Engine Marketing ("SEM") campaign. Sponsored links will be purchased on all major search

engines, including Yahoo, Bing, and AOL, but primarily on Google because the Google content and search network has the potential to reach over 75% of unique Internet users in more than 20 languages and over 100 countries.

Using sponsored link advertising in conjunction with print media enhances the effectiveness of the published notice because most individuals do not immediately respond to a print notice and go to the computer to check the website. Instead, they will go later to the internet and search by keywords. LDG will position the case website URL within the top five sponsored links of any search related to the keywords selected for the campaign. The use of the sponsored link campaign is intended to enhance the effectiveness of the published notice by providing a secondary mechanism for Settlement Class Members who see the published notice to find the case website for more information.

As part of the SEM campaign, LDG will also work with the major search engines to create a number of different ad groups that will allow banner ads that are specific to the type of searched keyword. LDG will also develop a list of keywords for each of the ad groups that will allow the notice to reach and target the Settlement Class Members. These will be people actively searching for this specific case as well as other subject matter related to this case (*i.e.*, "Mattel Litigation"). The list of keywords that will be developed for this case will help direct potential Settlement Class Members to the settlement website. With each click, the settlement website will increase its page rank and improve its performance in the organic search results page. The entire search-based campaign is designed to identify and direct the Settlement Class Members to the settlement website.

### C. The Proposed Notice Adequately Informs Settlement Class Members of the Class-Action Settlement

The parties have provided the Court three forms of notice, which are attached to the Stipulation as Exhibits B, C and L. As required by Rule 23(c)(2)(B), these notices "concisely and clearly state[s] in plain, easily understood language:" (1) the nature of

the action (*see* Stipulation, Ex. D at 7); (2) the Settlement Class definition (*see id.* at 9); (3) the class claims, issues, and defenses (*see id.* at 7); (4) that if a Settlement Class Member desires, he may enter an appearance through counsel (*see id.* at 24); (5) that the Court will exclude from the Settlement Class any member who requests exclusion, stating when and how members may elect to be excluded (*see id.* at 22); and (6) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3) (*see id.* at 20).  Fed. R. Civ. P. 23(c)(2)(B).

In addition, to provide adequate notice of a class-action settlement, the notice should "'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village*, 361 F.3d at 574 (internal citations omitted).  Here, the parties' proposed notice adequately informs Settlement Class Members of the settlement terms, and explains that when the Court considers final approval at the Fairness Hearing, Settlement Class Members may be heard about the settlement.  As explained below, it also informs objectors to file written objections with the Court and to give notice if they intend to appear at the Fairness Hearing.  *Manual* §21.633.

Finally, Rule 23(h)(1) requires that notice of Co-Lead Counsel's request for attorneys' fees must be "directed to class members in a reasonable manner."  For settlement classes under Rule 23(e), "'notice of class counsel's fees motion should be combined with notice of the proposed settlement.'"  *Manual* §21.722, at 338 (internal citations omitted).  The parties' proposed notice in this case apprises the Settlement Class Members of Co-Lead Counsel's fee request, which will be presented at the Final Fairness Hearing.  (*See* Stipulation, Exs. B, C and L.)

**D.     The Notice Adequately Explains the Procedures to Request Exclusion or to Object**

Notice of a class action settlement should alert class members of the procedures to request exclusion or object.  *See Manual* §§21.312, 21.633.  The proposed notice here notifies Settlement Class Members of their right to exclude themselves from the

Settlement Class by sending a written request for exclusion to the Claims Administrator. The notice also advises Settlement Class Members of the requirements that the request must contain the original signature of the Settlement Class Member; the Settlement Class Member's name, current address, and current telephone number; and a specific statement that the Settlement Class Member wants to be excluded from the Settlement Class. It also informs Settlement Class Members that a request for exclusion must be postmarked no later than the date established by the Court. It advises that in no event shall persons who purport to opt out of the settlement as a group, aggregate, or class involving more than one claim be considered valid opt outs.

In addition, the notice provides that Settlement Class Members who wish to: (a) object to the proposed settlement, (b) object to the request by Co-Lead Counsel for attorneys' fees and costs, and/or (c) appear in person or by counsel at the Fairness Hearing and be heard, must first mail objection letters to the Court, plaintiffs' Co-Lead Counsel, and Mattel's Counsel, which must be mailed and postmarked by the date established by the Court, and must include the Settlement Class Member's name, current postal address, and current telephone number; must provide proof of purchase of a Recalled Toy; and must state the reasons for objecting to the settlement. Finally, the written objection must contain the original signature of the Settlement Class Member and indicate whether the Settlement Class Member or his lawyer intends to appear at the Final Fairness Hearing. All of these requirements for a proper objection are set forth in the notice. Moreover, the notice alerts a Settlement Class Member that his objections to the settlement will only be considered by the Court if the member follows the procedures set forth in the notice.

Consequently, the notice that will be provided to the Settlement Class Members under the proposed notice program fully apprises the Settlement Class Members of the procedures to request exclusion or to object.

### E. The Notice Adequately Informs the Settlement Class Members of the Final Fairness Hearing

Notice of a Final Fairness Hearing should inform the class that they can present their views on the settlement, as well as present arguments for and against the settlement, when the Court addresses the fairness, reasonableness, and adequacy of a proposed settlement. *Manual* §§21.633, 21.634.

The parties' proposed forms of notice inform putative Settlement Class Members of the details of the Final Fairness Hearing. The notices provide the date to be set for the Final Fairness Hearing before this Court, and alert Settlement Class Members that if they file timely, written objections and comply with the requirements set forth in the notices, they may appear at the Final Fairness Hearing in person or by counsel and be heard. (*See* Stipulation Ex. B, C and L.) Finally, the notices address Co-Lead Counsel's request for attorneys fees and costs. (*See id*.) The notice also provides a toll-free number that a Settlement Class Member can call for more information. That toll-free number will be administered by the Claims Administrator appointed by this Court. Hence, the proposed notice program adequately notifies the Settlement Class Members of the Final Fairness Hearing to be held before the Court.

### F. The Notice Program Should Be Approved

LDG estimates that the notice program as a whole will have a total reach for the defined target audience of 83% and, perhaps more importantly, will reach 90% of the women in the target audience. Both of those estimates could be even higher depending on earned media coverage. Consequently, the parties respectfully submit that the Court, after reviewing each of the forms of proposed notice and the specific terms of the notice program, should find that these procedures for notice established in the Stipulation, and the procedures for Settlement Class Members to request exclusion from the Settlement Class, are adequate and reasonable, meet the requirements of Federal Rule of Civil Procedure 23, and constitute the best notice practicable under the circumstances.

# VI. CONCLUSION

As explained in detail above, this Settlement Class meets the Rule 23 requirements for class certification; the proposed settlement fairly resolves the putative Settlement Class Members' claims; and the proposed notice program constitutes the best notice practicable under the circumstances. Consequently, the named plaintiffs and Mattel respectfully move this Court to issue an Order (1) certifying the Settlement Class, (2) granting preliminary approval of the proposed settlement, (3) approving the proposed notice program and directing that it be implemented, (4) appointing Co-Lead Counsel to be Co-Lead Class Counsel, and (5) appointing Gilardi & Co. LLC as the Claims Administrator.

DATED: October 13, 2009        Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR.
RACHEL L. JENSEN
THOMAS J. O'REARDON II


                 s/ John Stoia, Jr.
                 JOHN J. STOIA, JR.

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PAUL J. GELLER
JACK REISE
ELIZABETH A. SHONSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

WHATLEY, DRAKE & KALLAS, LLC
JOE R. WHATLEY, JR.
EDITH M. KALLAS
ELIZABETH ROSENBERG
1540 Broadway, 37th Floor
New York, NY 10036
Telephone: 212/447-7070

212/447-7077 (fax)

*Co-Lead Counsel for Plaintiffs*

KELLER ROHRBACK LLP
LYNN LINCOLN SARKO
JULI E. FARRIS
GRETCHEN FREEMAN CAPPIO
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: 206/623-1900
206/623-3384 (fax)

*Chair of Plaintiffs' Executive Committee*

DATED: October 13, 2009

JONES DAY
ELWOOD LUI


                    s/ Elwood Lui
                  ELWOOD LUI

555 South Flower Street, 50th FL
Los Angeles, CA 90071
Telephone: 213/489-3939
213/243-2539 (fax)

JONES DAY
Thomas E. Fennell
Michael Rice
2727 North Harwood Street
Dallas, TX 75201
Telephone: 214/220-3939
214/969-5100 (fax)

JONES DAY
HUGH R. WHITING
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: 216/586-3939
216/579-0212

*Counsel for Defendant Mattel, Inc.*

S:\CasesSD\Mattel Consumer\BRF 00062325.doc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 13, 2009.

s/ John J. Stoia, Jr.
JOHN J. STOIA, JR.

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: johns@csgrr.com

# Mailing Information for a Case 2:07-ml-01897-DSF-AJW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael David Abraham**
  mabraham@bztm.com

- **Ivy D Arai**
  ivy@hbsslaw.com

- **Ben Barnow**
  b.barnow@barnowlaw.com,e.schork@barnowlaw.com,s.harris@barnowlaw.com

- **Mila F Bartos**
  mbartos@finkelsteinthompson.com

- **Steve W Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com

- **Michael D Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Mitchell M Breit**
  mbreit@wdklaw.com,ecf@wdklaw.com

- **Lori S Brody**
  lbrody@kaplanfox.com,kweiland@kaplanfox.com

- **Robert H Bunzel**
  rbunzel@bztm.com,bsage@bztm.com

- **Elaine T Byszewski**
  elaine@hbsslaw.com,JenniferB@hbsslaw.com,sharons@hbsslaw.com

- **Gretchen Freeman Cappio**
  gcappio@kellerrohrback.com,mbates@kellerrohrback.com

- **Stuart A Davidson**
  sdavidson@csgrr.com

- **Kimberly M Donaldson**
  kimdonaldson@chimicles.com

- **Juli E Farris**
  jfarris@kellerrohrback.com,kzajac@kellerrohrback.com

- **Elizabeth A Fegan**
  beth@hbsslaw.com,Chi_Filings@hbsslaw.com

- **Thomas E Fennell**
  tefennell@jonesday.com

- **Linda M Fong**
  lfong@kaplanfox.com,kweiland@kaplanfox.com

- **Paul J Geller**
  pgeller@csgrr.com

- **Pamela Gilbert**
  pamelag@cuneolaw.com

- **Lee M Gordon**
  lee@hbsslaw.com,JenniferB@hbsslaw.com,sharons@hbsslaw.com

- **Lance August Harke**
  lharke@harkeclasby.com

- **Amber S Healy**
  amberh@kallawgroup.com

- **Brian M Hoffstadt**
  bhoffstadt@jonesday.com

- **Ruben Honik**
  rhonik@golombhonik.com,lpena@golombhonik.com,emalloy@golombhonik.com

- **Heather Necklaus Hudson**
  hnhudson@eysterkey.com

- **Rachel L Jensen**
  rjensen@csgrr.com

- **Mitch H Kalcheim**
  mitch@kallawgroup.com

- **Edith M Kallas**
  ekallas@wdklaw.com,ecf@wdklaw.com

- **Michael L Kelly**
  mlk@kirtlandpackard.com

- **Jamie Ranah Kendall**
  jkendall@price-law.com,eamos@price-law.com,cnolan@price-law.com,mmendel@price-law.com

- **Jeffrey B Killino**
  jkillino@wklawyer.com

- **Laurence D King**
  lking@kaplanfox.com,kweiland@kaplanfox.com

- **Daniel J Kurowski**

dank@hbsslaw.com,chi_filings@hbsslaw.com

- **Elizabeth A Leland**
  bleland@kellerrohrback.com

- **Elwood G Lui**
  elui@jonesday.com

- **Timothy Mahoney**
  timm@hbsslaw.com,chi_filings@hbsslaw.com

- **Stephan Matanovic**
  smatanovic@golombhonik.com,lpena@golombhonik.com,emalloy@golombhonik.com

- **William A McKinnon**
  bmckinnon@mcgowanhood.com,bmcgovern@mcgowanhood.com

- **Manfred Patrick Muecke**
  mmuecke@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Thomas Joseph O'Reardon , II**
  toreardon@csgrr.com

- **Joseph L Paller , Jr**
  jlpaller@gslaw.org

- **Behram V Parekh**
  bvp@kirtlandpackard.com

- **Mark L Punzalan**
  mpunzalan@finkelsteinthompson.com

- **Julio J Ramos**
  ramosfortrustee@yahoo.com,ramosforsupervisor@yahoo.com

- **Thomas Ailbe Rector**
  tarector@jonesday.com

- **Jack Reise**
  jreise@csgrr.com

- **Michael L Rice**
  mlrice@jonesday.com,jameseyoung@jonesday.com,deborahsimmons@jonesday.com

- **Karen Hanson Riebel**
  khriebel@locklaw.com,crbaehman@locklaw.com

- **William N Riley**
  wriley@price-law.com

- **Rosemary M Rivas**
  rrivas@finkelsteinthompson.com,srenwick@finkelsteinthompson.com,jdito@finkelsteinthompson.com

- **Nicholas B Roth**
  nbroth@eysterkey.com

- **Lynn L Sarko**
  lsarko@kellerrohrback.com

- **Denise Davis Schwartzman**
  deniseschwartzman@chimicles.com

- **Rick L Shackelford**
  shackelfordr@gtlaw.com,gutierrezd@gtlaw.com

- **Jay Edward Smith**
  js@gslaw.org

- **John J Stoia , Jr**
  johns@csgrr.com,e_file_sd@csgrr.com

- **Paul A Traina**
  ptraina@elllaw.com

- **Laurie A Traktman**
  lat@gslaw.org

- **Gregory P Waters**
  gwaters@elllaw.com

- **Joe R Whatley , Jr**
  jwhatley@wdklaw.com,kgault@wdklaw.com,ecf@wdklaw.com

- **Hugh R Whiting**
  hrwhiting@jonesday.com

- **Joseph N Williams**
  jwilliams@price-law.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Gilbert Scott Bagnell
Bagnell and Eason
PO Box 11852
Columbia, SC 29211

Frank Baliant
Bonnett Fairbourn Friedman & Baliant PC
2901 North Central Avenue - Suite 1000
Phoenix, AZ 85012

Matthew C Branic
Krieg Devault LLP
```

One Indiana Square Suite 2800
Indianapolis, IN 46204

**Robert H Brunson**
Nelson Mullins Riley and Scarborough
PO Box 1806
Charleston, SC 29402

**Michael G. Crow**
Crow Law Firm LLC
1100 Poydras Street - Suite 1175
New Orleans, LA 70163

**Ryan D Dahl**
Jones Day
50 Grant Street Suite 3100
Pittsburgh, PA 15219

**John Gressette Felder**                                    **, Jr**
McGowan Hood Felder and Johnson
1405 Calhoun Street
Columbia, SC 29201

**Burton H Finkelstein**
Finkelstein Thompson & Loughran
Duvall Foundry
1050 30th St NW
Washington, DC 20007

**Frederic S Fox**
Kaplan Fox & Kilsheimer
850 Third Avenue 14th Fl
New York, NY 10022

**Andrew C Friedman**
Bonnett Fairbourn Friedman and Balint
2901 N Central Avenue - Suite 1000
Phoenix, AZ 85012

**Richard M Golomb**
Golomb & Honik
121 South Broad Street 9th Floor
Philadelphia, PA 19107

**Michael D Gottsch**
Chimicles and Tikellis LLP
One Haverford Center
361 West Lancaster Avenue
Haverford, PA 19041-0100

**Donald R Hall**
Kaplan Fox and Kilsheimer
850 Third Avenue 14th Floor
New York, NY 10022

**Steven Michael Hayes**
Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP
112 Madison Avenue
New York, NY 10016

**Danielle Marie Hohos**
Jones Day
51 Louisiana Avenue

Washington, DC 20001

**Steven Randall Hood**
McGowan Hood and Felder
1539 Healthcare Drive
Rock Hill, SC 29732

**John E Iole**
Jones Day
500 Grant St, 31st Fl
Pittsburgh, PA 15219

**Walter J Lack**
Engstrom Lipscomb & Lack
10100 Santa Monica Boulevard  12th Floor
Los Angeles, CA 90067-4107

**Michael S Levin**
Golomb and Honik
121 South Broad Street  9th Floor
Philadelphia, PA 19107

**Karen Jennifer Marcus**
Finklestein Thompson LLP
1050 30th Street NW
Washington, DC 20007

**Deirdre Shelton McCool**
Nelson Mullins Riley and Scarborough
PO Box 1806
Charleston, SC 29402

**Chad A McGowan**
McGowan Hood Felder and Johnson
1539 Healthcare Drive
Rock Hill, SC 29732

**Mark J R Merkle**
Krieg Devault LLP
One Indiana Square Suite 2800
Indianapolis, IN 46204

**Stephen G Morrison**
Nelson Mullins Riley and Scarborough
P O Box 11070
Columbia, SC 29211

**Marc T Quigley**
Krieg Devault LLP
One Indiana Square Suite 2800
Indianapolis, IN 46204

**Elizabeth A Shonson**
Coughlin Stoia Geller Rudman and Robbins
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809

**Michael J Templeton**
Jones Day
222 East 41st Street
New York, NY 10017

**John B Williams**

Jones Day
51 Louisiana Avenue
Washington, DC 20004

**David L Woloshin**
Woloshin and Killino
1800 John F Kennedy Boulevard, 11th Floor
Philadelphia, PA 19103-2925